## SOCIAL MEDIA AND PUBLIC HIGHER EDUCATION EMPLOYMENT

by Jack Peggs and Kevin B. Johnson

Jack Peggs is in the private practice of law in Wichita, Kansas. He received his B.A. degree from Creighton University and his J.D. from Washburn University School of Law. He is a member of the Kansas and United States Supreme Court Bars. He served as Special Assistant to the State Attorney General and as Assistant District Attorney where he was Chief of the Appellate Section. He is the past chair of the Wichita Bar Association's Medico-Legal Committee. He served as an adjunct professor at Wichita State University, and, has written and co-authored numerous legal articles and papers, principally in medically related fields. He is admitted to practice before all Kansas Courts, the U.S. Federal District Court, and the 10th Circuit Court of Appeals. Jack Peggs practices in several areas of law, however, with an emphasis on commercial and personal injury litigation.

Kevin B. Johnson has practiced law in Wichita and Emporia, Kansas and is General Counsel for Emporia State University. He received his B.A. from Wichita State University and his J.D. from Washburn University School of Law. He is admitted to practice before all Kansas Courts, the 10th Circuit Court of Appeals, and the U.S. Supreme Court. Mr. Johnson has authored several books on business and employment law issues, as well as a number of articles on business relationships and healthcare-legal issues. He also teaches courses in business law and business ethics as a tenured faculty member of the School of Business at Emporia State University (an AACSB accredited business school).

Case 5:23-cv-04056   Document 1-1   Filed 07/12/23   Page 2 of 7

SOCIAL MEDIA AND PUBLIC HIGHER EDUCATION EMPLOYMENT

I.  INTRODUCTION

    § 1.  In General

    § 2.  Scope of Article

    § 3.  Model Trial Factual Situation

II. LEGAL BACKGROUND

    § 4.  Public Higher Education Employment

        @[NUM]  (1). Overview

        @[NUM]  (2). At-Will Employment

        @[NUM]  (3). Constitutional Due Process Rights

        @[NUM]  (4). Employment Contracts

        @[NUM]  (5). Collective Bargaining Agreements

        @[NUM]  (6). Institutional Policies and Procedures

        @[NUM]  (7). Tenure

    § 5.  Social Media and Public Employment

        @[NUM]  (1). First Amendment

        @[NUM] (2). Academic Freedom

        @[NUM]  (3). Social Media

    § 6.  Remedies

        @[NUM]  (1). Exhaustion of Administrative Remedies

        @[NUM]  (2). Reinstatement

        @[NUM]  (3). Damages

        @[NUM]  (4). Proper Defendant

III.    INVESTIGATION AND PREFILING CONSIDERATIONS

    § 8.    The Initial Client Interview

        @[NUM]  (1). Speech Protected by the First Amendment (Intent of the Messages Posted to Social Media)

        @[NUM]  (2). Speaking as a Private Citizen on a Matter of Public Concern

        @[NUM]  (3). Speaking for Oneself or as a University Representative

    § 9.    Obtaining Written Evidence

    § 10.    Interviewing Witnesses

    § 11.    Developing the Case Theory

IV.    THE PLEADINGS

    § 12.    The Complaint

        @[NUM]  (1). Sample Complaint

    § 13.    Defenses and Cross-Claims

        @[NUM] (2).  Sample Answer

V.    DISCOVERY

    § 14.    In General

    § 15.    Conducting Discovery

        @[NUM]  (1). Paper Discovery

        @[NUM]  (2). Depositions

    § 16.    Summary Judgment

VI.    TRIAL

    § 17.    *Voir Dire*

    § 18.    Opening Statement

Employees in public higher education with a clear expectation of continued employment include any employee working pursuant to a collective bargaining agreement or to an individual contract (at least to the extent described in the applicable contract). Tenured faculty members of any academic rank also have a clear expectation of continued employment based on both university policy and the policies of the university's governing board. Non-tenured faculty members, including those faculty who are in a tenure-track position but have not yet been granted tenure, as well as many (if not all at some institutions) in administration, particularly in senior positions do not have an expectation of continued employment. Others without an expectation of continued employment include student employees, part time, temporary, or probationary employees, and various staff positions not covered by a collective bargaining agreement. The Professor in the model fact situation, as a tenured faculty member, has an expectation of continued employment.

@[NUM]  (3) Constitutional Due Process Rights

The termination of employment of a member of the faculty of an institution of higher education does require an examination of a faculty employee's due process rights in their employment. Tenured faculty members, as the Professor in the model case, do have procedural due process rights in their employment. Probationary faculty (indeed, any probationary public employee) do not have procedural due process rights in their employee. Probationary faculty includes a faculty member in a tenure-track position who has not yet been awarded tenure. The right of procedural due process is met when terminating a tenured faculty member when the employee is given notice of the reason for the decision to terminate and the opportunity to challenge, or to defend against, the termination decision before the effective date of the

24

such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' <Papadopoulos v. Oregon State Bd. of Higher Educ., 14 Or. App. 130, 165-66, 511 P.2d 854, 870-71 (1973)>

A tenured faculty member who is being terminated is typically given notice of the termination and that the effective date of the termination will be at a future time specified by date or by condition (such as the final decision in a grievance) During this time between notice and actual termination the faculty member may continue teaching, research, and other duties or, at the discretion of the university, may be placed on paid leave with no requirement to meet the university's normal expectations for research, instruction, or service. Whether the faculty member continues to be actively engaged as a faculty member or is on paid leave, this is the time period during which the employee has the opportunity to request a hearing regarding the decision to terminate employment. In other situations, a tenured faculty member may have been accused of some violation of policy (such as harassment or of whether the professor "unreasonably obstructed teaching, research and learning," as in the model fact situation). During an investigation of the accusation the faculty member may be placed on administrative or paid leave. The question arises, therefore, of whether the faculty member placed on paid leave is entitled to a hearing before being placed on paid leave.

A government employee is entitled to constitutional procedural due process only when the employee has been deprived of a protected property or liberty interest. <See Board of Regents v. Roth, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972)> Public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process. <Gilbert v. Homar, 520 U.S. 924, 929, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120, 126 (1997)> Property interests are

26

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. A property interest typically arises from contractual or statutory limitations on the employer's ability to terminate an employee or can also be created by implied contract, arising out of customs, practices, and de facto policies. Thus, to determine whether a public employee has a property interest in continued employment, we look to state law and any contractual rights Simonson may have. Some jurisdictions have concluded that a government employee has no constitutionally protected property interest in actually performing his or her job and thus an employee's due process rights are not implicated so long as he or she continues to receive pay and benefits. <See Harris v. Board of Educ., 105 F.3d 591, 596–97 (11th Cir.1997)> <City of Annapolis v. Rowe, 123 Md.App. 267, 717 A.2d 976, 988 (1998)> Other jurisdictions have held, however, that even though the employee is not deprived of the economic benefits of the job, an employee has a constitutionally protected property right in continuous employment by virtue of certain statutorily created procedural rules concerning suspension or demotion. <See Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.1994)> <Division of Family Servs. v. Cade, 939 S.W.2d 546, 553 (Mo.Ct.App.1997)> <Arneson v. Jezwinski, 225 Wis.2d 371, 592 N.W.2d 606, 618–19 (1999)>

  There is a significant distinction between those cases finding that a protected property interest exists which warrants procedural due process protections over paid leave and those that do not. It is only when the paid leave, itself, is the disciplinary measure taken against the employee that the due process issue becomes relevant. When the employee is placed on paid leave pending the results of an investigation to determine whether cause exists for termination or other applicable employment action, or pending the results of a grievance by the employee

27

individual candidate. Lower levels of review are not binding upon the CEO. Instead, they are merely recommendations and are therefore advisory in nature. In fact, unless the CEO exercised bad faith in a tenure decision, or the reason for denying tenure constituted a pretext for unlawful discrimination, there is little if anything an unsuccessful candidate for tenure can do (other than have the decision reviewed through the university's own tenure decision review process). <Univ. of Baltimore v. Iz, 123 Md. App. 135, 167-69, 716 A.2d 1107, 1123-24 (1998)>

      Tenure is an academic status granted by a university to one of its own faculty members. Tenure is not necessarily transferrable when a tenured faculty member takes a faculty position with a different university than the one that conferred tenure to the faculty member. Whether or not a university will agree to start a new faculty member in his or her position with tenure, or whether they will need to apply for tenure at the new university are matters to be negotiated when a job offer is made. The reason for this is that different institutions of higher education have different standards for the granting of tenure.

      Once granted, tenure gives a faculty member an expectation of continued employment at institution that conferred tenure. (See Section 4, Number 3 At-Will Employment and Number 4 Constitutional Due Process Requirements, supra.) For purposes of this article, the only issue with regard to tenure is whether or not the faculty member has tenure at the time they are given notice of termination. A tenured faculty member at any institution of higher education clearly has an expectation of continued employment and is entitled to procedural due process rights as a condition of termination of employment.