Exhibit 2

1



## UNIVERSITY POLICY MANUAL

# TABLE OF CONTENTS

## GUIDING FRAMEWORK

University Mission Statement ................................................................................................ 1

Equal Employment Opportunity, Equal Educational Opportunity and
Non- Discrimination Policy ................................................................................................... 1

Affirmation of Values Statement ........................................................................................... 1

Positioning Statement ............................................................................................................ 3

Organizational Chart .............................................................................................................. 3

## CHAPTER 1 UNCLASSIFIED PERSONNEL

**1A. Categories Of Unclassified Appointments** ........................................................................ 1-1

1A.01 Academic Appointments ............................................................................................... 1-1

    1A. 0102 Academic Tenure .............................................................................................. 1-1

    1A.0103 Non-Tenure Track Academic .............................................................................. 1-1

    1A.0104 Academic Temporary ......................................................................................... 1-2

1A.02 Administrative Appointments ........................................................................................ 1-2

    1A.0201 Administrative Probationary ............................................................................... 1-2

    1A.0202 Administrative Regular ....................................................................................... 1-3

    1A.0203 Administrative Temporary ................................................................................... 1-3

    1A.0204 Administrative Athletics ...................................................................................... 1-3

    1A.0205 Limited Appointment .......................................................................................... 1-3

**1B. Academic Appointment Policies And Procedures** .............................................................. 1-3

1B.01 Notices Of Appointment .................................................................................... 1-3

1B.02 Appointment Terms .......................................................................................... 1-4

    1B.0201 Academic Year Appointments ....................................................... 1-4

    1B.0202 12 Month Appointments ............................................................... 1-4

    1B.0203 Summer Session Appointments .................................................... 1-4

1B.03 Faculty Ranks ................................................................................................... 1-4

    1B.0301 Professor ........................................................................................ 1-4

    1B.0302 Associate Professor ...................................................................... 1-4

    1B.0303 Assistant Professor ....................................................................... 1-5

    1B.0304 Instructor ........................................................................................ 1-5

    1B.0305 Lecturer .......................................................................................... 1-5

1B.04 Faculty Titles ................................................................................................... 1-5

    1B.0401 Adjunct ........................................................................................... 1-5

    1B.0402 Distinguished Professor ................................................................ 1-5

    1B.0403 Clinical Instructor ......................................................................... 1-5

1B.05 Minimum Faculty Qualifications ..................................................................... 1-5

1B.06 Graduate Faculty ............................................................................................. 1-7

    1B.0601 Membership in Graduate Faculty .................................................. 1-7

1B.07 Academic Freedom .......................................................................................... 1-7

1B.08 Faculty Performance And Recognition ............................................................ 1-7

    1B.0801 Notification of Faculty Performance and Recognition Policies ....... 1-7

    1B.0802 Faculty Recognition Policy ........................................................... 1-8

    1B.0803 Annual Faculty Evaluation ............................................................ 1-10

        1B.0803.01 Training Of Department Chairs ....................................... 1-11

        1B.0803.02 Student Rating Of Teaching ........................................... 1-11

    1B.0804 Evaluation of the Chair by Faculty ............................................... 1-12

    1B.0805 Policies and Procedures for Tenure ............................................... 1-13

        1B.0805.01 Board of Regents Policy for Tenure ................................. 1-13

        1B.0805.02 University Policies and Procedures for Tenure ............... 1-14

        1B.0805.03 Reappointment during the Probationary Period ............. 1-18

1B.0806 Policies and Procedures for Promotion ...................................................... 1-20

1B.0806.02 University Criteria for Promotion ............................................................ 1-20

1B.0806.03 Procedures for Faculty Promotion............................................................ 1-22

1B.0807 Faculty Performance and Recognition Decisions when Interdepartmental
Transfers of Faculty Members or Departmental Mergers are Involved ........................ 1-24

1B.09 Policies On Termination Of Employment...................................................... 1-26

1B.0901 Resignation........................................................................................ 1-26

1B.0902 Non-Reappointment ............................................................................ 1-26

1B.0903 Program Discontinuance .................................................................... 1-26

1B.0904 Post Tenure Review ............................................................................ 1-26

1B.0905 Chronic Low Performance and Corrective Faculty Development ................. 1-28

1B.0906 Procedure For Faculty Review Prior To Dismissal For Cause Of Tenured
Faculty........................................................................................................ 1-34

1B.10 Implementation Of The Kansas Board Of Regents' Policy On Social Media ............... 1-39

1B.11 Faculty Enrollment At Esu...................................................................... 1-40

1B.12 Faculty Referendum ............................................................................ 1-41

**1C. ADMINISTRATIVE APPOINTMENT POLICIES AND PROCEDURES ............... 1-42**

1C.01 APPOINTMENT, EVALUATION, RETENTION AND TERMINATION................. 1-42

1C.0101 Introduction .................................................................................... 1-42

1C.0102 Administrative Probationary ............................................................ 1-43

1C.0102.01 Administrative Probationary Status with Cause (for employees with
prior permanent status) .................................................................................... 1-44

1C.0102.02 Administrative Probationary Status without Cause ....................... 1-45

1C.0103 Administrative Regular .................................................................... 1-45

1C.0103.01 Administrative Regular Status without Cause ............................... 1-45

1C.0104 Administrative Temporary ................................................................ 1-46

1C.0105 Administrative Athletic .................................................................... 1-46

1C.0106 Limited Term.................................................................................... 1-47

1C.02 Procedures For Faculty/Staff Evaluation Of Administrators ......................... 1-47

1C.03 Board Of Regents Evaluation Of The President ............................................ 1-51

**1D. Unclassified Personnel With Administrative And Academic Responsibilities............ 1-52**

1D.01 Introduction.................................................................................................. 1-52
1D.02 Existing Tenure/Rank ................................................................................... 1-52
1D.03 Evaluations................................................................................................... 1-52

**1E.   Other Unclassified Personnel Policies........................................................ 1-53**

1E.01 Dispute Resolution, Mediation, And Grievance Policy ................................. 1-53
1E.02 Grievance Policy for Administrators.............................................................. 1-63
1E.03 Commitment of Time, Conflict of Interest, Consulting and Other Employment............ 1-63
        1E.0301 Conflict of Interest and Conflict of Time Reporting Procedure...................... 1-68

## CHAPTER 2 UNIVERSITY SUPPORT STAFF

**2A.   University Support Staff Employment........................................................ 2-1**

2A.01 Appointment Notice...................................................................................... 2-1
2A.02 Appointment Type ........................................................................................ 2-1
        2A.0202 Temporary Appointment.................................................................... 2-2
        2A.0203 Limited Term Appointment ............................................................... 2-2
        2A.0204 Acting Appointment........................................................................... 2-2
2A.03 Supervisory Training..................................................................................... 2-3
2A.04 Return To Work Policy ................................................................................. 2-3
2A.05 Furloughs And Layoffs ................................................................................. 2-4
        2A.0501 Furloughs .......................................................................................... 2-4
        2A.0502 Layoff And Reemployment ............................................................... 2-4
2A.06 Personal Property .......................................................................................... 2-5

**2B.   Other Employment ...................................................................................... 2-5**

**2C.   Personal Business** ........................................................................................................ **2-5**


**2D.   Work Schedule** ............................................................................................................... **2-6**


2D.01 Punctuality .................................................................................................................... 2-6
2D.02 Portal To Portal Act ...................................................................................................... 2-6
2D.03 Overtime........................................................................................................................ 2-6
        2D.0301 Compensatory Time Policy.............................................................................. 2-7
2D.04 Break Periods ............................................................................................................... 2-8
2D.05 Meals ............................................................................................................................. 2-8
2D.06 Call-In And Call-Back .................................................................................................. 2-9
2D.07 Travel Away From Home .............................................................................................. 2-9
2D.08 Shift Differential ........................................................................................................... 2-9
2D.09 Stand-By Compensation .............................................................................................. 2-10


**2E.   Probationary Period  And Performance Evaluations** ................................................. **2-10**


2E.01 Performance Review System........................................................................................ **2-10**
        2E.0101 Probationary Period Review............................................................................ 2-10
2E.02 Annual Performance Evaluation................................................................................... 2-11
        2E.0201 Initial Planning ................................................................................................. 2-11
        2E.0202 Mid-Year And Annual Review Discussions .................................................... 2-12
        2E.0203 Performance Factors ........................................................................................ 2-12
        2E.0204 Overall Performance........................................................................................ 2-13
2E.03 Demotion – Involuntary ............................................................................................... 2-13


**2F. Disciplinary Action And Grievance Procedures**.............................................................. **2-13**


2F.01 Areas Covered By University Support Staff Policies.................................................... 2-13
2F.02 Progressive Discipline Policy ....................................................................................... 2-13
        2F.0201 General Policy ................................................................................................... 2-14

4B.04 Concurrent Undergraduate Students ................................................................................ 4-4

4B.05 Seniors Earning Graduate Credit.................................................................................... 4-5

**4C. Academic Requirements And Regulations ..................................................... 4-5**

4C.01 Graduation Requirements................................................................................................ 4-5

    4C.0101 Undergraduate ........................................................................................................ 4-5

    4C.0101.03 Time Limit Policy .............................................................................................. 4-6

    4C.0102 Graduate ................................................................................................................ 4-7

    4C.0102.01 Master's Degree .............................................................................................. 4-7

    4C.0102.01.01 Thesis ......................................................................................................... 4-7

    4C.0102.02 Specialist In Education Degree ...................................................................... 4-8

    4C.0102.03 Doctoral Degree ............................................................................................ 4-8

4C.02 Application For A Degree .............................................................................................. 4-9

    4C.0201 Undergraduate ........................................................................................................ 4-9

    4C.0202 Graduate ................................................................................................................ 4-9

        4C.0202.01 Degree Candidacy.......................................................................................... 4-9

    4C.0203 Second Bachelor's Degree ...................................................................................... 4-10

    4C.0204 Second Master's Degree...................................................................................... 4-11

    4C.0205 Posthumous Degree................................................................................................ 4-11

        4C.0205.01 Posthumous Recognition................................................................................ 4-12

4C.03 Resident Academic Credit.............................................................................................. 4-12

4C.04 External Academic Credit ............................................................................................ 4-13

    4C.0401 Transfer  Credit – Undergraduate.......................................................................... 4-13

        4C.0401.01 Student Transfer Appeals Process.................................................................. 4-13

        4C.0401.02 Articulation (Transfer) Agreement................................................................. 4-14

    4C.0402 Transfer Credit – Graduate.................................................................................... 4-14

    4C.0403 Correspondence Study............................................................................................ 4-15

    4C.0404 Credit Offerings In Cooperation With Organizations Outside The University.......................................................................................................................... 4-15

4C.05 Life Experience Credit .................................................................................................. 4-16

4C.06 Military Service Credit................................................................................................... 4-16

# Chapter 1 UNCLASSIFIED PERSONNEL

## 1A.   CATEGORIES OF UNCLASSIFIED APPOINTMENTS

Unclassified appointments apply to all University employees except those who have civil service classification or those who are student employees. An unclassified appointment is either an academic or an administrative appointment. The appointment category may include both academic and administrative responsibilities. Policies and procedures pertinent to each appointment category are included in this chapter.

## 1A.01   ACADEMIC APPOINTMENTS

### 1A. 0101 Academic Probationary

An academic probationary appointment is for a full-time, tenure-track teaching position. The number of years required toward tenure is included in the Notice of Appointment. Probationary appointments may, on the basis of continuing satisfactory performance, lead to review for the award of tenure. However, probationary appointments carry no promise that tenure will be awarded. Probationary appointments are reviewed on an annual basis. The standards of non- reappointment apply to this appointment.

### 1A. 0102 Academic Tenure

An academic tenure appointment is a continuous, full-time, academic position for faculty with tenure. Tenured appointments will be annually renewed. Termination of a tenured faculty member must follow appropriate policies and procedures.

### 1A.0103 Non-Tenure Track Academic (FSB 18028 passed by Faculty Senate 5/7/2019; approved by President 6/5/2019)

1.  Emporia State University may employ and appoint qualified personnel to full-time or part- time, non-tenure track academic appointments as determined to be in the best interest of the university. The primary responsibility for persons on these appointments could be any of the following areas: teaching, clinical service, research, outreach and service, or other creative endeavors in academic departments. Assignment of titles and ranks shall be determined by the academic unit in accordance with university policy.
2.  Contracts for such appointments shall not exceed 3 years, may be renewable but may not be rolling. At the end of each contract period, the appointment is subject to review to determine whether the appointment shall be renewed for an additional period, which may be up to 3 years. Notice of non-reappointment of non-tenure track faculty

with multiple year appointments (i.e., those addressed by this policy) shall require the same notification timeline as non-reappointment of academic probationary faculty members. This appointment type only applies to benefits eligible positions. Potential increases in salary shall be determined each year by availability of funds and by merit, which includes, but is not limited to, productivity. Criteria for promotion (if available or applicable) shall be determined by the university.

3. Contracts for appointments made pursuant to paragraph (1) of this subsection may be terminated by mutual agreement of the faculty member and Emporia State University. Prior to the expiration of the appointment, ESU may only terminate the contract for financial exigency or for cause in accordance with Board or university policy, including loss of clinical privileges, if any, or loss of clinical employment with practice corporation or  foundation, if any.

### 1A.0104 Academic Temporary

An academic temporary appointment is for a temporary teaching position and may not exceed 1 year. The Notice of Appointment is renewable annually. The appointment carries no expectation of continued employment. Employment is considered to be at-will and may be terminated at any time, without cause, prior to the end date specified in the notice of appointment. The standards of non-reappointment do not apply. There is no consideration for tenure.

Academic temporary appointments which are made for at least a half-time and for at least a 9-month basis will be eligible for benefits and are subject to the 5-year stipulation. The 5-year stipulation is defined as employment which should not exceed 5 years of consecutive appointments. Multiple simultaneous appointments of less than half-time may make an employee eligible for benefits even when the individual appointments do not.

An academic temporary appointment that is less than half-time is a non-benefits eligible appointment. An academic temporary appointment that is less than half-time is not subject to the 5-year stipulation.

## 1A.02   ADMINISTRATIVE APPOINTMENTS

### 1A.0201 Administrative Probationary

An administrative probationary appointment is for a full-time, non-teaching position. The number of probationary years is specified in the probationary Notice of Appointment and may be modified by the appropriate vice president in conjunction with the performance evaluation. The expectation is for continuing employment subject to the provisions specified in the personnel policies and procedures for administrative appointments. At the end of this service, the individual moves either to administrative regular status or is no

longer employed, in accordance with the personnel policies and procedures for administrative appointments.

### 1A.0202 Administrative Regular

An administrative regular appointment is for a full-time, non-teaching position after being in administrative probationary status for no less than 2 years. Expectation is for continuous employment subject to the requirements stated in the personnel policies and procedures for administrative regular appointments.

### 1A.0203 Administrative Temporary

An administrative temporary appointment is at least half-time and may not exceed 1 year. The appointment is renewable annually and is subject to the 5-year stipulation. The 5-year stipulation is defined as employment which should not exceed 5 years of consecutive appointments. Such appointment carries no expectation of continued employment. Employment is considered to be at-will and may be terminated at any time, without cause, prior to the end date specified in the Notice of Appointment. Temporary appointments which are made for at least a half-time and for at least a 9-month basis will be eligible for benefits. Multiple simultaneous appointments of less than half-time may make an employee eligible for benefits even when the individual appointments do not. A non-benefits eligible appointment is defined as less than half-time and is not subject to the 5-year stipulation.

### 1A.0204 Administrative Athletics

An administrative athletics appointment may be full-time or less and is for coaches and trainers. This status requires annual review for reappointment with no expectation of continuing employment. The Athletic Director has an administrative probationary or administrative regular appointment.

### 1A.0205 Limited Appointment (revised 5/09)

A limited appointment is for an individual hired in a benefits-eligible position to fulfill requirements under a contract agreement, a federal or state grant, or a specific project or role and is subject to annual review. The appointment is for the period as outlined in the Notice of Appointment or no longer than the period for which the funds are available. Inasmuch as this is a limited appointment, this appointment carries with it no expectation of continuing employment. This appointment may involve an academic component but would not be eligible for tenure.

# 1B.   ACADEMIC APPOINTMENT POLICIES AND PROCEDURES

## 1B.01   NOTICES OF APPOINTMENT (approved by President as revised 4/18/08)

Faculty notices of appointment as approved by the President, or designee on behalf of the President, are sent from the Provost and Vice President of Academic Affairs after the legislature and the Board of Regents have acted on the fiscal year budget. The Notice of Appointment, when signed by all parties, constitutes an agreement indicating the term of employment, salary, faculty rank, and appointment status.

Federal law requires ESU to verify employment eligibility of all individuals hired after November 6, 1986. The I-9 Form must be completed in Human Resources within 3 days of hire, or the employee may forfeit their position. Documentation is most easily provided by a driver's license and social security card. Other documents may be substituted. The I-9 form will be retained in the employee's personnel file located in Human Resources, and once completed, may need to be completed again for ESU employment if documentation expires.

## 1B.02   APPOINTMENT TERMS

### 1B.0201 Academic Year Appointments (BOR Council of Presidents, 2/16/78)

Academic year appointments are for a period of approximately 9 months beginning just prior to fall registration and extending through spring commencement. Faculty duties include teaching, advising and counseling, research, scholarly activities, other University duties, and community and public service. Periods when classes are not in session are normally devoted to the above listed non-teaching functions or to other specially scheduled activities.

### 1B.0202 12 Month Appointments

Some faculty and most administrative personnel receive 12-month appointments, including vacation and holidays.

### 1B.0203 Summer Session Appointments

Summer session appointments are for specified periods of time and duties. The appointments are handled on a separate budget and through separate notices of appointment. Most departments have employment for only a portion of the staff and base teaching assignments on department assessment of student needs in the summer program.

## 1B.03 FACULTY RANKS

The principal ranks granted by the University to academic faculty are those normally bestowed by institutions of higher education: professor, associate professor, assistant professor, instructor, and lecturer.

### 1B.0301 Professor (Refer to University Criteria for Promotion for definitions and expectations for the rank of professor.)

### 1B.0302 Associate Professor (Refer to University Criteria for Promotion for definitions and expectations for the rank of associate professor.)

**1B.0303 Assistant Professor** (Refer to University Criteria for Promotion for definitions and expectations for the rank of assistant professor.)

### 1B.0304 Instructor

An instructor is a faculty member with a full-time appointment who may continue in the position in accordance with appointment and re-appointment policies consistent with the appointment category. An instructor is on a non-tenure track, and a maximum of 3 years of service as instructor may count toward tenure if the person moves to the tenure track.

### 1B.0305 Lecturer

A lecturer is a faculty member with an academic temporary appointment that is less than full- time (part-time). The faculty member is not expected to continue to teach more than 1 semester or 1 year. Tenure or credit toward tenure does not apply with this rank.

## 1B.04   FACULTY TITLES

### 1B.0401 Adjunct

The title of adjunct faculty is for qualified individuals who contribute without remuneration to the University's academic efforts. Such appointments are made for a specified term but may be renewed, carry no stipends, and do not imply eligibility for tenure or other such faculty benefits. An adjunct faculty appointee has an opportunity to use the University name and designated laboratory, library, and study facilities.

### 1B.0402 Distinguished Professor

The title of distinguished professor may be given to qualified individuals. Remuneration is commensurate with expectations.

### 1B.0403 Clinical Instructor (approved by Vice Presidents' Council and the President, 5/09)

The title of clinical instructor is for an instructional faculty member with at least a part-time appointment (benefits-eligible position) and is renewable annually. Employment is considered to be at-will and may be terminated at any time, without cause. Tenure or credit toward tenure does not apply with this title. This title would begin after the 5-year academic temporary appointment has expired. This title would then be eligible for the appointment type of Limited Appointment.

## 1B.05   MINIMUM FACULTY QUALIFICATIONS (FSB 15001 approved by Interim President 12/09/2015)

Institutions accredited by the Higher Learning Commission identify qualified faculty members primarily by degree credentials appropriate to the academic discipline and level of the courses

taught. In instances where the normally-expected degree is not held, faculty employment can also be based on equivalent experience.

Each full-time faculty member's qualifications, whether by degree credentials or by equivalent experience, shall be established and documented at the time of initial hire. The evaluation of these qualifications shall be completed by the Search Committee at the time of hire. If no Search Committee is convened, the hiring department chair or dean shall evaluate the faculty member's qualifications.

Each part-time faculty member's qualifications, whether by degree credentials or by equivalent experience, shall be established and documented at the time of initial hire. The evaluation of these qualifications shall be completed by the Search Committee if any is convened. If no Search Committee is convened, the hiring department chair or dean shall evaluate the faculty member's qualifications. Qualifications for part-time faculty must be re-established after a lapse of employment of more than 5 years. Any part-time faculty member who receives a teaching assignment requiring substantively different qualifications will have their qualifications re-evaluated by the appropriate department chair or dean at the time of said teaching assignment.

To be qualified on the basis of credentials, instructors (excluding for this requirements teaching assistants enrolled in a graduate program and supervised by faculty) must possess an academic degree relevant to what they are teaching and at least 1 level above the level at which they teach, except in programs for terminal degrees, where they must possess the same level of degree:

- Undergraduate level: A master's degree or higher in the discipline or subfield of the courses taught OR a master's degree or higher in a different discipline or subfield plus a minimum of 18 graduate credit hours in the discipline or subfield of the courses taught.

- Graduate level: The terminal degree determined by the discipline and a record of research and scholarship appropriate for the graduate program.

- Doctoral level: The terminal degree determined by the discipline and a record of recognized research and scholarship commensurate with doctoral expectations.

Teaching qualifications – when established by equivalent experience – are determined by disciplinary standards and faculty members within the discipline or department. Thus, department chairs and deans, when evaluating faculty qualifications–especially for part-time faculty–should consult appropriate faculty in the discipline and/or department.

To be qualified on the basis of equivalent experience, instructors must have a documented record of discipline-related practice at a level that ensures mastery of the content of the courses taught and ongoing currency in the field. A determination of qualification by equivalent experience must be supported by evidence, which may include:

- Professional licensure or certification
- Documented excellence in professional practice
- Honors, awards, or special recognition
- Research and publications

**1B.06   GRADUATE FACULTY** (returned to original version 7/09/04; revised 02/09)

**1B.0601 Graduate Faculty** (updated 9/2010; revised by Graduate Council 2/17/2011; approved by Provost 3/11/2011; updated 10/2/2013) FSB 20012 approved by President 5/21/2021.

Full-time faculty as well as adjunct, part-time and emeritus faculty with appropriate credentials at Emporia State University are eligible to instruct graduate courses, to supervise graduate teaching and research, and to direct graduate research, projects, theses, and dissertations.

In considering who will serve these roles within a department, the department faculty should consider the following:

- Faculty's degrees, additional education, and equivalent experience
- Faculty's academic rank
- Faculty's record of graduate engagement, generally in graduate teaching or advising
- Faculty's record of research or creative activity
- Faculty's record of professional service
- Faculty's availability for the role being considered.

**1B.07   ACADEMIC FREEDOM** (FSR 02007 approved by the President 3/25/03)

Emporia State University believes the policies and guidelines developed by the American Association of University Professors, in its *1940 Statement of Principles on Academic Freedom and Faculty Tenure with 1970 Interpretive Comments*, are reasonable and prudent. The University endorses them insofar as they are compatible with the laws of the state of Kansas and the policies of the Kansas Board of Regents in decisions and actions that are pertinent.

**1B.08   FACULTY PERFORMANCE AND RECOGNITION**

**1B.0801   Notification of Faculty Performance and Recognition Policies** (FSB 14108 approved by President 5/01/2015; FSB 18014 approved by President 4/12/2019)

At the time of initial employment (i.e., within 2 weeks of assuming duties), each faculty member who is hired on either a tenure track or a continuous non-tenure track basis shall receive an up- to-date electronic or paper copy of the department's Faculty Recognition Committee document, which explains the policies of the department, school or college (if applicable), and the university regarding faculty evaluation, including retention, promotion, tenure, chronic low performance and corrective faculty development, post tenure review, sabbatical leave, and other policies. Faculty Recognition Committee

At every level in the recognition process a faculty member may withdraw a request for recognition. Such a withdrawal must be in written form.

**1B.0803 Annual Faculty Evaluation** (BOR approved 12/15/94; 3/16/95; FSB 08020 passed by Faculty Senate 4/21/09; approved by President 4/24/09)

It is the Board of Regents policy that the performance of every faculty member is evaluated and that merit increases are based on the annual evaluation of each faculty member's performance. At ESU this process is participatory, cooperative, continuing and meets the following objectives:

1. To recognize that the education of students is the highest priority of ESU. The education of students occurs in a variety of ways and venues, including the classroom, research laboratories, and libraries. Consequently, individual faculty or units may vary their emphasis on instruction, scholarly activity, and service. Annual evaluations reflect individual faculty assignments.

2. To involve faculty in the design and evaluation of expectations central to their performance and professional growth.

3. To provide a documented record of faculty performance to support such personnel decisions.

4. To recognize special talents, capabilities, and achievements of faculty members.

5. To develop strategies to link evaluation and its outcomes to assistance and support for growth and development.

Annual faculty evaluations must include but are not limited to: an anonymous rating by students at least once per semester on an instrument that is controlled for initial student bias and other major sources of bias. The instrument measuring student ratings of instruction solicit, at a minimum, students' perspectives on (a) the delivery of instruction, (b) the assessment of learning, (c) the availability of the faculty member to the students, and (d) whether the goals and objectives of the course were met. Printed directions on the rating scale indicate that the information will be used by the faculty member to improve their instruction. Student evaluations of faculty are intended primarily for the faculty members as a means of improving instruction. They are considered only one of a number of factors in the overall evaluation of the faculty.

The department, school or college, and University will use the information to enhance teaching effectiveness. The evaluation instrument is distributed to the classes of the faculty member. Once collected, the instruments are sealed and stored in an appropriate office and not examined by the instructor of record until after grades are reported. After grades are reported, the faculty member and the department chair jointly examine and discuss the

is responsible for initiating the process in the units in the school/college and for ascertaining that all evaluations are conducted appropriately.

5. Summaries of the findings of the evaluation shall be distributed to (a) the chair being evaluated, (b) the appropriate dean, (c) the Provost and Vice President for Academic Affairs, and (d) the President. Access to the evaluation results of the departmental chairs by parties other than those mentioned above is regulated by KAR 1-13-1a(a)(2); 1-13-1b.

6. The chair shall be given a copy of the summary before it is finalized and have the prerogative of submitting a written comment which shall become a part of the summary.

7. Information from the evaluation will be considered in the overall assessment of performance and shall figure in the determination of continuance in the role of chair.

### 1B.0805   Policies and Procedures for Tenure

#### 1B.0805.01   Board of Regents Policy for Tenure (revised 2/05)

1. After the expiration of a probationary period, teachers or instructors should have permanent or continuous tenure, and their services should be terminated only for adequate cause, except in the case of program or unit discontinuance or under extraordinary circumstances because of financial exigency. (2/19/97)

2. In the interpretation of the principles contained in paragraph 1 of this policy, the following is applicable:

   a. The precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated.

   b. Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period should not exceed 7 years, including within this period full-time service in all institutions of higher education; but subject to the proviso that when, after a term of probationary service of more than 3 years in one or more institutions, a teacher is called to another institution it may be agreed in writing that their new appointment is for a probationary period of not more than 4 years, even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of 7 years; except when the interests of both parties may best be served by mutual agreement at the time of initial employment, institutions may agree to allow for more than 4 years of probationary service at the employing institution provided the probationary period at that institution does not exceed 7 years. Notices should be given at least 1 year prior to the expiration of the probationary period if the teacher is not to be continued in service after the expiration of that period. Under unexpected special and extenuating circumstances, prior to the 6th year of service, and at the request of the faculty member and the appropriate dean, the Chief Academic Officer of the University may grant an extension of the tenure clock for a maximum of 1 year. (9-18-97)

     c.  During the probationary period a teacher should have the academic freedom that all other members of the faculty have.

     d.  Termination for cause of a continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment, shall, if possible, be considered by a faculty committee which will make recommendations to the administration. In all cases where the facts are in dispute, the accused teacher shall be informed before the hearing in writing of the charges against them and should have the opportunity to be heard in their own defense by all bodies that pass judgment upon their case. They may have with them an advisor of their own choosing who may act as counsel. There shall be a full stenographic record of the hearing available to the parties concerned. In the hearing of charges of incompetence, the testimony should include that of teachers and other scholars, either from their own or from other institutions. Teachers on continuous appointment who are dismissed for reasons not involving moral turpitude shall receive their salaries for at least a year from the date of notification of dismissal whether or not they are continued in their duties at the institution.

     e.  Termination of a continuous appointment because of financial exigency should be demonstrably bona fide.

3.  Within this general policy, each Regents institution may make such operating regulations as it deems necessary, subject to the approval of the Board.

4.  Any tenure approved by the institution shall be limited to tenure for the recommended individual at the institution consistent with the tenure policies of that institution. (Effective 11/14/2002)

5.  In exceptional cases, the chief executive officer at a Regents institution may hire a faculty member with tenure without their having completed a probationary period. (6- 29-99)

6.  Decisions of the chief executive officer shall be final and are not subject to further administrative review by any officer or committee of the institution or by the Board of Regents. (4-18-47; 2-15-80; 5-15-81; 4-16-82; 1-20-84; 2-16-89; 6-29-95)

**1B.0805.02 University Policies and Procedures for Tenure** (FSB 80004 approved by President12/9/80; FSB 88001 approved by President 10/28/88; FSB 05007 approved by President 5/3/06; FSB 07003 approved by President 2/4/08; FSB 19001 approved by President10/15/2019)

Emporia State University shall award permanent status to faculty members who have been judged, on the basis of academic credentials and systematic annual evaluation as stipulated in this document, worthy of continuous appointment.

<u>Policies for Tenure</u>

To be eligible for tenure a faculty member shall fulfill all the requirements set forth in the sections below:

1.  Degree Requirement

The terminal degree or professional certification deemed appropriate by the discipline is the expectation.

2. Professional Expectations

   Expectations for the granting of tenure shall embrace excellence in the areas of teaching, scholarly/creative activity, and service to the University and profession. Such excellence must be demonstratively evident and offered as such by the candidate for tenure.

3. Probationary Period
   a. Probation is a period of annual contract renewal preceding the granting of tenure. The probationary faculty member shall be given every opportunity to demonstrate their suitability for tenure, and shall be judged by the most objective academic standards and processes.

   b. The academic year will be considered the minimal basis for determining a probationary year.

   c. All faculty shall serve a probationary period of 6 years of full-time employment. Normally, this period will consist of 6 regular annual academic year appointments at the rank of assistant professor or higher, plus reappointment for the 7th year.

   In accordance with BOR policy, if an untenured faculty member becomes a parent through birth, adoptive placement, or adoption of a child under the age of 5 prior to May 1st of the fifth year of the probationary period, that faculty member, upon notification to the Vice President for Academic Affairs, shall be granted a one-year delay of the tenure review. Notification must occur within 90 days of the birth, adoptive placement, or adoption. Faculty members retain the right to opt out of this interruption policy.

   Under unexpected special and extenuating circumstances, prior to the sixth year of service, the Vice President for Academic Affairs may grant an extension of the tenure clock for a maximum of one year. Such request shall be routed through the appropriate department chair and dean.

   No more than two extensions of the tenure clock may be granted to a faculty member for any reason. Nothing in this provision shall be construed to guarantee reappointment of an untenured faculty member.

   Systematic evaluations, as set forth later in this document, are conducted each year. The decision to award tenure shall be made during the 6th year of service. In cases where tenure is denied, the 7th year of service is the terminal year of appointment.

   d. Tenure is not granted at the rank of instructor or lecturer or for a temporary or part-time position. Regular annual appointments at the rank of instructor do count, upon promotion, toward meeting the probationary requirements of a higher rank. Service in a part-time position does not count toward the probationary period.

e.  Faculty coming to ESU with prior service at other accredited institutions of higher education at ranks earning tenure at ESU may have some or all of these years of service count toward the probationary period. For persons employed at the rank of assistant professor, no more than 3 years of prior service at another institution may count toward the probationary period. For persons employed at the rank of associate professor, not more than 4 years of service may be counted. For persons employed at the rank of professor, no more than 5 years of service may be counted.

f.  No later than February 1 of each year, the department chair is responsible for informing, in writing, each faculty member of their development, their fitness for their position, and their prospects for attaining tenure.

g.  No later than the 6th year of the probationary period, the department chair shall notify the faculty member in writing either that they will not be recommended for tenure, but that they will be recommended for a 1 year terminal appointment, or that they will be immediately recommended for tenure.

4.  A leave without pay for 1 year will not be regarded as a break in continuous service provided such leave has been taken with prior approval by the President.

5.  Statement of Exception: The minimal expectation for the granting of tenure emphasizes the need for excellence in the areas of teaching, scholarly/creative activity, and service.

To this expectation, there can be no exception. Granting of exception to other eligibility requirements set forth in this document may be made only if the candidate exhibits extraordinary merit, demonstratively beyond the rule of excellence.

Procedures for Granting Tenure

1.  Prior to October 15 of each fall semester, each department shall establish a committee to evaluate candidates who have been identified by the department chair as candidates for tenure. At its discretion a department may utilize a committee already established for matters of faculty recognition (i.e., promotion, merit pay, sabbatical leave) provided that such committee is composed of 3 or more full-time department faculty members. Academic units with multiple departments/divisions may establish one committee that has representation from each department/division (hereinafter "multi-department committee"). A multi-department committee may serve in lieu of a department committee or, at the option of the voting faculty of the academic unit, may review the department committee recommendations on tenure applications.  Subsequent provisions of this policy setting forth the procedures for and obligations of a "department committee" or "committee" shall be interpreted as including any multi-department committee. If the department chooses to establish a specific committee for tenure review, such committee shall be composed of 3 or more full-time department faculty. Whichever the case, the committee utilized shall be formed by democratic procedures. It shall be the responsibility of the committee to make advisory

recommendations, concerning tenure, to the department chair. If a department chair is seeking tenure the recommendations are submitted to the appropriate school/college dean.

2. The committee shall base its recommendation on systematic evaluation of the candidate in the areas of teaching, scholarly/creative activity and service. In addition, the systematic evaluation of the candidate (by the Faculty Recognition Committee and at each additional university level of review) must be aligned with and not violate the terms and conditions of the appointment. The Faculty Recognition Committee document for the department in place at the beginning of faculty employment will be used for tenure and/or first promotion. If a different Faculty Recognition Committee document goes through the approval process and has received final approval by the Chief Academic Officer before tenure and/or first promotion, the faculty member shall have the right to choose which document will be used. The chair of the department will ensure that each newly hired tenure track faculty member will receive the departmental Faculty Recognition Committee document within two weeks of employment.

3. It shall be the responsibility of the candidate to supply the committee with supporting documentation in each of these areas.

   a. Supporting evidence in the area of teaching may include, but need not to be limited to, self-evaluation, student evaluations, chair evaluations, reports of peer visits and evaluations, and examples of teaching techniques (i.e., tests, syllabi, assignments).

   b. Supporting evidence in the area of scholarly/creative activity shall include, but may not be limited to, publications relevant to the candidate's discipline, performance or exhibitions, copies of papers presented, reports of research in progress, reports of grants and fellowships, and reports of supervised student research.

   c. Supporting evidence in the area of service shall include, but need not be limited to, service on academic committees (department, school/college, and University), service to student organizations, recruitment activity, work as a consultant, and service to the profession or community.

   d. Supporting evidence specifically relevant to each discipline may be requested and/or submitted.

4. The committee recommendation shall be viewed by the department chair. The chair shall notify the candidate in writing of both the committee's and their recommendations no less than 3 working days prior to the deadline set by the dean. The chair also has the responsibility to inform the committee of their recommendation. Before forwarding recommendations, the chair shall give the candidate an opportunity to meet with the committee and/or the chair to resolve any dissatisfaction the candidate may have. After such a meeting, the candidate may request in writing that their candidacy not proceed further.

Such a request shall be honored. If the candidate chooses to proceed with their candidacy, the chair shall keep the committee informed of the response of the dean and the Vice President for Academic Affairs.

5. If a chair is being reviewed by the department committee their recommendation is submitted to the appropriate school/college dean. The dean shall notify the candidate in writing of both the committee's and their recommendations no less than 3 working days prior to the deadline set by the dean. The dean also has the responsibility to inform the committee of their recommendation. Before forwarding recommendations, the dean shall give the candidate an opportunity to meet with the committee and/or the dean to resolve any dissatisfaction the candidate may have. After such a meeting, the candidate may request in writing that their candidacy not proceed further. Such a request shall be honored. If the candidate chooses to proceed with their candidacy, the dean shall keep the tenure committee informed of the response of the Vice President for Academic Affairs.

6. The dean of the school/college shall review the recommendations and inform the candidate in writing of their recommendation no less than 3 working days prior to the deadline set by the Vice President for Academic Affairs. The candidate may request in writing that their candidacy not proceed further. Such a request shall be honored. If no such request from the candidate is forthcoming, the dean shall forward their and all previous recommendations to the Vice President for Academic Affairs.

7. Recommendations concerning the tenure of probationary faculty members will be made to the President by the Vice President for Academic Affairs on recommendations of the dean and of the department, as described in earlier parts of these policies, and in the manner so described.

8. The Vice President for Academic Affairs shall review the recommendations and inform the candidate in writing of their recommendation before forwarding their recommendation and all previous recommendations to the President of the University.

9. The President of the University shall make the final decision on a tenure recommendation. If their decision is affirmative, they shall notify the Kansas Board of Regents that tenure be granted.

10. The University's policies and procedures for tenure and reappointment during the probationary period affirm any and all due process rights whether or not such rights are expressly stated.

**1B.0805.03 Reappointment during the Probationary Period** (FSB 75001 approved by President 3/3/76)

The following procedures pertain to relations with individual faculty members during the probationary period and at the time recommendations and decisions are made regarding renewal of term appointments leading to the granting of tenure. These procedures do not apply to special appointments, those clearly designated in writing at the outset as involving only a brief association with the institution for a fixed period of time.

Criteria and Notice of Standards

Faculty members shall be advised, early in their appointments, of the substantive and procedural standards generally employed in decisions affecting reappointment and tenure. Any special standards adopted by a department or school/college shall also be brought to their attention.

Opportunity to Submit Material

A faculty member shall be advised of time when decisions affecting reappointment and tenure are made, and they shall be given the opportunity to submit material which they believes will be helpful to an adequate consideration of their circumstances should such be necessary.

Notice of Nonrenewal

In the event of a recommendation or decision not to renew the appointment, the faculty member shall be so informed in writing, and if requested, shall be advised of the reasons. They shall also have the opportunity to request a reconsideration of the action.

Petition for Review Alleging Inadequate Consideration

The faculty member not being reappointed may expect that any review of their situation, whether through usual grievance procedures or otherwise, shall accomplish the following:

1. Determine whether the decision of the appropriate faculty body was the result of adequate consideration. The term adequate consideration refers essentially to procedural rather than substantive issues. The conscientious judgment of the faculty member's departmental colleagues must be respected if the invaluable tradition of departmental autonomy in professional judgments is to prevail. The committee should not ordinarily substitute its judgment for that emanating from the faculty process.

2. Request reconsideration when the committee believes that adequate consideration was not given. The committee should indicate the respects in which it believes the consideration may have been inadequate.

3. Provide copies of its report and recommendations to the faculty member, the President or other appropriate administrative officers, and others concerned.

Petition for Review Alleging an Academic Freedom Violation

If the faculty member alleges that considerations violative of academic freedom significantly contributed to a decision or recommendation not to reappoint, they should pursue the usual grievance procedures of the University.

<u>Non-Reappointment during Probationary Period</u>

Notice of non-reappointment, or of intention not to recommend reappointment to the governing board, should be given in writing in accordance with the notice of non-reappointment standards.

## 1B.0806   Policies and Procedures for Promotion

### 1B.0806.01 Distribution of Promotion Policies and Procedures to Faculty
All new faculty members employed at Emporia State University shall receive a copy of promotion policies and procedures within 2 weeks of assuming their duties. Criteria are also established by each department/unit.

### 1B.0806.02 University Criteria for Promotion (FSB 82004 approved by President 5/23/85)

Promotion in rank is not a matter of routine, seniority, or time in rank. Rather, it is the recognition of the cumulative professional record of a faculty member as well as their potential for continued growth and contribution. Promotion to the next rank shall be by merit as determined in accordance with the criteria which are presented below.

<u>Assistant Professor</u>

1.  Time in Rank: Five years in rank will be regarded as the normal time necessary before an Instructor becomes eligible for promotion to Assistant Professor. At the end of 5 years of professional experience in higher education, promotion will be recommended only on the basis of documented meritorious performance.

2.  Degree Requirement: The terminal degree/certification deemed appropriate by the discipline is the minimum expectation for this rank.

3.  Exceptions to Above: Early promotions, or promotion in the absence of an appropriate terminal degree, will be considered only when there is acceptable evidence of truly exceptional contributions in teaching, scholarly and/or creative achievements, University service or professional service.

4.  Other Criteria: Evaluation for promotion to an assistant professor shall emphasize dedication to and ability for teaching. In addition, the faculty member shall have a scholarly knowledge of disciplines relative to their academic responsibilities and a developing mastery of relevant skills. The candidate shall also show a clear potential for continued professional growth, for making scholarly as well as creative

faculty member may reject an approved plan recommended to aid performance levels, but the faculty member must understand that a sustained overall failure in their professional responsibilities is a basis for dismissal.

VI.    Recommendation for Dismissal

If the chair and either the departmental Evaluation Committee or the school/college/library Performance Review Committee determine that there has been a sustained overall failure in teaching and either scholarly activity or service (i.e., failing in teaching and at least one other area), in 3 consecutive years or 4 out of 6 years, the department chair may recommend to the dean that a tenured faculty member be dismissed, provided the faculty member has had the opportunity for corrective faculty development for the commensurate amount of time (i.e., for 3 consecutive years or 4 out of 6 years). The dean may forward such recommendation to the Vice President for Academic Affairs. In making this determination, the department chair must state the nature of the failure, the reasons for this failure, the number of years that the faculty member has failed, the level of discernible improvement in the faculty member's performance after being notified of any failure in performance, and the extent to which the faculty member has complied with the terms of an approved plan developed to improve the faculty member's performance. If the Vice President for Academic Affairs, upon reviewing the recommendations, agrees with these recommendations, they may recommend to the President that the faculty member be dismissed. If the President agrees and wishes to recommend dismissal, the faculty member may proceed to the dismissal policy.

Should any recommendation to dismiss be brought against a tenured faculty member based on grounds of sustained failure, the reports of the Evaluation Committee(s), Performance Review Committee(s), the annual written evaluations concerning the faculty member, any outside evaluations, and any written response by the faculty member to the charges shall be made available to the faculty committee charged with hearing the dismissal case and any subsequent dismissal or grievance committee.

The finding of failure must neither abuse academic freedom nor be used as a cover for discriminatory, unfair, arbitrary, or capricious dismissal. If a dismissal or grievance committee concludes that such factors were considered in formulating the recommendation to dismiss, the committee shall recommend to the President that the proceeding to dismiss be terminated.

**1B.0906    PROCEDURE FOR FACULTY REVIEW PRIOR TO DISMISSAL FOR CAUSE OF TENURED FACULTY** (FSB 04001 approved by President 11/04/04; FSB 14020 approved by President 5/15/2015; approved as interim policy by President 8/10/20, pursuant to Faculty Senate Bylaws 3AF.02)

A.    Charge

When termination of a tenured member of the faculty is under consideration, a faculty Committee to Hear a Case Regarding the Dismissal for Cause of a Tenured Faculty Member, hereafter referred to as the committee, is established according to the Regents' policy incorporating the 1940 AAUP Statement of Principles of Academic Freedom and Tenure. The formal procedure is commenced by communication to the faculty member by the vice president for academic affairs (VPAA) that termination is under consideration. The VPAA will also inform the faculty member that a hearing will be conducted by the committee, unless the faculty member rejects such a review within ten class days after receiving the statement from the VPAA. The committee shall be constituted and convened by the process indicated below; it represents an independent peer review of the faculty member's case. The charge of the committee shall be to receive evidence at the hearing, to make written findings to fact, and to recommend to the president of the University action concerning the proposed dismissal.

B.   Jurisdiction

The jurisdiction of the committee shall extend to cases involving adequate cause for dismissal of faculty. Adequate causes for dismissal are limited to:

1.   actions that would result in a general condemnation of the faculty member by the U.S. academic community, or

2.   abandonment or substantial and manifest neglect of professional or academic responsibilities, or

3.   chronic low performance as defined in the University Policy Manual, or

4.   causes prescribed by the Kansas Board of Regents.

Adequate cause for dismissal shall be directly and substantially related to the fitness of a faculty member in his or her professional capacity as a teacher or scholar. Dismissal shall not be used to restrain a faculty member in his or her exercise of academic freedom or other rights of American citizens. The jurisdiction of the committee would not extend to financial exigency or program discontinuance unless recommended by a grievance panel.

C.   Composition and Eligibility

The committee shall be composed of six tenured full-time faculty members, none of whom shall be administrators or faculty with administrative responsibilities (e.g., deans, associate deans, department chairs). One of the six shall serve as the non-voting chair. Faculty of the department in which the faculty member holds an appointment shall not be eligible.

D. Nature of Hearing

> The hearing shall be open, unless the faculty member requests it to be closed;
> however, deliberations of the committee shall be conducted in closed session.

E. Rights of Participants

The effective and equitable discharge of the responsibilities of the committee require
the following guidelines to safeguard the rights of principals and committee members
and to preserve the autonomy of the process:

1. The charge of the committee and its procedures as defined by action of the Faculty
Senate shall not be abridged in any way. Proposed changes in procedures shall require
a review of the Faculty Affairs Committee and approval of the Faculty Senate. The
committee shall have the right to adopt necessary operational procedures which are not
inconsistent with these procedures.

2. The University shall arrange for an outside attorney (which might be an attorney
from another Regents' university) to advise the committee as required. Expenses
incurred by the committee for the hearing shall be borne by the University.

3. The VPAA will inform the appropriate dean and department chair of each
committee member's responsibility for the task of the committee. The VPAA shall
confer with the appropriate dean or department chair to discuss how assigned
responsibilities for each panel member will be arranged while the panel member is
involved with the hearing and committee deliberations. This form of University
service must receive positive recognition and shall not jeopardize the faculty
member's yearly evaluation for performance, merit pay increase, or promotion.

4. Rights of the parties to the hearing shall include but are not limited to the
following:

> a. To be represented by an attorney
> b. To present supporting witnesses
> c. To question opposing witnesses
> d. To make closing statements
> e. To receive written findings and recommendations of the committee and written
> notice of the President's decision and a full explanation of the reasons
> f. To obtain and/or examine the record of the proceedings

F. Procedures

1. The hearing procedure shall be initiated by a written request submitted by the
VPAA to the President of the Faculty within 15 class days of the faculty member's
receipt of the statement from the VPAA (i.e., this is only 5 class days beyond the
time for the faculty member to reject a hearing). Within 20 class days from the

receipt of such request, the President of the Faculty shall designate a panel of 13 faculty members, by random selection, from a list of eligible faculty. If this random selection does not include at least one member from each college or school, the last name(s) drawn should be removed and replaced with a randomly selected eligible faculty member from the unrepresented school or college. (Although it is recognized they are from separate entities, eligible faculty from the Library will be combined with the School of Library and Information Management in this selection process.) Within 10 class days from the designation of the panel, the President of the Faculty shall call the administration and the faculty member, and/or their respective representatives, together for the purpose of selecting the hearing committee. From the list of 13 names, each party shall remove 3 names, one at a time, in alternating sequence, with the administration striking the first name. From the remaining 7 names, 6 shall be selected by lot; the 7th shall serve as an alternate. Within 5 class days after the committee has been named, the President of the Faculty shall convene the committee and the members shall select one member as the nonvoting chair. Within 2 class days after the selection of the chair, the VPAA shall submit to the chair, a statement of the specific grounds for the dismissal.

2. Within 5 class days from the selection of the chair, the chair shall provide to each party:

       a. a copy of the specific grounds for the dismissal,
       b. a list of the membership of the committee,
       c. a notification of the date, time, and place of the pre-hearing conference.

3. At the pre-hearing conference each party shall provide a list of proposed witnesses to be called and a list of documents to be introduced, with copies available to the other party. The date, time, and place of the hearing shall be determined by the chair and both parties shall be so notified. The hearing shall begin not less than 10, no more than 20, class days after the pre-hearing conference. In a period of time not to exceed 5 class days following the pre-hearing conference, both parties, or their respective representatives, shall confer and assemble a common set of documents, consecutively numbered and with duplications eliminated. An attorney for each party and for the committee may be present at the pre- hearing conference.

4. At the hearing, each party may be accompanied by (1) a representative, who is not an attorney, to serve as an advocate and/or assist in the presentation of evidence, and (2) an attorney who may advise and participate in the proceedings. Both parties, or their representatives, must be present.

5. The chair shall call the hearing to order, summarize the case, establish the order of business, and review the rules. Since the hearing is conducted by peers, the

committee shall not be bound by strict rules of legal evidence; it may admit any evidence it deems to be of value and may exclude evidence judged not pertinent to the case. If the hearing is open, the chair shall have the right to limit the number of observers. Observers shall not participate in any of the proceedings. Witnesses shall be excluded from the hearing room until they testify. Photographs of the hearing room and the participants shall be allowed only when the committee is not in formal session.

a. The administration and the faculty member, in that order, shall make an opening statement and present evidence, which may include testimony by supporting witnesses.

b. The administration and the faculty member shall have the opportunity to question the witnesses and/or present rebuttal.

c. Members of the committee may question the parties and/or witnesses.

d. The parties may be recognized by the chair for the purpose of objecting to any testimony or question on the grounds that it is not pertinent to the case. The chair shall rule on each objection; the chair may consult with the committee and/or its attorney.

e. The administration and the faculty member, in that order, shall be given the opportunity to make closing statements.

f. The administration bears the burden of proof by presenting clear and convincing evidence of the justification for dismissal, unless the justification is the violation of the University Title IX policy.  In that event, the applicable burden of proof is a preponderance of evidence.

6. The chair, may on request of any member of the committee or either party, continue the hearing to a specified date, time, and place. The chair, after consultation with members of the committee, may request the production of additional information and/or invite other witnesses to provide testimony pertinent to the case. Reasonable expenses for outside witnesses, invited by the chair, shall be borne by the University.

7. A sound recording of the hearing shall be available to the parties concerned. A written record shall be made of the hearing. An official copy of the record and supporting documents shall be kept in confidential files in the Office of the President of the University for a period of at least 3 years following these proceedings and may be examined only with the approval of the faculty member, except in the case of a closed hearing for which consent of both parties shall be required. With the consent of both parties a videotape recording shall be made, at the expense of the requesting party.

8. The decision of the committee shall be based upon only testimony and evidence presented at the hearing. The report of the committee shall provide findings of fact regarding the evidence and shall recommend action concerning the proposed dismissal. Its content shall reflect a majority vote of total committee membership. A minority report may be appended.

### G. Reports

The decisions of the committee and the President of the University shall be communicated in the following manner: In the case of either an open or a closed hearing, within 20 calendar days from the conclusion of the hearing, the chair shall send the report to the President of the University and to the faculty member; a copy shall be sent to the President of the Faculty, unless the faculty member requests otherwise, in which case only written notice the committee has submitted its report will be sent to the President of the Faculty. Within 20 calendar days from the receipt of the report, the President of the University shall send a written notice of their decision and a full explanation of the reasons to the faculty member; a copy shall be sent to the President of the Faculty, unless the faculty member requests otherwise, in which case only written notice that a decision has been rendered shall be sent to the President of the Faculty. The President of the Faculty shall announce the information received at its next meeting of the Faculty Senate.

### H. Class and Calendar Days Defined

As indicated by the academic calendar established by the University, class days include all days that classes are conducted, excluding legal holidays, vacation periods, the period of final examinations, and intersessions; in addition, for the purpose of this policy, summer sessions are also excluded. However, calendar days include any day on an annual calendar excluding days the University is officially closed (e.g., legal holidays); calendar days are used exclusively in the reports section to expedite the conclusion of this process.

## 1B.10   IMPLEMENTATION OF THE KANSAS BOARD OF REGENTS' POLICY ON SOCIAL MEDIA (FSB 14011 approved by President 4/17/2015)

Before any faculty or non-student staff member of the university can be subject to disciplinary action (e.g., suspended without pay or terminated for cause) by the University President of the University President's delegate for being found to have made any improper use of social media under the Kansas Board of Regents' (KBOR) Social Media Policy, it must first be determined that such action is consistent with the First Amendment of the University States Constitution and with principles of academic freedom. This determination is to be made by the University

The percentage of an employee's work time reduction during a furlough shall be matched by an equivalent reduction of the employee's performance expectations for faculty recognition considerations.

<u>Exclusions and Special Circumstances</u>

The following categories of employees are excluded from mandatory furloughs: faculty/staff appointed to less than 50% regular positions, student employees, faculty/staff appointed to temporary positions, and faculty/staff with a visa type of H1-B. In addition, a minimum salary tier shall be established and faculty/staff whose annual base salary is within that minimum salary tier shall be excluded from mandatory furloughs.

Faculty/staff who are 100% grant funded are excluded from mandatory furloughs. Faculty/staff who are funded partially by federal grants, contracts or sponsored projects shall be excluded from mandatory furloughs for that portion of their appointment which is not funded by state funds. (Adjustment shall be made to the split-funded individual's payroll distribution for the furlough impact, reducing state funding charges. The percentage level of effort charged against federally funded projects shall be increased to reflect the appropriate relative effort spent on such sponsored activity, in accordance with OMB Circular A-21 principles.)

## 3C.10 FINANCIAL EXIGENCY (approved by BOR 9/21/79; 5/20/83)

1.  Definition

    Financial exigency is the formal recognition by a Regents institution that known reductions in budget or authorized number of positions have required the elimination of nontenured positions and operating expenditures to such a point that further reductions in these categories would seriously distort the academic programs of the institution; hence, further budget or position reductions would require the nonreappointment of tenured members of the faculty or the failure to meet the standards of notice for nonreappointment of faculty. It is not a requirement of financial exigency that all nontenured positions throughout the University be first eliminated.

2.  Procedure

    It shall be the responsibility of the chief executive officer of each Regents institution, in consultation with appropriate campus groups, to develop a plan for reductions in personnel as necessitated by conditions of financial exigency.

    In the event that financial conditions at a Regents institution may warrant the declaration of financial exigency, the chief executive officer shall notify the Board of that fact and shall provide a complete statement of the circumstances that may warrant the declaration of financial exigency. The statement shall also include a review of all reasonable

alternatives to financial exigency. If the Board and the chief executive officers concur as the existence of a financial exigency, it shall be the responsibility of the chief executive officer to so declare.

It shall be the responsibility of the chief executive officer to review the financially exigent condition with the Board at such times and with such frequency as the Board may specify.

### 3C.11 PERSONNEL RETRENCHMENT POLICY (FSB 76008 approved by President 8/30/77; FSB 79003 approved by President 12/5/79; updated 9/2010; FSB 12010 approved by President 4/26/2013)

Decreases in enrollment, budget reductions, and/or a declaration of financial exigency may lead to personnel retrenchment and the elimination of faculty position at the University.

If it is necessary, for the reasons stated above, for Emporia State University to embark upon personnel retrenchment this action shall be in accordance with the criteria and procedures set forth herein.

For the purposes of this policy, personnel retrenchment may include the following actions:

- Lay-offs: Elimination of non-tenured and/or tenured faculty
- Lay-offs: Voluntary early retirement
- Decreased Appointments: Fractional appointments (e.g., half-time or 75% time)

I.   Preliminary Procedures and Policies

A.   In order for personnel retrenchment to include the elimination of tenured positions, a declaration of financial exigency must be declared in accordance with the Financial Exigency Policy found in the University Policy Manual.

B.   In the event of a declaration of financial exigency or other circumstances warranting a personnel retrenchment, it shall be the responsibility of the President, in consultation with the University Personnel Retrenchment Committee, to develop a plan for reductions in personnel.

C.   General Criteria for Personnel Retrenchment Plan

When it is necessary to eliminate positions and thus terminate faculty, the criteria to be considered follow in order or priority:

1.   The ability of the University to accomplish its stated mission and to continue the quality of its mission and services shall be maintained in making any determination regarding the elimination of faculty.

2.      First, unfunded or vacant positions will be eliminated. Second, positions occupied by individuals holding temporary appointments will be eliminated. (For purposes of this policy, tenured faculty members who participate in a phased retirement program are not considered to be holding a temporary appointment.) Next, graduate teaching assistants in unclassified positions will be eliminated.

3.      When personnel retrenchment decisions affect only individuals in academic probationary positions (i.e., tenure-track faculty), because no declaration of financial exigency has been made, the elimination of positions shall be made in accordance with the following considerations, in order of priority:

   a.      competencies, as defined by AAUP and as needed by the department, and the individual's performance evaluation;

   b.      compliance with the affirmative action/equal opportunity policies of the University;

   c.      length of service at ESU.

4.      When retrenchment decisions may affect all faculty, because a declaration of financial exigency has been made, the elimination of positions shall be made in accordance with the following consideration, in order of priority:

   a.      Contingent faculty (i.e., those neither tenured nor in the tenure track) shall be released before tenure-track faculty.

   b.      Tenure-track faculty shall be released before tenured faculty.

   c.      No termination should be made which would prevent any unit of the University from performing the tasks considered essential.

   d.      Terminations should not be based on the decreasing demand for the services of any unit over less than a 3-year historical period.

   e.      Terminations within a given unit should ordinarily be made according to rank, and within rank according to years of service at ESU.

   f.      Termination should comply with the affirmative action/equal opportunity policies of the University.

D.      Consideration of Alternatives to Elimination of Positions

In developing the personnel retrenchment plan, the President shall minimize the number of positions to be eliminated, to the extent possible, by considering other options including, but not limited to, the implementation of one or more of the following:

1.   Voluntary early retirement or phased retirement options may be developed and/or encouraged by the University.

2.   The Deans of the various schools/colleges and other administrative heads may be encouraged to make genuine efforts to transfer tenured faculty members partially or wholly to other positions in which they can perform competently.

3.   Sabbaticals and leave without pay for retraining should be encouraged to develop new competencies even if they cause temporary weakness (e.g., some essential courses may not be offered for a brief time such as a semester or even a year).

II.   The Initial Personnel Retrenchment Plan

A.   The President shall present to the University Personnel Retrenchment Committee their proposed Initial Personnel Retrenchment Plan (Initial Plan) and the criteria and data upon which it is based. Their Initial Plan shall include the following:

1.   The number of faculty positions to be eliminated from each of the academic schools/college;

2.   The timeline to be followed in processing the cutbacks; and

3.   Such other information as is necessary for the Committee to make a responsible review of the Initial Plan to determine whether it conforms with the personnel retrenchment criteria in this document and serves the best interests of the University.

B.   The standards of due notice of non-appointment stated in the University Policy Manual shall not be violated even during periods of declared financial exigency. Any faculty affected by this policy who so desires may avail themselves of the due process procedures of Emporia State University as set forth in the University Policy Manual.

C.   The University Personnel Retrenchment Committee shall submit in writing to the President any recommendations, along with reasons for those recommendations, the committee may have regarding the Initial Plan.

D.   The President shall respond in writing to the University Personnel Retrenchment Committt4e stating their acceptance or rejection of the committee's recommendations and the reasons for this decision.

III.   Development of the Final Personnel Retrenchment Plan

A.    The President shall present to the Provost and vice presidents of the University, as well as the academic deans, the Final Plan and inform them how it would specifically affect their respective colleges, schools, and/or administrative units.

B.    Each dean shall present to their School/College Retrenchment Committee their proposed plan for personnel retrenchment. The dean's strategy shall include the following:

    1.    The number of positions to be eliminated from each of the departments.

    2.    The timeline to be followed in processing the cutbacks; and

    3.    Such other information as is necessary for the committee to make a responsible review of the plan.

    (The Dean of the School of Library and Information Management shall also present a proposed personnel retrenchment strategy except that, inasmuch as the school does not have separate departments, the dean shall work directly with the school's personnel committee.)

C.    Each School/College personnel Retrenchment Committee shall submit in writing to its dean any recommendations, along with reasons for those recommendations, the committee may have regarding its personnel retrenchment plans.

D.    Each dean shall respond in writing to their School/College Personnel Retrenchment Committee's recommendations, stating the reasons for acceptance or rejection of the committee's plan.

E.    Each dean shall announce to the college's department/division chairs the positions to be eliminated in each department/division and the timeline to be followed n processing the cutbacks.

F.    Each department chair shall do the following:

    1. Consult with the faculty in the department/division, or a representative committee thereof, according to the procedures used in making of recommendations for tenure;

    2. Notify in writing each individual involved of the intention to recommend them for termination, and inform them of the right to be heard before the department committee prior to the forwarding of a recommendation to the dean;

    3. Arrange for each faculty member whose position is to be terminated an opportunity to be heard before the department committee if they so requests; and

    4. Finally, send to the dean a written statement of the department's recommendations, setting forth both the names of those individuals involved and the reasons pertaining to each recommendation.

    5. A department may propose a plan for fractional appointments and/or voluntary leave without pay as an alternative to the release of any faculty member. Such a plan may be recommended to the President of the University only if all faculty members in the unit who are to participate have agreed to do so. Faculty members who accept a fractional appointment in the event of retrenchment shall retain their full benefits, such as insurance and retirement benefits, and privileges as if they were full-time faculty members.

G.    Each dean shall do the following:

    1. Consult with the School/College Personnel Retrenchment Committee regarding the recommendations of the departments;

    2. Make such revisions in the school/college's personnel retrenchment plan as may be necessary;

    3. Provide each faculty member whose position is to be terminated an opportunity to have their case reviewed by the School/College Personnel Retrenchment Committee; and

    4. Submit their personnel retrenchment plan to the President of the University.

H.    The President shall consult with the University Personnel Retrenchment Committee, review with the Committee the plans of the various schools/colleges, and solicit the Committee's comments and criticisms. The President shall then prepare the Final Personnel Retrenchment Strategic Plan in its final form. The University Personnel Retrenchment Committee shall be given the opportunity to state in writing if it differs with the President's Retrenchment Strategic Plan in any substantial way and the reasons for its disagreement.

I.    Any individual affected by modifications in any committee's proposed personnel retrenchment plan has the same right to review at the proper level as those individuals who were affected by recommendations before modifications were made.

J.    The President of the University shall respond in writing to the University Personnel Retrenchment Committee regarding its recommendations.

K.    The President of the University shall formally announce to the Faculty Senate the Final Personnel Retrenchment Strategic Plan of the University and shall proceed

to implement the program in accordance with the Personnel Retrenchment Policy and Procedures founds in the University Policy Manual and other relevant operating procedures of the University.

IV.    Retrenchment Committees

A.    The University Retrenchment Committee. This committee shall have the following membership:

1.    The members of the Executive Committee of the Faculty Senate, excluding the President of the University, and any non-faculty employees, shall be members. (The designation of the Executive Committee is only for the purpose of establishing the membership of the University Personnel Retrenchment Committee. The actions of the Personnel Retrenchment Committee shall not be considered actions of the Faculty Senate.)

2.    The Affirmative Action Officer of the University shall be a member.

3.    In addition to the Executive Committee, one elected representative from each of the following, the School of Business; the School of Library and Information Management; the Teachers College; the University Libraries and Archives; and the College of Liberal Arts and Sciences, shall be members.

4.    When the committee is considering actions relating to the potential personnel retrenchment of non-tenured personnel, at least 1 non-tenured, tenure-track faculty shall be a member.

B.    The School/College Personnel Retrenchment Committee(s). The Schools of Business and Library and Information Management; The Teachers College, the University Libraries and Archives, and the College of Liberal Arts and Sciences each shall select a committee of its faculty by a procedure adopted by its faculty. The following stipulations shall apply to the selection procedure:

1.    The dean and associate dean of the school/college and department chairs shall not be a member.

2.    A representative of the Affirmative Action Officer of the University shall be a member.

3.    When the committee is considering action relating to the potential personnel retrenchment of non-tenured, tenure-track faculty, at least 1 non-tenured person shall be a member.

V.     Recall Procedures

Positions added to the University after a period of retrenchment are to be assigned to units on the same basis as other new positions, with the following exceptions:

A.  Special consideration will be given to units which have released tenured faculty members or have adopted a substitute plan to reduce positions by fractional appointments.

B.  The University should make "every effort" to find another suitable position within the institution for the affected faculty member. The position of a tenured affected faculty member "will not be filled by a replacement within a period of 3 years, unless the released faculty member has been offered reinstatement and a reasonable time in which to accept or decline it.

C.  After 3 years, but if within 5 years after termination of tenured faculty an academic unit is granted permission to recruit to fill a new or vacated position, and before the position is advertised, the Provost shall formally invite all former tenured faculty members to apply for the position. Former faculty members who held tenure shall be offered such positions, when qualified. A reasonable time (at least 30 days, but not to exceed 60 days) shall be given in which they may accept or decline the position. It is the faculty member's responsibility to keep the University informed of current contact information in order to receive an invitation to apply.

D.  If an academic unit is reallocated a position after a period of personnel retrenchment and there are no qualified tenured faculty members whom have been released from that unit because of personnel retrenchment, then non-tenured, tenure-track faculty shall have reinstatement rights. If, upon notification, such an individual applies for the reallocated position, and the unit recommends that person for reappointment, the individual shall be offered the position and given up to 2 additional years in building toward tenure if requested by the faculty member. It is the faculty member's responsibility to keep the University informed of current contact information.

E.  Faculty shall be reinstated at their former rank and tenure status and at a salary no less than the existing salary at the time of personnel retrenchment unless salary reductions were implemented across the University.

## 3C.12 TIES BETWEEN CLASSIFIED SERVICE AND UNIVERSITY SUPPORT STAFF (approved by President 11/2013; approved Board of Regents 1/2014)

### 4O.04   GENERAL EDUCATION (FSR 106 approved 3/21/72; FSB 96004 approved by President 4/16/97; FSB 03003 approved by President 3/30/04; revised 4/10/2015; approved by COCG 1/30/2018)

The General Education Council is charged with the responsibility of formulating and continually reviewing all policies, procedures, and curricula pertaining to the general education program of Emporia State University. Any change in the general education program of the University must be approved by the General Education Council. However, if warranted, the Faculty Senate has the right to consider and override decisions made by the General Education Council.

The Faculty Senate designates the General Education Council as the faculty body responsible for advising the administration concerning policy and procedures affecting the university-wide competency examination requirements.

The General Education Council may direct the Institutional Effectiveness office, or other appropriate agencies, to evaluate the reliability and validity of tests.

The General Education Council designates minimum performance levels.

The General Education Council may establish course performance levels as equivalencies.

The General Education Council may assess the need for competency testing and recommend to the Faculty Senate the expansion, modification, or termination of the program.

### 4O.05   CURRICULUM REVIEW PROCEDURES (FSB 79010 approved by President 6/13/80; FSB 88024 approved by President 5/1/89; FSB 90002 approved by President 3/18/91; FSB 99008 approved by President 2/28/00; FSB 09009 approved by President 2/5/2010; FSB 18020 passed by Faculty Senate 4/16/2019; approved by President 4/26/2019)

The procedure for instituting curricular changes is as follows:

1. The initiator(s) of a curricular change must prepare all recommendations on the University Curricular Change Request form that are available from the office of each school or college dean.

2. Once a proposed change has been approved at all levels and the ESU Curriculum Form has been sent to and processed by the Registrar's office, the process is complete. Until the process is complete, a faculty member, chair, or dean who does not concur with the proposed curricular change may submit a request to the office of the Provost to refer the curricular change request to the Curriculum Review Panel.

3. If the proposal is for a new degree, a new major, a new program, or a new sub-specialty under an existing degree, it is considered a major curricular or organizational change and must go through Level Two review (see Level Two Curriculum Review Process below). New program proposals may be submitted for an Expedited Program Review (or an Expedited Program Review Package, which would include any new courses or modification to courses that are part of the new program) only if it meets the criteria for an expedited review (see Expedited Review Process below). After the Level Two or Expedited Review process has been completed on campus, the program proposal must then be approved by the Kansas Board of Regents before it goes into effect. The Board requires documentation in accord with the Procedures for Approval of New Programs or Academic Units, copies of which are available from the office of the Provost. Those initiating such requests must provide the full required documentation required when they submit their request to the dean of the initiating school or college. The office of the Provost will coordinate the documentation and submission of any curricular changes requiring Kansas Board of Regents approval. It is the responsibility of the University's representative on COCAO to present the proposal to COCAO, after which it is sent to the Council of Presidents and on to the Board of Regents. All other curricular changes are handled on campus.

4. Other changes not listed above are considered course and program changes. If a proposed course change also affects a degree program, concentration, minor, or certificate program, a separate curricular change form will need to be submitted for each change (1 curricular change request form for the new course and another curricular change request form for the revised program will need to be submitted). However, these changes may be submitted at the same time. Proposed changes encompass two levels of review. Level One curriculum changes encompass any modification of a course that affects only the department where the course is housed and does not require review by the Council on Teacher Education, the General Education Council, the Graduate Council, or the Committee on Advanced Programs. These changes are minor modifications where the course description and course content (including the syllabus) remain essentially the same as when originally approved. These changes do not significantly alter the intent and purpose of the course and do not have implications for another department. They include the following:

   • Changing a course number within the same level: lower division, upper division, or graduate. (Must check with Registrar's office to make sure an appropriate number is selected prior to submitting the curriculum change.)
   • Changing a course title.
   • Changing a prerequisite that exists only within that department. (Must check with the Registrar's office to make sure that the change is compliant with the course management system prior to submitting the curriculum change.)
   • Changing the number of hours.
   • Deleting a course.

Only the course identification section (Part I) and the general statement proposal (Part II, A) on the Curricular Change Request form need to be completed.

5.   All other curriculum changes belong to Level Two (or possibly Expedited Review), including changing a course number to a different level, changing a course or degree program/concentration/minor/certificate that affects another department, adding a new course (courses that were previously taught under umbrella numbers are considered new courses), an extensive course change is being requested, or the change requires review by either the Council on Teacher Education, the General Education Council, the Graduate Council, or the Committee on Advanced Programs, then full details must be supplied on the Curricular Change Request form (Part II, B). Before any course can be required of any students, full details of the course must be provided on the Curricular Change Request form and that course must have been approved via the curriculum review process.

6.     Level One Curriculum Review Process

All curriculum changes are initiated at the department level (the School of Library and Information Management acts as a department for curriculum review procedures). When the department approves the curriculum proposal, it forwards the proposal to the office of the dean, which in turn directs the proposal through the respective college's or school's internal approval process. If the proposal is approved by the school/college and dean, it will be electronically distributed by the office of the Provost to all deans and department chairs for a review period of 10 working days. The academic deans and department chairs are expected to inform faculty of the proposed curricular changes.

a. If the office of the Provost receives no written objections to the proposal during the 10 working day review period, the proposal is considered approved. The office of the Provost informs the Registrar's office and the originating dean of the approval. The department completes the ESU Curriculum Form and returns it to the Registrar's office. This form must be received and processed by the Registrar's office before changes can be implemented.

b. If the office of the Provost receives written objections to the proposal(s) during the 10 day working day review period, the office of the Provost forwards objections to the originating academic unit and the respective dean. Objections are resolved by consensus among the interested parties. Objections that cannot be resolved by consensus are submitted by the office of the Provost to the Curriculum Review Panel for resolution (see #9).

7.     Level Two Curriculum Review Process

All curriculum changes are initiated at the department level (the School of Library and Information Management acts as a department for curriculum review procedures). When the department approves the curriculum proposal, it forwards the proposal to the office of the dean, which in turn directs the proposal through the respective college's or school's internal review process. If 2 or more schools or colleges are involved with initiating the proposed change, then the proposal must be submitted to all deans of the units involved for review by the college/school's curricular review process. For a Level Two proposal, the office of the dean also forwards the proposal to the applicable review body(ies) (e.g., the General Education Council, Graduate Council, Council on Teacher Education, Committee on Advanced Programs) to initiate its review. If the proposal is approved by the school/college, respective dean, and all additional review committees or councils, it will then be electronically distributed by the office of the Provost to all deans and department chairs for a review period of 10 working days. The academic deans and department chairs are expected to inform faculty of the proposed curricular changes.

a. If the office of the Provost receives no written objections to the proposal during the 10 working day review period, the proposal is considered approved. The office of the Provost informs the Registrar's office and the originating dean of the approval. The department completes the ESU Curriculum Form and returns it to the Registrar's office. This form must be received and processed by the Registrar's office before changes can be implemented.

b. If the office of the Provost receives written objections to the proposal(s) during the 10 day working day review period, the office of the Provost forwards objections to the originating academic unit and the respective dean. Objections are resolved by consensus among the interested parties. Objections that cannot be resolved by consensus are submitted by the office of the Provost to the Curriculum Review Panel for resolution (see #9).

8. If a department has final approval to change a course that is required in the program(s) of another department and the second department is substituting the new course for the old course, the second department can submit one curriculum change request that covers all affected programs within that department and that change would be considered a Level One change.

9. If objections cannot be resolved by the two parties, the office of the Provost, the chair, and members of the Curriculum Review Panel will be notified. In addition, the dean(s) and chair(s) of the initiating unit, as well as the initiator(s) will be notified. The chair of the Curriculum Review Panel shall contact the initiator(s) of the curricular change and the group(s) objecting to the change. The chair shall engage all groups involved to attempt to resolve the issue. The Curriculum Review Panel will serve as mediator in the matter.

10. If a resolution is not possible, the matter along with the recommendation from the Curriculum Review Panel will be sent back to the office of the Provost. The President or a designee in the office of the Provost becomes the final authority on the matter.

Deadlines: In order for courses to be listed in the printed class schedule, proposals must be approved and submitted to the office of the provost by April 1 for the change to be effective in the academic year that starts the following July 1.

11. <u>Expedited Review Process</u>

Under rare circumstances a department may need to expedite a new program review to respond quickly to distinct opportunities to meet workforce, economic or other special needs. An expedited review process is designed to allow ESU to review new programs (and any new courses or modification to courses that are part of the new program) within a shorter timeframe, thereby allowing ESU to request an Expedited Program Review with the Kansas Board of Regents.

a. The criteria for an expedited program review are:

- has a direct and immediate impact on meeting workforce, economic, or other special needs and/or has been directly requested by a corporate, industrial or public entity;
- is unique within the Kansas Board of Regents university system, or if not unique, that duplication is appropriate; and
- meets all the requirements of Kansas Board of Regents policy on delivery of academic courses and programs.

b. If a department and their dean believe that their new program meets the criteria for an expedited program review, the department chair should contract the Provost and Vice President for Academic Affairs to confirm that the criteria for an expedited program review are met. Once the Provost and Vice President for Academic Affairs confirms that the proposed program meets the criteria for an expedited program review, the office of the Provost and Vice President for Academic Affairs will initiate a campus-wide curricular review. The campus-wide curricular review process will be as follows:

• The Office of the Provost and Vice President for Academic Affairs will electronically distribute the proposed program (or program package) campus-wide. The campus community will have 5 class days to pose objections to the proposed program (and/or the new courses or modified courses that are part of the new program). Formal objections should be presented in writing to the Provost and Vice President for Academic

        Affairs. On the 4th day of the review period, the Office of the Provost and Vice President for Academic Affairs will hold an open forum to allow entities to voice any objections. Objections raised in the forum must also be submitted in writing to be considered as a formal objection to the proposed program (or its new or modified courses).

- If any formal objections are presented in writing within the 5 day review period, the Office of the Provost will forward objections to the originating department. The opposing entities have an additional 5 days to resolve the conflict. If the 2 entities cannot resolve the conflict within 5 class days, the Curriculum Review Panel will be convened to resolve the dispute. The Curriculum Review Panel will serve as mediator in the conflict, and if a resolution is not possible, the recommendation of the Curriculum Review Panel will be forwarded to the Provost and Vice President for Academic Affairs. The President or designee in the office of the Provost becomes the final authority on the matter.

  c. Deadlines for Expedited Program Review: The expedited review procedure can only be initiated when the traditional fall and spring semesters are in session. The 5 class-day review period does not include any breaks in the academic calendar.

**4O.0501   CURRICULUM REVIEW PANEL** (FSB 88025 approved by President 5/1/89)

1. The Academic Affairs Committee of the Faculty Senate shall appoint members to vacancies on the Curriculum Review Panel (hereafter CRP) at its penultimate meeting of the academic year.

2. The CRP shall consist of a faculty chair, 6 teaching faculty, and 2 students. The faculty and student members shall be appointed as follows:

a. One faculty member each from the School of Business, The Teachers College, College of Liberal Arts and Sciences, the School of Library and Information Management.

b. Two members from the teaching faculty at large.

c. At least 4 of the faculty members must be members of the graduate faculty.

d. The President of the Associated Student Government shall submit the names of 2 students for membership on the CRP. The students shall be from different schools/colleges. One student member should be a graduate student. The Academic Affairs Committee will either approve these nominations or ask for additional names.

e. The chair shall be chosen from the membership of the Academic Affairs Committee, if possible. If this is not possible, any member of the teaching faculty may be appointed chair.

3. All members of the CRP represent the entire University and not just their respective schools/colleges.

4. The 6 faculty members of the CRP shall serve 3 year terms that expire in rotation.

5. The 2 students shall serve 1 year terms.

6. The chair of the CRP shall be appointed for a 1 year term.

7. The chair and all members of the CRP shall be eligible for reappointment.

8. The chair of the CRP shall also serve as secretary.

9. The function of the CRP shall be to provide a University-wide review of objections raised to curricular changes. The CRP, when acting as mediator in disputes over curricular changes, shall be cognizant of the function(s) of the proposing unit(s) and school(s)/college(s), shall determine if there is unnecessary duplication of courses already in existence, and shall be cognizant of the academic standards of the University.

10. The CRP, after serving as mediator in disputes over curricular changes, shall forward a recommendation for approval or disapproval of the proposed curricular change to the Vice President for Academic Affairs.

## 4P. PROGRAM DISCONTINUANCE POLICY (FSB 84004 approved by President, 3/4/85; updated 9/2010)

The search for knowledge is in itself the means by which such knowledge shall be acquired. The very nature of a University demands that its quest for knowledge constantly directs it to adopt, adapt, or terminate the means (hereinafter termed programs of study) that sustain the mission of the University. Moreover, fluctuations in enrollment, bringing increasing or declining levels of financial support, together with a variety of changing technological, sociological, and other economic pressures underscore the need for program review and adjustment. When such review indicates that an established program of study should be abridged or terminated, it should be recognized that such a decision profoundly affects 1) the mission of the University; 2) the commitment of the University to students enrolled in said program of study; and, 3) the responsibility of the University to those faculty and staff who may be dismissed by program abridgment or discontinuance.

The purpose of the following policy and procedures statement, therefore, is to fulfill ESU's responsibility to the Kansas Board of Regents that each Regents' institution shall have a policy and procedures whereby it may discontinue academic programs of study. ESU's statement shall reflect its commitment to its students and faculty, and its determination to maintain educationally-sound programs of study.

Furthermore, it should be understood, at the outset, that the policy and procedures set forth herein do not affect the Kansas Board of Regents' prerogative to exercise its Program Review and/or Program Discontinuance policies – policies which may take precedence over or mandate the initiation of the policies and procedures established by this document.

Section II. Procedures

A.     Definitions

1.   The Board of Regents Degree and Certificate Program Inventory for Regents Institutions is the basis for defining programs of study at Emporia University.

2.  Program discontinuance may involve the abolition of any academic unit (department, school, or college) in which the degree or certificate is offered. It may also involve the abolition of a particular degree or certificate without otherwise effecting changes in the academic unit.

3.  The determination that a program shall be discontinued is the decision of the President of Emporia State University, upon recommendation from the Vice President for Academic Affairs, that the University shall for bona fide educational considerations, (considerations distinct from and unrelated to those based on financial exigency) discontinue such a program.

B.     Discontinuance Procedures

1.  A recommendation for Program Discontinuance may be initiated by the academic unit, the dean of the college or school in which the program is offered, the Dean of the Graduate School in the case of a graduate program only, or the Vice President for Academic Affairs. Recommendations shall not be submitted nor considered during summer session.

2.  A recommendation for Program Discontinuance must be made in writing to the Vice President for Academic Affairs (if the Vice President for Academic Affairs initiates the recommendation, it shall be made in writing to the President of the University). All such recommendations shall include position statements by the academic units affected. (See Section II.A.2. Any so-designated academic unit may submit a position statement).

3. Receipt of a recommendation for Program Discontinuance by either the Vice President for Academic Affairs or the President of the University shall mandate on the recipient the following actions:

    a. The recommendation and academic unit position statement shall immediately be transmitted to the President of the Faculty Senate, who, in consultation with the Faculty Senate Executive Committee, shall assign the recommendation to 1 or more of the Faculty Senate's standing committees.

    b. The recommendation shall be given immediate public notice to the University community. A committee of the Faculty Senate shall be convened within 14 days of said notice to hear any faculty, staff, or student testimony or evidence. After hearing such evidence or testimony, the committee shall provide reasonable additional time for commentary and/or discussion.

    c. Within 30 days of the conclusion of the hearing in (b) above, the Faculty Senate, upon advice from its designated committees, shall submit to the President of the University its recommendation for or against the proposed Program Discontinuance. The Faculty Senate recommendation shall speak directly but not exclusively, to the issues of mission, and to responsibilities to students, faculty, and staff, detailing, wherever applicable, the effect in both long range and short range terms of its recommendations. The Faculty Senate shall concurrently transmit its recommendation to the appropriate faculty, chair, dean, and to the Vice President for Academic Affairs.

    d. The Vice President for Academic Affairs shall, within 30 days of the conclusion of the hearing in (b) above, submit a recommendation for or against the proposal to the President of the University. The recommendation shall be in writing and shall speak directly, but not exclusively, to issues of mission, and to responsibilities to students, faculty and staff, detailing wherever applicable, the effect in both long range and short range terms. The Vice President for Academic Affairs shall concurrently transmit the recommendation to the appropriate faculty, chair, dean, and Faculty Senate committees.

    e. The President of Emporia State University, after evaluating all recommendations, shall, within 30 days, make a final decision regarding the recommendation. If the President decides for program discontinuance, their written statement, transmitted to all affected, shall include a date for the program's discontinuance and a statement setting forth initial actions to be

taken in respect to students and faculty affected by the program's discontinuance.

C.      Rights of Students

1.   A decision to discontinue a program shall normally carry a 3 year phase-out period. That period shall begin with the date announced by the President of the University (Section II.B.3.e.)

2.   Students in the program shall be notified to complete their programs within the phase-out period. If it becomes impossible for students to complete their degree programs within the phase-out period, the University shall make every reasonable effort to assist the students. Such efforts may include but are not limited to 1) permitting the student to take work in related departments; 2) assisting, if possible, the student in completing his program at another institution; and 3) permitting special graduate-level supervision, administration, and examinations by qualified faculty at other institutions.

D.      Rights of Faculty

1.   Termination of an appointment with continuous tenure, or of a probationary or term appointment before the end of the specified term, may occur as a result of Program Discontinuance.

2.   The Vice President for Academic Affairs, upon recommendation of the appropriate dean, shall recommend to the President of the University which faculty members within the discontinued program shall be dismissed.

3.   Termination of appointments under provisions of Program Discontinuance shall involve consideration including but not necessarily limited to those listed below:

   a.  Reasonable efforts shall be made to fulfill contractual term agreements with temporary or probationary faculty.

   b.  The University shall make every reasonable effort to offer each tenured faculty member another suitable position. The offering of another suitable position, under provisions of Program Discontinuance, which may or may not involve matters of transfer of tenure and/or rank shall be determined by consultation among the faculty member, the academic unit or units involved, and administrative heads at the unit, school, college, and University levels. Such transfers, however, shall not displace other tenured or probationary faculty in the unit receiving the transfer.

   c.  Tenured faculty scheduled for dismissal shall be retained as long as

program needs dictate during the phase-out period. Faculty so retained shall be accorded the same rights and privileges (e.g., salary adjustment) as other faculty.

 d. Tenured faculty shall be retained in favor of probationary faculty unless program needs dictate preferential treatment of probationary faculty.

Section III. Appeals

A. An academic unit which has a program under consideration for discontinuance may appeal to the President of the University for a reconsideration of a decision to discontinue or not discontinue a program. Such an appeal must be made in writing no later than 15 days after the President issues the statement noted in Section II.B.3.e. The President shall respond in writing to the appeal within 15 days after receiving it.

B. Due process must be scrupulously followed during Program Discontinuance. All of the rights and privileges of the faculty member to seek remedy for an alleged infringement of academic freedom or violation of established University tenure policies and procedures that now provide faculty access to the University grievance procedures shall also apply to such allegations regarding actions taken by the University under Program Discontinuance. A faculty member may appeal the President's decision to dismiss through utilizing the University's grievance procedures. Such appeal shall be made in writing, and shall be filed within 30 days of the date of notification. The appeal may be based only on the grounds that 1) the dismissal was based on a statutory or constitutionally impermissible reason, or 2) the procedure surrounding the dismissal was improper. Improper procedure includes (but is not limited to):

 a. Violation of the procedures outlined in this document for arriving at the recommendation of discontinuance of the program in question. Such appeal, however, shall not address the substance of the recommendation.

 b. A violation of the procedures outlined in this document for arriving at the recommendation of non-reappointment of the individual.

 c. Use of incomplete or erroneous data or information in the decision-making process by the President that led to the dismissal; that is, that the President had no basis in fact for selecting the appellant for dismissal.

 d. Lack of a reasonable effort to place the faculty member in another suitable position in the University before the notice of intent to dismiss. Where the

4-75

basis of the appeal is statutory or constitutional impermissibility, the burden of proof is on the faculty member; where the basis of appeal is improper procedure, the burden of proof is on the President. The faculty member shall have access to all relevant information in the possession of the administration to aid in preparing the case based on any of the grounds listed above.