IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMANDA MIRACLE, et. al. | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 23-4056-DDC-GEB |
| KEN HUSH, et. al. | ) |
| Defendants. | ) |

**RESPONSE MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY**

COME NOW, Plaintiffs Amanda Miracle, Christopher Lovett, Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Max Mccoy, Michael Morales, and Lynnette Sievert, by and through their counsel, J. Phillip Gragson, Amanda S. Vogelsberg, John H. Hutton and Kara L. Eisenhut of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP and for their response to Defendants' Motion to Stay (Doc. 9), respond as follows:

**Nature of the Matter Before the Court**

Plaintiffs filed this action to redress various Constitutional violations committed by the Defendants, and others whom Plaintiffs' have yet to identify because of Defendants' attempts to preclude such disclosure. In what can best be described as a further attempt to prevent Plaintiffs from ever being able to ask basic questions of or engage in any level of discovery with Defendants, the Defendants request the Court stay discovery in this matter pending resolution of their anticipated motion. As referenced in Plaintiffs' Complaint (Doc. 1), at no time from the moment each were summarily terminated and given non-specific, categorically generic

1

"potential" reasons as to why they were being stripped of their clearly established property right in tenure, have Plaintiffs been provided the slightest modicum of due process to ever find out the real reasons why they were stripped of tenure. For the following reasons, Defendants' Motion to Stay proceedings should be denied and the Court should proceed with entering a scheduling order to allow Plaintiffs to engage in necessary discovery to join the additional parties characterized as "John Doe" in their Complaint. Plaintiffs also intend to amend their complaint to include their disparate impact claim under the ADEA (an investigation is currently underway way by the EEOC).

## Arguments and Authorities

Defendants move the Court to stay discovery pending anticipated 12(c) motion referencing FRCP 26. Defendants do not reference the Civil Justice Reform Act or other pertinent rules under the Federal Rules of Civil Procedure, which mandates the Court attempt to secure the "just, speedy, and inexpensive" resolution of every civil case before it. 28 U.S.C. § 471; Fed. R. Civ. P. 1.

As observed by the Court in *Calero v. CoreCivic, Inc.* 2020 WL 7773393 (D.N.M. 2020):

> This standard requires the Court, in the course of ensuring a just outcome, to both (1) expedite the ultimate disposition of litigation and (2) reduce its costs. Discovery stays generally impede the first goal but may, depending on the circumstances, serve the second. As such, the decision whether to stay discovery "depends greatly on each case's facts and progress" and is within the Court's "broad discretion." *De Baca v. United States*, 403 F. Supp. 3d 1098, 1111-12 (D.N.M. 2019); *Martin v. City of Albuquerque*, 219 F. Supp. 3d 1081, 1089-90 (D.N.M. 2015).

An instructive opinion in *McGinn v. El Paso County, Colorado*, 640 F.Supp.3d 1070 (2022) provides:

> Whether to stay discovery during a proceeding is left to the trial court's discretion. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). The power to stay "is incidental

to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763, 51 S.Ct. 304, 75 L.Ed. 684 (1931)). In this judicial district, however, discovery stays are an exception rather than the rule. *Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009) ("This District generally disfavors stays of discovery."). Even in cases where defendants raise a qualified immunity defense, courts within the District of Colorado generally disfavor a stay of all discovery. See, e.g., *Estate of Ronquillo v. City & Cnty. Of Denver*, 2016 WL 10842586, at *3 (D. Colo. Nov. 14, 2016) ("[Q]ualified immunity does not protect an official from all discovery, but only from that which is 'broad-reaching.' ") (quoting *Crawford-El v. Britton*, 523 U.S. 574, 593, n.14, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (emphasis in original)); *Wanstall v. Armijo*, 2014 WL 4636457, at *3 (D. Colo. Sept. 16, 2014) ("[A] qualified immunity defense does not automatically bar all discovery.").

Upon a showing of good cause, a stay of discovery is appropriate to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). When considering a stay of discovery, Courts in this district generally consider the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendants in going forward; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (citing *FDIC v. Renda, 1987 WL 348635*, at *2 (D. Kan. Aug. 6, 1987)).

Applying the forgoing five factors, as recognized by the Kansas District Court in *Renda*, *supra*, Plaintiffs respectfully submit that Defendants' Motion to Stay should be denied.

**1. The Plaintiffs' interests in proceeding expeditiously with this action and the potential prejudice to plaintiffs of a delay, weigh in favor of Plaintiffs.**

As reflected in the Plaintiffs' Complaint, all of these Plaintiffs were summarily terminated from their positions as tenured professors at Emporia State University. Plaintiffs were all presented with substantively the same basic form letter of termination listing several potential possibilities for why they were being selected for termination. Along with those termination letters, was the "Workforce Management Policy" ("WMP") which specifically prohibited Plaintiffs from engaging in discovery or calling witnesses at a "hearing" afforded by

3

Emporia State University ("ESU") and the Kansas Board of Regents ("KBOR"). While some of the Plaintiffs were reinstated at the administrative appeal level, ESU after placing them on administrative leave, then took further steps to bar them from teaching and otherwise using ESU resources to engage in research, both variables are necessary to maintain tenure. The Plaintiffs are parties before this Court more than a year after receipt of these letters of termination and have yet to receive the bare, basic components of due process to find out the actual reasons they were selected for termination and then be provided with an opportunity to provide a meaningful response. Defendants have now filed a motion which seeks to continue this due process violation by preventing discovery of the author of the policies and the reason why they were terminated. The Plaintiffs' lives have literally been overturned and upended by Defendants' conduct while the individual Defendants have continued with their lives, as is, before they took the illegal steps of depriving Plaintiffs of their clearly established property right in tenure. Notably, Plaintiffs have not even asserted claims against Defendants ESU and KBOR to which any of the claimed immunities in their Motion to Stay apply. Thus, Defendants' claim in their motion that their anticipated 12(C) motion could dispose of all claims is unsupported. Plaintiffs respectfully submit that the Plaintiffs' interests far outweigh the interests of the Defendants in this case.

**2. Any purported burden on the defendants in going forward does not justify a stay.**

The Court should evaluate any claimed or feigned burden on Defendants in moving forward with discovery in light of the context of this case. Plaintiffs are merely seeking to engage in discovery they were entitled to under basic due process that they have here to for been denied pursuant to the WMP. Defendants should have *already provided discoverable information Plaintiffs seek* at the administrative level. This discoverable information includes the names of those persons responsible for drafting the WMP and the actual facts upon which

4

ESU ultimately relied upon in selecting each Plaintiff for termination of their employment despite their clearly established property rights in tenure. Defendants cannot legitimately claim a "burden" in providing information in response to discovery that they were Constitutionally obligated to provide in the first place.

Further, Defendants already filed an Answer (Doc.7) with stated defenses, and have presumably evaluated Plaintiffs' claims to be able to file their answer. So, moving forth with discovery should not impose an impactful burden at this state of the case.

### 3. The convenience to the Court factor favors Plaintiffs.

Plaintiffs do not claim to speak for the Court regarding this factor, however, as noted by the *Renda* Court, "we are not convinced that the court will save itself a significant amount of effort – if any at all – by granting a stay. It is far more likely that a stay would only postpone the court's work, thereby frustrating the court's strong interest in moving its docket." Given that Defendants' "to be filed" motion cannot dispose of all claims, and Plaintiffs intend to amend their complaint to join additional parties and assert ADEA claims, we respectfully submit that a stay would doubly frustrate the Court's strong interest in moving its docket along. Again, this factor favors Plaintiffs' position.

### 4. The interests of persons not parties to the civil litigation favor Plaintiffs.

As of the time of filing this Response, there remains undisclosed persons who drafted, or for lack of better phrasing, "came up with" the WMP whom Plaintiffs have a right to join in this lawsuit. Ordering a stay would preclude Plaintiffs from discovering the identity of these persons precluding a far more expeditious determination of liability or not by this Court or a jury.

Further, the conduct explicitly described in Plaintiffs' Complaint of KBOR implementing the WMP without due process, or even providing reasonable notice of doing so, can easily occur

again. This fact can potentially impact the employment of literally several thousand tenured professors in the Regents' system. All of these individuals literally have a vested interest in the outcome of this case and a stay is contrary to their interests as well.

### 5. The public interest is served by denying Defendants' Motion.

At its core, Plaintiffs' claims are literally about agents and agencies of the State of Kansas taking away a clearly recognized property right in tenure from Plaintiffs on a mass scale. Defendants took this action despite the clearly recognized case law set forth by the Tenth Circuit Court of Appeals in *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (1998). We emphasize that KBOR was also a party in *Tonkovich* as was ESU's sister institution, the University of Kansas. *Tonkovich* clearly established that state of Kansas university professor tenure rights are a property interest protected by the 5th through 14th Amendments to the United States Constitution. Specifically, the Court ruled:

> Because Professor Tonkovich was a tenured professor, he possessed a property interest deserving of procedural due process protections. *Brenna v. Southern Colo. State College*, 589 F.2d 475, 476 (10th Cir.1978); see also *Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 535, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court examined the issue of "what pretermination process must be accorded a public employee who can be discharged only for cause." In deciding this issue, the Court balanced the competing interests at stake: "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." Id. at 542–43, 105 S.Ct. 1487 (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Court concluded that prior to termination, something less than a full evidentiary hearing is sufficient. Id. at 545, 105 S.Ct. 1487. Thus, the Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. 1487.
>
> The holding in *Loudermill* rested partially on the availability of a full post-termination hearing under applicable state law. Id.; see also *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1480 (10th Cir.1993) ("Under *Loudermill*, the

adequacy of pre-termination procedures must be examined in light of available post-termination procedures."); *Calhoun v. Gaines*, 982 F.2d 1470, 1476 (10th Cir.1992) (holding that "*Loudermill* established that some form of pretermination hearing, plus a full-blown adversarial post-termination hearing" are required when a property interest in continued employment is at stake). "A 'full post-termination hearing' is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.1994).

*Id*. at 517-518

The Tenth Circuit continued in definitive terms:

> ***Because Professor Tonkovich was a tenured professor, the law in this Circuit is that he possessed "a property interest deserving of ... substantive protections of the Fourteenth Amendment."*** *Brenna*, 589 F.2d at 476. Substantive due process requires that the termination of a tenured professor's property interest not be "arbitrary, capricious, or without a rational basis." Id. at 477. The Supreme Court has "emphasized time and again that [t]he touchstone of due process is protection of the individual against arbitrary action of government...." *Lewis*, 118 S.Ct. at 1716 (quotation omitted).

*Id*. at 528.

As to which governmental body has authority to determine what process is due to Plaintiffs given their property rights in tenure, the *Tonkovich* Court made it very clear, "[t]he federal courts, and not the University of Kansas, are responsible for establishing the contours of the Due Process Clause of the Fourteenth Amendment." *Id*. at 522.

Defendants reference *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992), in stating "[d]iscovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time the allegedly unlawful action occurred." Respectfully, Defendants fail to understand how "clear" the clearly established law is in this case. This is not a case where a plaintiff has included a Title VII discrimination claim and asserts a "tag along" 1983 claim based upon the discrimination claim. In such cases a plaintiff has to prove the underlying discrimination claim in order to get to the question of whether a 1983 violation

occurred. No. *Tonkavich* is directly on point (which included one of the same parties to this action, KBOR) and Plaintiffs have clearly and sufficiently pled a number of 1983 claims against all defendants, not contingent upon substantively proving a companion claim.

## Conclusion

Defendants' Motion to Stay should be denied for all the reasons set forth herein. In addition, Plaintiffs' counsel drafted a proposed scheduling order that was submitted to Defendants' counsel before the planning meeting on November 1, 2023. We will send the draft to the Court and respectfully request your Honor consider the proposed order, enter a formal Scheduling Order and allow discovery to proceed. Plaintiffs have prepared discovery requests and will be serving their requests upon Defendants' counsel forthwith in keeping with their desire to expedite discovery in this matter.

WHEREFORE Plaintiffs, through their counsel, respectfully request this Court deny Defendants' Motion to Stay and enter a formal Scheduling Order with dates amenable to the Court's schedule and for such further and additional relief as the Court deems just and equitable.

Respectfully submitted,

/s/ J. Phillip Gragson
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
John H. Hutton, #16573
Kara Eisenhut #27055
HENSON, HUTTON, MUDRICK,
  GRAGSON & VOGELSBERG, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
(785) 232-2200; (785) 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
jhutton@hhmglaw.com
keisenhut@hhmglaw.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

   I hereby certify that a true and correct copy of the foregoing was filed on this 20th day of November, 2023 with the clerk using the EM-ECF system which will send notice to all parties of record.

                   /s/ J. Phillip Gragson
                   *Attorneys For Plaintiffs*