**IN THE UNITED STATES DISTRICT**
**COURT FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| AMANDA MIRACLE, et. al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 23-4056-JAR-GEB |
| | ) | |
| KEN HUSH, et. al. | ) | |
| | ) | |
| Defendants. | ) | |

---

**RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONFOR**
**JUDGMENT ON THE PLEADINGS AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs, by and through their counsel, and for their response to Defendants' Motion and Memorandum in Support of Judgment on the Pleadings [Docs. 12 & 13], respond as follows:

## I.  Nature of the Matter Before the Court

Defendants answered the Plaintiffs' complaint on September 29, 2023 [Doc. 7]. Nearly two months later, Defendants seek dismissal of all claims through a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) [Doc. 12]. Plaintiffs purposefully plead a factually specific and robust complaint sufficient for the Court to deny in whole or in part Defendants' motion. While Plaintiffs agree to some of Defendants' non-substantive arguments, at the core of Defendants' motion is their argument and belief that KBOR, ESU and the Individual Defendants can do "whatever" and "however" they want without regard to Plaintiffs' clearly established property right in tenure and their interest in their dedicated careers. Defendants' position is antithetical to the basic precepts of the 14th Amendment to the United States Constitution. Plaintiffs request the Court deny Defendants' motion as set forth herein.

## II.  RESPONSE TO DEFENDANTS' SOFs

1

1.  Defendants' SOF 1, 2, 4, 5, 7, 8, 9, 10, 11, 15, 16, 17, 18, 31, 35, 36, 37, 40, 41, 42[1], 43, 44, 45, and 46 are uncontroverted.

2.  Defendants SOF 3 is uncontroverted in that KBOR considered a temporary amendment to its policy titled "Suspensions, Terminations, and Dismissal" and that the referenced minutes contain the quotation in paragraph 3. However, Plaintiffs controvert that the actual reason KBOR considered the temporary amendment was "because of the extreme financial pressures that the state universities are facing due to the COVID-19 pandemic, decreased program and university enrollments, and the state's declining fiscal support." The temporary amendment carves out from the existing policy the requirement to declare a "financial exigency," as quoted in Defendants' SOF 1." See Compl. generally (Doc. 1) and Ex. 12 thereto (Doc. 1-12).

3.  Defendants' SOF 6 is uncontroverted that the KBOR minutes contain comments on financial challenges and contains the referenced quotation. However, the intimation to the reduction in funding is controverted as ESU was fully funded for the 22-23 academic year. See Compl., ¶ 62 (for the 22-23 academic year ESU was fully funded) (Doc. 1) and Ans., ¶ 2 (admitting Compl. ¶ 62) (Doc. 7).

4.  Defendants' SOF 12, 13, and 14 are uncontroverted to the extent that the KBOR minutes contain the referenced statements which reference communications and interactions with faculty, but substantively controverted to the extent the statements intimate that Hush communicated to tenured faculty that they had a constitutionally protected property right in tenure and that ESU was going to terminate tenured professors without due process.  Compl., ¶¶ 71, 72 (mention the lack of notice given to faculty and Plaintiffs) (Doc. 1).

5.  Defendants' SOF 19 is uncontroverted in that the KBOR minutes reflect the referenced

---

[1] Plaintiff Charles Emmer was never served with process of ESU's petition for judicial review.

statement, but substantively controverted that the ESU Framework was intended for ESU to operate differently and make fundamental changes to how it approaches academic offerings. The intent was to attack tenure. See generally, Compl. (Doc. 1).

6.   Defendants' SOF 20 is uncontroverted in that the statement is referenced in the minutes but substantively controverted to the extent the statements intimate that the Framework incorporated any suggestions from tenured faculty to not strip tenured professors of their constitutionally protected property right in tenure without due process. See generally, Compl. (Doc. 1). Further, it is controverted that any of ESU's shared governance groups were given a reasonable amount of time to consider the implications of the Framework, since according to the minutes, they were only given a copy of the proposed Framework "last week" before ESU formally presented the Framework to KBOR. Doc.1-11, pp. 2-3. Doc. 1-11 only specifies that feedback was sought from "governance group" and "faculty and staff" and it is unclear exactly what was given to whom and whether the exact copy of the Framework presented to KBOR was provided.

7.   Defendants' SOF's 21 22, 23, 24, 25, 26, 27, 28, 30 are uncontroverted in that the ESU Framework is quoted, in part, properly, but substantively controverted that the Framework identifies the real reason for its implementation. Defendants miss the point that due to their refusal to provide procedural and substantive due process, Plaintiffs were, and still are, unable to obtain the evidence of the real reason for the Framework, i.e., eliminating tenure without due process. See generally, Compl. (Doc. 1). Further, the "appeal" provided by the Framework prevented an administrative hearing officer from considering any theories of appeal that were not based on the three narrow reasons. See Doc. 1-12. The Framework's appeal process put "the burden of proof on the employee" and prohibited discovery and the calling of witnesses. Doc. 1-11, p. 6.

8.   Defendants' SOF 32 is uncontroverted in that the effective date of their termination

was May 16, 2023, but controverted to the extent Defendants intimate that the notices were "pretermination" notices as the notices clearly reflect the decision was already made to terminate and they were being notified of their last day of employment. A pretermination notice is given to a tenured faculty member and is provided notice *before the termination decision is made* of a proposed termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495,  84 L.Ed. 2d 494 (1985) (a pretermination hearing "should be an initial check against mistaken decisions—… a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.")

9.  Defendants' SOFs 33 and 34 are uncontroverted in that the ESU Framework is quoted, in part, properly, but substantively controverted that the Framework identifies the real reason for its implementation. See generally Compl (Doc. 1).  Further, the notice is contradictory in stating, "***While the University is not facing financial exigency,*** the financial and market situations do require a prudent review and restructuring, …, which may require immediate action notwithstanding any other Board or institutional policy." (Emphasis added) Doc. 1-12, p.1.

10. Defendants' SOF 38 is uncontroverted in that Plaintiffs participated to the extent they were allowed to participate under the Framework and by OAH, but controverted in that they were absolutely denied the ability to participate in a manner prescribed by the 14th Amendment. They were not provided with the reasons they were selected for termination over others similarly situated and less qualified and they were refused the ability to call witnesses or engage in discovery. (See Compl. generally and at ¶ 77 (Doc. 1). Further, Defendants' calling the hearings "pretermination" hearings is patently false. A pretermination hearing is one where a tenured faculty is provided notice of a proposed termination ***before the decision to terminate is made***. All of the hearings were post termination hearings, and did not become pretermination hearings just because they

occurred before Plaintiffs' previously determined last day of employment. *Loudermill*, 470 U.S. at 545. The Framework wouldn't provide for a remedy of reinstatement if it was a "pretermination hearing."

11. Defendants' SOF 39 is uncontroverted in that to the extent the dates for the "hearings" are correctly cited, but controverted in that they were absolutely denied the ability to participate in a "hearing" in the manner prescribed by the 14th Amendment. They were not provided with the reasons they were selected for termination over others similarly situated and less qualified and they were refused the ability to call witnesses or engage in discovery. (See Compl. generally and at ¶ 77 (Doc. 1). Further, Defendants' calling the hearings "pretermination" hearings is patently false. All of the hearings were post termination hearings, and did not become pretermination hearings just because they occurred before Plaintiffs' previously determined last day of employment. *Loudermill*, 470 U.S. 532, 545. Why would the Framework provide for a remedy of ***reinstatement*** if it was a "pretermination hearing"?

### III. ARGUMENT & AUTHORITIES

#### A. Standard of Review

Defendants "move" pursuant to F.R.C.P. Rule 12(c) which provides: "**Motion for Judgment on the Pleadings** after the pleadings are closed--but early enough not to delay trial–a party may move from judgment on the pleadings."

In ruling on a 12(c) motion, the Kansas District Court held in *Eucalyptus Real Estate, LLC v. Innovative Work Comp LLC*, 642 F.Supp.3d 1273, 1278-9 (2022), that a Rule 12(c) motion is treated under the same standard governing a Rule 12(b)(6) motion to dismiss. Thus, to survive dismissal, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Facial plausibility exists when factual content is pleaded

so the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When considering a Rule 12(c) motion, the court must assume the factual allegations in the complaint are true. *Id*. at 1278-1279.

In considering a 12(c) motion, the court considers the pleadings alone. The pleadings consist of the ***complaint, the answer, and any written instruments attached as exhibits***. Fed. R. Civ. P. 12(c); *Canady v. Nationwide Affinity Insurance Company of America*, 2020 WL 376494, *2-3 (D. Co. Jan. 23, 2020) (not reported). Where the defendant brings the Rule 12(c) motion, the court will grant it if "it appears beyond all doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id*.

### B.  The Eleventh Amendment is no bar to claims for prospective injunctive relief against a state official in their official capacity.

Plaintiffs acknowledge the impediment of the Eleventh Amendment immunity against a state entity is viewed as a jurisdictional bar to claims against the State. *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009).  While there are three exceptions to the Eleventh Amendment immunity, including suits against individual state officials for prospective injunctive relief to remedy an ongoing violation of federal law, it is not necessary to address this exception now. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

Plaintiffs concede that their requested prospective injunctive relief for a continuing violation against Defendants ESU and KBOR is properly pleaded against Defendant Hush in his official capacity. Accordingly, and in connection with Plaintiffs' Motion for Leave to file First Amended Complaint ("Motion for Leave"), Plaintiffs request a voluntary dismissal without prejudice of Plaintiffs' claims against Defendants ESU and KBOR simultaneously with granting Plaintiffs' Motion for Leave adding direct claims against ESU and KBOR under the Age

Discrimination in Employment Act.(ADEA) There is clear precedent from this Court that a cognizable action under the ADEA against a state entity *is* actionable in Federal Court. See, *Young v. University of Kansas Medical Center*, 1997 WL 150051, following *Hurd v. Pittsburg State Univ.*, 821 F.Supp.1410 (D.Kan.1993), *aff'd* 29 F.3d 564 (10th Cir. 1994).  Plaintiffs submit that the granting of Plaintiffs' Motion for Leave simultaneously with granting a voluntary dismissal without prejudice of Plaintiffs' injunctive claims against  ESU and KBOR, is warranted and in the interest of judicial economy.

Defendants also request dismissal of claims for monetary damages against the Individual Defendants in their ***official*** capacity.  However, Plaintiffs did not plead any claim against the Individual Defendants in their ***official*** capacity for monetary damages. Thus, there is no relief to be granted.

With regard to Plaintiffs' Counts IX and X, relating to violations of the Kansas State Constitution and Conspiracy to do so, Plaintiffs request the Court dismiss these counts without prejudice on the basis of declining supplemental jurisdiction.

Plaintiffs do add in their proposed First Amended Complaint under Count X, a Civil Conspiracy claim in violation of Section 42 U.S.C. 1983. This conspiracy count is recognized as a violation of Section 1983, independent of a conspiracy claim under 42 U.S.C. 1985. See generally, *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443 (10th Cir. 1990).

In summary, the Eleventh Amendment does not bar any claims against the Individual Defendants in their personal capacity for monetary relief. The issue of the appropriate defendant to reinstate Plaintiffs is satisfied in proposed Plaintiffs' First Amended Complaint.

**C.  Plaintiffs sufficiently establish constitutional standing against all defendants.**

To establish constitutional standing, a plaintiff must satisfy three elements: injury in fact,

causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (U.S. 1992). In addition to the plaintiff suffering an injury, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court,'" and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, at 560-61, 2136 (internal citations omitted).

Defendants mistakenly argue that Plaintiffs fail to establish standing against the KBOR Individual Defendants because Plaintiffs cannot show causation and redressability as it was ESU that terminated Plaintiffs' employment.  Plaintiffs' Complaint is replete with allegations  of how the Individual KBOR members acted in adopting the WPM and ESU's framework directly led to Plaintiffs' termination. Plaintiffs alleged and are entitled to redress in the form of money damage claims under §1983. And Plaintiffs' proposed First Amended Complaint sufficiently pleads the remedy of reinstatement against Defendant Hush in his official capacity.  Defendants cannot legitimately deny that the ESU Defendants, including Defendant Hush, could not have taken the actions they took with the conduct of the Individual KBOR Defendants.

Plaintiffs submit that, under *Copelin-Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1253 (10th Cir. 2005), their Complaint provides sufficient allegations of causation and available remedy under the  §1983 counts and conspiracy counts.. Plaintiffs only must make a *plausible* claim. Even in *Copelin-Brown*, where the summary judgment standard of review was much higher, the plaintiff was able to satisfy both causation and redressability. Plaintiffs have pleaded the facts necessary to satisfy the review standard at issue. "At the pleading stage, general factual allegations in injury resulting from the defendant's conduct may suffice, for on a motion

to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, at 561, 2137 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990)).

Plaintiffs adequately establish standing against the KBOR Defendants in their Complaint. Prior to January 2022, KBOR policy mandated that "faculty … awarded tenure may be terminated only for adequate cause, except in the case of program or unit discontinuance or extraordinary financial circumstances because *of financial exigency*." KBOR Policy Manual at p. 1-13, Doc. 1-2. Compl., at ¶ 47. In January 2021, KBOR adopted the WMP, which "suspended" tenure rights of professors without any due process. *Id.* at ¶ 55. The WMP omits the necessity of a "financial exigency" as pre-WMP policy requirements for termination of *non-tenured employees before tenured employees*. KBOR adopted ESU's Framework which specifically says there is no "financial exigency." *Id.* at ¶¶ 69-70, 72. KBOR Defendants knew or clearly should have known under *Tonkovich* that Plaintiffs had protected property rights in tenure and that the WMP would be used to terminate tenured faculty without cause and without due process under the ESU Framework.

Defendants argue that the KBOR Individual Defendants cannot redress Plaintiffs' harm because ESU is the entity that terminated their employment, but Plaintiffs have demonstrated that KBOR is able to approve policies affecting the rights of tenured faculty at ESU. *See* KSA 76-712. If KBOR has the right to approve the policies stripping the property rights of faculty, surely KBOR has the power to implement new policies to reinstate Plaintiffs. Therefore, Plaintiffs have successfully established standing against the KBOR Defendants.

Concerning Defendants' arguments about standing against Defendants Kevin Johnson and Steven Lovett, as quoted above, general factual allegations may be sufficient at the pleading stage.

9

*Lujan*, at 561, 2137. Plaintiffs need only allege general facts at this point in litigation. Based upon information and belief, Defendant Hush's Termination Letter to Plaintiffs was aided by Defendants Kevin Johnson and Steven Lovett. *See* Comp., at ¶ 136.

Defendant Kevin Johnson clearly had knowledge of Plaintiffs' constitutionally protected property right in tenure. *See* Compl. at ¶ 46. And then as ESU's general counsel, Defendant Johnson took the opposite position in the "appeals." *See* Compl. at ¶ 74. Defendant Johnson acted as ESU's general counsel with knowledge of Plaintiffs' rights and acted with ESU's president to deny those rights. As such, Plaintiffs have established a fairly traceable connection between Defendant Johnson's actions and Plaintiffs' termination.

Plaintiffs' allegations against Defendant Steven Lovett support the claims against him. *See* Compl. generally allegations against the ESU Individual Defendants, and at ¶¶ 40, 60, 72, 149. Plaintiffs' Amended Complaint includes an allegation about Defendant Lovett engaging in the ongoing violation of federal law through his involvement in the OAH hearings and decisions to bar Plaintiffs from maintained tenure. As such, Plaintiffs have established a fairly traceable connection between Defendant Steven Lovett's actions and Plaintiffs' termination.

Defendants further argue that Plaintiffs have not established a fairly traceable connection between Defendant Brent Thomas's actions and Plaintiffs' termination. On the contrary, Plaintiffs alleged facts sufficient to establish a claim against Thomas. *See* Complaint, at ¶ 40, 64, 69, 141 and 149.

Plaintiffs are suing Defendants Johnson, Steven Lovett and Brent Thomas in their individual capacities and are seeking nominal, actual, compensatory and/or punitive damages as available by law, not reinstatement from them. Plaintiffs have provided the necessary general factual allegations to satisfy standing requirements as to these defendants. And, even if the court

agrees that there is not enough to establish a fairly traceable connection, Plaintiffs plan to amend their complaint to clarify that Defendants, together with Defendant Hush, engaged in unconstitutional actions.

Lastly, Plaintiffs' alleged facts, which if true, establish a conspiracy among the Individual Defendants for their respective acts furthering the alleged conspiracy. Whether properly pled in Plaintiffs' Complaint or not, Plaintiffs' proposed First Amended Complaint sufficiently adds a 1983 Conspiracy Claim in Count X.  Their actions are obviously interrelated, and a conspiracy claim imbues the actions of one defendant to others.   It is not necessary to establish in a conspiracy that every conspirator was personally connected to the end result of the conspiracy, which as alleged in this case, is the termination of tenured professors without due process of law.

**D.  Defendants are not entitled to qualified immunity**

The Individual Defendants are not entitled to qualified immunity because, at the time they enacted the KBOR WMP and the ESU Framework, the law concerning tenure in Kansas and the Tenth Circuit was clearly established. The law is that once bestowed, tenure is a property right subject to federal constitutional protections. Plaintiffs have alleged federal violations and adequately pleaded that the Individual Defendants' conduct was unreasonable regarding clearly established law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

**1.  Plaintiffs have sufficiently identified specific actions taken by Defendants**

Plaintiffs alleged specific allegations against each defendant. To wit: Defendant Miller proposed the temporary amendment to the Suspensions, Terminations, and Dismissals policy ("Workforce Management Policy" or "WMP"), and Defendant Hutton moved to adopt the policy with his amendment of extending the deadline from 2021 to December 31, 2022. Defendant Van Etten seconded the motion and Defendants Hutton, Van Etten, Bangerter, Brandau-Murguia,

Feuerborn, Harrison-Lee, Kiblinger, Rolph and Schmidt approved the adoption of the WMP, which allowed for the violation of Plaintiffs' rights and provided no assurances that procedural and substantive due process must be provided. Doc. 1 at ¶¶ 53-4. The WMP suspended tenure rights without due process. Doc. 1 at ¶ 55. Plaintiffs pleaded that Defendant Bangerter proposed to amend the deadline to submit framework under the WMP and that Defendants Bangerter, Van Etten, Bradau, Feuerborn, Harrison-Lee, Hutton, Kiblinger, Rolph, and Schmidt approved the extension. Doc. 1 at ¶ 56. Defendant Steven Lovett advocated against tenure to ESU leadership members and possibly members of KBOR. Doc. 1 at ¶60.  Defendant Miller proposed removing the deadline for universities to submit a framework and Defendants Lane, Schmidt, Feuerborn, Harrison-Lee, Ice, Kiblinger, Rolph, and Winter approved the elimination of any deadline, which removed another hurdle for ESU to submit its framework, which was not submitted until after the initial two deadlines. Doc. 1 at ¶63. Defendants Hush and Steve Lovett proposed their framework to KBOR on September 14-15, 2022. (Doc. 1 at ¶ 69, leaning on justifications like budget and ESU's operations). KBOR Defendants Ice, Lane, Benson, Dicus, Harrison-Lee, Kiblinger, Mendoza, Rolph and Winter approved ESU's due-process lacking Framework. Doc. 1 at ¶ 70. The Framework and WMP were not submitted to the Kansas Secretary of State for adoption and publication as is required for any policy change that would impact Kansans' rights.  Doc. 1 at ¶71.

KBOR Defendants took all these actions which were supposedly made due to a financial crisis even though ESU was fully funded for 2022-2023 (Doc. 1 at ¶ 62), the state of emergency had been in place for more than one year before ESU's Framework was approved (Doc. 1 at ¶ 57), and KBOR approved ESU's program alignment recommendation to continue all programs reviewed, including history, in March 2021, just two months after approving the WMP (Doc. 1 at ¶ 58). Further, even after all Plaintiffs appealed and participated in the sham appeals process before

the OAH, ESU and their attorneys, Defendants Steven Lovett and Kevin Johnson, and Defendant Thomas, continued fighting the appeals, and refused to reinstate several Plaintiffs who were reinstated by OAH, and denied maintenance of tenure, despite knowing about the established law in Kansas and being provided notice of *Tonkovich*. Doc. 1 at ¶ 83.

Plaintiffs' allegations specify each Defendant's action and attach KBOR minutes which purportedly show these actions (or inaction). The conspiracy counts connect these defendants for the action of some. Plaintiffs have sufficiently pleaded with specificity.

### 2. The law regarding tenure in Kansas before January 20, 2021 was established, and Defendants knew about it.

Before January 20, 2021—when KBOR and its regents members temporarily eliminated long-standing policy which required due process to terminate a tenured employee—the clearly established law regarding tenure in Kansas was that it was a property right once it was given to an employee. Once tenure becomes a property right, it is subject to protection under the Fifth through Fourteenth Amendments to the United States Constitution, which require procedural and substantive due process for a tenured employee to be terminated. *Gorham v. City of Kansas City*, 225 Kan. 369; *Kosik v. Cloud County Community College*, 250 Kan 507, 512 (1992). The Kansas Supreme Court recognized in *Kosik*:

> To be entitled to due process Dr. Kosik must have a property interest in his continued employment with CCCC. State law rather than the United States Constitution must provide the source of this property interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Once the State has conferred a property interest, ***the property interest cannot be taken without constitutional, procedural due process***. 470 U.S. at 541, 105 S.Ct. at 1492. In Kansas, a public employee who may be discharged only "for cause" has a property interest in continued employment. *Gorham v. City of Kansas City*, 225 Kan. 369, Syl. ¶ 1, 590 P.2d 1051 (1979).

> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. (Citation omitted.)

See also, *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (1998), wherein the Court said:

> Because Professor Tonkovich was a tenured professor, **he possessed a property interest deserving of procedural due process protections**. *Brenna v. Southern Colo. State College*, 589 F.2d 475, 476 (10th Cir.1978); see also *Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 535, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court examined the issue of "what pretermination process must be accorded a public employee who can be discharged only for cause." In deciding this issue, the Court balanced the competing interests at stake: "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Id*. at 542–43, 105 S.Ct. 1487 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Court concluded that prior to termination, something less than a full evidentiary hearing is sufficient. *Id*. at 545, 105 S.Ct. 1487. Thus, the Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id*.
>
> **Because Professor Tonkovich was a tenured professor, the law in this Circuit is that he possessed "a property interest deserving of ... substantive protections of the Fourteenth Amendment."** (citation omitted) Substantive due process requires that the termination of a tenured professor's property interest not be "arbitrary, capricious, or without a rational basis." *Id*. at 477. The Supreme Court has "emphasized time and again that [t]he touchstone of due process is protection of the individual against arbitrary action of government...." *Lewis*, 118 S.Ct. at 1716 (quotation omitted).

Emphasis added. *Id*. at 528. The *Tonkovich* Court made it very clear, "[t]he federal courts, and not the University of Kansas, are responsible for establishing the contours of the Due Process Clause of the Fourteenth Amendment." *Id.* at 522. These Due Process protections for the property interest of tenure in Kansas require a pre-termination hearing before the deprivation of tenure as a property right. *Id.* at 511. In *Kosik* at 512-13, the court recognized:

> In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, the United States Supreme Court discussed due process requirements in terms of terminating public employees who had property interests in continued employment under applicable Ohio statutes. The Court stated: "An essential principle of due process is that a deprivation of life, liberty, or property '***be preceded by notice and opportunity for hearing appropriate to the nature of the case***.'" 470 U.S. at 542,

105 S.Ct. at 1493. (Emphasis added).

As recently as April 2022, the Tenth Circuit reiterated tenure as a property right in *Shively v. Utah Valley University,* 2022 WL 1021614, p. 1, an unreported decision stating,

> For a state actor to deprive a citizen of a property interest, the Due Process Clause requires the actor to provide some sort of notice and hearing "appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (citation omitted). Independent sources, such as state law, create and define the property interest. *Id.* at 538 (citation omitted). For example, a state can confer a constitutionally protected property interest in continued employment. See id. at 538–39. And we have held tenured professors have a property interest in their employment. See, e.g., *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998).

There is no case law overruling ***Tonkovich***, no constitutional amendment, no legislative action that leads to any other conclusion than that Plaintiffs have a property interest in tenure. Defendants offer no case law that doesn't recognize that tenure, once obtained, is a property right. *Tonkovich* also makes it clear in its reference to *Loudermill* that more than just a notice and an opportunity to make a statement is required if there is no pre termination hearing.

Defendants cannot dispute that once granted, tenure is a property right. As citizens of Kansas and certainly individuals working in higher education in Kansas, Defendants are presumed to have known the law. *Flott v. Wenger Mixer Mfg. Co.*, 189 Kan. 80, 367 P.2d 44 (1961). See above argument for each Defendants' actions for how they knew the law or should have.

As noted above, Individual Defendants were all personally involved in the removal of Plaintiffs' property rights, that is, they either conspired, voted and approved the implementation of KBOR's temporary policy which did not protect Plaintiffs' constitutional rights, extended the deadline for universities to submit their framework to the policy which allowed ESU to submit its framework after the original deadline, and/or approved (and drafted) ESU's Framework which allowed ESU and its decision-makers to terminate Plaintiffs the same or next day.  Plaintiffs have sufficiently pleaded that the law was established in Kansas and that Defendants violated Plaintiffs'

constitutional right, and thus these Defendants are not shielded by qualified immunity.

Defendants allege that KBOR retained the power to modify its policy and did so, so it did not matter if Plaintiffs had a property interest in their employment. Doc. 13, p. 14. KBOR apparently argues that it could modify a policy to remove that property interest despite an abundance of federal law that requires more procedure. KBOR cites *Scribner v. Bd. Of Educ. Of USD No. 492,* 308 Kan. 254, 258, 267-70 (2018), which is a case that examines the Kansas Legislature's actions and amendment of the Teacher Due Process Act and is not applicable to this case. In *Scribner,* the court noted that the public received notice of the legislative change when the Senate adopted amendments to proposed legislation and sent amendments to the House of Representatives for consideration. Neither the Complaint nor Answer supports such notice of any intention to amend KBOR's policy; rather, it was just amended without adoption or publication by the Kansas Secretary of State. See Doc. 1 at ¶ 71; and, notably, the amended WMP was not published as required under K.S.A. 76-712, which allows KBOR to adopt policies or make rules and regulations "As are authorized by law or are appropriate for such purposes." KBOR does not have the authority to take illegal action and modify policies that violate federal law.

Further, ESU and KBOR argue that they had a right to enact the WMP and ESU's framework to comply with K.S.A. 76-712. Under this statute, KBOR "may make contracts and adopt orders, policies or rules and regulations and do or perform such other acts as are authorized by law or are appropriate for such purposes …" But under K.S.A. 77-415(b)(1), "…each rule and regulation issued or adopted by a state agency shall comply with the requirements of the rules and regulations filing act." KBOR and ESU argue that the WMP gave it binding legal effect to suspend tenure (and apparently the necessary due process to remove tenure). However, "Except as provided in [77-415], any standard, requirement or other policy of general application may be given binding

legal effect *only if it has complied with the requirements of the rules and regulations filing act*." Emphasis supplied. K.S.A. 77-415(b)(1). There is no exception to K.S.A. 77-415 that would allow KBOR to not publish the WMP before it implemented this policy. Plaintiffs allege that the policy was not published. Doc. 1 at ¶ 71. KBOR was required under the rules and regulations filing act to get the temporary policy approved by the Secretary of Administration, the Attorney General, and the Director of Budget. Then, KBOR should have given at least 60 days' notice of its intended action in the Kansas Register and to the Secretary of State and to the Joint Committee on Administrative Rules and Regulations established by K.S.A. 77-436. See K.S.A. 77-421. Petitioners believe no notice or publication under the rules and regulations filing was made, which means that the WMP is not valid even if KBOR's argument that it could amend any policy even if such an amendment violated federal law. If the WMP is not valid, ESU and KBOR have illegally enforced it to terminate Petitioners.

In *Taylor v. Kansas Department of Health and Environment*, *infra*, the Kansas Court of Appeals found that if a state agency fails to submit a policy that by content and effect is a regulation to the notice and publications requirements of the Rules and Regulations Filing Act, the policy is void. In considering an internal "no-overtime" policy adopted by KDHE, the *Taylor Court* noted:

> If the disputed overtime policy individually or in conjunction with the rest of the procedures for WORK or the Working Healthy program is, in fact, a regulation, it must be implemented in conformity with the Rules and Regulations Filing Act, K.S.A. 77–415 et seq. The Act requires that proposed regulations go through a public notice and hearing process and then be formally published before taking effect. See K.S.A. 2011 Supp. 77–415a; K.S.A. 2011 Supp. 77–416; K.S.A. 2011 Supp. 77–421. Everyone agrees the Department did not adopt the overtime policy as a regulation. If a state agency fails to submit a policy that by content and effect is a regulation to the notice and publication requirements of the Act, the policy is void. (internal citation omitted).

Upon further analysis, the WMP is a rule or regulation required to be submitted to the Kansas Secretary of State pursuant to K.S.A. 77-415(b)(1) and (2)(B). Subparagraph (b)(2)(E)

provides exceptions to the act but none of those exceptions are applicable here. Under K.S.A. 76-712, ESU has argued that it is a separate state agency, thus it should have followed the Rules and Regulations Filing Act too. Again, the Complaint alleges there was no such publication by the Secretary of State to comply with this act; and anyway, there was such insufficient time (less than a week) of notice given about the Framework before plaintiffs were terminated. Even if KBOR could stand on its argument, the WMP was not properly modified. The    WMP    and    ESU's framework are by content and effect regulations which should have been submitted by the notice and publication requirement of the Act. They were not. Consequently, the WMP and ESU's Framework are void, and Defendants' argument that it can legally modify such a policy is faulty.

Defendants also argue that KBOR could have taken the action to terminate Plaintiffs regardless of the modification of the KBOR policy, but besides not being a relevant argument to the instant motion, they point to no real analysis of their policies to support such an argument, and in fact, the Complaint and its exhibits prove otherwise. Doc. 13 at p. 14. As Plaintiffs alleged, a tenured employee could only be terminated for "adequate cause, except in the case of program or unit discontinuance or under extraordinary circumstances because of financial exigency" (see Doc. 1 at ¶ 48). It seems Defendants argue they did not have to follow their Suspensions policy that the WMP temporarily replaced because they were not terminating professors "for cause." Yet, to terminate tenured professors due to "financial exigency," they did have to follow policies which were still in effect! *See* Doc. 1-2, p. 29 (3C.10 FINANCIAL EXIGENCY policy and procedure— *defining*[2] exigency and requiring formal recognition of a "financial exigency;" and 3C.11

---

[2] Defendants use Merriam-Webster's definition instead of their own policy which defines exigency as: "…the formal recognition by a Regents institution that known reductions in budget or authorized number of positions have required the elimination of nontenured positions and operating expenditures to such a point that further reductions in these categories would seriously distort the academic programs of the institution; hence, further budget or position reductions would require the nonreappointment of tenured members of the faculty or **the failure to meet the standards of notice for nonreappointment of faculty**. . ." Emphasis added. Doc. 1-2, p. 29.

PERSONNEL RETRENCHMENT POLICY—a policy and process when financial exigency is declared and elimination of tenured positions is considered). Under both the Financial Exigency and Personnel Retrenchment policies which were not modified by KBOR's WMP or ESU's Framework, ESU was required to provide notice, explanation, and procedure such as open hearings, committee work and transparency, etc. Neither policy was followed. Given the facts[3] that the court must assume to be true for the purposes of this motion, which is that evidence suggests there was not a real financial exigency, let alone that ESU/KBOR followed its policies to prove a financial exigency, Defendants' actions were not objectively reasonable to be shielded by qualified immunity.

### E.   Plaintiffs adequately alleged their constitutional claims with specificity.

Defendants argue that Plaintiffs failed to allege their constitutional claims with specificity. Defendants cite *Robbins v. Oklahoma, infra*, arguing "that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." 519 F.3d 1242, 1249–50 (10th Cir. 2008) (emphasis in original). In *Robbins*, one of the plaintiff's complaints grouped all the defendants together by listing "Defendants" without providing any other explanation as to which defendants she was referring to. *Id.* at 1250. The plaintiff sued the Director of DHS in his individual capacity, the private owner and operator of a daycare, and individual social workers, all of which "are entirely different in character and therefore are mistakenly grouped in a single allegation." *Id.* The Court of Appeals found in *Robbins* that, "Given

---

[3] Doc. 1 at ¶¶ 45-50, 57-59, 61 (Board was successful in obtaining state funding increases), 62 (for the 2022-2023 academic year, ESU was funded 100%), 70-71, 75-76 (ESU acknowledges tenured faculty member's right to additional employment protections in the event of a "for cause" termination, 87-88, 95 (awarding $137,741 in bonuses just a few months after notifying tenured faculty they would be terminated due in part to financial conditions), 96 (Hush's pay increase).

the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

While the plaintiff in *Robbins* listed and identified the defendants in her claims as "Defendants" without clarification, Plaintiffs have identified the actions of each Individual Defendant in the following paragraphs of Doc. 1:

Shane Bangerter: ¶¶ 53-56, 141; Blake Benson: ¶¶ 69, 70, 142; Ann Brandau: ¶¶ 53-56, 141; John Dicus: ¶¶ 69, 70, 142; Bill Feuerborn: ¶¶ 53-56, 63, 141; Cheryl Harrison-Lee: ¶¶ 53-56, 63, 69, 70, 141, 142; Mark Hutton: ¶¶ 53-56, 141; Carl Ice: ¶¶ 63, 69, 70, 141, 142; Shelly Kiblinger: ¶¶ 53-56, 63, 69, 70, 141, 142; Cynthia Lane: ¶¶ 63, 69, 70, 141, 142; Diana Mendoza: ¶¶ 69, 70, 142; Julene Miller: ¶¶ 53, 63, 140, 141; Jon Rolph: ¶¶ 53-56, 63, 69, 70, 141, 142; Allen Schmidt: ¶¶ 53-56, 63, 141; Helen Van Etten: ¶¶ 53-56, 141; Wint Winter: ¶¶ 63, 69, 70, 141, 142; Ken Hush: ¶¶ 69, 70, 72, 74, 96, 100, 136, 141; Brent Thomas: ¶¶ 64, 69, 141; Kevin Johnson: ¶¶ 46, 74, 91, 101, 136, 141; Steven Lovett: ¶¶ 60, 72, 136, 141; John Doe: ¶¶ 38-40, 51, 120, 126, 140, 149, 169, 187.

Plaintiffs have also referenced Defendants ESU and KBOR as institutions and their actions: regarding ESU, see ¶¶ 48-50, 52, 57, 58, 60, 62, 64, 69-72, 74-90, 92-95, 98-101, 103, 105, 110, 113-4, 119-22, 124, 126, 129, 134, 142-44, 148-51, 153, 156, 161, 169, 170, 172, 175, 177, 180, 184, 187-8, 190, 193, 195, 201-03, 205, 208, 213, 220, 223-26, 233-35, 238, 245, 249, 250, 254-55, 262, 266-67, and 271, and regarding KBOR see ¶¶ 45, 47, 50, 53, 55, 57-61, 69-72, 74-5, 82-5, 89, 96, 98, 100, 101, 103, 110, 119, 126, 129, 134, 136, 148, 161, 184, 195, 201, 220, 225, 234, 238, 254, 255, and 271-72.

Further, courts have allowed pleading against a collective group of defendants in certain situations. *See Estate of Ward by and through Stamp v. Pueblo Cnty.*, Colo., 2023 WL 4744928, at *7 (D. Colo. July 25, 2023) ("…other courts have allowed pleading against a collective group of defendants where it would be 'unfair to require Plaintiff to…identify which specific Defendant

committed which specific act during the incident in question…based on the circumstances alleged.' "); *see e.g., Birdsong v. Unified Gov't of Kansas City, Kan.*, 2014 WL 2216904 at *4 (D. Kan. May 29, 2014) (not reported) ("While [the plaintiff] refers to the collective "defendants" in Count 3, he is only referring to four specific Defendants out of the fourteen Defendants named in the case.).

As the *Robbins* court stated, asserting claims with specificity separates the actions against individuals from collective actions against the state. *Robbins*, at 1249–50. Even though Plaintiffs did in fact specifically name each Individual Defendant, as well as ESU and KBOR, along with their specific actions, Plaintiffs also grouped together like Defendants, just as in the *Estate of Ward* case, and also provided a list of which Defendants were subjected to each grouping. Plaintiffs grouped together Individual Defendants based on their actions they took against Plaintiffs.

Plaintiffs grouped together all Individual Defendants, which separates actions against them from actions against KBOR and ESU. See Compl. at ¶¶ 116, 140, 161, 163-165, 168, 181, 198, 199, 216, 217, 241, 242, 248, 251, 258, 265, and 268. Plaintiffs' proposed Amended Complaint makes this even clearer.

Plaintiffs even divided the Individual Defendants by categorizing them as KBOR Individual Defendants and ESU Individual Defendants. KBOR Individual Defendants include Shane Bangerter, Blake[4], Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Mark Hutton, Carl Ice, Shelly Kiblinger, Cynthia Lane, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Helen Van Etten, Wint Winter and John Doe, Compl. at ¶ 39, and are referenced in paragraphs 51, 52, 57, 58, 59, 66, 67, 89, 101, 120, 126, 149, 159, 169, 187, 202, 225, 234, and 238. ESU Individual Defendants include Ken Hush, Brent Thomas, Kevin Johnson,

---

[4] While Blake isn't listed in the original complaint where described as an "KBOR Individual Defendant," it can be inferred because of the pleading about him. This is corrected in the proposed amended complaint.

Steven Lovett, and John Doe, Compl. at ¶ 40, and are referenced in paragraphs 51, 52, 66, 67, 89, 101, 120, 126, 128, 143, 144, 149, 157, 159, 169, 176, 187, 194, 202, 209, 225, 234, 247, and 264.

Plaintiffs also listed ESU Individual Defendants, ESU, KBOR Individual Defendants, KBOR, and John Doe as Conspirators. Compl. at ¶ 126. Conspirators are specifically identified as to their actions in paragraphs 127, 155, 156, 162, 174, 175, 192-3, 196, 207-8, 215, 239, 256, and 273.  As such, Plaintiffs have pleaded with specificity against each Defendant. However, Plaintiffs plan to amend their Complaint to clarify the actions of specific Defendants and their knowledge that tenure is a property right in Kansas that requires due process.

**F. Due to the limitation of Defendants' own Framework and Kansas law, the so-called state law remedy of appeal is to no avail, but the argument may be moot.**

First, this court can exercise supplemental jurisdiction of Plaintiffs' state law claims for conspiracy because Counts 8-10 are related to the federal counts. Second, there are other compelling reasons to hear this claim; namely that the due process allegedly provided by the Framework and WMP was so inadequate that it could not provide the plaintiffs with (1) redress even under the KJRA petitions for review because the underlying right to appeal was too narrowly tailored, discovery was not permitted, and the state court's review is limited; and (2) *Praeger* and cases concerning state sovereignty presume that the state actor is able to provide some level of fundamental fairness to its citizens, but in this unique case, that did not happen. Further, as pleaded, Individual Defendants continue to violate Plaintiffs' due process rights. That said, Plaintiffs' proposed Amended Complaint abandons Counts 8-10 but asserts a Section 1983 conspiracy claim.

**G. Plaintiffs' conspiracy claims are adequately pleaded.**

Section 1985 grants a cause of action to anyone subjected to a conspiracy to deprive that person of "the equal protection of the laws, or of equal privileges and immunities under the laws…." 42 U.S.C. § 1985(d). A § 1983 conspiracy claim requires that plaintiffs allege both (1) a

conspiracy, and (2) an action to deprive plaintiff of equal protection or equal privileges and immunities. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). To plead the conspiracy element, a plaintiff must allege "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), *abrogated on other grounds*, *Torres v. Madrid*, 141 S. Ct. 989 (2021). Tenth Circuit law, for a viable conspiracy claim, requires "specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

Section 1985(3) applies to conspiracies motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. A Section 1985(3) claimant must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class. *Ellibee v. Hazlett*, 122 Fed. Appx. 932, 935, 2004 WL 2850097 at *2 (10th Cir. 2004). Although the Tenth Circuit has not expanded Section 1985 to cover a class based on political loyalty or association, or teachers, it has not addressed a class of tenured professors who are both union sympathizers and faculty senate members, and a conspiracy against academic freedom. For purposes of a Section 1985(3) conspiracy claim, Plaintiffs plead that they are a class of tenured professors who are problematic leaders at ESU (having served on faculty senate and knowing policies and rules) and being union sympathizers. Further, employees who are trying to organize a union or advocating collective bargaining rights are protected by federal law under the National Labor Relations Act, and thus Plaintiffs meet the element required for being a member of a statutorily protected class. 29 U.S.C. §§ 151-169. Further, under *Tonkovich*, tenure is arguably recognized as a protected class. Plaintiffs have alleged a conspiracy with enough specificity to survive this motion.

Here, Plaintiffs are not alleging racial animus. Rather, their claims are based on "other class-based factors" --- tenure status, union sympathizers/organizers and faculty senate members or former members. For Plaintiffs' conspiracy theory, see Doc. 1 at ¶ 51-52.  Counts V, VII and VIII as they allege that Plaintiffs share a common classification as "tenured," and people who were, or were perceived to be "problematic" to the ESU Administration for the reasons plead. The classification of being "tenured" motivated the Defendant Conspirators; that the Conspirators had personal animus against Plaintiffs; and that one or more of the Conspirators believed Plaintiffs were problematic and used the WMP to terminate the tenured Plaintiffs. Defendants conspired and took action to deprive Plaintiffs of their liberty interest without due process and with knowledge that tenure was a protected property right. The injury is no due process, loss of job and benefits, damage to reputation, and loss of ability to maintain tenure. Doc. 1 at ¶¶ 147-165, 83-199, and 200-218.

The main case that Defendants cite is at the summary judgment stage, as are several cases on the issue, after discovery when the elements of a 1985(3) claim could properly be analyzed by the court. *Busey v. Board of County Com'rs of County of Shawnee, Kansas*, 277 F.Supp. 2d 1095 (D. Kan. 2003). Since no discovery has taken place, dismissal at this stage would be premature. Afterall, the nature of conspiracies often makes it impossible to provide details at the pleading stage and the pleader should be allowed to resort to discovery processes and not be subject to dismissal of the complaint. *Brever v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994).

The second part of Section 1985(2) recognizes an action for persons conspiring to obstruct justice in state proceedings. This part requires that the conspirator's actions be motivated by an intent to deprive their victims of the equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 726, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). There is no class-based animus requirement for a

second part of a § 1985(2) claim. Plaintiffs have specifically pleaded the limited considerations available on appeal of ESU's notice of termination which was approved by KBOR and virtually repeated the language of KBOR's WMP and was pursuant to ESU's Framework. The limited nature of what the OAH's administrative law judges could consider was noted by several judges. Doc. 1 at ¶¶ 72 and 55, and Doc. 1-12.  Neither the WMP nor ESU's Framework provide for an avenue of appeal of the OAH's decisions, although ESU has filed petitions for review in several of the tenured Plaintiffs' cases. There is enough information pleaded to support a claim of conspiracy under the second part of Section 1985(2). Further, Plaintiffs' proposed amended complaint will remedy any issues the court may find.

This court should not override Tenth Circuit precedent which does not recognize the intra-corporate conspiracy doctrine especially in the civil rights context as is applicable here. *Brever v. Rockwell Intern. Corp.*, 40 F.3d at 1127.

**H. The state court proceedings do not preclude this federal case or claims.**

At the outset, Defendants are once again trying to bar the method and pursuit of justice for Plaintiffs by barring them from litigating any issue concerning "bias" or "discrimination" because those were two of only three factors which were allowed to be considered on appeal to OAH.

**A. Preclusion is not applicable.**

Plaintiffs believe that Kansas preclusion law applies concerning state law claims but federal preclusion law applies concerning Plaintiffs' federal claims. *See Herington v. City of Wichita*, 314 Kan. 447, 500 P.3d 1168 (Kan. 2021). If this court applies Kansas issue preclusion law to the underlying Kansas agency action, preclusion does not apply because the same claims were not at stake in Plaintiffs Koerner's, Lidzy's, Lovett's, and McCoy's cases as compared to their federal claims, the same parties were not involved (none of the Individual Defendants were

parties to the case, nor was KBOR), and some of these claims were not raised, nor could not have been raised before OAH, especially considering the narrow ability to appeal and disallowance of discovery or calling of witnesses (see argument below). *In re Application of Fleet for Relief from a Tax Grievance in Shawnee County,* 293 Kan. 768, 272 P.3d 583, 589-90 (Kan. 2012).

If this court applies Federal issue preclusion law, preclusion only applies where the basic requirements are met, i.e., "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim." *B&B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. 138, 135 S.Ct. 1293, 1303, 191 L.Ed. 2d 222 (U.S. 2015). In *Eby v. United States,* 133 Fed. Cl. 706, 710 (U.S. Ct. Fed. Cl. 2017), the government tried to argue that the EEOC's findings concerning a reprisal claim had preclusive effect to a subsequent lawsuit concerning a settlement agreement involving the same parties and an employment discrimination claim. It was not evident whether the claim was actually litigated and there was no determination concerning the settlement agreement. Also, even if the EEOC awarded the complainant damages, there was evidence that she had not actually received most of that relief and therefore the effects of the employer's breach of contract had not been completely and irrevocably eradicated.

In *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004), the Tenth Circuit examined whether the Salguero "had a full and fair opportunity to litigate an issue" and, focused on "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." Salguero was represented by counsel. He was able to call witnesses, cross-examine witnesses and present other evidence. *Id.*

Plaintiffs were not able to call witnesses or cross-examine witnesses. Although they could attach documents to their letter of appeal, they could not introduce any evidence or do any discovery. There is no evidence in the Complaint or Answer that establishes whether attorneys represented any of the Plaintiffs at the hearing[5], although ESU only had attorneys Johnson and Lovett present at many of the hearings. Clearly, a full and fair opportunity to litigate the issue of whether the termination was biased or discriminatory was not litigated. Moreover, the administrative hearing judgments had a limited review in Plaintiffs Lovett's, McCoy's, Koerner's, and Lidzy's cases. Only ESU was a party to the OAH hearing, and no Individual Defendants were present. Further, Plaintiffs' federal claims encompass the problematic procedural limitations established by KBOR's WMP and ESU's Framework, and the full effect of those limitations could not have been realized until the ALJs issued their opinions, which means the same issue could not have been litigated in the OAH hearings and will not be considered by the state court. Further, Plaintiffs did not have a fair chance to even argue or prove "bias" because their notices were so broad, they did not have proper notice of the reason ESU was terminating them, regardless of any ALJ decision; all Plaintiffs received formulaic notices of termination.

Defendants seek dismissal of Koerner's, Lidzy's, Lovett's, and McCoy's First Amendment retaliation claims (Counts 11 and 13) because they require a finding of bias. The elements of a First Amendment retaliation claim do not require proof of bias. *Martley v. Basehor, Kansas, City of,* 537 F.Supp. 3d 1260 (D. Kan. 2021); *Douglass v. Garden City Community College,* 652 F.Supp.3d 1329, 1347 (D. Kan. 2023) (to show "substantial motivation" of the alleged offender, the court looks at whether defendants "acted on the basis of a culpable subjective state of mind"). The first amendment issue was not decided or litigated by these Plaintiffs in their OAH appeals

---

[5] To the undersigned's knowledge, only Plaintiff Christopher Lovett had an attorney present at his hearing.

and thus preclusion does not apply.

### B. Pullman Abstention

"Pullman doctrine is limited to uncertain questions of state law." *Hawaii Hous. Auth. V. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (citing *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236). The federal court should not abstain from exercising jurisdiction to decide the federal constitutional claim where there is no ambiguity in the state statute. *Marie v. Moser,* 65 F.Supp.3d 1175, 1196 (D. Kan. 2014); see also *Zwickler v. Koota*, 389 U.S. 241, 251, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (a federal court should not abstain under *Pullman* simply to give a state court the first opportunity to decide a federal constitutional claim).

Defendants have cited no case law or statute which indicates there is ambiguity or uncertainty in the Kansas laws concerning tenure. The purpose of abstaining under *Pullman* is to avoid unnecessary state-federal friction where deference to a state court decision may negate the federal question involved. That concern is missing here, so *Pullman* should not be applied.

Staying the case until the state proceedings are completed will likely not resolve any issue of tenure in Kansas because the state proceedings are so narrowly focused under the KJRA. Under the KJRA, the party challenging an agency order has the burden of showing to the district court that the agency's order is invalid. See K.S.A. 77-261(a)(1); *cf.* K.S.A. 77-621(c) (setting out the eight standards under which this court shall grant relief). Moreover, the state district court will be focusing on whether the agency's action was arbitrary and capricious. *Denning v. Johnson Cty., Sheriff's Civil Serv. Bd.*, 46 Kan. App. 3d 688, 701, 266 P.3d 557 (2011) *aff'd sub nom. Denning v. Johnson Cty.*, 299 Kan. 1070, 329 P.3d 440 (2014). The OAH administrative law judge's orders do not focus on tenure, rather they focus on whether the termination notices complied with ESU's Framework and KBOR's WMP. Thus, *Pullman* is inapplicable.

### C.  Colorado River Abstention

The circumstances appropriate for abstention under *Colorado River "*are 'considerably more limited than the circumstances appropriate for abstention' and must be 'exceptional.'" *BNSF Ry. Co. v. Brown*, 250 F.R.D. 544 (2008) (citing *Rienhardt v. Kelly*, 164 F.2d 1296, 1302 (10th Cir. 1999). The Court must determine whether there exists some exceptional circumstance and the clearest of justification to use this doctrine. *Id.* For this court to even apply *Colorado River*, there must be a showing that the state lawsuit and this federal suit are parallel, and that is where the analysis stops because they are not. *Id*. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.*

The state proceedings are not parallel.  First, the parties are not completely the same. Four Plaintiffs are not even involved in the state cases and the Individual Defendants are not parties in the state cases. The remedy sought by ESU in the state cases is a reversal of the reinstatement orders and an injunction. There are no money damages sought in the state cases. The defense in the state cases is based on KSA 77-621(a)(1) which is not at issue in this case. The state court action will not dispose of all claims before this Court as Plaintiffs did not initiate or assert Plaintiffs' federal constitutional claims under Section 1983 or Plaintiffs' ADEA claim asserted in its proposed First Amended Complaint. Nor do the state cases involve Defendants' action in placing the seven reinstated professors on administrative leave from engaging in those academic activities necessary to maintain tenure.  Under *BNSF Railway Company*, the Court should deny Defendants motion on this issue as the cases are not parallel and this court should exercise jurisdiction.

The eight factors favored by the Tenth Circuit also favor Plaintiffs on this issue. Four of the eight are discretionary. See *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). The first

factor is not present. The second factor weighs in favor of Plaintiffs since there are multiple plaintiffs and defendants who reside around the state of Kansas and outside Lyon County (where the state cases are pending). The third factor is not pronounced in this case because the state court is only considering whether to overturn reinstatement under a limited standard of review. Further, K.S.A. 77-617 limits new issues that are available in the state court's review, and judicial review is confined to the agency record (which contained no discovery, witness testimony, etc.). See K.S.A. 77-618. Receipt of additional evidence in the state case is completely discretionary. K.S.A. 77-619. The order in which the courts obtained jurisdiction is a required fourth factor that favors Plaintiffs since not all the state cases were filed until after the federal filing—and of course no state cases involving four Plaintiffs.

Out of the four discretionary factors, the majority weigh in favor of the federal court exercising jurisdiction. The federal law provides the rule of decision on the federal constitutional arguments and interpretation of *Tonkovich*. Plaintiffs have simply not asserted their 1983 money judgment claims against the individual defendants in any other forum than this Court. As such, balancing all factors results in this court exercising jurisdiction in the federal case.

Lastly, regarding the reinstated Plaintiffs, each has a duty to mitigate the damages caused by the Individual Defendants' actions in violation of their constitutional rights. The seven Plaintiffs' "action" in opposing the ESU appeals under the KJRA is nothing more than a reasonable step to mitigate their damages. Yet, Defendants argument serves to simply punish Plaintiffs for trying to minimize the damages caused by Defendants. Opposing the ESU appeals in no way precludes Plaintiffs' claims against the Individual Defendants.

**IV.  CONCLUSION**

For the foregoing reasons, and others, the Motion should be denied.

Plaintiffs' respectfully request oral argument and all matter concerning this pleading.

Respectfully submitted,

/s/ J. Phillip Gragson
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
HENSON, HUTTON, MUDRICK,
   GRAGSON & VOGELSBERG, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
(785) 232-2200; (785) 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on this 26th day of December, 2023 with the clerk using the EM-ECF system which will send notice to all parties of record.

/s/ J. Phillip Gragson
*Attorneys For Plaintiffs*