Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMANDA MIRACLE, | ) |
| CHRISTOPHER LOVETT, | ) |
| MICHAEL BEHRENS, | ) |
| ROB CATLETT, | ) |
| DAN COLSON, | ) |
| CHARLES EMMER, | ) |
| BRENDA KOERNER, | ) |
| SHERYL LIDZY, | ) |
| MAX MCCOY, | ) |
| MICHAEL MORALES, | ) |
| AND LYNNETTE SIEVERT. | ) |
|           Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 23-4056-JAR -GEB |
| | ) |
| PRESIDENT KEN HUSH, | ) |
| ~~EMPORIA STATE UNIVERISTY,~~ | ) |
| ~~KANSAS BOARD OF REGENTS,~~ | ) |
| PROVOST AND VICE PRESIDENT OF | ) |
| ACADEMIC AFFAIRS BRENT THOMAS, | ) |
| GENERAL COUNSEL | ) |
| KEVIN JOHNSON, | ) |
| STEVEN LOVETT, | ) |
| JULENE MILLER, | ) |
| BILL FEUERBORN, | ) |
| CHERYL HARRISON-LEE, | ) |
| SHANE BANGERTER, | ) |
| ANN BRANDAU, | ) |
| MARK HUTTON, | ) |
| SHELLAINE KIBLINGER, | ) |
| JON ROLPH, | ) |
| ALLEN SCHMIDT, | ) |
| HELEN VAN ETTEN, | ) |
| CARL ICE, | ) |
| CYNTHIA LANE, | ) |
| BLAKE BENSON, | ) |
| DIANA MENDOZA, | ) |
| WINT WINTER, JOHN DICUS, AND | ) |
| JOHN DOE | ) |
|           Defendants. | ) |

## FIRST AMENDED COMPLAINT

Comes now Plaintiffs Christopher Lovett, Amanda Miracle, Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Max McCoy, Michael Morales, and Lynnette Sievert, ("Plaintiffs") and for their claims against Defendants named above, state and allege as follows:

## NATURE OF ACTION

This action is brought pursuant to 42 U.S.C. § 1983, 1985 and 1988 to redress violations of Plaintiffs' constitutional rights by the Individual Defendants. Specifically, Plaintiffs in this action possess the property right in tenure in connection with their employment at the Emporia State University ("ESU"). The Individual Defendants, each of them, participated in a multitude of conspiracies to terminate Plaintiffs, and others of similar background and status as tenure, and denial of Due Process Right under the Fourteenth Amendment. Plaintiffs also assert claims against ~~Defendants ESU~~ Ken Hush ~~and the Individual~~ Kansas Board of Regents ("KBOR") ~~Defendants (except for Julene Miller), in their official capacity,~~ under the Age Discrimination In Employment Act ("ADEA").

## JURISDICTION AND VENUE

1.  This Court possesses subject matter jurisdiction to hear these claims pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2.  The amount in controversy exceeds $75,000.00 exclusive of costs and interests for each Plaintiff.

3.  Venue is proper as all claims occurred in the State of Kansas and the conduct of some of the Defendants occurred in Shawnee County, Kansas.

4.      All conditions precedent to the filing of this Amended Complaint have been satisfied~~, including but not limited to Plaintiffs' submitting a charge to the EEOC on their ADEA claims and more than sixty (60) days have passed since the submission of the charge.~~.

**<u>PARTIES</u>**

5.      Plaintiff Christopher Lovett is a resident of Shawnee County, Kansas. Plaintiff Daniel ("Dan") Colson is a resident of Butler County, Kansas. The remaining Plaintiffs are residents of Lyon County, Kansas.

6.      Plaintiff Max McCoy is an alumnus of <u>Emporia State University ("</u>ESU<u>")</u> and was hired by ESU in 2006. Professor McCoy was awarded tenure in 2011 and became a full professor in 2017. Professor McCoy was a Professor of Journalism and is over the age of forty (40).

7.      Plaintiff Rob Catlett was hired by Emporia Kansas State College (EKSC), now ESU, in August 1976 and earned tenure in 1984 in the Division of Social Science. He was promoted to Associate Professor in the Department of Mathematics and Economics in 2018. In 1977 and 1978, ESU invited him to apply as part of ESU's national search for an economist for a tenure-track position and is over the age of forty (40).

8.      Plaintiff Michael Behrens was hired by ESU in August 2014 and was awarded tenure and promoted to Associate Professor in the department of English, Modern Languages and Journalism in 2020 and is over the age of forty (40).

9.      Plaintiff Sheryl Lidzy was hired by ESU in August 2006 and became tenured as an Associate Professor in the Department of Communication & Theatre in 2011 and is over the age of forty (40).

10.     Plaintiff Amanda Miracle was hired by ESU in August 2009 and earned tenure in 2015. She was an Associate Professor in the department of Social Sciences, Sociology and Criminology and is over the age of forty (40).

11.     Plaintiff Dan Colson was hired by ESU in August 2012 and received tenure in 2018. He was promoted to full professor after he received notice of his termination. Provost Thomas and President Hush approved his promotion after September 2022 and is over the age of forty (40).

12.     Plaintiff Christopher Lovett was hired by ESU in December 1995 and became tenured and was awarded to full professorship in 2006. He was employed in the Department of Social Sciences, Sociology and Criminology and is over the age of forty (40).

13.     Plaintiff Lynnette Sievert was hired by ESU in 1996, granted tenure and promoted to associate professor in 1999, and became a full professor in 2005. Upon hire, ESU recognized three years of her experience toward tenure. Dr. Sievert was employed as a Professor of Biology and is over the age of forty (40).

14.     Plaintiff Charles Emmer was employed by ESU in May 2005 and earned tenure with his promotion to associate professor in August 2012. Professor Emmer was promoted to full professor in 2017. He was employed in the Department of Social Sciences, Sociology, and Criminology and is over the age of forty (40).

15.     Plaintiff Brenda Koerner was hired by ESU in August 2005 and became an associate professor in 2014. Dr. Koerner worked in the Department of Biological Sciences and is over the age of forty (40).

16.     Plaintiff Michael Morales was hired by ESU in or about August 1997 and became tenured as an Associate Professor of Physical Sciences on or about January 2004 and is over the age of forty (40).

17.1.   ~~Defendant,~~ The ~~Kansas Board of Regents ("KBOR"), 1000 SW Jackson St, Topeka, KS 66612, is an official body of the state of Kansas charged with supervising and administering to postsecondary education institutions, including ESU, in the Kansas Regents System under established law pursuant to the Kansas Higher Education Coordination Act, K.S.A. § 74-3201a, et seq.~~

~~18.    Defendant, Emporia State University ("ESU"), 1 Kellogg Circle, Emporia, KS 66801, is a state educational institution overseen by KBOR and is the presently the employer of seven Plaintiffs ESU placed on administrative leave and former employer of Plaintiffs Lovett, McCoy, Lidzy, and Koerner.~~

~~19.~~17.  Defendant Ken Hush at all times relevant to this action was the interim president and or president of ~~Emporia State University ("~~ESU~~")~~. As such, he was a duly appointed agent authorized to act under authority of the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity and also in his official capacity only to the extent Plaintiffs seek prospective injunctive relief for a continuing violation of law. He may be served with process at Emporia State University, 1 Kellogg Circle, Plumb Hall, Room 202K, Box 4001, Emporia KS 66801.

~~20.~~18.  Defendant Brent Thomas at all times relevant to this action was Dean of the College of Liberal Arts & Sciences, and/or Provost and Vice President for Academic Affairs at ESU. As such, he was a duly appointed agent authorized to act under the authority of the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at Emporia State University, 1 Kellogg Circle, Box 4010, Emporia KS 66801.

21.19.  Defendant Kevin Johnson at all times relevant to this action was General Counsel for ESU, as well as a tenured member of the ESU School of Business faculty with the academic rank of professor. As such, he was a duly appointed agent authorized to act under the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at Emporia State University, 1 Kellogg Circle, Plumb Hall, Room 202D, Box 4001, Emporia KS 66801.

22.20.  Defendant Steven Lovett at all times relevant to this action was the Associate General Counsel (later reclassified as the Associate General Counsel for Academic Affairs in 2022) and an Associate Professor of Business Law and Ethics at ESU. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at Emporia State University, 1 Kellogg Circle, Cremer Hall, Room 404, Campus Box 4039, Emporia KS 66801.

23.21.  Defendant Cheryl Harrison-Lee at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

24.22.  Defendant Shellaine Kiblinger at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment

at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

25.23.  Defendant Carl Ice at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

26.24.  Defendant Cynthia Lane at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

27.25.  Defendant Wint Winter at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

28.26.  Defendant Julene Miller at all times relevant to this action was general counsel for the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment

at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

29.27.  Defendant Bill Feuerborn at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

30.28.  Defendant Shane Bangerter at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

31.29.  Defendant Mark Hutton at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

32.30.  Defendant Jon Rolph at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State

of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

33.31.  Defendant Allen Schmidt at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

34.32.  Defendant Ann Brandau, formerly Ann Brandau-Murguia, at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

35.33.  Defendant Helen Van Etten at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

36.34.  Defendant Blake Benson at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of

the State of Kansas and acted under the color of law under the authority of his employment at all times relevant to this action. He is sued in his individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

37.35.  Defendant Diana Mendoza at all times relevant to this action was a member of the Kansas Board of Regents. As such, she was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of her employment at all times relevant to this action. She is sued in her individual capacity. She may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

38.36.  Defendant John Dicus at all times relevant to this action was a member of the Kansas Board of Regents. As such, he was a duly appointed agent authorized to enact the laws of the State of Kansas and so acted under the color of law under the authority of his employment at all times relevant to this action.  He is sued in her individual capacity. He may be served with process at the Kansas Board of Regents, 1000 SW Jackson Street, Suite 520, Topeka, KS 66612-1368.

39.37.  Defendants John Doe at all times relevant to this action were involved in the drafting of the amendment to the Kansas Board of Regents' temporary amendment to the Suspension, Terminations and Dismissals policy ("Workforce Management Policy" or "WMP") or ESU's Framework for Workforce Management. Discovery is needed to determine the creators of KBOR's WMP and ESU's Framework.

40.38.  For purposes of this Complaint, all Individual Defendants who acted on behalf of, in the capacity of a member or employees of KBOR will be hereinafter referred to as KBOR Individual Defendants. The KBOR Individual Defendants include: Shane Bangerter, Ann

10

Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Mark Hutton, Carl Ice, Shelly Kiblinger, Cynthia Lane, Diana Mendoza, Blake Benson, Julene Miller, Jon Rolph, Allen Schmidt, Helen Van Etten, Wint Winter and John Doe unless otherwise expressly stated.

39. For purposes of this Complaint, all Individual Defendants who acted on behalf of or as employees of ESU will be referred to as ESU Individual Defendants herein. The ESU Individual Defendants include: Ken Hush, Brent Thomas, Kevin Johnson, Steven Lovett, and John Doe unless otherwise expressly stated. The KBOR Individual Defendants and the ESU Individual Defendants are also collectively referred to as Individual Defendants herein.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

41.

40. The Kansas Board of Regents ("KBOR"), 1000 SW Jackson St, Topeka, KS 66612, is an official body of the state of Kansas charged with supervising and administering to postsecondary education institutions, including ESU, in the Kansas Regents System under established law pursuant to the Kansas Higher Education Coordination Act, K.S.A. § 74-3201a, et seq.

41. Defendant, Emporia State University ("ESU"), 1 Kellogg Circle, Emporia, KS 66801, is a state educational institution overseen by KBOR and is the present or former employer of Plaintiffs. ly the employer of seven five Plaintiffs ESU placed on administrative leave and former employer of Plaintiffs Lovett, McCoy, Lidzy, and Koerner.

42. The only relief being sought against the institutional Defendants KBOR and ESU is under the Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) (ADEA), as amended § 29 U.S.C. 621 et. seq.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11

43.42.  Before January 20, 2021, the clearly established law regarding tenure under Kansas law was that it was a property right. This is subject to procedural and substantive due process protections under the Fifth through Fourteenth Amendments to the United States Constitution. See *Gorham v. City of Kansas City*, 225 Kan. 369; *Kosik v. Cloud County Community College,* 250 Kan. 507, 512 (1992). The Kansas Supreme Court recognized in *Kosik*:

> To be entitled to due process Dr. Kosik must have a property interest in his continued employment with CCCC. State law rather than the United States Constitution must provide the source of this property interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Once the State has conferred a property interest, ***the property interest cannot be taken without constitutional, procedural due process***. 470 U.S. at 541, 105 S.Ct. at 1492. In Kansas, a public employee who may be discharged only "for cause" has a property interest in continued employment. *Gorham v. City of Kansas City*, 225 Kan. 369, Syl. ¶ 1, 590 P.2d 1051 (1979).
>
> The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Citing Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). (Emphasis added.) *Id. at* 513

See also, *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (1998), wherein the Court said:

> Because Professor Tonkovich was a tenured professor, he possessed a property interest deserving of procedural due process protections. *Brenna v. Southern Colo. State College*, 589 F.2d 475, 476 (10th Cir.1978); see also *Board of Regents v. Roth*, 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 535, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court examined the issue of "what pretermination process must be accorded a public employee who can be discharged only for cause." In deciding this issue, the Court balanced the competing interests at stake: "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Id*. at 542–43, 105 S.Ct. 1487 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Court concluded that prior to termination, something less than a full evidentiary hearing is sufficient. *Id*. at 545, 105 S.Ct. 1487. Thus, the Court held that a "tenured public employee is entitled to oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story." *Id*. at 546, 105 S.Ct. 1487.

Because Professor Tonkovich was a tenured professor, the law in this Circuit is that he possessed "a property interest deserving of ... substantive protections of the Fourteenth Amendment." *Brenna*, 589 F.2d at 476. Substantive due process requires that the termination of a tenured professor's property interest not be "arbitrary, capricious, or without a rational basis." *Id*. at 477. The Supreme Court has "emphasized time and again that [t]he touchstone of due process is protection of the individual against arbitrary action of government...." *Lewis*, 118 S.Ct. at 1716 (quotation omitted).

*Id*. at 528.

44.43.  The *Tonkovich* Court made it very clear, "[t]he federal courts, and not the University of Kansas, are responsible for establishing the contours of the Due Process Clause of the Fourteenth Amendment." *Id*. at 522.

45.44.  These Due Process protections for the property interest of tenure in Kansas require a *pre-termination hearing* before the deprivation of tenure as a property right. See *Tonkovich* above and *Kosik* at 512-13, recognizing:

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, the United States Supreme Court discussed due process requirements in terms of terminating public employees who had property interests in continued employment under applicable Ohio statutes. The Court stated: "An essential principle of due process is that a deprivation of life, liberty, or property '***be preceded by notice and opportunity for hearing appropriate to the nature of the case***.' " 470 U.S. at 542, 105 S.Ct. at 1493. (Emphasis added).

46.45.  The Kansas Board of Regents and ESU's sister institution, Kansas University, were parties in *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (1998), and KBOR's members are charged with actual knowledge of the clearly established law set forth in *Tonkovich.*

47.46.  On or about February 12, 2015, Defendant Kevin Johnson, ESU's general counsel, co-wrote a paper entitled: "Social Media and Public Higher Education Employment," relevant portions attached hereto as Exhibit 1, which states, in part:

A government employee is entitled to constitutional procedural due process only when the employee has been deprived of a protected property or liberty interest. See *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). Public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process. *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120, 126 (1997). Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. Exhibit 1 at 26-27.

Tenured faculty members of any academic rank also have a clear expectation of continued employment based on both university policy and the policies of the university's governing board…. *Id.* at 24.

The termination of employment of a member of the faculty of an institution of higher education does require an examination of a faculty employee's due process rights in their employment. Tenured faculty members, as the Professor in the model case, do have procedural due process rights in their employment…. *Id.*

Tenure is an academic status granted by a university to one of its own faculty members…. Once granted, tenure gives a faculty member an expectation of continued employment at the institution that conferred tenure. (See Section 4, Number 3 At-Will Employment and Number 4 Constitutional Due Process Requirements, supra. Inserted in Exhibit 1) For purposes of this article, the only issue with regard to tenure is whether or not the faculty member has tenure at the time they are given notice of termination. ***A tenured faculty member at any institution of higher education clearly has an expectation of continued employment and is entitled to procedural due process rights as a condition of termination of employment….*** *(emphasis added). Id.* at 33.

48.47.  Before January 21, 2022, KBOR policy mandated that "[f]aculty who have been awarded tenure may be terminated only for adequate cause, except in the case of program or unit discontinuance or under extraordinary circumstances because of financial exigency." KBOR Policy Manual at p. 1-13, attached as Exhibit 2.

49.48.  All Plaintiffs earned tenure under ESU's policies before January 21, 2022, which provides, in part:

1A. 0102 Academic Tenure
An academic tenure appointment is a continuous, full-time, academic position for faculty with tenure. Tenured appointments will be annually renewed. Termination of a tenured faculty member must follow appropriate policies and procedures.

14

Exhibit 2 at p. 1-1.

…

1B.0805.01 Board of Regents Policy for Tenure (revised 2/05)
1. After the expiration of a probationary period, teachers or instructors should have permanent or continuous tenure, and their services should be terminated only for adequate cause, except in the case of program or unit discontinuance or under extraordinary circumstances because of financial exigency. (2/19/97)

Exhibit 2 at p. 1-13.

1B.0805.02 University Policies and Procedures for Tenure (FSB 80004 approved by President 12/9/80; FSB 88001 approved by President 10/28/88; FSB 05007 approved by President 5/3/06; FSB 07003 approved by President 2/4/08; FSB 19001 approved by President 10/15/2019)
Emporia State University shall award permanent status to faculty members who have been judged, on the basis of academic credentials and systematic annual evaluation as stipulated in this document, worthy of continuous appointment. . . .

Exhibit 2 at p 1-14.

50. 49.  To terminate a tenured professor for cause under ESU's long-standing policy, ESU must provide the following rights:

    ***

4. Rights of the parties to the hearing shall include but are not limited to the following:

    a. To be represented by an attorney
    b. To present supporting witnesses
    c. To question opposing witnesses
    d. To make closing statements
    e. To receive written findings and recommendations of the committee and written notice of the President's decision and a full explanation of the reasons
    f. To obtain and/or examine the record of the proceedings

*Id.* at 1-36.

50.     Since approximately March, 2003 and through the date of this filing, ESU's policy manual has contained some version of the current policy 1B.07 Academic Freedom, which provides: "Emporia State University believes the policies and guidelines developed by the American Association of University Professors, in its *1940 Statement of Principles on Academic*

15

*Freedom and Faculty Tenure with 1970 Interpretive Comments*, are reasonable and prudent. The University endorses them insofar as they are compatible with the laws of the state of Kansas and the policies of the Kansas Board of Regents in decisions and actions that are pertinent." ESU policy 1B.07 Academic Freedom was not amended by the KBOR WMP.

51.     ~~ESU~~For purposes of the terminations of Plaintiffs, KBOR was Plaintiffs' ~~the~~ de facto joint employer along with ESU ~~of Plaintiffs and~~ by virtue of KBOR's exertion of control over the terms and conditions of Plaintiffs' employment up to and including altering and approving the terms of Plaintiffs' terminations.

52.     Hush, as ESU's President did not have the authority to terminate Plaintiffs under the WPM without KBOR~~in~~ adopting the WPM and approving ESU's Framework resulting in their termination, KBOR was therefore a joint employer of Plaintiffs for purposes of the ADEA~~allegations made herein.~~

~~"Under the joint employer test, two entities are considered joint employers if they 'share or co-determine those matters governing the essential terms and conditions of employment.' [] Both entities are employers if they both 'exercise significant control over the same employees.'" *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)). KBOR The termination of Plaintiffs~~

~~"The joint employer doctrine 'specifically aims to pierce the legal formalities of an employment relationship to determine the loci of effective control over an employee, while not discounting those formalities entirely.'" *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 428 (D. Md. 2022).~~

53.    1Plaintiffs did rely, to their detriment, on the terms and conditions of tenure in the KBOR and ESU policies in undertaking the arduous process of attaining tenure, thus creating a contract and or implied contract right to not be terminated without good cause and accompanying substantive and procedural due process rights.

51.    **THE CONSPIRACY**

52.54.  Before January 20, 2021, upon information and belief, unknown John Doe Defendants and Individual Defendants (hereinafter "Individual Defendants") conspired in a movement to undermine tenure without due process through the vehicle of anti-tenure rhetoric and in the creation, adoption and implementation of the WMP and ESU's Framework.  They reached an understanding to deprive Plaintiffs of their constitutional rights protected by the Due Process Clause of the Fourteenth Amendment, and specifically to deprive Plaintiffs of their clearly recognized property right in continued employment by suspending policies that adequately protected them from termination without due process of law.

53.55.  Upon information and belief, the Individual Defendants promoted a belief that tenure among regent universities in the state of Kansas should be minimized or eliminated without having to comply with the constraints of due process mandated because tenure is a constitutionally protected property right clearly established by law. The Individual Defendants saw tenure as an impediment to terminating tenured faculty who were "problematic" concerning issues disfavored by the ESU Administration. These issues included being members or former members of the Faculty Senate Committee, being perceived to or having friction with the Administration, policy sticklers, liberals, advocates, unionizers, and department or campus leaders (hereinafter "issues disfavored by the ESU Administration").

54.56.  On January 20, 2021, KBOR General Counsel Julene Miller proposed the temporary amendment to the Suspensions, Terminations and Dismissals policy ("Workforce management Policy" or "WMP") to KBOR members. In discussing the WMP, according to approved meeting minutes, Defendant Hutton stated: "the proposed policy is not a threat to tenure because tenure does not mean that a job is guaranteed regardless of financial circumstances. Tenure was put in place to ensure academic freedom, which the Board highly values, and handcuffing a university's ability to ensure financial strength in the name of tenure is counter to its purpose." Regent Hutton stated that he believes that the financial challenges are going to continue beyond 2021, and he suggested changing the expiration date in the policy to December 31, 2022, which will allow the Board and the universities additional time to evaluate financial ramifications related to the pandemic."

55.57.  On January 20, 2021, Defendant Hutton moved to approve the WMP and Defendant Van Etten seconded the motion. The motion was carried by voting members Defendants Hutton, Van Etten, Bangerter, Brandau-Murguia, Feuerborn, Harrison-Lee, Kiblinger, Rolph and Schmidt.

56.58.  Thus, on or about January 20, 2021, KBOR, without prior notice to the tenured professors in the State of Kansas or an opportunity to comment, adopted the WMP, attached hereto as Exhibit 3 at labeled pp. 14-17.  The WMP "suspended" tenure rights of professors employed by regent universities in the state of Kansas without any type of due process whatsoever as follows:

> ***
> ii. In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Such terminations, suspensions, or dismissals shall follow the procedure set forth below. Declaration of financial exigency and the processes associated with declaration of financial exigency shall not be a prerequisite to any suspension, dismissal, or termination

authorized by this provision, and no existing university policy hearing procedures shall apply to such decisions.

The chief executive officer of any state university, before making any suspensions, dismissals or terminations under this provision and within 45 days of the effective date of this provision, shall present to the Board for approval a framework for the university's decision-making under this provision. Once approved, that framework shall be used for any suspension, dismissal, or termination under this provision. Frameworks for decision-making shall be determined by each state university's chief executive officer and may be based on factors such as, but not limited to, performance evaluations, teaching and research productivity, low service productivity, low enrollment, cost of operations, or reduction in revenues for specific departments or schools.

(1) The university chief executive officer shall provide no less than 30 days' written notice of the suspension, dismissal, or termination to the affected employee, including the reasons for the action.

(2) Any employee given notice of a suspension, dismissal, or termination that expressly invokes the authorization of this provision may submit an appeal of the action of the university chief executive officer, through the Board of Regents office as provided below, to the Office of Administrative Hearings. Suspension, dismissal, or termination not invoking this policy shall have solely those appeal rights provided by existing university policy or other applicable existing procedures.

(3) The employee must submit the appeal to the Board office within 30 days of receiving notice of the employment action. The initial submission must include a copy of the notice of the action being appealed and a written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the decision to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the only grounds for reversing the state university chief executive officer's decision. The employee shall provide a copy of the appeal and supporting evidence and documentation to the university's chief executive officer at the time the appeal is submitted.

(4) The university chief executive officer shall have 30 days from receipt to respond in writing to the appeal, including any supporting evidence or documentation, and shall provide a copy of the response and any supporting evidence and documentation to the employee at the time the response is submitted. This 30-day period may be extended for good cause as determined by the Board President and Chief Executive Officer.

19

(5) Within 10 days of receiving the university chief executive officer's response, the Board office shall refer the appeal to the Office of Administrative Hearings, which shall provide a hearing and decide the case based on the standards stated in this policy and in the university's Board-approved framework. The Board shall provide a copy of the submissions to the Office of Administrative Hearings, along with a copy of this policy and the decision making framework approved by the Board. The state university shall be responsible for fees charged by the Office of Administrative Hearings.

 (6) The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel.

 (7) Decisions of the administrative hearing officer shall be final and are not subject to further administrative review by any officer or committee of the university or by the Board of Regents.

 (8) An appeal under this policy will not stay the effective date of the suspension, dismissal, or termination. Employees who prevail in their appeal under this policy shall be entitled to reinstatement, back pay and restoration of other lost benefits.

Exhibit 3.

57.59.  On February 17, 2021, KBOR Defendant Bangerter moved to extend the deadline for universities to submit a framework under WMP to July 1, 2021, and Defendant Van Etten seconded his motion. Defendants Bangerter, Brandau, Feuerborn, Harrison-Lee, Hutton, Kiblinger, Rolph, Schmidt and Van Etten approved the extension. See KBOR Minutes dated February 17, 2021, attached hereto as Exhibit 4.

58.60.  Just a month later, on or about March 17, 2021, one year after Governor Laura Kelly declared "State of Emergency", ESU officials presented a document entitled "ESU Strategic Program Alignment Reviews" to KBOR pursuant to a program review or strategic alignment review.  See KBOR Minutes dated March 17-18, 2021, the relevant portion of that document is attached hereto as Exhibit 5.  The ESU Strategic Program Alignment Review reflects on page number 29 as follows:

~~See KBOR Meeting Agenda, Discussion Agenda and Reports (partial), dated March 17-18, 2021~~

~~at p. 35, attached as Exhibit 6.~~

> ….The ESU Office of Institutional Effectiveness recognized the program [history] by awarding it the "With Excellence" designation for student outcomes assessment in 2019. History faculty members are highly productive scholars. Their accolades and honors include the following examples:
>
> • Dr. Chris Lovett won the 2019 Edgar Langsdorf Award for Excellence from the Kansas State Historical Society for his work on Samuel Crumbine.
> . . .
>
> • Dr. Amanda Miracle won the Schillinger award for service to ESU women in 2017.
> . . .
> The History program's faculty and students are highly engaged with the university and the broader public. The ESU Veterans' Roundtable is hosted by the History faculty, and at this time the leadership of the Student Veterans Association are all students in the Department of Social Sciences. The Department's annual Constitution Day celebration draws over 500 students from across Kansas, and to our knowledge is one of the largest Constitution Day celebrations in the U.S.
>
> Recommendation: Continue the program.
>
> Justification for Recommendation:  With only five full-time faculty members, the History program operates efficiently and produces net revenue for the university. Approximately one half of the faculty's teaching assignments comprise general education courses.  The program's upper-division core and elective courses serve not only History majors, but also BSE-Social Sciences Education majors and Interdisciplinary Studies majors, while graduate courses taught by these same faculty members serve the online MA in History program. If the undergraduate major in History were discontinued, most of these courses would still have to be offered.  As noted above, enrollment in the History program is actually quite healthy in BSE students, counted separately for technical reasons, are taken into account.

See KBOR Meeting Agenda, Discussion Agenda and Reports (partial), dated March 17-18, 2021 at p. 35, attached as Exhibit 6.

~~59.~~61.  During the Board of Regents meeting on March 17-18, 2021, KBOR through defendants  Harrison-Lee,  Bangerter,  Murguia  (k.n.a.  Brandau),  Hutton,  Kiblinger,  Rolph,

Schmidt, Van Etten and Feuerborn approved and adopted ESU's recommendation to keep its History Program, including the employment of Petitioners. See Exhibit 5 at pp. 9-10.

~~60.~~62.  According to approved KBOR March 17-~~1~~28, 2021 meeting minutes, Dr. Aleks Sternfeld-Dunn of Wichita State University told KBOR members Feuerborn, Harrison-Lee, Bangerter, Brandau, Hutton, Kiblinger, Rolph, Schmidt and Van Etten that the faculty are still concerned that the Board's policy does not require a shared governance structure, and they would like shared governance officials to be part of the decision-making process when it comes to terminating faculty and staff, which is the process used when a university declares financial exigency. However, no amendments to require any of the financial exigency criteria were made to the WMP. See Exhibit 5 at pp. 12-13.

~~61.~~63.  Based on information and belief, sometime in or about 2021-2022, Defendant Steven Lovett presented to an ESU Leadership Committee (and possibly others including members of KBOR) about tenure and possibly advocated against it. Mr. Lovett was not retained to represent ESU or the Academic Affairs Office until September 2022.

~~62.~~64.  During KBOR's May 18-19, 2022 meeting, KBOR attorney Miller introduced a proposed amendment to eliminate the deadline for universities to propose a framework for its implementation of the WMP, and KBOR defendants Lane (who moved for the amendment), Schmidt (seconded the motion), Harrison-Lee, Rolph, Feuerborn, Hutton, Ice, Kiblinger, and Winter removed the deadline of July 21, 2021, for Universities to "propose a framework for [the WMP] implementation," while at the same time acknowledging, "[w]hile the Board was successful in obtaining state funding increases during the current Session, the enrollment and financial challenges at the universities are still a concern." See partial May 18-19, 2022 Board Minutes, labeled pp. 19-20, attached as Exhibit 10.

63.65.  For the 2022-2023 academic year, ESU was funded 100%.

64.   Defendant Miller proposed to amend the WMP to eliminate the deadline. Defendant Lane moved to approve the elimination and Defendant Schmidt seconded the motion. Defendants Feuerborn, Harrison-Lee, Ice, Kiblinger, Lane, Rolph, Schmidt and Winter approved eliminating the deadline.

65.66.  In the months preceding KBOR's September 14-15, 2022 meeting and ESU's termination of 33 employees, including about 30 faculty a majority of which were tenured, several Plaintiffs attended organizational meetings to discuss the WMP, and several worked on obtaining signatures for unionization. Based on information and belief, Defendant Brent Thomas and some ESU administrators also attended some of these meetings.

66.67.  Plaintiff McCoy spoke openly in favor of faculty unionizing. Plaintiffs Behrens and Lidzy signed unionization interest cards and collected signatures. Plaintiffs Lovett, Colson, Morales, Catlett, and Koerner attended organizational meetings and took actions to organize. Plaintiffs Sievert, Catlett, and others signed union interest cards.

67.68.  Based on information and belief, the ESU Individual Defendants and some or all of the KBOR Individual Defendants were aware that Plaintiffs McCoy, Behrens, Lidzy, Koerner, Christopher Lovett, Sievert, Morales, Catlett, and Colson were advocates or perceived to be advocates for unionization.

68.69.  Based on information and belief, the ESU Individual Defendants and some or all of the KBOR Individual Defendants were aware that Plaintiffs were not members of the Republican party and were thought to be members of or allies of other political parties opposed to the Republican party.

69.70.  On September 13, 2022, two days before Plaintiff McCoy was notified of his termination, the Kansas Reflector, a nonprofit news operation, published his column titled, "Emporia State University is about to suspend tenure. Here's why you should care." In it, Plaintiff McCoy predicted his firing under ESU's Framework, and expressed concern that ESU's Framework did not require a specific reason for termination of tenured faculty. He also raised the alarm that the WMP and ESU's Framework "would effectively suspend tenure for the fall 2022 semester." Plaintiff McCoy opined that he would be fired for exercising his First Amendment rights as an outspoken university professor.

71.      During KBOR's September 14-15, 2022, meeting, Defendant Ken Hush presented ESU's Framework for the WMP, and all KBOR members Ice, Benson, Dicus, Harrison-Lee, Kiblinger, Lane, Mendoza, Rolph and Winter were provided a copy of the Framework. Hush requested that KBOR approve it. Defendant Thomas discussed ESU's operations and budget with KBOR members. See partial copy of KBOR's September 14-15, 2022 Minutes attached as Exhibit 11 and a copy of ESU's Framework for the WMP, attached as Exhibit 12.

70.72.  The ESU Framework provides a "Rationale for why the Framework must be Implemented" which quotes verbatim from KBOR's WMP, paragraph C.6.b.ii. The WMP and the ESU Framework allow tenured faculty to be terminated based on a list of factors that are non-conclusive and have a negative connotation such as:  "performance evaluations, teaching and research productivity, low service productivity." The WMP and ESU Framework use the language "but not limited to" to incorporate other factors that may be considered to terminate faculty and both policies fail to prevent consideration of illegal factors such as race, gender, age, political party affiliation, rights protected by the National Labor Relations Act and other laws. Both policies lack a requirement to provide a pre-termination hearing.

24

71.73.  According to KBOR September 14-15, 2022, meeting minutes, Defendant Carl Ice asked about the estimated impact and Defendant Hush stated that about seven percent of ESU's employees will be impacted. Defendant Lane moved to approve ESU's Framework while noting that it should be used sparingly, and Defendant Winter seconded the motion. Defendants Benson, Dicus, Harrison-Lee, Ice, Kiblinger, Lane, Mendoza, Rolph and Winter approved ESU's Framework during the September 14-15, 2022 meeting.

72.74.  Neither ESU nor KBOR nor any individual defendants acting on their behalf submitted the WMP or ESU Framework to the Kansas Secretary of State for adoption or publication.

73.75.  On September 15, 2022, without prior notice or being provided a pretermination hearing, ESU terminated Plaintiffs by providing them with substantively identical form letters (hereinafter "Termination Letter") that read in common to all letters:

Dear [Name]:

I regret to inform you that your appointment as Professor [Name], with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, due to extreme financial pressures accelerated by COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations across campus, and substantive changes in the educational marketplace. This action is taken under Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board. A copy of this framework is included with this notification letter.

Specifically, this action is based on factors such as, but not limited to:
•   Low enrollment.
•   Cost of operations.
•   Restructuring of a program, department, or school as determined to be necessary by the university.

Secondary considerations may include:
•   Reduction in revenues for specific departments or schools.
•   Current or future market considerations as to the need for a program or department.

25

- Realignment of resources.
- Performance evaluations.
- Teaching and research productivity.
- Low service productivity

  This letter and information packet provides the details of your rights and estimated benefits.

Per standard ESU procedures, you will be placed on leave without pay on Sunday, May 14, 2023, as you submit your final grades. Upon completion of your responsibilities, as determined by the university, ESU will:

- Pay you three (3) months severance pay.
- The university reserves the right to place you on paid administrative leave through your end date should the university determine that to be in the best of interest of the university.

- You may be eligible to retire from the university in lieu of being laid off. If you choose to retire, you will still receive three (3) months severance pay.

A representative from our Human Resources Office will briefly review benefits, estimated final pay information including qualifying leave payouts, and answer questions you may have, today.

The Human Resources Office will be in contact with you regarding dates, times and locations of three informational sessions to review the information in this packet. I welcome and encourage you to bring your spouse, partner, significant other, or other valued folk to participate in this conversation.

Human Resources will reach out to you again near the end of your appointment. You may contact the Office of Human Resources any time with questions prior to those meetings.

At this time, it is expected that you will receive your final paycheck as normal on June 9, 2023. This paycheck will include vacation leave, comp time, payouts, incentive pay, and any other payroll payments due to you at that time.

You may appeal this action within 30 days of receipt of this notice, in writing, to the Kansas Board of Regents, with a copy to ESU President, Ken Hush. The attached framework outlines what should be included in and with the appeal. Questions regarding this appeal process may be directed to Steven Lovett, Associate General Counsel for Academic Affairs.

We recognize the importance of the work and commitment you have made to our students, university programs, the university itself, and the Emporia and academic communities, and thank you for your service.

Sincerely,

Ken Hush
President

c:  Personnel File

Parts of these Termination Letters mirror language that Individual KBOR Defendants approved in the ESU Framework on September 14-15, 2022. These Termination Letters are attached hereto as Exhibit 9, along with a copy of ESU's Framework to the WMP (Exhibit 12 hereto) setting forth the "allowable" administrative appeal procedures.

74.76.  Despite the unconstitutional procedures under the WMP and ESU Framework, all Plaintiffs timely filed appeals in writing to the Kansas Office of Administrative Hearings.

75.77.  Kevin Johnson and President Hush submitted formal written Responses to the appeals.  Included in most of the Responses, as quoted from the Response to Plaintiff Lovett's appeal was:

> Dr. Lovett's appeal does not state any provable claim that President Hush's decision was arbitrary or capricious, i.e., that President Hush's decision was not based on a reasonable foundation of fact. Instead, Dr. Lovett's appeal asserts a sweeping declaration that "…not to renew my contract at Emporia State after 16 May 2023 … [is] 'unreasonable, arbitrary, and capricious.'" *His appeal appears to rationalize that claim primarily because of Dr. Lovett's view of tenure as a "property right[,]" the taking of which violated his "constitutional rights under the Fifth and Fourteenth Amendments."*
>
> However, as noted above, President Hush's decision and the use of the University's Workforce Management policy is not in contravention to Dr. Lovett's status as a tenured faculty member, nor the tenured status of any other faculty member at ESU. As a matter of Board policy, "[t]enure is a privilege that must be affirmatively granted by the institution in recognition of the meritorious performance." ***Neither Kansas statutory law, Board policy, nor University policy create an explicit right to tenure, nor a property interest in tenure, for university tenured faculty members.***[1] Instead, even under normal policy standards, tenured employment is a

characterized as a "privilege" to which the Board and/or the University reserve discretion to withdraw for various reasons, such as a felony conviction, significant reduction in or elimination of a position's funding source, program discontinuance, financial exigency, or for just cause.

. . .

Each issue raised by Dr. Lovett in support of his appeal has been addressed herein and shown to be unsupported by controlling legal authority, including the Kansas Constitution, Board policy, ESU policy, other applicable statutes and regulations, **controlling or persuasive caselaw**, or the body of relevant facts. Accordingly, Dr. Lovett has failed to meet his burden of proof.

(internal citations omitted).

76.78.  ESU and Defendants Huseh, Johnson and Steven Lovett made similar arguments about tenure in response to several Plaintiffs' appeals to OAH, namely that: "Neither Kansas statutory law, Board policy, nor University policy create an explicit right to tenure, nor a property interest in tenure, for university tenured faculty members. Instead, even under normal policy standards, tenured employment is characterized as a "privilege" to which the Board and/or the University reserve discretion to withdraw for various reasons, such as a felony conviction, significant reduction in or elimination of a position's funding source, program discontinuance, financial exigency, or for just cause. See KBOR Policy Manual, Chapter II., Section C.6.a.i. and b.i. Even detailed, procedural protections for dismissing a tenured faculty member are not sufficient to create a protected property interest." See ESU's Resp. to: Sievert, n.13 (p.8); Miracle, n.13 (p. 3); Lidzy, n. 13 (p.13) and n. 123 (p. 16); Koerner, n. 14 (pp. 22-3); Catlett, n. 14 (p. 28-9) and n. 105 (p. 31); Colson, n. 12 (p.19), and Behrens, n. 14 relevant portions attached as Exhibit 7.

77.79.  In ESU's and Defendant Hush's response to Dr. Koerner's petition for review to OAH, it acknowledged that "the appointment status of tenure acknowledges a faculty member's achievement of performance requirements and a tenured faculty member's right to additional

employment protections in the event of a "for cause" termination based on teaching, scholarship, or service." ESU's Resp. to Koerner [at p. 29], attached as Exhibit 7, p. 25.

78.80.  All Plaintiffs participated in their respective "hearings" with OAH and all asked ESU for the basic reasons why they were chosen for termination in order to provide a meaningful response.  In most, if not all the hearings either or both Defendants Kevin Johnson or Steven Lovett represented ESU in these hearings and argued that "tenure is a privilege." Defendants Johnson and Lovett failed to admit that the plaintiffs had already been given tenure or that at that point, it was a property right. Through Defendants Johnson and Lovett, ESU did not tell Plaintiffs the specific reason they were terminated and denied them the opportunity to obtain the information.

79.81.  The table below shows when the Plaintiffs' appeals of their terminations before OAH were held, whether each Plaintiff received a decision, and if they were reinstated. Some Plaintiffs were reinstated, or the hearing officer found that ESU's decision was reversed while others were not. Still, some Plaintiffs have yet to receive any decision from an OAH hearing officer as of the date of the filing of this Complaint. For Plaintiffs who were "reinstated," ESU  and Defendant Hush havehas denied all reinstatements and filed a petition for review in Lyon County District Court of Kansas in those individual cases.

| 80.82. | OAH Hearing Date | Hearing Officer Decision Date | Reinstated or ESU decision reversed? |
|---|---|---|---|
| Behrens, Michael | 02-24-2023 | 4-27-2023 | Yes |
| Catlett, Rob | 02-15-2023 | 4-19-2023 | Yes |
| Colson, Dan | 01-18-2023 | 5-2-2023 | Yes |
| Emmer, Charles | 02-17-2023 | 7-25-2023 | Yes |
| Koerner, Brenda | 03-02-2023 | 11-08-2023 | No |
| Lidzy, Sheryl | 02-22-2023 | 5-10-2023 | No |
| Lovett, Christopher | 02-28-2023 | 5-17-2023 | No |
| McCoy, Max | 01-24-2023 | 11-08-2023 | No |
| Miracle, Amanda | 02-10-2023 | 4-23-2023 | Yes |
| Morales, Michael | 02-01-2023 | 09-27-2023 | Yes |
| Sievert, Lynnette | 02-07-2023 | 5-5-2023 | Yes |

81.83.  Plaintiff Lovett filed a formal motion to conduct discovery and call witnesses in his OAH case, before Hearing Officer Sandra Sharon. However, ESU and the ESU Individual Defendants objected to any discovery and the hearing officer refused to even rule on the motion, which constituted a de facto denial of the motion.

82.84.  Plaintiff Miracle also filed a formal request to conduct discovery and call witnesses, but the request was denied by ESU Individual defendants, as did most if not all the Plaintiffs (including but not limited to Morales, Sievert, Lidzy, Emmer and Catlett) in their appeals to OAH.

83.85.  On February 24, 2023, Plaintiffs Miracle and Lovett filed a Petition for Mandamus against ESU, KBOR and OAH with the Kansas Supreme Court identifying the legal basis for the unconstitutional conduct of each.

84.86.  Through the Mandamus proceedings, ESU and KBOR and the Individual Defendants were again provided notice of *Tonkovich* and other supporting law, which clearly holds that Plaintiffs have a property right in tenure and that they are entitled to procedural and substantive due process, but both institutional Defendants and the Individual Defendants have continued to willfully violate Plaintiffs' Constitutional rights.

85.87.  ESU and KBOR responded to the Mandamus Petition and again intentionally and wrongfully denied tenure is a property right but **clearly stated that if tenure was a property right, the WMP took it away.**

86.88.  ESU and KBOR responded to the Mandamus stating:

Petitioner's due process claim "depends on their having had a property right in continued employment." *Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). Because they lacked such a right under the circumstances, their constitutional challenge to the KBOR procedures fails.

Petitioners also rely on the Tenth Circuit's decision in *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504 (10th Cir. 1998), for the proposition that tenure is a property right. But "tenure" in this sense means "entitlement to continued

employment unless sufficient 'cause' is shown." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *see also Tonkovich*, 159 F.3d at 157 (noting that in *Loudermill*, "the Supreme Court examined the issue of 'what pretermination process must be accorded a public employee *who can be discharged only for cause*." (emphasis added)). It is debatable whether Petitioners had a property right to continued employment even before adoption of the Workforce Management Policy because KBOR policies have long provided for termination of tenured faculty for reasons other than cause.

But even if Petitioners had a property right under normal KBOR policies, they certainly had none under KBOR's Workforce Management Policy.

~~87.~~89.  As a result of the Individual Defendants' conduct in adopting and implementing the WMP and ESU Framework, Plaintiffs were precluded from obtaining information from ESU to even determine whether ESU's stated "financial pressure but not a financial exigency" basis for their overall action is even true.

~~88.~~90.  Some Plaintiffs also presented materials in the OAH proceedings that reflect the stated financial reasons are not legitimate. Attached are exhibits presented to OAH reflecting that over the relevant period, overall enrollment (online and in person) has increased, operating revenues by source 2017 – 2021 have increased (not including millions granted in Covid Relief funds); and operating expenditures have gone down, attached as Exhibit 8.

~~89.~~91.  Despite this credible evidence contradicting ESU's stated financial condition on the decision to terminate Plaintiffs, as a result of the Individual Defendants' conduct in adopting and implementing the WMP and ESU Framework, Plaintiffs were still denied the opportunity to call witnesses and request discovery in order to determine the reason they were selected for termination and respond to said reason.

~~90.~~92.  ESU and KBOR Individual Defendants intentionally drafted, approved, ~~and~~ or implemented policies that avoided the bare minimum due process procedures and requirements set forth in the Kansas Administrative Procedures Act ("KAPA"), which is the law that applies in

31

most if not all proceedings before OAH. The WMP and Framework provided for no deadline for when a hearing officer had to issue a decision and intentionally precluded discovery, calling witnesses, and cross examining them, such as is allowed under KAPA.

91.93.  Further in the OAH cases, ESU, through Defendants Lovett and/or Johnson took the position that KAPA did not apply and the hearing officers agreed by not allowing for discovery or following any procedural deadlines as required under KAPA.

92.94.  On February 28, 2023, during Dr. Christopher Lovett's OAH hearing, Defendant Kevin Johnson called the American Association of University Professors (AAUP), a "union", while dismissing information provided by AAUP.

93.95.  After each OAH order of reinstatement or order reversing ESU's decision to terminate, ESU and its Individual Defendants filed petitions for review pursuant to the Kansas Judicial Review Act. ESU and its Individual Defendants then took action against the reinstated Plaintiffs Miracle, Behrens, Catlett, Colson, Emmer, Morales and Sievert  by placing them on leave with pay and benefits pending the outcome of the state court's review of ESU's petition for review.

94.96.  ESU and the Individual ESU Defendants' action in placing the reinstated Plaintiffs included relieving them "of all employment responsibilities including but not limited to teaching, scholarship and service...."[Y] And, "responsibilities related to students are also relieved." Other than email, "self-service banner," and OneDrive, the reinstated Plaintiffs' access to all other electronic tools have been suspended. Their badges ESU ID cards to enter any certain electronic door access on ESU's campus and building keys have also been collected or requested. This is an ongoing violation of federal law.

95.97.  Each Plaintiff, whether reinstated or not,  was required by ESU and ESU Individual Defendants to pack up and remove personal materials from their campus offices regardless of whether students needed them, are restricted from  access to merit pay increases, the ability to continue progress towards promotion (if applicable), access to conduct or continue research or other scholarly projects, the ability to maintain their tenure, or proper notification informing them if their services were required for grants that had been given to ESU. This is an ongoing violation of federal law.

96.98.  On or about December 25, 2022, ESU paid approximately $137,741.00 in bonuses to 68 faculty members, many of whom are not tenured or are adjunct professors for unspecified performance reasons, excluding Plaintiffs. Based on information and belief, the award of performance bonuses has never been given to faculty members.

99.    On or about June 15, 2023, KBOR approved a pay increase for Defendant Hush from $275,000.00 to $286,000.00 per year – a 4% increase.

97.100.    In 2023, the Kansas Legislature rewarded ESU with 9 million dollars for implementing the "ESU Model," which was a plan to "right-size" or terminate tenured faculty including Plaintiffs without having to provide due process. President Husch acknowledged the reward and accolades from the Kansas Legislature in an email to all faculty sent on or about February 7, 2023. The email included a quote from Hush's former ESU classmate and the then-Kansas Speaker of the House, Dan Hawkins, a Republican, who applauded ESU for right-sizing its tenured workforce and said that such right-sizing was "part of the Republican Better Way Plan."

98.101.    At no material time to the allegations in this matter were Plaintiffs able to ask or learn why they were selected for termination. None of them were able to determine why they were selected for termination over less experienced or qualified adjunct faculty, younger

faculty, non-tenured faculty, faculty who do not teach controversial racial and social issues, faculty who are not thought to be liberal and/or union organizers/sympathizers.

99.102.       None of the Plaintiffs were able to challenge the legitimacy of ESU's and KBOR's WMP and ESU's Framework basis, which was "because of the extreme financial pressures that the state universities are facing due to the COVID-19 pandemic, decreased program and university enrollments, and the state's declining fiscal support" because they were not allowed to conduct discovery, and due to the narrow reasons provided in these policies for which a hearing officer was allowed to even reconsider ESU's decision.

100.103.       None of the Plaintiffs were able to maintain their tenure status during the pendency of their OAH hearings, administrative leaves, or as a result of the extended WMP and ESU framework processes, which denies them the ability to complete requirements necessary to maintain tenure. This is an ongoing violation of federal law by Individual Defendants.

101.104.       Even though in or about 2022, Defendant Hush told some Plaintiffs that he was working to find employment opportunities for terminated ESU faculty at other "regent partners," some Plaintiffs have applied at KBOR regent universities and have not been hired.

102.105.       All Individual Defendants knew or reasonably should have known the clearly established laws cited herein as KBOR was a party in the *Tonkovich* case and Kevin Johnson, while general counsel for ESU, drafted the above-referenced paper, admitting knowledge of Plaintiffs' property rights and due process rights. As such, the Individual Defendants are not entitled to qualified immunity in defense of Plaintiffs' 42 U.S.C. § 1983 claim and related claims.

103.       In adopting the WMP and ESU's Framework, Defendants KBOR and ESU did jointly impact the terms and conditions of Plaintiffs' employment such that they are joint employers for purposes of the ADEA.

104.    Plaintiffs are all over the age of 40.

105.    As obtaining tenure under ESU and KBOR policies necessarily requires a significant number of years of employment, the WMP implicitly targeted older Professors.

106.    As a direct result of adopting the WMP, and implementation thereof resulting in the termination of Plaintiffs, Plaintiffs were disproportionately and disparately impacted as tenured Professors over the age of 40 over Professors under the age of 40.

107.106.    All Individual Defendants, by their adoption, implementation and execution of the WMP and Framework, termination of Plaintiffs and prevention of Plaintiffs to maintain tenure and access resources to do so have committed and continue to commit an ongoing violation of federal law, not only in the deprivation of Due Process under the Fourteenth Amendment, but also in loss of rights in the Fifth through Fourteenth Amendments as set forth herein.

### COUNT I:  VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FIFTH THROUGH FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

108.107.    Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1–107 106 as if fully set forth herein.

109.108.    The Individual Defendants, each of them, as employees or agents of the State of Kansas, undertook the actions described herein under the color and authority of State Law.

110.109.    The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1.

111.110.    The Individual Defendants in their respective roles in creating, adopting or implementing the WMP and ESU Framework engaged in the deprivation of Plaintiffs' constitutionally protected property right in tenure without appropriate procedural due process by:

35

1) denying the existence of Plaintiffs' property right in tenure – See, *Kosik* and *Tonkovich*; 2) denying Plaintiffs the right to a pretermination hearing contrary to clearly established law--See *Tonkovich*; 3) denying Plaintiffs the right to receive a reason for the deprivation of their property right in tenure with sufficient specificity as to allow a meaningful response – see, *Kosik* and *Tonkovich*; and 4) denying Plaintiffs the right to obtain information from ESU regarding their terminations through discovery and the calling of witnesses in order to provide a meaningful response – see, *Kosik* and *Tonkovich*.

~~112.~~111.    The Individual Defendants engaged in said conduct with knowledge of, and of which a reasonable person similarly situated would have known was and is contrary to clearly established law and they did so for the purpose of depriving Plaintiffs of tenure without due process. Defendants otherwise acted arbitrarily, capriciously and without a rational basis.

~~113.~~112.    The Individual Defendants did not provide Plaintiffs with due process remotely close to meeting the standards of the Fifth through Fourteenth Amendments and as a result of Defendants' conduct, each of the individual Plaintiffs have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

~~114.~~113.    The Individual Defendants' conduct constitutes willful violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983, for which Plaintiffs are entitled to recover nominal, actual, compensatory, or punitive damages as well as reasonable attorney's fees under 42 U.S.C. § 1988, and reinstatement.

WHEREFORE, Plaintiffs pray for judgment against all the Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush, in his official capacity, only for prospective injunctive

relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;  and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

**COUNT II - VIOLATION OF SUBSTITIVE DUE PROCESS
UNDER THE FIFTH THROUGH FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**

115.114.       Plaintiffs restate, reallege, and incorporate by reference the allegations set forth in paragraphs 1-1314 as if fully set forth herein.

116.115.       The Individual Defendants, each of them, as employees and or agents of the State of Kansas, undertook the actions described herein under the color and authority of State Law.

117.116.       The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const., amend. 14, § 1.

118.117.       As clearly established by United States Supreme Court:

…the Due Process Clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotation omitted). In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective. *Id.* at 845–46, 118 S.Ct. 1708.

*Seegmiller v. LaVerkin City*, 528 F.3d 762 (10th Cir. 2008)

119.118.       The Individual Defendants in their respective roles in creating, adopting or implementing the WMP and ESU Framework engaged in the deprivation of Plaintiffs' fundamental and constitutionally protected property right in tenure without substantive due process by: 1) denying the existence of Plaintiffs' property right in tenure; 2) denying Plaintiffs the right to a pretermination hearing contrary to clearly established law; 3) denying Plaintiffs the right to

receive a reason for the deprivation of their property right in tenure with sufficient specificity as to allow a meaningful response; 4) denying Plaintiffs the right to obtain or compel information from ESU regarding their respective terminations through discovery and the calling of witnesses in order to provide a meaningful response; and 5) the taking of tenure without due process.

120.119.      The Individual Defendants' conduct respective conduct through the creation, adoption and administration of the WMP and ESU's Framework is so devoid of basic due process rights related to a fundamental property right in tenure that their conduct shocks the conscience of the Court and is patently arbitrary and capricious.

121.120.      The Individual Defendants engaged in said conduct with knowledge that clearly established law was and is contrary to their conduct, and they did so for the purpose of depriving Plaintiffs' property right of tenure without due process and their conduct was otherwise arbitrary, capricious and without a rational basis.

122.121.      As a result of the Individual   Defendants' conduct, Plaintiffs have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

123.122.      The Individual Defendants' conduct constitutes willful violations of Plaintiffs' constitutional rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory, and/or punitive damages as well as reasonable attorney fees under 42 U.S.C. § 1988, and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and

responsibilities of employment each enjoyed and maintained before termination; and pursuant to 42 U.S.C. § 1988, Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the Court deems just and equitable.

**COUNT III - CIVIL CONSPIRACY
UNDER 42 U.S.C. § 198~~3~~5**

~~124.~~123.  Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-122~~23~~ as if fully set forth herein.

~~125.~~124.  The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' constitutionally protected property right in tenure.

~~126.~~125.  Upon information and belief, one or more of the Individual Defendants and John Doe (also referred to as "Conspirators") conspired in a movement to deprive tenured professors employed under the Regents system of their property right in tenure without substantive or procedural due process of law by the ~~undermine tenure without due process through the vehicle of anti-tenure rhetoric and in the~~ creation, adoption and implementation of the WMP & ESU's Framework.

126.  The Individual KBOR Defendants took action in furtherance of the conspiracy by, including but not limited to, drafting, voting for ~~had no rational basis in creating,~~ adopting, or in extending or modifying the WPM thereafter, ~~and implementing the WMP~~ thereby "suspending" or continuing the suspension of tenure rights and in approving the ESU Framework. ~~other than an unlawful purpose.~~

127.  The Individual ESU Defendants took action in furtherance of the conspiracy by creating and obtaining approval for the ESU Framework from KBOR and in implementing and processing terminations of Plaintiffs' under the WPM and ESU Framework.

39

128.   Plaintiffs share a common classification as "tenured," and people who were, or were perceived to, be problematic to ESU Administration.

129.   Plaintiffs Catlett, Koerner, and Lidzy have served as past presidents of the Faculty Senate. Plaintiffs Catlett, Morales, and Lidzy served as Faculty Senate Committee Chairs. Plaintiffs Behrens, Colson, Emmer, Lovett, Miracle, and Morales served on committees of the Faculty Senate or otherwise served on the Faculty Senate.

130.   All Plaintiffs were known as leaders in their department and/or on campus and were known to raise concerns with the ESU administration.

131.   Some Plaintiffs were known as or believed to be "liberal" or have "Democratic" views.

132.   The Conspirators were motivated by Plaintiffs' common classification as "tenured," and within that class one or more of the conspirators had personal animus against Plaintiffs.

133.   One or more of the Conspirators believed Plaintiffs were "problematic" for advocating issues disfavored by the ESU Administration (hereinafter "Targeted Tenured").

134.   The WMP and ESU Framework were used by ESU individual Defendants to terminate the Targeted Tenured.

135.128.      The Individual Defendants conspiracyed and actsed in furtherance of the conspiracy to intentionally deprive Plaintiffs of their property right in tenure without due process by creating, adopting, and implementing the WMP and ESU's Framework in KBOR meetings, discussions among KBOR members and ESU officials. Each action of each co-conspirator in furtherance of the conspiracy is imputed to all others in the conspiracy.

136.129.      The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs' procedural and substantive due process as described in Counts I and II, in violation of 42 U.S.C. § 1983.

137.130.      The Individual Defendants engaged in the deprivation of property rights without appropriate due process with knowledge that tenure was a clearly established property right and that the clearly established law required procedural due process prior to the deprivation and post deprivation.  The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments through the date of filing of this First Amended Complaint.  As the result of the Individual Defendants' conduct, each of them, Plaintiffs have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

138.131.      The Individual Defendants' conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and punitive damages, and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all the Individual  Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained before termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

## COUNT IV — VIOLATION OF LIBERTY INTEREST IN VIOLATION OF THE FOURTEENTH AMENDMENT

139.132.        Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-13138 as if fully set forth herein.

140.133.        The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' constitutionally protected property right in tenure.

141.134.        Plaintiffs, as tenured public employees, have a liberty interest in their reputations and careers in the context of their employment where termination is accompanied by false and stigmatizing statements (*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)).

142.135.        Defendant Hush's Termination Letter, which contains language that mirrors the ESU Framework which was approved by those individual KBOR members on the Board at the time, and based upon information and belief, aided by Defendants Kevin Johnson and Steven Lovett, lacked specific reasons for termination by including the following as part of potentially nine criteria for Plaintiffs' terminations: "performance evaluations," "teaching and research productivity," "low service productivity, and using the phrase "including but not limited to."

143.136.        The Termination Letter was "published" and thus created a pejorative imputation that each Plaintiff had performance issues, teaching and/or productivity issues, all of which is false and or not the reason they were terminated, and therefor infringes upon Plaintiffs' good names and reputations and negatively impacted Plaintiffs' future employment and career progress.

144.137.        The Individual Defendants engaged in the deprivation of property rights without appropriate due process with knowledge that Plaintiffs' liberty interest is a clearly established right and that the clearly established law required procedural and substantive due

42

process to allow Plaintiffs the opportunity to engage in a meaningful, fair hearing with some level of discovery to address the pejorative imputations from the Termination Letter.

145.138.      The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments to protect their liberty interests and were denied the ability to a "name-clearing" hearing.

146.139.      In creating and advocating for the WMP, Defendants John Doe and Miller, and other individual Defendants prevented Plaintiffs, each of them, from even being able to ask which of the purported nine (9) reasons applied to them by virtue of no discovery and no calling of witnesses.

147.140.      In creating, adoptingpassing and or implementing the WMP,  Defendants Hush, Thomas, Johnson, Lovett, Miller, Feuerborn, Harrison-Lee, Bangerter, Brandau, Hutton, Kiblinger, Rolph, Schmidt, Van Etten, Ice, Lane and Winter did prevent Plaintiffs, each of them, from even being able to ask which of the purported nine (9) reasons applied to them by virtue of no discovery and no calling of witnesses.

148.141.      In creating, adoptingpassing and or implementing ESU's Framework to the WMP, KBOR Defendants Benson, Harrison-Lee, Dicus, Ice, Kiblinger, Lane, Mendoza, Rolph, and Winter prevented Plaintiffs, each of them, from being able to determine why they were terminated, i.e. ask which of the purported nine (9) reasons applied to them by virtue of no discovery and no calling of witnesses.

149.142.      In creating, advocating, and seeking approval and or implementing of ESU's Framework, the Individual ESU Defendants and Defendant Hush in his official capacity prevented Plaintiffs, each of them, from being able to determine why they were terminated, i.e.,

ask which of the purported nine (9) reasons applied to them by virtue of no discovery and no calling of witnesses.

150.143.       By terminating Plaintiffs pursuant to the WMP and ESU's Framework, the Individual ESU Defendants prevented each Plaintiff from being able to ask which of the purported nine (9) reasons applied to them by virtue of no discovery and no calling of witnesses.

151.144.     As the result of the Individual Defendants' conduct, each of them, Plaintiffs have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

152.145.       Defendants' conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and punitive damages and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush, in his official capacity, only  for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

## COUNT V — CIVIL CONSPIRACY UNDER 42 U.S.C. § 1985 FOR VIOLATION OF LIBERTY INTEREST IN VIOLATION OF THE FOURTEENTH AMENDMENT

153.146.       Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-14552 as if fully set forth herein.

154.147.　　The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' constitutionally protected property right in tenure.

155.148.　　Upon information and beliefIn the course of carrying out their Conspiracy described in Count III above, Individual KBOR and ESU Defendants and John Doe, Conspirators, conspired in a movement to  either drafted, voting for  or  otherwise approved of the use of the language of the Termination Letter that created a pejorative public perception as to reasons for the terminations. pundermine tenure without due process through the vehicle of anti-tenure rhetoric and in the creation, adoption and implementation of the WMP & ESU's Framework.

156.149.　　The Individual Defendants had no rational basis in creating, adopting and implementing the WMP and ESU Framework other than for an unlawful purpose.

157.　　Plaintiffs share a common classification as "tenured," and people who were, or were perceived to, be "problematic" to the ESU Administration.

158.　　Plaintiffs Catlett, Koerner, and Lidzy have served as past presidents of the Faculty Senate. Plaintiffs Catlett, Morales, and Lidzy served as Faculty Senate Committee Chairs. Plaintiffs Behrens, Colson, Emmer, Lovett, Miracle and Morales served on committees of the Faculty Senate or otherwise served on the Faculty Senate.

159.　　All Plaintiffs were known as leaders in their department and/or on campus, and were known to raise concerns with the ESU administration.

160.　　Some Plaintiffs were known as or believed to be "liberal" or have "Democratic" views.

161.　　The Conspirators were motivated by Plaintiffs' common classification as "tenured," and within that class one or more of the Conspirators had personal animus against Plaintiffs.

45

162.    One or more of the Conspirators believed Plaintiffs were "problematic" for advocating issues disfavored by the ESU Administration

163.    The WMP and ESU Framework was used by ESU Individual Defendants to terminate the Targeted Tenured.

164.150.    The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs'resulted in a violation of Plaintiffs' procedural and substantive due liberty interest in their good name and careers without substantive or procedural due process as described above, in violation of 42 U.S.C. § 1983.

165.151.    ESU Individual Defendants and KBOR Individual Defendants engaged in the deprivation of Plaintiffs' liberty interest without appropriate due process with knowledge that tenure was a clearly established property right, and that the clearly established law required procedural due process before the deprivation and post deprivation, and that Plaintiffs' have a liberty interest in their good name and careers.

166.152.    The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments through the date of filing of this Second Amended Complaint to allow redress of the harm to their liberty interest.

167.    The Individual Defendants conspired and took action in furtherance of the conspiracy to deprive Plaintiffs of their liberty interest in their reputation and careers by creating, adopting and implementing the WMP and ESU's Framework in KBOR meetings, among KBOR members and ESU officials, ultimately resulting in the publication of the Termination Letter, and termination of Plaintiffs.

168.153.    Each action of each co-conspirator in furtherance of the conspiracy is imputed to all others in the conspiracy.

169.154.      As the result of the individual Defendants' conduct, each of them, Plaintiffs have been damaged in a monetary amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

170.155.      The Individual Defendants' collective conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory, and punitive damages.

171.156.      The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs' liberty interest and failure to provide adequate procedural and substantive due process as described herein, in violation of 42 U.S.C. § 1983 and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only   for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

## COUNT VI - VIOLATION OF EQUAL PROTECTION RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT

172.157.      Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-17561 as if fully set forth herein.

173.158.      The Equal Protection Clause of the Fourteenth Amendment guarantees all persons in the United States, including prisoners, "the equal protection of the laws." U.S. Const. amend. XIV.

174.159.	The Individual Defendants, each of them, as employees and or agents of the State of Kansas, undertook the actions described herein under the color and authority of State Law.

175.160.	Upon information and belief, Individual KBOR and ESU Defendants and John Doe, Conspirators, conspired in a movement to undermine tenure without due process through the vehicle of anti-tenure rhetoric and in the creation, adoption, and implementation of the WMP & ESU's Framework.

176.161.	Plaintiffs share a common classification as "tenured," and people who were, or were perceived to, be "problematic" to the ESU Administration.

177.162.	Plaintiffs Catlett, Koerner, and Lidzy have served as past presidents of the Faculty Senate. Plaintiffs Catlett, Catlett, Morales, and Lidzy served as Faculty Senate Committee Chairs. Plaintiffs Behrens, Colson, Emmer, Lovett, and Morales served on committees of the Faculty Senate or otherwise served on the Faculty Senate.

178.163.	All plaintiffs were known as leaders in their department and/or on campus and were known to raise concerns with the ESU administration.

179.164.	Some Plaintiffs were known as or believed to be "liberal" or have "Democratic" views.

180.165.	The Conspirators were motivated by Plaintiffs' common classification as "tenured," and within that class one or more of the conspirators had personal animus against Plaintiffs.

181.166.	One or more of the Conspirators believed Plaintiffs were "problematic" for advocating issues disfavored by the ESU Administration.

182.167.	The WMP and ESU Framework was used by ESU individual Defendants to terminate the Targeted Tenured.

48

183.168.    The Individual Defendants' respective conduct in the creation, adoption, and implementation of the WMP and ESU's Framework resulting in the termination of Plaintiffs as opposed to other similarly situated faculty (tenured faculty who were not deemed problematic) at ESU violates Plaintiffs' Equal Protection Rights under the Fourteenth Amendment to the United States Constitution.

184.169.    The Individual Defendants engaged in the violation of Plaintiffs' Equal Protection Rights without appropriate due process and with knowledge that Plaintiffs' Equal Protection Rights are clearly established and that the clearly established law required procedural and substantive due process to allow Plaintiffs the opportunity to engage in a meaningful hearing with some level of discovery in order to address the unequal treatment of the Plaintiffs relative to other similarly situated professors. One or more defendants intentionally treated the Targeted Tenured differently from other similarly situated and having no rational basis for the disparate treatment.

185.170.    The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments to protect their Equal Protection Rights and were denied the ability to a hearing sufficient to protect those rights.

186.171.    In creating, adopting, and implementing the WMP and ESU Framework, and terminating Plaintiffs, Defendants did infringe upon Plaintiffs' Equal Protection Rights in violation of 42 U.S.C. § 1983.

187.172.    As the result of the individual Defendants' conduct, each of them, Plaintiffs have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering, loss of job.

188.173.        Defendants' conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and or punitive damages, and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only,  for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

### COUNT VII - CIVIL CONSPIRACY UNDER 42 U.S.C. § 1985 FOR COUNT VI VIOLATION OF EQUAL PROTECTION RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT

189.174.        Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-188-173  as if fully set forth herein.

190.175.        The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' constitutionally protected property right in tenure.

191.176.        The Individual Defendants engaged in the deprivation of Plaintiffs' Equal Protection Rights under the Fourteenth Amendment to the United States Constitution without appropriate due process with knowledge that clearly established law required procedural due process prior to the deprivation of Equal Protection Rights.

192.177.	The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments through the date of filing of this Complaint.

193.178.	Upon information and belief, Individual KBOR and ESU Defendants and John Doe, Conspirators, conspired in a movement to undermine tenure without due process through the vehicle of anti-tenure rhetoric and in the creation, adoption, and implementation of the WMP & ESU's Framework.

194.179.	Plaintiffs share a common classification as "tenured," and people who were, or were perceived to, be "problematic" to ESU Administration.

195.180.	Plaintiffs Catlett, Koerner, and Lidzy have served as past presidents of the Faculty Senate. Plaintiffs Catlett, Morales, and Lidzy served as Faculty Senate Committee Chairs. Plaintiffs Behrens, Colson, Emmer, Lovett, Miracle, and Morales served on committees of the Faculty Senate or otherwise served on the Faculty Senate.

196.181.	All Plaintiffs were known as leaders in their department and/or on campus and were known to raise concerns with the ESU administration.

197.182.	Some Plaintiffs were known as or believed to be "liberal" or have "Democratic" views.

198.183.	The Conspirators were motivated by Plaintiffs' common classification as "tenured," and within that class one or more of the conspirators had personal animus against Plaintiffs.

199.184.	One or more of the Conspirators believed Plaintiffs were "problematic" for advocating issues disfavored by the ESU Administration.

200.185.     The WMP and ESU's Framework was used by ESU Individual Defendants to terminate the Targeted Tenured.

201.186.     The Individual Defendants conspired and acted in furtherance of the conspiracy to deprive Plaintiffs of their liberty interest in their reputation and careers by creating, adopting, and implementing the WMP and ESU's Framework in KBOR meetings, among KBOR members and ESU officials, ultimately resulting in the publication of the Termination Letters, and the termination of Plaintiffs.

202.187.     Each action of each co-conspirator in furtherance of the conspiracy is imputed to all others in the conspiracy.

203.188.     The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs' Equal Protection Rights and failure to provide adequate procedural and substantive due process as described herein, in violation of 42 U.S.C. § 1983.

204.189.     As the result of the individual Defendants' conduct, each of them, Plaintiffs have been damaged in a monetary amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

205.190.     The individual Defendants' collective conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and or punitive damages, and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; Defendant Hush in his official capacity, only  for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities

of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. §
1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief
as the court deems just and equitable.

### COUNT VIII - VIOLATION OF FREEDOM OF ASSOCIATION RIGHTS IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

206.191.      Plaintiffs restate, reallege and incorporate by reference the allegations set
forth in paragraphs 1-120590 as if fully set forth herein.

207.192.      The First Amendment to the United States Constitution guarantees the
freedom of individuals to associate both for the purely private purpose of forming and preserving
personal and social relationships, and as a collective means of engaging in political expression,
religious worship, or other activities independently protected by the Constitution.

208.193.      Plaintiffs are in a unique association of "tenured" professors similarly
situated to other tenured professors at ESU who were not terminated, and otherwise share a
common classification as Targeted Tenured. Plaintiffs Rob Catlett, Christopher Lovett, Max
McCoy, Michael Behrens, Lynnette Sievert, Sheryl Lidzy, Brenda Koerner, Amanda Miracle,
Charles Emmer,  Michael Morales, and Dan Colson share a common classification as tenured and
advocates for issues disfavored by the ESU Administration.

209.194.      These associations and views are protected by the First Amendment's
guarantee of association and speech.

210.195.      The Individual Defendants were substantially motivated by Plaintiffs'
associations with and in the above groups and activities in their decisions to terminate Plaintiffs
such that Plaintiffs would not have been terminated but for the referenced associations.

211.196.    The Individual Defendants, each of them, as employees and or agents of the State of Kansas, undertook the actions described herein under the color and authority of State Law.

212.197.    The Individual Defendants' conduct in the creation, adoption and implementation of the WMP and ESU's Framework resulting in the termination of Plaintiffs as opposed to other tenured professors at ESU because of Plaintiffs' associations, violates Plaintiffs' freedom of association rights under the First Amendment to the United States Constitution.

213.198.    In creating, adopting, and implementing the WMP and ESU Framework, and terminating Plaintiffs, Defendants did retaliate against Plaintiffs based upon their associations in violation of their First Amendment rights of association, all in violation of 42 U.S.C. 1983.

214.199.    As the result of the Individual Defendants' conduct, each of them, Plaintiffs' have been damaged monetarily in an amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering, loss of job.

215.200.    Defendants' conduct constitutes a willful violation of Plaintiffs' rights under 42 U.S.C. 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory, and punitive damages and are entitled to reinstatement by Defendant Hush, in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only - for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

**COUNT IX - CIVIL CONSPIRACY**

**UNDER 42 U.S.C. § 1985 TO RETALIATE FOR ASSOCIATIONS AND SPEECH IN VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

216.201.    Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1 215 200 as if fully set forth herein.

217.202.    The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' Constitutionally protected property right in tenure.

218.203.    The Individual Defendants and John Doe, Conspirators (hereinafter "Conspirators" or "Individual Defendants") conspired and took action in furtherance of the conspiracy to retaliate against Plaintiffs for their associations creating, adopting and implementing the WMP in KBOR meetings, among KBOR members and ESU officials, ultimately resulting in the termination of Plaintiffs in violation of Plaintiffs' association rights protected by First Amendment guarantee of association and speech.

219.204.    Each action of each co-conspirator in furtherance of the conspiracy is imputed to all others in the conspiracy.

220.205.    The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs' First Amendment Rights of association as described herein, in violation of 42 U.S.C. §1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory, and punitive damages and are entitled to reinstatement by Defendant Hush, in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; against Defendant Hush in his official capacity, only  for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and

responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

### COUNT X - CIVIL CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER THE UNITED STATES CONSTITUTION CONSTITUTING AN INDEPENDENT VIOLATION OF 42 U.S.C. § 1983

221.206.	Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1 220 205 as if fully set forth herein.

222.207.	The Individual Defendants, each of them, undertook under the color of State Law, the deprivation of Plaintiffs' constitutionally protected property right in tenure.

223.208.	Upon information and belief, the Individual KBOR and Individual ESU Defendants and John Doe, Conspirators (hereinafter "Conspirators" or "Individual Defendants"), conspired to violate Section 1983 in the manner alleged in Counts I, II, IV and VI of this First Amended complaint.

224.209.	The Individual Defendants provided Plaintiffs no adequate due process meeting the standards of the Fifth through Fourteenth Amendments through the date of filing of this Complaint.

225.210.	The Individual Defendants are more than two people and were motivated to accomplish the taking of Plaintiffs' property right in tenure, liberty right in their good names, reputation in employment and their Equal protection in tenure without due process.

226.211.	The Individual Defendants conspired and took overt action to accomplish their deprivation of Plaintiffs' Constitutional rights by creating, adopting, and implementing the WMP and ESU's Framework.

227.212.    The Individual Defendants conspired, had a meeting of the minds, and took action in furtherance of the conspiracy to deprive Plaintiffs of their property right in tenure, liberty right in their good names, reputation in employment and their Equal Protection Rights, without due process by adopting and implementing the WMP and ESU's Framework in KBOR meetings, among KBOR members and ESU officials, ultimately resulting in the publication of the Termination Letter, and termination of Plaintiffs without due process as opposed to similarly situated tenured faculty who were not terminated under the WMP and ESU Framework.

228.213.    Each action of each co-conspirator in furtherance of the conspiracy is imputed to all others in the conspiracy.

229.214.    As the result of the individual Defendants' conduct, each of them, Plaintiffs have been damaged in a monetary amount in excess of $75,000.00 and have endured and suffered mental anguish, humiliation, mental pain and suffering.

230.215.    The Individual Defendants' conspiracy and collective conduct in engaging in a conspiratorial agreement to deprive Plaintiffs of a constitutionally protected property right, a liberty interest and Equal protection rights without due process constitute a violation, and a willful violation, of Plaintiffs' rights under 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and or punitive damages, and are entitled to reinstatement by Defendant Hush in his official capacity.

231.216.    The Individual Defendants' conduct in furtherance of their conspiracy constitutes a violation of Plaintiffs' property right in tenure, liberty right in their good names, reputation in employment and their Equal Protection Rights without due process and failure to provide adequate procedural and substantive due process as described herein above, in violation

of 42 U.S.C. § 1983 for which Plaintiffs are entitled to recover nominal, actual, compensatory and or punitive damages, and are entitled to reinstatement by Defendant Hush in his official capacity.

WHEREFORE, Plaintiffs pray for judgment against all Individual Defendants in an amount in excess of $75,000.00 for nominal, actual, compensatory and/or punitive damages as available by law; Defendant Hush in his official capacity, only  for prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;   and pursuant to 42 U.S.C. § 1988,  Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.

**COUNT XI – AGE DISCRIMINATION IN EMPLOYMENT ACT
§ 29 U.S.C. 621 et. seq. ("ADEA") DISPARATE IMPACT CLAIM (AGAINST
INDIVIDUAL KBOR DEFENDANTS (EXCEPT FOR JULENE MILLER AND
DEFENDANTS ESU AND KBORKEN HUSH ONLY)**

232.    Plaintiffs restate, reallege and incorporate by reference the allegations set forth in paragraphs 1-231 as if fully set forth herein.

233.    All conditions precedent to filing of this action under the ADEA have occurred or been complied with concerning Plaintiffs' charge of discrimination, as outlined above and incorporated herein by reference.

234.    At all relevant times hereto, all Plaintiffs were over the age of forty (40) and recognized as a protected class under the ADEA.

235.    ESU was the de facto employer of Plaintiffs and by virtue of KBOR's exertion of control over the terms and conditions of Plaintiffs' employment in adopting the WPM and approving ESU's Framework resulting in their termination, KBOR was a joint employer of Plaintiffs for purposes of the ADEA.

236.    The WPM and ESU's Framework, while "age-neutral" specific policies on their face, necessarily and significantly disproportionately impacted Plaintiffs because it allowed the termination of tenured professors.

237.    In order to obtain tenure under KBOR's and ESU's policies, each Plaintiff had to have worked a minimum of six (6) years full time employment in order to even be considered for tenure.

238.    Most all of Plaintiffs had been tenured for several years before their termination by ESU with KBOR's authorization.

239.    ESU Defendant Ken Hush, with KBOR's the authorization of Individual KBOR Defendants Shane Bangerter, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Mark Hutton, Carl Ice, Shelly Kiblinger, Cynthia Lane, Diana Mendoza, Blake Benson, Jon Rolph, Allen Schmidt, Helen Van Etten, Wint Winter, and John Doe, by way of voting to adopt and implement the WMP and approve the ESU Framework, originally and contemporaneously terminated 30 total faculty members under the WPM and the ESU plan, including the eleven Plaintiffs.

240.    One of the terminated faculty members was rehired by ESU, leaving 29 total faculty members who were terminated under the WPM and ESU plan.

241.    At the time of termination, approximately 73% of ESU employees were over the age of 40, however 90% of the 29 employees terminated under the WPM and the ESU plan were over the age of 40, establishing a statistical disparity resulting from ESU and KBOR's action.

242.    KBOR and ESUDefendants Hush, Bangerter, Brandau, Dicus, Feuerborn, Harrison-Lee, Hutton, Ice, Kiblinger, Lane, Mendoza, Benson, Rolph, Schmidt, Van Etten,

~~Winter, and John Doe, have no reasonable factor other than age resulting in the termination of Plaintiffs and others similarly situated.~~

~~WHEREFORE, Plaintiffs pray for judgment against~~ ~~Defendants Hush, Bangerter, Brandau, Dieus, Feuerborn, Harrison-Lee, Hutton, Ice, Kiblinger, Lane, Mendoza, Benson, Rolph, Schmidt, Van Etten, Winter, and John Doe, in their official capacity~~ESU and KBOR ~~in an amount in excess of $75,000.00 for nominal, actual, compensatory and otherwise all damages available under the ADEA and~~ ~~for~~ ~~prospective injunctive relief in the form of reinstatement of each Plaintiff and return of all benefits, conditions, duties and responsibilities of employment each enjoyed and maintained prior to termination;~~ ~~Plaintiffs seek and request recovery of attorneys' fees and such further and additional relief as the court deems just and equitable.~~

## DESIGNATION OF PLACE OF TRIAL

Plaintiffs designate Topeka, Kansas as the place of trial of this action.

## JURY TRIAL REQUESTED

Plaintiffs request a jury trial on issues triable before a jury.

Respectfully submitted,
/s/ J. Phillip Gragson
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
John H. Hutton, #16573
Kara L. Eisenhut, #27055
Henson, Hutton, Mudrick, Gragson
& Vogelsberg, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS  66611-2155
785.232.2200 (phone); 785.232.3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
jhutton@hhmglaw.com
keisenhutt@hhmglaw.com
*Attorneys For Plaintiffs*

CERTIFICATE OF SERVICE

60

I hereby certify that a true and correct copy of the foregoing was filed on this ____ day of April, 2024 with the clerk using the EM-ECF system which will send notice to all parties of record.

/s/ J. Phillip Gragson
*Attorneys For Plaintiffs*