ELECTRONICALLY FILED   **Exhibit A**
2023 Apr 28 PM 4:35
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000044
PII COMPLIANT

**BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS**
**STATE OF KANSAS**

Michael Behrens,

      Appellant,

v.                                             OAH No. 23BR0014 BR

Emporia State University,

      Respondent.

## ORDER

**Decision:**

Having heard the oral presentation of both the Appellant and the Respondent, and after reviewing the written materials submitted by both parties as well as the standards stated in Chapter II, Section C, Paragraph 6(b)(ii) of the Kansas Board of Regents Policy Manual (KBOR Temporary Policy) and in the Emporia State University Framework for Workforce Management (ESU Framework), the Presiding Officer/Administrative Law Judge (ALJ) concludes that ESU's action in terminating Michael Behrens was substantially inconsistent with the ESU Framework approved by KBOR, and therefore must be reversed.

**Statement of the Case:**

The above captioned matter was referred to the Office of Administrative Hearings by the Kansas Board of Regents (KBOR) for an administrative hearing following Dr. Behrens' appeal of his termination by Emporia State University (ESU) pursuant to the KBOR Temporary Policy.

The hearing on this matter was held by video conference on February 15, 2023. Dr. Behrens appeared in person without an attorney. ESU appeared by Steven Lovett and Kevin Johnson, Associate General Counsel and General Counsel for ESU, respectively.  Mr. Lovett presented the case for ESU.

The hearing addressed whether ESU's action of terminating Dr. Behrens was substantially inconsistent with the ESU Framework approved by KBOR, whether ESU's action was the result of unlawful bias or discrimination, and whether ESU's action was otherwise unreasonable, arbitrary, or capricious.

ELECTRONICALLY FILED 04/27/2023 08:54:47 OFFICE OF ADMINISTRATIVE HEARINGS

**Evidentiary Rulings:**

Dr. Behrens submitted his written request for hearing, as well supporting documentation, for consideration. These items were admitted to the record without objection.

In addition to its written response, ESU submitted documents identified as Exhibits A – V for consideration. These items were admitted to the record without objection.

**Findings of Fact:**

1. Dr. Behrens is, and has been at all times relevant to this matter, an associate professor and tenured faculty member with ESU.

2. On January 20, 2021, KBOR proposed and approved the KBOR Temporary Policy. (ESU Exhibit C, pp. 12-16).[1] The KBOR Temporary Policy was designed to aid universities as they confronted the financial challenges presented by COVID-19, decreased program and university enrollment, and declining state fiscal support, by allowing institutions to terminate any employee, including tenured faculty, without adherence to existing and otherwise applicable KBOR or university policies. (ESU Exhibit C, p.14)[2] The KBOR Temporary Policy expired December 31, 2022. (ESU Exhibit C, p.14)[3]

3. On September 14, 2022, ESU presented its proposed decision-making framework for implementation of the KBOR Temporary Policy to KBOR (Exhibit C, p. 15)[4], and received KBOR approval. (ESU Exhibit G).[5]

4. The KBOR Temporary Policy and the ESU Framework specified that, if an employee elected to appeal an action taken by ESU pursuant to those provisions, the appeal would be restricted to three possible grounds. An employee was required to show that the action taken against them by ESU was (a) substantially inconsistent with the university's approved decision-making framework (b) the result of unlawful bias or discrimination; or (c) otherwise unreasonable, arbitrary, or capricious. (ESU Exhibit C, p. 15).[6] (ESU Exhibit H, p.2).[7]

5. On September 15, 2022, ESU summoned Dr. Behrens to an in-person meeting where an ESU official presented him with a letter signed by ESU President Ken Hush. The letter stated, in part:

---

[1] KBOR Minutes January 20, 2021.
[2] Id.
[3] Id.
[4] Id.
[5] KBOR Meeting Agenda September 14-15, 2022.
[6] KBOR Minutes January 20, 2021.
[7] ESU Framework.

I regret to inform you that your appointment as Associate Professor, English/Modern Languages/Journalism, with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, due to extreme financial pressures accelerated by COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations across campus, and substantive changes in the educational marketplace. This action is taken under Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board. A copy of this framework is included with this notification letter.

Specifically, this action is based on factors such as, but not limited to:
- Low enrollment.
- Current or future market considerations as to the need for a program or department.
- Restructuring of a program, department, or school as determined to be necessary by the university.

Secondary considerations may include:
- Cost of operations.
- Reduction in revenues for specific departments or schools.
- Realignment of resources.
- Performance evaluations.[8]
- Teaching and research productivity.[9]
- Low service productivity.[10]

(ESU Exhibit A, footnotes 8, 9 and 10 not in original text).[11]

6. On October 14, 2022, KBOR received Dr. Behrens' appeal, which included the notice of termination as well as his own written statement and supporting evidence. As to the grounds for his appeal, Dr. Behrens stated, in part:

"Taken as a whole, my dismissal letter provides no clear and specific explanation for my dismissal. The 'procedure to be followed for taking action, pursuant to

---

[8] ESU subsequently submitted the affidavit of Dr. Joan Brewer, Interim Vice Provost and Dean of the Teachers College at ESU (ESU Exhibit Q), who attested that personnel records were not considered in the decision-making process.

[9] Dr. Brewer's affidavit (ESU Exhibit Q) stated that teaching performance and scholarship activity were not considered in the decision-making process.

[10] Dr. Brewer's affidavit (ESU Exhibit Q) stated that service activity was not considered in the decision-making process.

[11] Letter to Michael Behrens, dated September 15, 2022. The remainder of the letter included information regarding Dr. Behrens' appellate rights, estimated benefits, and processes surrounding the end of his employment with ESU.

Board policy' from the Framework states, 'The President shall provide no less than 30 days' written notice of suspension, dismissal, or termination to the affected employee. This notice shall include a statement that this action is being taken pursuant to this policy, the reasons for the action being taken, the effective date of the action, and shall also include any considerations to be provided by the University to the affected employee.' Because my written notice of dismissal does not contain any clear and specific 'reasons for the action being taken' and simply lists the nine possible factors from the Framework, it violates the Framework itself, and is certainly in violation of the spirit of the Framework."[12]

7. On November 22, 2022, ESU submitted its response to Dr. Behrens' appeal. In its response, ESU claimed the decision to terminate Dr. Behrens was substantially consistent with the ESU Framework, that the decision was not the result of unlawful bias or unlawful discrimination, and was not otherwise arbitrary or capricious.

8. At the hearing, Dr. Behrens reiterated and expanded upon the arguments he made in his written appeal, including that ESU had not given him the reasons for his termination as required by the ESU Framework.

9. In its oral response, ESU argued that the letter Dr. Behrens was given on September 15, 2022, did inform Dr. Behrens of the reasons for his termination. In addition, ESU argued, the reasons for Dr. Behrens' termination were elaborated upon in ESU's written response to Dr. Behrens' appeal. And, ESU argued, the decision was substantially compliant with the ESU Framework.

## Analysis and Conclusions of Law:

The KBOR Temporary Policy specified that impacted employees bear the burden of proof in this appellate process. (ESU Exhibit C, p. 16).[13] Dr. Behrens therefore bears the burden of proof in this administrative review. However, both the KBOR Temporary Policy and the ESU Framework are silent as to the standard of proof by which Dr. Behrens must meet this burden. The Kansas Supreme Court has distinguished between "Preponderance of the Evidence" and "Clear and Convincing Evidence" standards in civil cases.[14] Nothing in the KBOR Temporary Policy, the ESU Framework, the written materials submitted, or in the oral presentation by either party, has established that Dr. Behrens must meet his burden by the higher standard of clear and convincing evidence. Therefore, the standard of proof which must be applied in this matter is the preponderance of the evidence standard, which the Kansas Supreme Court has held, "means that evidence which shows a fact is more probably true than not true."[15]

---

[12] Appeal of Michael Behrens, p. 1-2.
[13] KBOR Minutes January 20, 2021.
[14] *In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008) (citing Ortega v. IBP, Inc., 255 Kan. 513, 874 P.2d 1188 (1994)).
[15] *In re B.D.-Y*, 266 Kan. 686 Syl. ¶1, 187 P.2d 594 (2008).

In taking its action against Dr. Behrens, ESU relied upon the provisions of both the KBOR Temporary Amendment (ESU Exhibit C)[16] and the ESU Framework (ESU Exhibit H).

The issue raised in Dr. Behrens' appeal, and therefore under review here, is whether ESU's action in terminating Dr. Behrens was substantially inconsistent with ESU's Framework as approved by KBOR. Specifically, Dr. Behrens has alleged he was not given the reason for his termination, as required by the ESU Framework.

The portion of the ESU Framework relevant to this issue reads as follows:

> Notice. The President shall provide no less than 30 days' written notice of suspension, dismissal or termination to the affected employee. This notice shall include a statement that this action is being taken pursuant to this policy, *the reasons* for the action being taken, the effective date of the action, and shall also include any considerations to be provided by the University to the affected employee (such as severance pay, payouts, retirement options, etc.). as approved, included a provision pertaining to employee notice of termination.

(Exhibit H, p. 2, emphasis added).[17]

The parties agree that the letter presented by an ESU official to Dr. Behrens on September 15, 2022, constituted his written notice of termination. The question here is whether or not the notice contained the reasons for Dr. Behrens' termination, as required by the ESU Framework. A reading of the plain language of the notice reveals it does not.

Dr. Behrens' written notice reads, "Specifically, this action is based on factors such as, but not limited to . . ." and goes on to list three items. The notice then resumes with, "Secondary considerations may include . . ." and thereafter lists six items. Because of this open-ended language, it is impossible to determine which of these "factors" and "considerations" were the actual reason or reasons for Dr. Behrens' termination.

The words "but not limited to," introducing the first list of factors and "may include," introducing the second list are the most problematic. This language makes it reasonable to believe that *none* of the listed items applied to Dr. Behrens and that other, yet undisclosed reasons existed for his termination. In fact, ESU has affirmatively indicated that the last three considerations listed were not considered and were *not* reasons for Dr. Behrens' termination, further undermining and confusing the significance of the items listed. (ESU Exhibit Q).[18]

---

[16] KBOR Meeting Minutes January 20, 2021.
[17] ESU Framework.
[18] Affidavit of Dr. Joan Brewer, Interim Vice Provost and Dean of the Teacher's College at ESU.

The written notice of termination presented to Dr. Behrens did not include the reasons for the action being taken. The remaining question is whether that omission constitutes a substantial inconsistency with the ESU Framework. If so, a reversal of the action is justified.

In order to make a determination of substantial consistency or inconsistency, ESU's omission of the reason for termination in its written notice to Dr. Behrens should be considered in the greater context of the entire ESU Framework. The ESU Framework includes rights and responsibilities for both ESU and the impacted employee. The mandate that ESU disclose the reasons for an employees' termination is just one requirement imposed upon ESU, but a critically important and necessary one, for a variety of reasons. And, it should not have been difficult for ESU to meet this requirement.

If the reasons for termination are not disclosed, there are negative consequences for the employee, including the lack of an explanation to provide to future prospective employers, lack of personal understanding of the action taken necessary for personal and professional growth, and a lack of understanding or misunderstanding among an employee's peers across their field of study, which could in turn damage the employee's professional reputation. However, for purposes of this analysis, the most important consequence of ESU's omission is that it undermines the already limited appeal rights reserved for the employee, almost to the point of nonexistence. As Dr. Behrens stated in his written appeal, " . . .by failing to communicate any specific reasons for my dismissal, the language of my written notice greatly undermines the effectiveness of my appeal by not giving me specific grounds on which to contest my dismissal."[19]

In both its written and oral presentation, ESU stated that it took its action against Dr. Behrens deliberately and intentionally after thorough consideration and study. If this is true, it should not have been burdensome for ESU to properly comply with the mandate and state the reasons for Dr. Behrens' termination. Yet, it did not.

Providing a non-exclusive list of possible reasons for the action copied from the ESU Framework does not meet the requirement of stating the actual reason or reasons for the action in the written notice to the employee as required. This requirement from the ESU Framework is significant and substantial in light of its impact on the process as well as its potential impact on the employee.

Dr. Behrens has presented sufficient evidence to show that ESU's decision to terminate his employment is substantially inconsistent with the ESU Framework approved by KBOR.

---

[19] Appeal of Michael Behrens, p.2.

**Order:**

In accordance with the KBOR Temporary Amendment and the ESU Framework, ESU's decision to terminate Dr. Behrens is reversed.

**IT IS SO ORDERED.**

Jennifer Barton
Presiding Officer/Administrative Law Judge
Office of Administrative Hearings

## Right to Seek Relief from this Decision

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management (Framework), which was approved by the Kansas Board of Regents on September 14, 2022. Pursuant to the Framework, the above proceeding was not conducted pursuant to the Kansas Administrative Procedures Act.[20]

This order is effective on the date reflected on the certificate of service.

According to the Framework this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents. This order therefore constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[21] The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[22] According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612) and (3) time for filing the petition for judicial review (K.S.A. 77-613) and other applicable provisions of law regarding bond, compliance and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[23]

Judicial review is governed by the KJRA.[24] A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or is effective.[25] A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[26] If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

---

[20] K.S.A. 77-501 *et seq.*
[21] K.S.A. 77-601 *et seq.*
[22] K.S.A. 77-603.
[23] K.S.A. 77-607(a).
[24] K.S.A. 77-606(d).
[25] K.S.A. 77-609(b).
[26] K.S.A. 77-613.

## CERTIFICATE OF SERVICE

On _____Apr. 27_____, 2023, I certify that a copy of the foregoing was placed in the United States first class mail, postage prepaid, addressed to:

> Michael Behrens
> 1628 Dover Road
> Emporia, KS 66801
>
> Kevin Johnson, General Counsel
> Emporia State University
> 1 Kellogg Circle
> Box 4001
> Emporia, Kansas 66801
>
> John Yeary
> General Counsel
> Kansas Board of Regents
> 1000 SW Jackson, Suite 520
> Topeka, KS 66612
> Tel: (785) 430-4291

and I further certify that I caused a copy of the foregoing to be served electronically through the OAH's e-filing system to:

> Steven Lovett
> Associate General Counsel for Academic Affairs
> Emporia State University
> 1 Kellogg Circle
> Campus Box 4001
> Emporia, KS 66801

Staff Person
Office of Administrative Hearings
1020 S. Kansas Avenue
Topeka, KS 66612
Tel: (785) 296-2433 / Fax: (785) 296-4848

ELECTRONICALLY FILED
2023 Apr 28 PM 4:35
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000044
PII COMPLIANT

## IN THE FIFTH JUDICIAL DISTRICT
## DISTRICT COURT OF LYON COUNTY, KANSAS

| | |
|---|---|
| **EMPORIA STATE UNIVERSITY,**<br>     **Petitioner,**<br><br>**v**<br><br>**MICHAEL BEHRENS,**<br>**Individually;**<br>**THE KANSAS OFFICE OF**<br>**ADMINISTRATIVE HEARINGS;**<br>**JENNIFER BARTON, In her**<br>**Capacity as Presiding Officer/**<br>**Administrative Law Judge**<br>**for the Kansas Office of**<br>**Administrative Hearings,**<br>     **Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Case No.** _____ |

**Proceeding Pursuant to K.S.A. Chapter 77.**

### PETITION FOR REVIEW

COMES NOW, Petitioner, Emporia State University, by and through its undersigned counsel, Paul E. Dean, and for this Petition for Review hereby alleges and petitions as follows:

### PARTIES

1.      Petitioner, Emporia State University, is a state agency and one of the six state universities under the control and supervision of KBOR. *See* K.S.A. 76-711; K.S.A. 76-712; K.S.A. 76-601 *et seq.*

2.      Petitioner has standing to bring this petition pursuant to K.S.A. 77-611.

3.      Respondent, Michael Behrens ("Respondent Behrens"), is a natural person and a resident of Lyon County, Kansas, who may be served with process at

1

1628 Dover Road, Emporia, Kansas 66801.

4.      Respondent, The Kansas Office of Administrative Hearings ("OAH"), is a Kansas state agency located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327.

5.      Respondent, Jennifer Barton ("Respondent Barton"), in her official capacity as the Presiding Officer/Administrative Law Judge for the OAH, whose office is located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327, was the presiding officer for Respondent Behrens's administrative appeal process and hearing.

## JURISDICTION

6.      Jurisdiction in this court is proper pursuant to K.S.A. 77-609(a) *et seq*.

7.      All conditions precedent have been satisfied prior to the filing of this petition.

## VENUE

8.      Proper venue for resolution of this dispute is Lyon County, Kansas, pursuant to K.S.A. 77-609(b).

## STATEMENT OF FACTS

9.      The Kansas Board of Regents ("KBOR") is empowered by the Kansas Constitution and state statute to control, supervise, operate, and manage the six state universities in Kansas. *See* Kan. Const., Art. 6, § 2(b); K.S.A. 74-3202a; K.S.A. 74-3202c; K.S.A. 76-712.

10.     KBOR policy states:

> In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Such terminations, suspensions, or dismissals shall

2

follow the procedure set forth below. KBOR Policy Chapter II.C.6.b.ii.[1]

11.     Pursuant to said KBOR policy, on September 14, 2022, Petitioner presented a proposed framework (hereinafter "Workforce Management Framework") to KBOR, which was unanimously approved by KBOR on that same day.

12.     Pursuant to said KBOR policy, Respondent OAH was assigned jurisdictional authority to hold hearings for any of Petitioner's employees who might be directly impacted by Petitioner's use of its Workforce Management Framework and who might choose to administratively appeal Petitioner's decision under the Workforce Management Framework. KBOR Policy Chapter II.C.6.b.ii.(2).

13.     Pursuant to said KBOR policy, and based on Petitioner's Workforce Management Framework, Petitioner met with, and provided a notice letter to, Respondent Behrens, who is an employee of Petitioner, on September 15, 2022, notifying Respondent Behrens "that your appointment as Associate Professor, English/Modern Languages/Journalism, with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, [... pursuant to] Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board." Ex. 1.

14.     Pursuant to said KBOR policy and pursuant to Petitioner's Workforce Management Framework, Respondent Behrens thereafter provided his appeal of Petitioner's decision on October 14, 2022, and requested an appeal hearing. Ex. 2.

15.     On November 22, 2022, Petitioner filed its response to Respondent Behrens' appeal, along with supporting exhibits. Ex. 3.

16.     On February 24, 2023, Respondent Barton held a teleconference hearing on Respondent Behrens' appeal.

17.     On April 27, 2023, Respondent Barton entered a final Order disposing of Respondent Behrens' administrative appeal. Ex. 4.

---

[1] The complete body of relevant KBOR policy is available at: https://kansasregents.org/about/policies-by-laws-missions/board_policy_manual_2/chapter_ii_governance_state_universities_2

<u>ARGUMENT</u>

**I. Lack of Jurisdiction, or in the alternative, Misapplication of the Law**

18.     As a matter of law, the administrative appeals processes underlying the instant petition are authorized and defined solely by KBOR's and Petitioner's policies. *See* K.S.A. 76-715 ("Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents.").

19.     The KBOR policy relevant to the administrative appeals requires that:

> The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel. KBOR Policy Chapter II.C.6.b.ii.(6).

20.     KBOR policy also imposes a clear limitation to the scope of review conducted by Respondent OAH's administrative law judges based on the only three allegations that are permitted to be brought by an appealing employee, *to-wit*:

> The [employee's appeal] must include a … written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the **decision** to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the **only** grounds for reversing the state university chief executive officer's decision. KBOR Policy Chapter II.C.6.b.ii.(3) (**emphasis added**).

21.     Therefore, on its face, this policy assigns narrow jurisdictional authority to reverse Petitioner's decision to terminate an employee **only** if the appealing employee proves by a preponderance of the evidence that Petitioner's **decision** did not substantially comply with KBOR policy, was unlawfully biased or discriminatory, or was otherwise arbitrary and capricious.

22.     While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, the KBOR

4

policy controlling the underlying administrative appeal's process does not grant any jurisdictional authority to Respondent OAH or Respondent Barton to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's **decision** to terminate an employee.

23.    The concept and use of "notice" is exclusively a key component of procedural due process. *See, e.g., Bd. of County Comr's of Reno County v. Akins*, 271 Kan. 192, 196, 21 P.3d 535, 539 (Kan. 2001) (notice is "[a]n elementary and fundamental requirement of due process [intended to] apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.")

24.    Notice, as a tool of awareness, is legally and logically distinguishable from the concept and meaning of a "decision," which is a conclusion or judgment—two words with different ordinary meanings and distinct functions. *See, e.g., Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021) ("The most fundamental rule of statutory construction is [to begin with] giving common words their ordinary meaning.")

25.    While the use and meaning of the word "decision" in KBOR policy is clear and unambiguous, an application of the doctrine of *in pari materia* further establishes that the word "decision" was not intended to include, nor does it incorporate, the concept of "notice." *See, e.g., State v. Batson*, 99 Haw. 118, 122, 53 P.3d 257 (2002) (employing *in pari materia* analysis to support validity of plain meaning interpretation of statute).

26.    For instance, at least two of the points of permitted administrative review within the KBOR policy (*i.e.*, discrimination and arbitrariness) unmistakably address the issue of evaluating the merits of Petitioner's **decision**, not any part of the appeal or grievance process that took place **after** Petitioner's decision was made.

27.    Although Respondent Barton's final Order correctly acknowledges the specific jurisdictional and procedural authority granted by KBOR policy and the Petitioner's Workforce Management Framework, Respondent Barton's analysis and ruling ignore those limitations and instead focus solely on the issue of adequate notice, *to-wit*:

> The question here is whether or not the **notice** [to Respondent Behrens] contained the reasons for Dr. Behrens' termination, as required by the ESU Framework. [...] The written **notice** of termination presented to Dr. Behrens did not include the reasons for the action being taken. The remaining question is whether that omission constitutes a substantial inconsistency with the ESU Framework. [...] Providing a non-exclusive list of possible reasons for the action copied from the ESU framework does not meet the requirement of stating the actual reason or reasons for the action in the written **notice** to the employee as required." *See*, Ex. 4 at 5 and 6 (**emphasis added**).

28.     Regardless of whether Respondent Barton's analysis and conclusions are correct or incorrect—whether notice was adequate or inadequate—such an analysis and conclusion is distinct from an analysis or conclusion about Petitioner's **decision** to terminate Respondent Behrens.

29.     Instead of analyzing, evaluating, calling into question, disagreeing with, or affirming Petitioner's **decision** to terminate Respondent Behrens, the final Order's sole attention is on notice—an element of the administrative process that occurred **after** Petitioner's decision was made to terminate Respondent Behrens.

30.     Respondent Barton's final Order ignores the narrow grant of jurisdictional authority provided by the controlling KBOR policy and/or misapplies the controlling law, improperly arriving at its decision based only on an analysis of the adequacy of notice.

31.     Therefore, and pursuant to K.S.A. 77-621(c)(2), (3), (4), and/or (5), the final Order entered by Respondent Barton is clearly beyond the jurisdiction conferred by KBOR policy, and/or has failed to decide an issue requiring resolution, and/or has erroneously interpreted or applied controlling law, and/or has failed to follow prescribed procedure.

## II. No Evidence, or in the alternative, Lack of Substantial Evidence

32.     Without waiving the foregoing, and in the alternative, Respondent Barton's final Order was not based on any evidence as required by KBOR policy and relevant law, or in the alternative, lacked substantial evidence to support its decision.

33.     KBOR policy requires that Petitioner provide "written notice" which shall

include "the reasons for the [termination] action." KBOR Policy Chapter II.C.6.b.ii.(1).

34.    The Petitioner's Workforce Management Framework likewise requires that Petitioner's notice include "the reasons for the action being taken[.]" *See,* Ex. 4 at 5.

35.    As quoted in Respondent Barton's final Order, the written notice provided to Respondent Behrens on September 15, 2022, stated, "Specifically, this [termination] action is based on factors such as, but not limited to" three definite factors, and then stated "Secondary considerations may include" six other possible factors. *See,* Ex. 4 at 3.

36.    However, Respondent Barton opines in the final Order that the written notice's language "makes it reasonable to believe that none of the listed items applied to Dr. Behrens," inexplicably concluding that the "written notice of termination presented to Dr. Behrens did not include the reasons for the action being taken." Ex. 4 at 5.

37.    Other than Respondent Barton's own view of the written notice's language—which appears to contradict a plain reading of the written notice—the final Order cites to **no evidence** in support of its conclusion other than conclusory allegations by Respondent Behrens.

38.    As noted *supra,* KBOR policy requires that "[t]he burden of proof in any appeal shall be on the employee." KBOR Policy Chapter II.C.6.b.ii.(6).

39.    The final Order acknowledges this burden of proof and acknowledges that the employee must therefore provide "evidence which shows a fact is more probably true than not true." Ex. 4 at 5.

40.    However, despite this clear evidentiary mandate, the final Order's analysis and conclusion does not, and cannot, cite any evidence that was provided by Respondent Behrens because no such evidence exists in the record.

41.    Simply accepting Respondent Behrens' allegations or conclusory statements as true without supporting evidence would render meaningless the language in KBOR policy that requires the "burden of proof" to be on the employee, thereby violating a basic canon of statutory construction. *See, e.g., Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1062, 390 P.3d 504 (2017).

42.    Therefore, and pursuant to K.S.A. 77-621(c)(7), the final Order entered by Respondent Barton is based on a determination of fact that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole.

## STATEMENT OF RELIEF SOUGHT

WHEREFORE, pursuant to K.S.A. 77-622(b), Petitioner requests this Court to:

1)    Reverse and/or set aside the decision of the final Order;

2)    Enjoin or stay the effectiveness of the final Order;

3)    Render a judgment in favor of Petitioner; and/or

4)    For such further and additional relief as the Court deems just and equitable.

Paul E. Dean, #18395
Putnam & Dean LLC
605 Lincoln, P.O. Box 1135
Emporia, KS  66801
(620) 342-2662
Fax (620) 343-7233
pauldean@pauldeanlawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2023, I mailed through the U.S. Postal Service to the following:

Michael Behrens, 1628 Dover Road, Emporia, KS 66801

The Kansas Office of Administrative Hearings, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Jennifer Barton, Presiding Officer/Administrative Law Judge, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Paul E. Dean
Attorney for Emporia State University

ELECTRONICALLY FILED
2023 May 25 PM 4:33
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000044
PII COMPLIANT

IN THE FIFTH JUDICIAL DISTRICT
DISTRICT COURT OF LYON COUNTY, KANSAS

| | | |
|---|---|---|
| EMPORIA STATE UNIVERSITY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. LY-2023-CV-000044 |
| | ) | |
| MICHAEL BEHRENS, | ) | |
| Individually; | ) | |
| THE KANSAS OFFICE OF | ) | |
| ADMINISTRATIVE HEARINGS; | ) | |
| JENNIFER BARTON, In her | ) | |
| Capacity as Presiding Officer/ | ) | |
| Administrative Law Judge | ) | |
| For the Kansas Office of | ) | |
| Administrative Hearings, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| _____ | ) | |

Proceeding Pursuant to K.S.A. Chapter 77.

## RESPONDENT MICHAEL BEHRENS' ANSWER TO PETITION FOR JUDICIAL REVIEW AND REQUEST FOR AGRENCY RECORD

Comes Now, Respondent, Michael Behrens, by and through his attorneys, J. Phillip Gragson and Amanda S. Vogelsberg, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, and for his Answer to Petitioner Emporia State University's ("ESU") Petition and Request for Agency Record states and alleges as follows:

## ANSWER

1)    Respondent Michael Behrens denies all allegations contained in ESU's Petition for Review unless expressly admitted herein.

2)    Petitioner admits the allegations set forth in paragraphs 1, 2, 3, 4 and 5 of  ESU's Petition.   However, the Kansas Office of Administrative Hearings and presiding officer Jennifer Barton, are not proper parties to a KJRA appeal.

1

3)      Respondent Behrens admits the allegations contained in paragraphs 6, 7, 8 and 9 of ESU's Petition.

4)      Respondent Behrens admits that paragraph 10 of ESU's Petition contains part of the expired KBOR Policy that was adopted without appropriate notice to and without an opportunity to respond by affected tenured professors working for state universities under their supervision.

5)      Respondent Behrens admits in paragraph 11 of ESU's Petition that KBOR approved the "Workforce Management Framework" (hereinafter "WPM") which contains the same language as the KBOR policy at Chapter II.C.6.b.ii.

6)      Respondent Behrens admits in paragraph 12 of ESU's Petition that ESU entered into a contract with OAH to conduct "hearings" without discovery or the calling of witnesses through which terminated professors could "appeal" pursuant to the WPM/KBOR policy, but deny the remaining allegations as phrased therein.

7)      Respondent Behrens admits in paragraph 13 of ESU's Petition that ESU wrongfully terminated Respondent Behrens pursuant to the WPM/KBOR policy on Thursday, September 15, 2022, without a pre-termination hearing.  Respondent Behrens also admits that ESU provided the notice letter attached as Ex. 1 to its Petition, but with other documents as well.

8)      Respondent Behrens admits in paragraph 14 of ESU's Petition that he properly appealed his wrongful termination under the WPM/KBOR Policy, including submitting the letter attached as Ex. 2 to ESU's Petition, but also submitted other documents as well.

9)      Respondent Behrens admits in paragraph 15 of ESU's Petition that ESU filed a Response with Exhibits, however, those exhibits are not included in Ex. 3 of ESU's Petition.

10)     Respondent Behrens admits in paragraph 16 of ESU's Petition that Hearing

2

Officer Barton conducted a "hearing" by Zoom (not telephone) wherein Respondent Behrens was denied discovery and the calling of witnesses.

11)    Respondent Behrens admits the allegations contained in paragraph 17 of ESU's petition that he was properly reinstated to his tenured position at ESU.

12)    Respondent Behrens denies the nonsensical legal arguments and allegations contained in paragraphs 18, 19, 20 and 21.

13)    Respondent Behrens admits in paragraph 22 of ESU's Petition that Respondent has a right to bring other claims before other courts or tribunals, including but not limited to a 42 U.S.C. 1983 action in Federal Court, but denies the remaining allegations contained in paragraph 22.

14)    Respondent Behrens admits in paragraph 23 of ESU's Petition that notice of the specific basis for state action against a tenured professor is required by due process. The notice must provide sufficient information justifying the state action to allow the ability to provide a meaningful response. As to the legal reference and citation to *Board of County Comr's of Reno County v. Akins*, the actual quote in from *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and is as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonably to convey the required information, [citation omitted] and it must afford a reasonable time for those interested to make their appearance....

15)    Respondent Behrens denies the nonsensical legal arguments and allegations contained in paragraphs 24, 25, 26, 27, 28, 29, 30 and 31.

16)    Respondent Behrens denies the nonsensical legal arguments and allegations contained in paragraphs 32 through 42 and further states that ESU, having

3

adopted the WPM/KBOR policy that prohibited any discovery as to the real reasons for the termination or the calling of witnesses, restrictions to which Respondent Behrens objected, cannot now claim as a basis for appeal that Respondent Behrens failed to present sufficient evidence to support the Hearing Officer's decision. The Hearing Officer properly found that ESU failed to articulate any reasons specific to Respondent Behrens to serve as the basis for Respondent's termination. In substance, ESU sent the same generic vague "could be this, could be that" "notice" to all of the wrongfully terminated tenured professors under the WPM/KBOR Policy.

<u>DEFENSES</u>

1)      The decision of the Hearing Officer constitutes a final agency action and pursuant to K.S.A. 77-621(a)(1), ESU has the burden of proving the invalidity of the Hearing Officer's Final Order, although reached utilizing unconstitutional procedures, as to reinstatement.

2)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures,  is presumed to be valid unless it is not supported by substantial competent evidence and "is so wide of the mark" as to be arbitrary and capricious, pursuant to *Vakas v. Kansas Bd. Of Healing Arts*, 248 Kan. 589, 808 P.2d 1355 (1991).

3)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is supported by the lack of substantial competent evidence to support an order upholding termination.

4)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is not arbitrary and is supported by law.

    5)      ESU fails to state a claim upon which relief may be granted.

WHEREFORE, Respondent Michael Behrens respectfully requests that the Court deny ESU any relief and affirm the decision of Hearing Officer as to the issue of reinstatement and for such further and additional relief as the Court deems just and equitable.

## <u>REQUEST FOR AGENCY RECORD</u>

As required by K.S.A. 77-620, Respondent requests Appellant, at its cost,  prepare, certify, and file a full record of the administrative proceedings related to this appeal, including all filings with OAH, the transcript of hearing, and the recording of hearing.

Respectfully submitted,

 /s/ J. Phillip Gragson, #16103
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
Henson, Hutton, Mudrick,
 Gragson & Vogelsberg, L.L.P.
3649 SW Burlingame Road, Ste. 200
Topeka, KS 66611
785 232-2200 (ph); 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
*Attorneys for Michael Behrens*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that an original of the above document was emailed on the 25th day of May, 2023, to:

Paul E. Dean
<u>Pauldean@pauldeanlawllc.com</u>
Attorney for ESU

And deposited in the U.S. Mail on the same date addressed to:

Kansas Office of Administrative Hearings
1020 S Kansas Ave
Topeka KS 66612-1327

Jennifer Barton, Presiding Judge
Administrative Law Judge
1020 S Kansas Ave
Topeka KS 66612-1327

<u>/s/J. Phillip Gragson</u>
J. Phillip Gragson
