ELECTRONICALLY FILED 05/02/2023 12:51:13 OFFICE OF ADMINISTRATIVE HEARINGS

**Exhibit C**

## BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
## STATE OF KANSAS

COLSON, Daniel,

        Respondent,

                            OAH No.     23BR0001 BR

v.

Emporia State University,

        Agency.

## ORDER

### Statement of Case

    This matter comes before the Office of Administrative Hearings (OAH) for an Administrative Hearing pursuant to the Kansas Board of Regents (KBOR) approval of Emporia State University's (ESU) *Framework For Workforce Management*.[1] An administrative hearing was held January 18, 2023. The issue in this matter is whether ESU's action to terminate Daniel Colson, PhD is in compliance with ESU's Framework as approved by KBOR. Dr. Daniel Colson appears *pro se*. ESU appears through its attorney Kevin Johnson. The parties each filed written arguments and made oral arguments. This proceeding was held pursuant to KBOR's Suspension, Terminations and Dismissals policy.[2]

### Findings of Fact

1.    Dr. Colson is a tenured associate professor with ESU and has been employed at ESU since August 2012. On September 15, 2022, Dr. Colson was notified that his employment with ESU would end May 16, 2023. It is this action that is the basis of Dr. Colson's appeal to OAH.

2.    The ESU Framework was submitted to the KBOR at its meeting on September 14, 2022. The KBOR determined that the Framework was in compliance with its policy[3] and authorized ESU to implement the Framework.

---

[1] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii)(5) and *Emporia State University Framework for Workforce Management*.
[2] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6 (b).
[3] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii).

3.      The letter terminating Dr. Colson indicated the action was being taken pursuant to KBOR's policy and ESU's Framework[4] approved by KBOR.

4.      The correspondence notifying Dr. Colson that his appointment as an associate professor, English/Modern Languages/Journalism was being terminated indicated that the action was being taken was pursuant to the *Kansas Board Of Regent's Policy Manual* and *Emporia State University Framework For Workforce Management* (Framework). The notice cited extreme financial pressures accelerated by the COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations, and substantive changes in the educational marketplace.

5.      The letter terminating Dr. Colson indicates:

> Specifically, this action is based on factors such as, but not limited to:
> - Low enrollment.
> - Current or future market considerations as to the need for a program or department.
> - Restructuring of a program, department, or school as determined to be necessary by the university.
>
> Secondary considerations may include:
> - Cost of operations.
> - Reduction in revenues for specific departments or schools.
> - Realignment of resources.
> - Performance evaluations.
> - Teaching and research productivity.
> - Low service productivity.

6.      The termination letter does articulate a reason Dr. Colson was chosen to be terminated.  It contain the statements, "Specifically, this action is based on factors such as, but not limited to:" and "…considerations may include:"  However, a specific reason(s) for his termination is not provided to Dr. Colson.

7.      Dr. Colson identifies four areas for his appeal. He argues ESU failed to provide a reason for his dismissal. He argues that the ESU action against him was arbitrary.  He also argues that the action was taken against him in retaliation for his criticism or Ken Hush and Brent Thompson, and the load calculation and his advocacy for academic freedom.

---

[4] *Emporia State University Framework for Workforce Management.*

8.   Dr. Colson further argues that the KBOR policy utilized by ESU to implement the Framework is to address "extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues," and ESU's Framework does not address the purposes of KBOR's policy.

Conclusions of Law

1.   In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Declaration of financial exigency and the processes associated with declaration of financial exigency shall not be a prerequisite to any suspension, dismissal, or termination authorized by this provision.[5]

2.   While ESU is not facing financial exigency, extreme financial pressures do require a prudent review and restructuring, which will require modification, reorganization, suspension or elimination of certain operations, programs, and curriculum.[6]

3.   Decision-making within the Framework may be based on factors such as, but not limited to, performance evaluations, teaching and research productivity, low service productivity, low enrollment, cost of operations, market considerations as to the need for a program or department, restructuring of a program, department or school, or reduction in revenues for specific departments or schools.[7]

4.   The notice of suspension, dismissal, or termination to the affected employee shall include a statement that this action is being taken pursuant to the Framework, the reasons for the action being taken, the effective date of the action, and any consideration to be provided by the University to the affected employee.[8]

5.   The only grounds for reversing the state university chief executive officer's decision to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious.[9]

---

[5] *Id.,* page 1.
[6] *Id.*
[7] *Id.*, The Framework, page 1.
[8] *Id.*, page 2.
[9] *Id. Page 2, number 3, and Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii)(3).

6.      The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel.[10]

7.      ESU argues a rebuttable presumption of validity attaches to its action and it is up Dr. Colson to show the decision to terminate him is not consistent with ESU's Framework.[11]

<u>Analysis</u>

8.      The action taken to terminate Dr. Colson was conveyed in ESU's September 15, 2022 letter to Dr. Colson. The letter acknowledges ESU is experiencing extreme financial pressures. It goes on to say. "Specifically, this action is based on factors such as, but not limited to:" and identifies three areas.[12] It does not identify which factor is applicable to Dr. Colson's termination. The letter goes on to identify secondary considerations that ESU may have identified.[13]

9.      All-inclusive statements, such as "but not limited to, " and "may include" as contained in the termination letter to Dr. Colson are not effective to identify the reason for the action taken against him taken by ESU. According to the Framework, the reason for Dr. Colson's termination is to be given to him in the termination letter.

10.     Because Dr. Colson has shown that a reason for his termination was not provided to him, he has overcome the presumption of the validity of his termination. He has shown that ESU failed to provide the reason(s) for the action taken against him. He has shown that ESU's action is substantially inconsistent with the university's decision-making framework approved by the Board. [14]

11.     Because ESU has not identified its reason(s) for Dr. Colson's termination, the termination is without an adequate determining principle. With unfounded motivation for Dr. Colson's termination, the action against Dr. Colson is arbitrary and capricious. Again Dr. Colson has overcome presumption of the validity of his termination.

12.     Dr. Colson alleges that ESU is retaliating against him for use of FMLA, criticism of university leaders, and advocacy for academic freedom. The nature of the process

---

[10]*Kansas Board of Regents Policy Manual at* ¶6(b)(ii)(6).
[11] Emporia State University's Response to the Administrative Appeal of Dr. Dan Colson, Associate Professor.
[12] Low enrollment; current or future market considerations as to the need for a program or department;  restructuring of a program, department, or school as determined to be necessary by the university.
[13] Cost of operations, reduction in revenues, realignment of resources, performance evaluations, teaching and research productivity, and low service productivity.
[14] *Framework*, page 2, numbers 1 and 3.

4

provided through the KBOR Policy[15] and ESU's Framework[16] is not adequate to provide the evidence necessary to establish or disprove his allegations. Whether the allegation of retaliation is factual and cannot be determined here.

Conclusion

After review of the action taken by ESU in light of the KBOR's Policy Manual and the ESU Framework, for the reasons outlined above, ESU's action is not in compliance with KBOR's Suspensions, Terminations and Dismissals policy. The action to terminate Associate Professor Daniel Colson, PhD is reversed.

Right to Seek Relief from the Decision

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management (Framework), which was approved by the Kansas Board of Regents on September 14, 2022. Pursuant to the Framework, the above proceeding was not conducted pursuant to the Kansas Administrative Procedures Act.[17]

This order is effective on the date reflected on the certificate of service.

According to the Framework this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents. This order therefore constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[18] The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[19] According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612) and (3) time for filing the petition for judicial review (K.S.A. 77-613) and other applicable provisions of law regarding bond, compliance and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[20]

Judicial review is governed by the KJRA.[21] A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or

---

[15] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b).
[16] *Emporia State University Framework for Workforce Management*, page 2.
[17] K.S.A. 77-501 *et seq.*
[18] K.S.A. 77-601 *et seq.*
[19] K.S.A. 77-603.
[20] K.S.A. 77-607(a).
[21] K.S.A. 77-606(d).

5

is effective.[22]  A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[23]  If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

Sandra L. Sharon
Administrative Law Judge/Presiding Officer
Office of Administrative Hearings
1020 S. Kansas Ave.
Topeka, KS 66612
Telephone: 785-296-2433

---

[22] K.S.A. 77-609(b).
[23] K.S.A. 77-613.

6

CERTIFICATE OF SERVICE

On ___May 2___, 2023, I certify that I mailed a copy of this document in the United States first class mail, postage prepaid to:

Kevin Johnson, General Counsel
Emporia State University
1 Kellogg Circle
PO Box 4001
Emporia, KS 66801

John Yeary
General Counsel
Kansas Board of Regents
Curtis State Office Building
1000 SW Jackson, Suite 520
Topeka, KS 66612

and, I further certify that I caused a copy of the foregoing to be served electronically through OAH's e-filing system to:

Daniel Colson
135 S. Putter Dr.
Andover, KS 67002

Steven Lovett
Associate General Counsel for Academic Affairs
1 Kellogg Circle
PO Box 4001
Emporia, KS 66801

_____
Staff Person
Office of Administrative Hearings

7

ELECTRONICALLY FILED
2023 May 04 PM 2:15
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER: LY-2023-CV-000046
PII COMPLIANT

## IN THE FIFTH JUDICIAL DISTRICT
## DISTRICT COURT OF LYON COUNTY, KANSAS

| | |
|---|---|
| **EMPORIA STATE UNIVERSITY,**<br>　　**Petitioner,**<br><br>v<br><br>**DAN COLSON,**<br>**Individually;**<br>**THE KANSAS OFFICE OF**<br>**ADMINISTRATIVE HEARINGS;**<br>**SANDRA SHARON, In her**<br>**Capacity as Presiding Officer/**<br>**Administrative Law Judge**<br>**for the Kansas Office of**<br>**Administrative Hearings,**<br>　　**Respondents.** | Case No. _____ |

**Proceeding Pursuant to K.S.A. Chapter 77.**

### PETITION FOR REVIEW

COMES NOW, Petitioner, Emporia State University, by and through its undersigned counsel, Paul E. Dean of Putnam & Dean, LLC, and for this Petition for Review hereby alleges and petitions as follows:

### PARTIES

1.　Petitioner, Emporia State University, is a state agency and one of the six state universities under the control and supervision of KBOR. *See* K.S.A. 76-711; K.S.A. 76-712; K.S.A. 76-601 *et seq.*

2.　Petitioner has standing to bring this petition pursuant to K.S.A. 77-611.

3.　Respondent, Dan Colson ("Respondent Colson"), is a natural person and a resident of Butler County, Kansas, who may be served with process at 135 S. Putter

1

Drive, Andover, Kansas 67002.

4.      Respondent, The Kansas Office of Administrative Hearings ("OAH"), is a Kansas state agency located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327.

5.      Respondent, Sandra Sharon ("Respondent Sharon"), in her official capacity as the Presiding Officer/Administrative Law Judge for the OAH, whose office is located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327, was the presiding officer for Respondent Colson's administrative appeal process and hearing.

## JURISDICTION

6.      Jurisdiction in this court is proper pursuant to K.S.A. 77-609(a) *et seq*.

7.      All conditions precedent have been satisfied prior to the filing of this petition.

## VENUE

8.      Proper venue for resolution of this dispute is Lyon County, Kansas, pursuant to K.S.A. 77-609(b).

## STATEMENT OF FACTS

9.      The Kansas Board of Regents ("KBOR") is empowered by the Kansas Constitution and state statute to control, supervise, operate, and manage the six state universities in Kansas. *See* Kan. Const., Art. 6, § 2(b); K.S.A. 74-3202a; K.S.A. 74-3202c; K.S.A. 76-712.

10.     KBOR policy states:

> In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Such terminations, suspensions, or dismissals shall

follow the procedure set forth below. KBOR Policy Chapter II.C.6.b.ii.[1]

11.    Pursuant to said KBOR policy, on September 14, 2022, Petitioner presented a proposed framework (hereinafter "Workforce Management Framework") to KBOR, which was unanimously approved by KBOR on that same day.

12.    Pursuant to said KBOR policy, Respondent OAH was assigned jurisdictional authority to hold hearings for any of Petitioner's employees who might be directly impacted by Petitioner's use of its Workforce Management Framework and who might choose to administratively appeal Petitioner's decision under the Workforce Management Framework. KBOR Policy Chapter II.C.6.b.ii.(2).

13.    Pursuant to said KBOR policy, and based on Petitioner's Workforce Management Framework, Petitioner met with, and provided a notice letter to, Respondent Colson, who is an employee of Petitioner, on September 15, 2022, notifying Respondent Colson "that your appointment as Associate Professor, English/Modern Languages/Journalism, with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, [… pursuant to] Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board." Ex. 1.

14.    Pursuant to said KBOR policy and pursuant to Petitioner's Workforce Management Framework, Respondent Colson thereafter provided his appeal of Petitioner's decision on or about October 3, 2022, and requested an appeal hearing. Ex. 2.

15.    On or about October 31, 2022, Petitioner filed its response to Respondent Colson's appeal, along with supporting exhibits. Ex. 3.

16.    On January 18, 2023, Respondent Sharon held a teleconference hearing on Respondent Colson's appeal.

17.    On May 2, 2023, Respondent Sharon entered a final Order disposing of Respondent Colson's administrative appeal. Ex. 4.

---

[1] The complete body of relevant KBOR policy is available at: https://kansasregents.org/about/policies-by-laws-missions/board_policy_manual_2/chapter_ii_governance_state_universities_2

## ARGUMENT

### I. Lack of Jurisdiction, or in the alternative, Misapplication of the Law

18.     As a matter of law, the administrative appeals processes underlying the instant petition are authorized and defined solely by KBOR's and Petitioner's policies. *See* K.S.A. 76-715 ("Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents.").

19.     The KBOR policy and Petitioner's policy relevant to the underlying administrative appeals requires that:

> The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel. KBOR Policy Chapter II.C.6.b.ii.(6).

20.     KBOR policy and Petitioner's policy also impose a clear limitation to the scope of review conducted by Respondent OAH's administrative law judges based on the only three allegations that are permitted to be brought by an appealing employee, *to-wit*:

> The [employee's appeal] must include a … written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the **decision** to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the **only** grounds for reversing the state university chief executive officer's decision. KBOR Policy Chapter II.C.6.b.ii.(3) (**emphasis added**).

21.     Therefore, on its face, this policy assigns narrow jurisdictional authority to reverse Petitioner's decision to terminate an employee **only** if the appealing employee proves by a preponderance of the evidence that Petitioner's **decision** did not substantially comply with KBOR policy, was unlawfully biased or discriminatory, or was

otherwise arbitrary and capricious. *See*, Ex. 5.

22.     While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, KBOR policy and Petitioner's policy controlling the underlying administrative appeal's process does not grant any jurisdictional authority to Respondent OAH or Respondent Sharon to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's **decision** to terminate an employee. *See*, Ex. 5.

23.     The concept and use of "notice" is exclusively a key component of procedural due process. *See, e.g., Bd. of County Comr's of Reno County v. Akins*, 271 Kan. 192, 196, 21 P.3d 535, 539 (Kan. 2001) (notice is "[a]n elementary and fundamental requirement of due process [intended to] apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.")

24.     Notice, as a tool of awareness, is legally and logically distinguishable from the concept and meaning of a "decision," which is a conclusion or judgment—two words with different ordinary meanings and distinct functions. *See, e.g., Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021) ("The most fundamental rule of statutory construction is [to begin with] giving common words their ordinary meaning.")

25.     While the use and meaning of the word "decision" in both KBOR and Petitioner's policies is clear and unambiguous, an application of the doctrine of *in pari materia* further establishes that the word "decision" was not intended to include, nor does it incorporate, the concept of "notice." *See, e.g., State v. Batson*, 99 Haw. 118, 122, 53 P.3d 257 (2002) (employing *in pari materia* analysis to support validity of plain meaning interpretation of statute); *see also*, Ex. 5.

26.     For instance, at least two of the points of permitted administrative review within the KBOR policy (*i.e.*, discrimination and arbitrariness) unmistakably address the issue of evaluating the merits of Petitioner's **decision**, not any part of the appeal or grievance process that took place **after** Petitioner's decision was made.

27.     Although Respondent Sharon's final Order correctly acknowledges the narrow authority of review granted by KBOR policy and the Petitioner's Workforce

Management Framework, Respondent Sharon's ruling ignores that limitation and instead focus solely on what occurred **after** Petitioner's decision was made, *i.e.*, the issue of adequate notice, *to-wit*:

> The [notice] letter … does not identify which factor is applicable to Dr. Colson's termination. The letter goes on to identify secondary considerations that ESU may have identified. … ESU failed to provide the reason(s) for the action taken against him. … ESU's action is substantially inconsistent with the university's decision-making framework approved by the Board. *See*, Ex. 4 at 4, ¶'s 8 and 10.

28.     Regardless of whether Respondent Sharon's analysis and conclusions are correct or incorrect—whether the notice letter did or did not provide sufficient reasons for Petitioner's actions—such an analysis and conclusion is distinct from an analysis or conclusion about Petitioner's actual and preceding **decision** to terminate Respondent Colson.

29.     Instead of analyzing, evaluating, calling into question, disagreeing with, or affirming Petitioner's **decision** to terminate Respondent Colson, the final Order's sole consideration is about notice—an element of the administrative process that occurred **after** Petitioner's decision was made to terminate Respondent Colson.

30.     Respondent Sharon's final Order ignores the narrow grant of jurisdictional authority provided by the controlling KBOR and Petitioner's policies and/or misapplies the controlling law, improperly arriving at its decision based only on an analysis of the notice letter.

31.     As part of this misapplication or avoidance of controlling policy, Respondent Sharon therefore incorrectly concludes that Respondent Colson "has overcome the presumption of the validity of his termination." *See*, Ex. 4 at 4 ¶ 10.

32.     Even if, *in arguendo*, Respondent Colson was able to demonstrate the notice letter provided inadequate reasons for his termination, that argument or evidence would only address the adequacy of notice—a procedural element of due process—but would not prove that Petitioner's decision lacked a substantial, competent body of evidence.

33.     Significantly, the "action" taken by Petitioner that carries the presumption

of validity was Petitioner's **decision** to terminate Respondent Colson, while the notice letter, which was not part of Petitioner's decision, therefore cannot be the basis for relieving Respondent Colson of his statutory and policy-mandated burden of proof. *See*, *Country Club Home, Inc. v. Harder*, 228 Kan. 756, 763 (Kan. 1980) ("A rebuttable presumption of validity attaches to **actions** of administrative agencies; the burden of proof rests with the party or parties **challenging the action** of an administrative agency") (citations omitted) (emphasis added).

34.    Furthermore, the final Order misapplies or otherwise ignores the mandatory directives of controlling KBOR and Petitioner policy by concluding that Petitioner's decision was "arbitrary and capricious" solely "[b]ecause ESU has not identified its reason(s) for Dr. Colson's termination" in the notice letter. *See*, <u>Ex. 4</u> at 4 ¶ 11.

35.    KBOR policy and Petitioner's policy clearly require that Respondent OAH's and Respondent Sharon's "review **shall** be based on the **written submissions**, and … oral presentation[s]," a mandatory directive that is explicitly acknowledged in Respondent Sharon's final Order. *See*, <u>Ex. 4</u> at 4 ¶ 6 (**emphasis added**).

36.    Even if, *in arguendo*, the notice letter's recitation of reasons for Petitioner's decision was inadequate, the **written submissions** supplied by Petitioner, *i.e.*, Petitioner's response and attached exhibits, and the presentation made by Petitioner during the hearing, provided Respondent Sharon with a substantial body of competent evidence explaining, and in direct support of, Petitioner's decision to terminate Respondent Colson. *See*, <u>Ex. 3</u> at 14 – 18.

37.    Indeed, Respondent Sharon's determination that Petitioner's decision was "without an adequate determining principle" is insupportable, completely ignoring the vast amount of description and supporting documentation provided by Petitioner, which provides a "clear foundation in fact" based on reason and which is in alignment with statutory and policy mandates, responsibilities, and expectations of the university. *See*, *Zinke & Trumbo, Ltd. v. State Corp. Com'n of State of Kan.*, 242 Kan. 470, 474-5, 749 P.2d 21, 25 (Kan. 1988) (quoting *Pork Motel, Corp. v. Kansas Dept. of Health &*

*Environment*, 234 Kan. 374, 381, 673 P.2d 1126 (Kan. 1983). "An agency's action is 'arbitrary and capricious' if it is unreasonable or 'without foundation in fact.'"

38.     Therefore, and pursuant to K.S.A. 77-621(c)(2), (3), (4), and/or (5), the final Order entered by Respondent Sharon is clearly beyond the jurisdiction conferred by KBOR policy, and/or has failed to decide an issue requiring resolution, and/or has erroneously interpreted or applied controlling law, and/or has failed to follow prescribed procedure.

## II. No Evidence, or in the alternative, Lack of Substantial Evidence

39.     Without waiving the foregoing, and in the alternative, the conclusion within Respondent Sharon's final Order was not based on any evidence as required by KBOR policy and relevant law, or in the alternative, lacked substantial evidence to support its decision.

40.     KBOR policy requires that Petitioner provide "written notice" which shall include "the reasons for the [termination] action." KBOR Policy Chapter II.C.6.b.ii.(1).

41.     The Petitioner's Workforce Management Framework likewise requires that Petitioner's notice include "the reasons for the action being taken[.]" *See,* Ex. 4 at 5.

42.     As quoted in Respondent Sharon's final Order, the written notice provided to Respondent Colson on September 15, 2022, stated, "Specifically, this [termination] action is based on factors such as, but not limited to" three definite factors, and then stated "Secondary considerations may include" six other possible factors. *See,* Ex. 4 at 8.

44.     However, Respondent Sharon opines in the final Order that the written notice's language is "not effective to identify the reason for the action taken against [Respondent Colson] by ESU[,]" immediately after which, Respondent Sharon concludes that "Dr. Colson has shown that a reason for his termination was not provided to him[.]" Ex. 4 at 9 and 10.

45.     Other than Respondent Sharon's own view of the written notice's language—which contradicts a plain reading of the written notice—the final Order cites to **no evidence** in its Findings of Fact or its Conclusions of Law except for Respondent

8

Colson's allegations.

46.     As noted *supra*, KBOR policy requires that "[t]he burden of proof in any appeal shall be on the employee." KBOR Policy Chapter II.C.6.b.ii.(6).

47.     The final Order acknowledges this burden of proof. <u>Ex. 4</u> at 4 ¶ 6.

48.     However, despite this clear evidentiary mandate, the final Order's analysis and conclusion does not, and cannot, cite any evidence that was provided by Respondent Colson because no such evidence exists in the record.

49.     Simply accepting Respondent Colson's allegations or conclusory statements as true without supporting evidence would render meaningless the language in KBOR policy that requires the "burden of proof" to be on the employee, thereby violating a basic canon of statutory construction. *See, e.g., Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1062, 390 P.3d 504 (2017).

50.     Therefore, and pursuant to K.S.A. 77-621(c)(7), the final Order entered by Respondent Sharon is based on a determination of fact that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole.

## STATEMENT OF RELIEF SOUGHT

WHEREFORE, pursuant to K.S.A. 77-622(b), Petitioner requests this Court to:

1)     Reverse and/or set aside the decision of the final Order;

2)     Enjoin or stay the effectiveness of the final Order;

3)     Render a judgment in favor of Petitioner; and/or

4)     For such further and additional relief as the Court deems just and equitable.

Paul E. Dean, #18395
Putnam & Dean LLC
605 Lincoln, P.O. Box 1135
Emporia, KS  66801
(620) 342-2662
Fax (620) 343-7233
pauldean@pauldeanlawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this ____ day of May, 2023, I mailed through the U.S. Postal Service to the following:

Dan Colson, 135 S. Putter Drive, Andover, KS 67002

The Kansas Office of Administrative Hearings, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Sandra Sharon, Presiding Officer/Administrative Law Judge, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Paul E. Dean
Attorney for Emporia State University

10

ELECTRONICALLY FILED
2023 Jun 01 PM 2:46
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000046
PII COMPLIANT

IN THE FIFTH JUDICIAL DISTRICT
DISTRICT COURT OF LYON COUNTY, KANSAS

EMPORIA STATE UNIVERSITY,    )
    )
    Petitioner,    )
    )
    v.    )    Case No. LY-2023-CV-000046
    )
DAN COLSON,    )
Individually;    )
THE KANSAS OFFICE OF    )
ADMINISTRATIVE HEARINGS;    )
SANDRA SHARON, In her    )
Capacity as Presiding Officer/    )
Administrative Law Judge    )
For the Kansas Office of    )
Administrative Hearings,    )
    )
    Respondents.    )
    )
_____)

Proceeding Pursuant to K.S.A. Chapter 77.

## RESPONDENT DAN COLSON'S ANSWER TO PETITION FOR JUDICIAL REVIEWAND REQUEST FOR AGENCY RECORD

Comes Now, Respondent, Dan Colson, by and through his attorneys, J. Phillip Gragson and Amanda S. Vogelsberg, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, and for his Answer to Petitioner Emporia State University's ("ESU") Petition and Request for Agency Record states and alleges as follows:

## ANSWER

1)    Respondent Dan Colson denies all allegations contained in ESU's Petition for Review unless expressly admitted herein.

2)    Petitioner admits the allegations set forth in paragraphs 1, 2, 3, 4 and 5 of ESU's Petition. However, the Kansas Office of Administrative Hearings and presiding officer Sandra Sharon, are not proper parties to a KJRA appeal.

1

3)      Respondent Colson admits the allegations contained in paragraphs 6, 7, 8 and 9 of ESU's Petition.

4)      Respondent Colson admits that paragraph 10 of ESU's Petition contains part of the expired KBOR Policy that was adopted without appropriate notice to and without an opportunity to respond by affected tenured professors working for state universities under their supervision.

5)      Respondent Colson admits in paragraph 11 of ESU's Petition that KBOR approved the "Workforce Management Framework" (hereinafter "WPM") which contains the same language as the KBOR policy at Chapter II.C.6.b.ii.

6)      Respondent Colson admits in paragraph 12 of ESU's Petition that ESU entered into a contract with OAH to conduct "hearings" without discovery or the calling of witnesses through which terminated professors could "appeal" pursuant to the WPM/KBOR policy, but deny the remaining allegations as phrased therein.

7)      Respondent Colson admits in paragraph 13 of ESU's Petition that ESU wrongfully terminated Respondent Colson pursuant to the WPM/KBOR policy on Thursday, September 15, 2022, without a pre-termination hearing. Respondent Colson also admits that ESU provided the notice letter attached as Ex. 1 to its Petition, but with other documents as well.

8)      Respondent Colson admits in paragraph 14 of ESU's Petition that he properly appealed his wrongful termination under the WPM/KBOR Policy, including submitting the letter attached as Ex. 2 to ESU's Petition, but also submitted other documents as well.

9)      Respondent Colson admits in paragraph 15 of ESU's Petition that ESU filed a Response with Exhibits, however, those exhibits are not included in Ex. 3 of ESU's Petition.

10)     Respondent Colson admits in paragraph 16 of ESU's Petition that Hearing Officer Sharon conducted a "hearing" by Zoom (not telephone) wherein Respondent Colson was denied

discovery and the calling of witnesses.

11)    Respondent Colson admits the allegations contained in paragraph 17 of ESU's petition that he was properly reinstated to his tenured position at ESU.

12)    Respondent Colson denies the nonsensical legal arguments and allegations contained in paragraphs 18, 19, 20 and 21.

13)    Respondent Colson admits in paragraph 22 of ESU's Petition that Respondent has a right to bring other claims before other courts or tribunals, including, but not limited to, a 42 U.S.C. 1983 action in Federal Court, but denies the remaining allegations contained in paragraph 22.

14)    Respondent Colson admits in paragraph 23 of ESU's Petition that notice of the specific basis for state action against a tenured professor is required by due process. The notice must provide sufficient information justifying the state action to allow the ability to provide a meaningful response. As to the legal reference and citation to *Board of County Comr's of Reno County v. Akins*, the actual quote in from *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and is as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonable to convey the required information, [citation omitted] and it must afford a reasonable time for those interested to make their appearance....

15)    Respondent Colson denies the nonsensical legal arguments and allegations contained in paragraphs 24 through 28.

16)    Respondent Colson denies the nonsensical allegations contained in paragraph 29 through 38 and states that, despite wholly deficient substantive and procedural due process, the

Hearing Officer reached the correct decision.

17)     Respondent Colson denies the nonsensical legal arguments and allegations contained in paragraphs 39 through 47 (NOTE, THE PEITITION SKIPS FROM PARAGRAPH 42 TO 44), other than the specific quotes of the referenced invalid KBOR policy and the Hearing Officer's decision.

18)     Respondent Colson denies the nonsensical legal arguments and allegations contained in paragraphs 48 through 50 and further states that ESU, having adopted the WPM/KBOR policy that prohibited any discovery as to the real reasons for the termination or the calling of witnesses, restrictions to which Respondent Colson objected, cannot now claim as a basis for appeal that Respondent Colson failed to present sufficient evidence to support the Hearing Officer's decision. The Hearing Officer properly found that ESU failed to articulate any reasons specific to Respondent Colson to serve as the basis for Respondent's termination. In substance, ESU sent the same generic vague "could be this, could be that" "notice" to all of the wrongfully terminated tenured professors under the WPM/KBOR Policy.

## **<u>DEFENSES</u>**

1)     The decision of the Hearing Officer constitutes a final agency action, and pursuant to K.S.A. 77-621(a)(1), ESU has the burden of proving the invalidity of the Hearing Officer's Final Order, although reached utilizing unconstitutional procedures, as to reinstatement.

2)     The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is presumed to be valid unless it is not supported by substantial competent evidence and "is so wide of the mark" as to be arbitrary and

capricious, pursuant to *Vakas v. Kansas Bd. Of Healing Arts*, 248 Kan. 589, 808 P.2d 1355 (1991).

3)    The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is supported by the lack of substantial competent evidence to support an order upholding termination.

4)    The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is not arbitrary and is supported by law.

5)    ESU fails to state a claim upon which relief may be granted.

WHEREFORE, Respondent Dan Colson respectfully requests that the Court deny ESU any relief and affirm the decision of the Hearing Officer as to the issue of reinstatement and for such further and additional relief as the Court deems just and equitable.

## **REQUEST FOR AGENCY RECORD**

As required by K.S.A. 77-620, Respondent requests Appellant, at its cost, prepare, certify, and file a full record of the administrative proceedings related to this appeal, including all filings with OAH, the transcript of hearing, and the recording of hearing.

Respectfully submitted,

 /s/ J. Phillip Gragson, #16103
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
Henson, Hutton, Mudrick,
 Gragson & Vogelsberg, L.L.P.
3649 SW Burlingame Road, Ste. 200
Topeka, KS 66611
785 232-2200 (ph); 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
*Attorneys for Dan Colson*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that an original of the above document was emailed on the 1st day of June, 2023, to:

Paul E. Dean
<u>Pauldean@pauldeanlawllc.com</u>
Attorney for ESU

And deposited in the U.S. Mail on the same date addressed to:

Kansas Office of Administrative Hearings
1020 S Kansas Ave
Topeka KS 66612-1327

Sandra Sharon, Presiding Judge
Administrative Law Judge
1020 S Kansas Ave
Topeka KS 66612-1327

/s/J. Phillip Gragson
J. Phillip Gragson