ELECTRONICALLY FILED 07/25/2023 12:07:03 OFFICE OF ADMINISTRATIVE HEARINGS

**Exhibit D**

## BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
## STATE OF KANSAS

Charles Emmer,
                    Appellant,

v.                                                  OAH No.  23BR0005 BR

Emporia State University,
                    Respondent.

## INITIAL ORDER

The above-captioned matter comes before the undersigned Administrative Law Judge (ALJ) for an administrative hearing upon the appeal of Professor Charles Emmer (Emmer). Professor Emmer appeals his notice of termination from Emporia State University (ESU).

**Statement of the Case:**

This matter was referred to the Office of Administrative Hearings (OAH) for an administrative hearing pursuant to KBOR Policy Manual, Chapter II., Section C.6.b (Temporary Policy), and the ESU Framework for Workforce Management (Framework).

A formal hearing in this matter was held by video conference on February 17, 2023. Those participating in the hearings were: James J. Ward, presiding officer/administrative law judge (ALJ); the appellant, Professor Charles Emmer *pro se*; and the respondent, Emporia State University (ESU), who appeared by and through its attorney, Steven Lovett.

**Evidentiary Rulings:**

ESU Letter of Termination dated September 15, 2022; Emmer's Request for Appeal dated October 11, 2022; ESU Exhibits A - U consisting of 667 pages; and Emmer Exhibits 1 - 56. All of these exhibits were admitted without objection.

Emmer made a request to call witnesses, Ron Barrett-Gonzalez and Rob Catlett. ESU objected to these witnesses pursuant to KDOR Temporary policy[1] and ESU Framework[2]. These policies each prohibit either party from calling witnesses and provide the hearing will be based on written materials submitted by the parties and oral presentations to the ALJ.   The request by Emmer to call witnesses was denied.

---

1 KBOR Policy Manual, Chapter II., Section C.6.b
2 ESU Exhibit H

**Findings of Fact:**

Professor Emmer is a full Professor with tenure at ESU who teaches several courses in Philosophy through the Department of Social Sciences, Sociology, and Criminology. He has been an employee of ESU since 2005. Emmer has an extensive background in publishing articles; participating in guest lectures and talks; and in professional development. Emmer has served on the Faculty Senate and is currently the faculty advisor for the Philosophy Club.

ESU is one of six Kansas regent universities. Under the Kansas Constitution, the Kansas Board of Regents (KBOR) is the governing body for these six regent institutions and the coordinating board for several other institutions of higher education.[3] KBOR has several legal duties that include supervising regent institution operations, budgets, employment, and personnel.

On January 20, 2021, a temporary pandemic-related workforce management policy was proposed to provide universities with an additional tool to address financial difficulties caused by the COVID-19 pandemic, decreased program and university enrollments, and the state's declining fiscal support.[4] This policy allowed regent institutions to draft proposals for implementing a streamlined process for terminating employees, including tenured faculty. This temporary policy was approved by the Board.

ESU presented a plan for implementing the Temporary Policy to KDOR on September 14, 2022. The ESU implementation plan was called the Framework for Workforce Management and it was approved by the Board that same day.

On September 15, 2022, Emmer was notified in writing his employment with ESU would end effective May 16, 2023. Emmer was terminated pursuant to the ESU Framework. The ESU Framework specifically states that ESU shall include the reasons for the action taken.[5]

ESU stated in its letter of termination to Emmer that its actions were due to "extreme financial pressures accelerated by the COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations across campus, and substantive changes in the educational marketplace".[6]

ESU identified the restructuring of a program, department, or school as determined by the university, low enrollment, cost of operations, reduction in revenues for specific departments or schools, current or future market considerations as to the need for a program or department, realignment of resources, performance evaluations, teaching and research productivity; and low service productivity[7] as reasons for terminating Emmer.

---

3 Kansas Constitution, Article 6, Section 2(b)

4 ESU Exhibit C

5 ESU Exhibit H

6 ESU Exhibit A

7 id

The ESU Framework set out three grounds for an appeal: (a) the action is substantially inconsistent with the ESU decision-making framework approved by KDOR; (b) the action was the result of unlawful bias or discrimination; and/or (c) the action was otherwise unreasonable and capricious.[8]

Emmer filed a timely appeal on November 11, 2022.  Under the ESU Framework Emmer has the burden of proof to establish one or more of the grounds of appeal.[9]  Neither the KBOR Temporary Policy nor the ESU Framework set the burden of proof required.  The ALJ shall apply the traditional administrative law standard of a preponderance of the evidence to determine if Emmer has met his burden of proof.

Emmer raised four areas of concern in his request for appeal.  1. The notice of termination failed to give him the reason or reasons why ESU took the action in terminating his employment.  2.  The streamlined termination process allowed ESU to avoid the agreed benefits of tenure he had earned.  3. ESU failed to show extreme financial pressures in Emmer's department to support his termination.  Emmer pointed out his department generated more revenue than it costs, and that ESU was refilling positions that had been held by employees terminated under the Framework.  4. ESU is retaliating against him for his vocal opposition to previous attempts by the administration to cut liberal arts, the humanities, and philosophy, and his opposition to ESU's elimination of numerous language majors.  He also said he has been vocal in his opposition to the increased influence of Koch Industries at ESU and former President Trump's Muslim immigration policy.

## Analysis and Conclusions of Law:

### Sufficiency of the Letter of Termination

The ESU Framework provides that "the President shall provide no less than 30 days" notice of a suspension, dismissal, or termination.  The notice shall include a statement that the action is being taken pursuant to the COVID Exception policy and the reasons for the action being taken.  The notice shall provide the effective date of the action and include any considerations to be provided by ESU to affected employees."[10]

It is the position of ESU that the Notice of Termination provided to Emmer on September 15, 2023, met all the requirements of the ESU Framework.  The President provided no less than 30 days' notice of his termination; informed him the action was taken pursuant to the ESU Framework policy; it was in writing; it contained multiple reasons for the action; and it provided an effective date of May 16, 2023.  The Notice of Termination also included considerations provided by ESU to Professor Emmer.

It is the position of ESU that the Notice of Termination issued to Emmer is in substantial compliance with, if not perfect compliance, with the Framework requirements.  ESU argued at

---

8 ESU Exhibit H

9 Id

10 Id

the Hearing that the Notice in this matter serves a very specific purpose within the ESU Framework, and it is a perfunctory role.

ESU also argued at the Hearing Emmer had the 25-page ESU Response to the Administrative Appeal of Dr. Charles Emmer (brief), as additional notice of the reasons he was being terminated. It is the position of ESU that Emmer could have supplemented his Request of Appeal after reviewing the brief.

Emmer argued he has no idea why he was terminated and why many other professors in similar circumstances remain employed by ESU. He points to the laundry list of possible reasons and the vague language contained in the notice of termination to support this confusion. He argued the letter of September 15, 2023, left him to speculate as to the reasons for ESU's actions.

The ALJ finds that ESU included every factor listed as grounds for termination in the Framework[11] in the Notice of Termination[12] issued to Emmer. This Notice did not identify which of these grounds applied to Emmer, nor why he, rather than other similarly situated employees, was terminated. The Notice also used vague terms (*such as, but not limited to, and may include*) that suggested ESU may have had other reasons not listed in the Notice of Termination provided to Emmer.

The decision regarding the sufficiency of the Notice of Termination provided to Emmer will be made on the information contained within the four corners of the letter dated September 15, 2023. The ALJ declines to consider the ESU brief as supplemental information to the notice of termination for purposes of ESU meeting its Framework obligation to provide the reasons for its action in the Notice. The ESU brief was filed with OAH after Professor Emmer filed his Request for Appeal. There was no evidence presented that Emmer had the brief to review before filing his appeal. Therefore, any information contained in that brief would not have been available to him when he was drafting the grounds for his appeal. The ESU Framework does not provide for filing supplemental materials in this matter.

ESU stated that the Notice of Termination plays a very special and perfunctory role in the ESU Framework process. The ALJ agrees with ESU that the Notice plays a very specific role within the Framework critical for identifying the reason or reasons for the termination. The ESU Framework provided that the hearing before OAH shall have no discovery by the parties; no witnesses may be called by either side; and no cross-examination will be possible.[13] These rules put more emphasis on the requirements of the Notice of Termination since tools often used for clarification were unavailable.

The Notice of Termination in this matter failed to provide Emmer with the reason or reasons for his termination with sufficient clarity that he could reasonably be able to challenge the action by ESU. Therefore, the Notice of Termination provided here is substantially inconsistent with the ESU decision-making framework approved by KDOR.

---

11 ESU Exhibit H

12 ESU Exhibit A

13 ESU Exhibit H

*Contract Law and Tenure*

Professor Emmer as a tenured professor has a property right interest in continued employment at ESU.[14]  KBOR defines tenure as "a privilege that must be affirmatively granted by the institution in recognition of meritorious service."[15]  ESU Policy states, "Emporia State University shall award permanent status to faculty members who have been judged, on the basis of academic credentials and systematic annual evaluation as stipulated in this document, worthy of continuous appointment."[16]

The undisputed evidence presented showed that ESU requires an arduous process of evaluation that lasts six years or longer before granting permanent status through tenure to a professor.  This includes evaluation of teaching skills by other tenured professors; significant publication by the employee seeking tenure; and input by students and colleagues.  After the permanent status is awarded, a tenured professor is expected to continue professional development, quality teaching, and publication output.  ESU outlined the procedures used to terminate tenured professors for cause.

Emmer argues that he has earned permanent status and that by denying him continuous employment without establishing cause for his termination ESU is violating the terms of his employment contract.  ESU argues that this issue is beyond the scope of the ESU Framework and cannot be adjudicated by OAH.

KBOR General Counsel Julene Miller presented the KBOR Temporary Policy to the Board on January 20, 2021.  During her presentation, Board member Kiblinger asked whether this new policy would supersede contractual agreements or bargaining unit agreements.  Miller answer that it would depend on how each (implementing) agreement is written but noted that contractual obligations would need to be honored.  The ESU Framework does not address contractual agreements or bargaining unit agreements.

Emmer's argument implies that the statements made by the KBOR General Counsel about honoring contractual agreements or bargaining unit agreements could be presented to show his termination was substantially inconsistent with the authority granted ESU by the KBOR Temporary Policy.  The arguments on the contractual nature of permanent status also raise questions regarding the legal authority of KBOR to unilaterally change the terms of an employment contract with an employee who has been granted permanent status.  ESU argues the OAH is limited to the ESU Framework as approved by KBOR.  ESU argues that these issues of contract law and tenure must be taken up before a different tribunal.

The limits set by the ESU Framework on discovery, witnesses, and cross-examination prevent the presentation of the evidence necessary for meaningful analysis and decision on these issues by the ALJ.

.

---

14 *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998)
15 KBOR Policy Manual, Chapter II, Section C.2.vii.(f)
16 ESU Exhibit S, page 1-14

*Remaining Issues*

Emmer raised several other issues regarding the possible grounds for his termination including but not limited to the arbitrary and capricious language used in the restructuring element; the lack of evidence by ESU on the financial condition of the Department of Social Sciences, Sociology, and Criminology particularly Philosophy compared to other departments at ESU; and evidence of retaliation by ESU. These issues are not decided in this opinion as a result of the decision regarding the Notice of Termination. The limits set by the ESU Framework on discovery, witnesses, and cross-examination prevent the presentation of the evidence necessary for meaningful analysis and decision on these issues by the ALJ.

## Conclusion:

The ALJ finds that Emmer has met his burden of proof by a preponderance of the evidence to show the Notice of Termination provided to him by ESU was substantially inconsistent with the ESU decision-making framework as approved by KDOR. The decision by ESU to terminate Emmer is reversed.

**IT IS SO ORDERED.**

James J. Ward
Presiding Officer/Administrative Law Judge
Office of Administrative Hearings

## RIGHT TO SEEK RELIEF FROM THIS DECISION

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management, which was approved by the Kansas Board of Regents on September 14, 2022.   Pursuant to that Framework, the above proceeding was not conducted under the Kansas Administrative Procedures Act.[17]

This order is effective on the date reflected on the certificate of service.

According to the Framework, this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents. This order constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[18]  The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[19] According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612), and (3) time for filing the petition for judicial review (K.S.A. 77- 613) and other applicable provisions of law regarding bond, compliance, and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[20]

Judicial review is governed by the KJRA.[21]  A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or is effective.[22]  A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[23]  If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

---

17 K.S.A. 77-501 *et se.*
18 K.S.A. 77-601 *et seq.*
19 K.S.A. 77-603
20 K.S.A. 77-607(a)
21 K.S.A. 77-606(d)
22 K.S.A. 77-6097(b)
23 K.S.A. 77-613

## CERTIFICATE OF SERVICE

On _____, 2023, I certify that a copy of the foregoing was placed in the United States first class mail, postage prepaid, addressed to:

Charles Emmer
1542 Berkely Rd
Emporia, KS 66801

Kevin Johnson, General Counsel
Emporia State University
1 Kellogg Circle, Box 4001
Emporia, Kansas 66801

Staff Person
Office of Administrative Hearings
1020 S. Kansas Avenue
Topeka, KS 66612
Tel: (785) 296-2433
Fax: (785) 296-4848

ELECTRONICALLY FILED
2023 Aug 04 PM 12:18
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER: LY-2023-CV-000088
PII COMPLIANT

IN THE FIFTH JUDICIAL DISTRICT
DISTRICT COURT OF LYON COUNTY, KANSAS

| | |
|---|---|
| EMPORIA STATE UNIVERSITY,<br>    Petitioner,<br><br>v<br><br>CHARLES EMMER,<br>Individually;<br>THE KANSAS OFFICE OF<br>ADMINISTRATIVE HEARINGS;<br>JAMES WARD, In his<br>Capacity as Presiding Officer/<br>Administrative Law Judge<br>for the Kansas Office of<br>Administrative Hearings,<br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Proceeding Pursuant to K.S.A. Chapter 77.

## PETITION FOR REVIEW

COMES NOW, Petitioner, Emporia State University, by and through its undersigned counsel, Paul Dean of Putnam & Dean, LLC, and for this Petition for Review hereby alleges and petitions as follows:

## PARTIES

1.    Petitioner, Emporia State University, is a state agency and one of the six state universities under the control and supervision of KBOR. *See* K.S.A. 76-711; K.S.A. 76-712; K.S.A. 76-601 *et seq.*

2.    Petitioner has standing to bring this petition pursuant to K.S.A. 77-611.

3.    Respondent, Charles Emmer ("Respondent Emmer"), is a natural person and a resident of Lyon County, Kansas, who may be served with process at 1542

1

Berkeley Road, Emporia, KS 66801.

4.    Respondent, The Kansas Office of Administrative Hearings ("OAH"), is a Kansas state agency located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327.

5.    Respondent, James Ward ("Respondent Ward"), in his official capacity as the Presiding Officer/Administrative Law Judge for the OAH, whose office is located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327, was the presiding officer for Respondent Emmer's administrative appeal process and hearing.

## JURISDICTION

6.    Jurisdiction in this court is proper pursuant to K.S.A. 77-609(a) *et seq*.

7.    All conditions precedent have been satisfied prior to the filing of this petition.

## VENUE

8.    Proper venue for resolution of this dispute is Lyon County, Kansas, pursuant to K.S.A. 77-609(b).

## STATEMENT OF FACTS

9.    The Kansas Board of Regents ("KBOR") is empowered by the Kansas Constitution and state statute to control, supervise, operate, and manage the six state universities in Kansas. *See* Kan. Const., Art. 6, § 2(b); K.S.A. 74-3202a; K.S.A. 74-3202c; K.S.A. 76-712.

10.   KBOR policy states:

> In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Such terminations, suspensions, or dismissals shall

2

follow the procedure set forth below. KBOR Policy Chapter II.C.6.b.ii.[1]

11.   Pursuant to said KBOR policy, on September 14, 2022, Petitioner presented a proposed framework (hereinafter "Workforce Management Framework") to KBOR, which was unanimously approved by KBOR on that same day.

12.   Pursuant to said KBOR policy, Respondent OAH was assigned jurisdictional authority to hold hearings for any of Petitioner's employees who might be directly impacted by Petitioner's use of its Workforce Management Framework and who might choose to administratively appeal Petitioner's decision under the Workforce Management Framework. KBOR Policy Chapter II.C.6.b.ii.(2).

13.   Pursuant to said KBOR policy, and based on Petitioner's Workforce Management Framework, Petitioner met with, and provided a notice letter to, Respondent Emmer, who is an employee of Petitioner, on September 15, 2022, notifying Respondent Emmer "that your appointment as Professor, Social Sciences/Sociology/Criminology, with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, [... pursuant to] Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board." Ex. 1.

14.   Pursuant to said KBOR policy and pursuant to Petitioner's Workforce Management Framework, Respondent Emmer thereafter provided his appeal of Petitioner's decision on October 11, 2022, and requested an appeal hearing. Ex. 2.

15.   On November 10, 2022, Petitioner filed its response to Respondent Emmer' appeal, along with supporting exhibits. Ex. 3.

16.   On February 17, 2023, Respondent Ward held a teleconference hearing on Respondent Emmer's appeal.

17.   On July 25, 2023, Respondent Ward entered a final Order disposing of Respondent Emmer's administrative appeal. Ex. 4.

---

[1] The complete body of relevant KBOR policy is available at: https://kansasregents.org/about/policies-by-laws-missions/board_policy_manual_2/chapter_ii_governance_state_universities_2

<u>ARGUMENT</u>

**I. Lack of Jurisdiction, or in the alternative, Misapplication of the Law**

18.    As a matter of law, the administrative appeals processes underlying the instant petition are authorized and defined solely by KBOR's and Petitioner's policies. *See* K.S.A. 76-715 ("Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents.").

19.    The KBOR policy relevant to the administrative appeals requires that:

> The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel. KBOR Policy Chapter II.C.6.b.ii.(6).

20.    KBOR policy also imposes a clear limitation to the scope of review conducted by Respondent OAH's administrative law judges based on the only three allegations that are permitted to be brought by an appealing employee, *to-wit*:

> The [employee's appeal] must include a … written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the **decision** to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the **only** grounds for reversing the state university chief executive officer's decision. KBOR Policy Chapter II.C.6.b.ii.(3) (**emphasis added**).

21.    Therefore, on its face, this policy assigns narrow jurisdictional authority to reverse Petitioner's decision to terminate an employee **only** if the appealing employee proves by a preponderance of the evidence that Petitioner's **decision** did not substantially comply with KBOR policy, was unlawfully biased or discriminatory, or was otherwise arbitrary and capricious.

22.    While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, the KBOR

4

policy controlling the underlying administrative appeal's process does not grant any jurisdictional authority to Respondent OAH or Respondent Ward to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's **decision** to terminate an employee.

23.    The concept and use of "notice" is exclusively a key component of procedural due process. *See, e.g., Bd. of County Comr's of Reno County v. Akins*, 271 Kan. 192, 196, 21 P.3d 535, 539 (Kan. 2001) (notice is "[a]n elementary and fundamental requirement of due process [intended to] apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.")

24.    Notice, as a tool of awareness, is legally and logically distinguishable from the concept and meaning of a "decision," which is a conclusion or judgment—two words with different ordinary meanings and distinct functions. *See, e.g., Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021) ("The most fundamental rule of statutory construction is [to begin with] giving common words their ordinary meaning.")

25.    While the use and meaning of the word "decision" in KBOR policy is clear and unambiguous, an application of the doctrine of *in pari materia* further establishes that the word "decision" was not intended to include, nor does it incorporate, the concept of "notice." *See, e.g., State v. Batson*, 99 Haw. 118, 122, 53 P.3d 257 (2002) (employing *in pari materia* analysis to support validity of plain meaning interpretation of statute).

26.    For instance, at least two of the points of permitted administrative review within the KBOR policy (*i.e.*, discrimination and arbitrariness) unmistakably address the issue of evaluating the merits of Petitioner's **decision**, not any part of the appeal or grievance process that took place **after** Petitioner's decision was made.

27.    Although Respondent Ward's final Order correctly acknowledges the specific and limited jurisdictional and procedural authority granted by KBOR policy and the Petitioner's Workforce Management Framework, Respondent Ward's ruling ignores those limitations and instead focuses solely on the issue of adequate notice, *to-wit*:

5

> The ALJ finds that Emmer has met his burden of proof by a preponderance of the evidence to show the Notice of Termination provided to him by ESU was substantially inconsistent with the ESU decision-making framework as approved by KDOR[sic]." *See*, Ex. 4 at 4.

28.     Conversely, Respondent Ward's own use of language and reasoning within the order reflects a rational recognition that the concept and meaning of "notice" is fundamentally distinct and discrete from the meaning of "decision," *to-wit*:

> ESU stated that the Notice of Termination plays a very special and perfunctory role in the ESU Framework **process**. The ALJ **agrees with ESU** that the Notice plays a very specific role within the Framework critical for **identifying the reason or reasons for termination**. *See*, Ex. 4 at 4 (**emphasis added**).

29.     Even though Respondent Ward's order repeatedly concedes that the notice letter was part of the administrative appeal "process" and was only used to provide "reasons for [Respondent Emmer's] termination," and even though the final Order never cites any actual policy requirement the notice letter failed to meet, the final Order erroneously concludes that "the Notice of Termination provided here is substantially inconsistent with the ESU decision-making framework approved by KDOR[sic]." *See*, Ex. 4 at 4.

30.     Aside from whether Respondent Ward's analysis and conclusions are correct or incorrect—whether notice was sufficient or insufficient—such an analysis and conclusion is separate, and mutually exclusive, from an analysis or conclusion about Petitioner's actual **decision** to terminate Respondent Emmer. *See*, Ex. 5.

31.     Instead of analyzing, evaluating, calling into question, disagreeing with, or affirming Petitioner's **decision** to terminate Respondent Emmer, the final Order's holding relies solely on a procedural element: the question of notice—an element of the administrative process that occurred **after** Petitioner's decision was made to terminate Respondent Emmer. *See*, Ex. 5.

32.     As such, Respondent Ward's final Order ignores the specific grant of jurisdictional authority provided by the controlling KBOR policy and/or misapplies the controlling law, improperly arriving at its decision based only on an analysis of the

adequacy of notice. *See*, Ex. 5.

33.     Therefore, and pursuant to K.S.A. 77-621(c)(2), (3), (4), and/or (5), the final Order entered by Respondent Ward is clearly beyond the jurisdiction conferred by KBOR policy, and/or has failed to decide an issue requiring resolution, and/or has erroneously interpreted or applied controlling law, and/or has failed to follow prescribed procedure.

## II. No Evidence, or in the alternative, Lack of Substantial Evidence

34.     Without waiving the foregoing, and in the alternative, Respondent Ward's final Order was not based on any evidence as required by KBOR policy and relevant law, or in the alternative, lacked substantial evidence to support its decision.

35.     KBOR policy requires that Petitioner provide "written notice" which shall include "the reasons for the [termination] action." KBOR Policy Chapter II.C.6.b.ii.(1).

36.     The Petitioner's Workforce Management Framework likewise requires that Petitioner's notice include "the reasons for the action being taken[.]" *See,* Ex. 4 at 5.

37.     As recited in Respondent Ward's final Order, the written notice met all of the policy requirements, to-wit:

> The President provided no less than 30 days' notice of [Respondent Emmer's] termination; informed him the action was taken pursuant to the ESU Framework policy; it was in writing; it contained multiple reasons for the action; and it provide an effective date of May 16, 2023. The Notice of Termination also included considerations provided by ESU to Professor Emmer. *See,* Ex. 4 at 3 and 3.

38.     Yet in spite of evidence that the notice letter met all of the controlling policy requirements, Respondent Ward imposes an additional, and highly subjective, requirement in the final Order that the written notice's language "failed to provide Emmer with the reason or reasons for his termination **with sufficient clarity**[.]"[2] Ex. 4 at

---

[2] In Respondent Ward's discussion of the sufficiency of notice, he "declines to consider the ESU [response] brief as supplemental information to the notice of termination" simply because "any information contained in that brief would not have been available to him when he was drafting the grounds for his appeal." *See,* Ex. 4 at 4. Respondent Ward also states that "[t]he ESU Framework does not provide for filing supplemental materials in this matter." Id. Both statements blatantly ignore the contents of Petitioner's response brief and what Respondent Ward allowed and considered after Petitioner's response brief was filed and during the hearing. *See,* Ex. 3. Indeed, Petitioner's

6 (**emphasis added**).

39.     After having imposed the *ad hoc* requirement, the final Order cites **no evidence** in support of its conclusion but instead offers Respondent Ward's own opinion about the written notice's language and Respondent Emmer's unsupported statement that "he has no idea why he was terminated[.]" *See*, Ex. 4 at 4.

40.     As noted *supra*, KBOR policy requires that "[t]he burden of proof in any appeal shall be on the employee." KBOR Policy Chapter II.C.6.b.ii.(6).

41.     The final Order acknowledges this burden of proof and acknowledges that the employee must therefore provide "evidence to determine if [Respondent Emmer] has met his burden of proof." Ex. 4 at 3.

42.     However, despite this clear evidentiary mandate, the final Order's analysis and conclusion does not, and cannot, cite any evidence provided by Respondent Emmer to establish that the notice letter failed to meet any of the controlling policy's requirements because no such evidence exists in the record.

43.     Simply relying on Respondent Emmer's allegations or conclusory statements as true without requiring supporting evidence would render meaningless the language in KBOR policy that requires the "burden of proof" to be on the employee, thereby violating a basic canon of statutory construction. *See, e.g., Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1062, 390 P.3d 504 (2017).

44.     Regardless of Respondent Ward's own opinion about the sufficiency of the notice letter (an element of analysis outside the purview of his review), no evidence was presented at anytime that the notice letter did not meet the stated requirements of the controlling policy.

45.     Therefore, and pursuant to K.S.A. 77-621(c)(7), the final Order entered by Respondent Ward is based on a determination of fact that is not supported to the

---

response brief argues, and supplies evidentiary authority for the fact, that Respondent Emmer had ample and long-term access to information (publicly available) regarding the low enrollment in the program(s) taught by Respondent Emmer, the cost of Petitioner's operations, and the need and intent to restructure Petitioner's organization. Id. Moreover, Respondent Emmer filed approximately 56 pieces of evidence **after** Petitioner's response brief was filed and **before** Respondent Emmer's hearing was conducted. Petitioner made no objection to the admissibility of these pieces of evidence which then became part of the record before Respondent Ward.

appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole.

### STATEMENT OF RELIEF SOUGHT

WHEREFORE, pursuant to K.S.A. 77-622(b), Petitioner requests this Court to:

1)     Reverse and/or set aside the decision of the final Order;

2)     Enjoin or stay the effectiveness of the final Order;

3)     Render a judgment in favor of Petitioner; and/or

4)     For such further and additional relief as the Court deems just and equitable.

Paul E. Dean, #18395
Putnam & Dean LLC
605 Lincoln, P.O. Box 1135
Emporia, KS  66801
(620) 342-2662
Fax (620) 343-7233
pauldean@pauldeanlawllc.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of August, 2023, I mailed through the U.S. Postal Service to the following:

Charles Emmer, 1542 Berkeley Rd., Emporia, KS 66801

The Kansas Office of Administrative Hearings, 1020 S. Kansas Ave., Topeka, KS 66612-1327

James J. Ward, Presiding Officer/Administrative Law Judge, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Paul E. Dean
Attorney for Emporia State University

10

ELECTRONICALLY FILED
2024 Jan 29 AM 11:30
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000088
PII COMPLIANT

IN THE FIFTH JUDICIAL DISTRICT
DISTRICT COURT OF LYON COUNTY, KANSAS

| | | |
|---|---|---|
| EMPORIA STATE UNIVERSITY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. LY-2023-CV-000088 |
| | ) | |
| CHARLES EMMER, | ) | |
| Individually; | ) | |
| THE KANSAS OFFICE OF | ) | |
| ADMINISTRATIVE HEARINGS; | ) | |
| JAMES WARD, In his | ) | |
| Capacity as Presiding Officer/ | ) | |
| Administrative Law Judge | ) | |
| For the Kansas Office of | ) | |
| Administrative Hearings, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Proceeding Pursuant to K.S.A. Chapter 77.

## RESPONDENT CHARLES EMMER'S ANSWER TO PETITION FOR JUDICIAL REVIEW AND REQUEST FOR AGENCY RECORD

Comes Now, Respondent, Charles Emmer, by and through his attorneys, J. Phillip Gragson and Amanda S. Vogelsberg, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, and for his Answer to Petitioner Emporia State University's ("ESU") Petition and Request for Agency Record states and alleges as follows:

## ANSWER

1)      Respondent Charles Emmer denies all allegations contained in ESU's Petition for Review unless expressly admitted herein.

2)      Respondent Emmer admits the allegations set forth in paragraphs 1, 2, 3, 4 and 5 of ESU's Petition. However, the Kansas Office of Administrative Hearings and presiding officer, James Ward, are not proper parties to a KJRA appeal.

1

3)      Respondent Emmer admits the allegations contained in paragraphs 6, 7, 8 and 9 of ESU's Petition.

4)      Respondent Emmer admits that paragraph 10 of ESU's Petition contains part of the expired KBOR Policy that was adopted without appropriate notice to and without an opportunity to respond by affected tenured professors working for state universities under their supervision.

5)      Respondent Emmer admits in paragraph 11 of ESU's Petition that KBOR approved the "Workforce Management Framework" (hereinafter "WMF") which contains the same language as the KBOR policy at Chapter II.C.6.b.ii.

6)      Respondent Emmer admits in paragraph 12 of ESU's Petition that ESU entered into a contract with OAH to conduct "hearings" without discovery or the calling of witnesses through which terminated professors could "appeal" pursuant to the WMF/KBOR policy, but denies the remaining allegations as phrased therein.

7)      Respondent Emmer admits in paragraph 13 of ESU's Petition that ESU wrongfully terminated Respondent Emmer pursuant to the WMF/KBOR policy on Thursday, September 15, 2022, without a pre-termination hearing. Respondent Emmer also admits that ESU provided the letter attached as Ex. 1 to its Petition, but it included other documents as well.

8)      Respondent Emmer admits in paragraph 14 of ESU's Petition that he properly appealed his wrongful termination under the WMF/KBOR Policy, including submitting the letter attached as Ex. 2 to ESU's Petition, but also submitted other documents as well.

9)      Respondent Emmer admits in paragraph 15 of ESU's Petition that ESU filed a Response with Exhibits, however, those exhibits are not included in Ex. 3 of ESU's Petition.

10)     Respondent Emmer admits in paragraph 16 of ESU's Petition that Hearing Officer Ward conducted a "hearing" by Zoom (not telephone) wherein Respondent Emmer was denied

discovery, the calling of witnesses, and cross examination.

11)     Respondent Emmer admits the allegations contained in paragraph 17 of ESU's petition that he was properly reinstated to his tenured position at ESU.

12)     Respondent Emmer denies the nonsensical legal arguments and allegations contained in paragraphs 18, 19, 20 and 21.

13)     Respondent Emmer admits in paragraph 22 of ESU's Petition that Respondent has a right to bring other claims before other courts or tribunals, including, but not limited to, a 42 U.S.C. § 1983 action in Federal Court, but denies the remaining allegations contained in paragraph 22.

14)     Respondent Emmer admits in paragraph 23 of ESU's Petition that notice of the specific basis for state action against a tenured professor is required by due process. The notice must provide sufficient information justifying the state action to allow the ability to provide a meaningful response. As to the legal reference and citation to *Board of County Comr's of Reno County v. Akins*, the actual quote in from *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and is as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonable to convey the required information, [citation omitted] and it must afford a reasonable time for those interested to make their appearance....

15)     Respondent Emmer denies the nonsensical legal arguments and allegations contained in paragraphs 24 through 27.

16)     Respondent Emmer denies the nonsensical allegations contained in paragraphs 28 through 33 and states that, despite wholly deficient substantive and procedural due process, the

Hearing Officer reached the correct decision.

21)    Respondent Emmer denies the nonsensical legal arguments and allegations contained in paragraphs 34 through 41, other than the specific quotes of the referenced invalid KBOR policy and the Hearing Officer's decision.

22)    Respondent Emmer denies the nonsensical legal arguments and allegations contained in paragraphs 42 through 45 and further states that ESU, having adopted the WMF/KBOR policy that prohibited any discovery as to the real reasons for the termination or the calling of and cross examination of witnesses, restrictions to which Respondent Emmer objected, cannot now claim as a basis for appeal that Respondent Emmer failed to present sufficient evidence to support the Hearing Officer's decision. The Hearing Officer properly found that ESU failed to articulate any reasons specific to Respondent Emmer to serve as the basis for Respondent's termination. In substance, ESU sent the same generic vague "could be this, could be that" "notice" to all of the wrongfully terminated tenured professors under the WMF/KBOR Policy.

## <u>DEFENSES</u>

1)    The decision of the Hearing Officer constitutes a final agency action, and pursuant to K.S.A. 77-621(a)(1), ESU has the burden of proving the invalidity of the Hearing Officer's Final Order, although reached utilizing unconstitutional procedures, as to reinstatement.

2)    The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is presumed to be valid unless it is not supported by substantial competent evidence and "is so wide of the mark" as to be arbitrary and capricious, pursuant to *Vakas v. Kansas Bd. Of Healing Arts*, 248 Kan. 589, 808 P.2d 1355 (1991).

3)    The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is supported by the lack of substantial competent evidence to support

4

an order upholding termination.

4)     The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is not arbitrary and is supported by law.

5)     ESU fails to state a claim upon which relief may be granted.

6)     ESU failed to perfect its petition for judicial review via insufficient service of process.

WHEREFORE, Respondent Charles Emmer respectfully requests that the Court deny ESU any relief and affirm the decision of the Hearing Officer as to the issue of reinstatement and for such further and additional relief as the Court deems just and equitable.

## REQUEST FOR AGENCY RECORD

As required by K.S.A. 77-620, Respondent requests Appellant, at its cost, prepare, certify, and file a full record of the administrative proceedings related to this appeal, including all filings with OAH, the transcript of hearing, and the recording of hearing.

Respectfully submitted,

/s/ J. Phillip Gragson, #16103
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
Henson, Hutton, Mudrick,
 Gragson & Vogelsberg, L.L.P.
3649 SW Burlingame Road, Ste. 200
Topeka, KS 66611
785 232-2200 (ph); 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
*Attorneys for Charles Emmer*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing instrument was filed via e-Flex with the District Court on 29th day of January, 2024, which will send notification to:

Paul E. Dean
<u>Pauldean@pauldeanlawllc.com</u>
Attorney for ESU

And deposited in the U.S. Mail on the same date addressed to:

Kansas Office of Administrative Hearings
1020 S Kansas Ave
Topeka KS 66612-1327

James Ward, Presiding Judge
Administrative Law Judge
1020 S Kansas Ave
Topeka KS 66612-1327

<u>/s/J. Phillip Gragson</u>
J. Phillip Gragson
