BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
STATE OF KANSAS

Christopher Lovett,

    Respondent,

v.
                               OAH No.    23BR0016 BR

Emporia State University,

    Agency.

## ORDER

### Statement of Case

    This matter comes before the Office of Administrative Hearings (OAH) for an Administrative Hearing pursuant to the Kansas Board of Regents (KBOR) approval of Emporia State University's (ESU) *Framework For Workforce Management*.[1] An administrative hearing was held February 28, 2023. The issue in this matter is whether ESU's action to terminate Christopher Lovett, PhD, is in compliance with ESU's Framework as approved by KBOR. Dr. Lovett appears through his attorney, Phillip Gragson, and in person. ESU appears through its attorney Kevin Johnson. The parties each filed written arguments and made oral arguments. This proceeding was held pursuant to KBOR's Suspension, Terminations and Dismissals policy.[2]

### Findings of Fact

1.     Dr. Lovett is a tenured professor in Social Sciences/Sociology/Criminology with ESU and has been with ESU since 1999. He teaches history and sociology courses at ESU. On September 15, 2022, Dr. Lovett was notified that his employment with ESU would end May 16, 2023. It is this action that is the basis of Dr. Lovett's appeal to OAH.

---

[1] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii)(5) and *Emporia State University Framework for Workforce Management*.
[2] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6 (b).

2. The ESU Framework was submitted to the KBOR at its meeting on September 14, 2022. KBOR determined that the Framework was in compliance with its policy[3] and authorized ESU to implement the Framework.

3. The correspondence notifying Dr. Lovett that his appointment as Professor in Social Sciences/Sociology/Criminology was being terminated indicated that the action was being taken pursuant to the *Kansas Board Of Regent's Policy Manual* and *Emporia State University Framework For Workforce Management* (Framework). The notice cited extreme financial pressures accelerated by the COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations, and substantive changes in the educational marketplace.

4. The letter terminating Dr. Lovett indicates:

   Specifically, this action is based on factors such as, but not limited to:
   - Low enrollment
   - Cost of operations
   - Restructuring of a program, department, or school as determined to be necessary by the university.

   Secondary considerations may include:
   - Reduction in revenues for specific departments or schools.
   - Current or future market considerations as to the need for a program or department.
   - Realignment of resources.
   - Performance evaluations.
   - Teaching and research productivity.
   - Low service productivity.

5. Within the Department of Social Sciences, Sociology, & Criminology, ESU has chosen to suspend the programs or elements of programs in Bachelor of Arts in History, Bachelor of Science in History, Bachelor of Arts in Political Science, Bachelor of Science Political Science, Master of Arts in History, History thesis concentration, History non-thesis concentration, Graduate certificate in Public History, and Graduate certificate in Political Science.[4] Because of this restructuring, ESU will not offer many of the courses Dr Lovett teaches and will not have many faculty.[5]

6. Dr. Lovett argues that he has not been given a reason for his termination and he has not been given due process because the Framework did not allow discovery. Dr. Lovett argues that

---

[3] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii).
[4] Affidavit of Dr. Joan Brewer, Interim Provost & Dean of the Teacher's College at Emporia State University, ¶11.
[5] *Id.* ¶12. See also Affidavit of Dr. Brent Thomas, Interim Provost & Vice President of Academic affairs and Dean of the College of Liberal Arts & Sciences at Emporia State University, ¶16.

he can connect the dots and feels he has been targeted, believes that he has been terminated as the result of bias, and ESU is purging the faculty. Further, he believes that he has been targeted because he has ruffled feathers. Dr. Lovett believes that because he has tenure he cannot be discharged without cause.

7. Dr. Lovett also argues that flawed statistics have been used. His exhibits include a three page publication from the American Association of University Professions. This exhibit asserts that the ESU determinations are flawed, capricious, and unjust in that there is not low enrollment, there is not extreme financial pressure, and there are not high costs of operations at ESU.[6]

## Conclusions of Law

1. In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Declaration of financial exigency and the processes associated with declaration of financial exigency shall not be a prerequisite to any suspension, dismissal, or termination authorized by this provision.[7]

2. While ESU is not facing financial exigency, extreme financial pressures do require a prudent review and restructuring, which will require modification, reorganization, suspension or elimination of certain operations, programs, and curriculum.[8]

3. Decision-making within the Framework may be based on factors such as, but not limited to, performance evaluations, teaching and research productivity, low service productivity, low enrollment, cost of operations, market considerations as to the need for a program or department, restructuring of a program, department or school, or reduction in revenues for specific departments or schools.[9]

4. The notice of suspension, dismissal, or termination to the affected employee shall include a statement that this action is being taken pursuant to the Framework, the reasons for the action being taken, the effective date of the action, and any consideration to be provided by the University to the affected employee.[10]

---

[6] Dr. Lovett filing dated March 1, 2023, entitled KKSAAUP Presentation -1-31-23a.pdf.
[7] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii).
[8] The Framework, page 1.
[9] *Id.*
[10] *Id.*, page 2.

3

5. The only grounds for reversing the state university chief executive officer's decision to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious.[11]

6. The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel.[12]

7. ESU argues a rebuttable presumption of validity attaches to its action and it is up to Dr. Lovett to show the decision to terminate him is not consistent with ESU's Framework.[13]

Analysis

1. Dr. Lovett's assertion that he has been targeted because he has ruffled feathers is a statement he has presented but is not supported by presented facts.

2. As to Dr. Lovett's assertion that he has been terminated as the result of bias, the nature of the process afforded through the ESU Framework is not adequate to provide the evidence necessary to establish or disprove his allegation of bias. Whether the assertion of bias is factual cannot be determined here.

3. The action taken to terminate Dr. Lovett was conveyed in ESU's September 15, 2022 Termination Letter. The letter contains the language, "this action is based on factors such as, but not limited to: "[L]ow enrollment, Cost of operations, and Restructuring of a program, department, or school as determined to be necessary by the university."

2. Dr. Lovett argues that the decision to terminate him is an unjustified and capricious result. He argues that the three page publication from the American Association of University Professions show that the claims of low enrollment or high costs of operations are unsupported. The high costs of operations and extreme financial pressures are assertions made by ESU that are university wide factors. How these factors may or may not affect Dr. Lovett are unknown. However, Dr. Lovett's American Association of University Professions exhibit has not overcome the presumption that ESU's figures are correct.[14]

3. Most importantly, Dr. Lovett has not overcome the presumption of ESU's position that enrollment in history courses and history as a major have been declining for the last five

---

[11] *Id. Page 2, number 3, and Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii)(3).
[12] *Kansas Board of Regents Policy Manual* at ¶6(b)(ii)(6).
[13] *Id.*
[14] *Kansas Board of Regents Policy Manual*, Chapter II, §C, ¶6(b)(ii)(6).

years.[15] Because of this, the action by ESU to terminate Dr. Lovett is based on restructuring of a program, department, or school as determined to be necessary by the university. ESU's restructuring of the History program within School of Liberal Arts and Sciences is within its Framework as authorized by KBOR.

## Conclusion

In light of the KBOR's Policy Manual and the ESU Framework, and for the reasons outlined above, ESU's action to terminate Professor Lovett is affirmed.

## Right to Seek Relief from the Decision

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management (Framework), which was approved by the Kansas Board of Regents on September 14, 2022. Pursuant to the Framework, the above proceeding was not conducted pursuant to the Kansas Administrative Procedures Act.[16]

This order is effective on the date reflected on the certificate of service.

According to the Framework this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents. This order therefore constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[17] The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[18] According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612) and (3) time for filing the petition for judicial review (K.S.A. 77-613) and other applicable provisions of law regarding bond, compliance and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[19]

Judicial review is governed by the KJRA.[20] A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or

---

[15] Affidavit of Dr. Brent Thomas, Interim Provost & Vice President of Academic affairs and Dean of the College of Liberal Arts & Sciences at Emporia State University, ¶12, 13.
[16] K.S.A. 77-501 *et seq.*
[17] K.S.A. 77-601 *et seq.*
[18] K.S.A. 77-603.
[19] K.S.A. 77-607(a).
[20] K.S.A. 77-606(d).

is effective.[21]  A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[22]  If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

*[signature]*

Sandra L. Sharon
Administrative Law Judge/Presiding Officer
Office of Administrative Hearings
1020 S. Kansas Ave.
Topeka, KS  66612
Telephone: 785-296-2433

---

[21] K.S.A. 77-609(b).
[22] K.S.A. 77-613.

## CERTIFICATE OF SERVICE

On _____May 17_____, 2023, I certify that a copy of the foregoing was placed in the United States first class mail, postage prepaid, addressed to:

>Kevin Johnson, General Counsel
>Emporia State University
>1 Kellogg Circle
>Box 4001
>Emporia, Kansas 66801

>John Yeary
>General Counsel
>Kansas Board of Regents
>1000 SW Jackson, Suite 520
>Topeka, KS 66612
>Tel. 785-430-4291

And I further certify that I caused a copy of the foregoing to be served electronically through OAH's e-filing system to:

>Steven Lovett
>Associate General Counsel for Academic Affairs
>Emporia State University
>1 Kellogg Circle
>Campus Box 4001
>Emporia, KS 66801

>Christopher Lovett
>3508 SW Kent Ct.
>Topeka, KS 66614

>J. Phillip Gragson
>Henson Hutton Mudrick
>Gragson & Vogelsberg LLP
>3649 SW Burlingame Rd., Suite 200
>Topeka, KS 66611

_____
Staff Person
Office of Administrative Hearings