**Exhibit H**

ELECTRONICALLY FILED 11/08/2023 13:39:05 OFFICE OF ADMINISTRATIVE HEARINGS

## BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
## STATE OF KANSAS

Max McCoy,
      Appellant,
                                             OAH No. 23BR0002 BR

v.

Emporia State University
      Respondent.

## FINAL ORDER

The above captioned matter comes before the Presiding Officer/Administrative Law Judge (ALJ) following an administrative hearing.

### *Statement of the Case:*

Appellant, Max McCoy (McCoy), requested an administrative hearing to appeal action taken by the Respondent, Emporia State University (ESU), to terminate his employment as a member of the ESU teaching faculty under the Emporia State University Framework for Workforce Management (FWM). (ESU Exhibit H.)

The FWM as approved by the Kansas Board of Regents (KBOR), provided that an individual notified of his or her termination under the FWM, had the right to appeal the action to the ESU President, and to further appeal the response by the ESU President for an administrative hearing before the Office of Administrative Hearings (OAH).

The issue before OAH for this proceeding was whether ESU's action to terminate employment was proper in accordance with the governing statutes, rules, regulations, and policies governing ESU's actions.

The hearing was conducted on January 24, 2023 by video conference before the undersigned ALJ. McCoy appeared without an attorney. Steven Lovett, Associate General Counsel, appeared on behalf of ESU. Kevin Johnson, General Counsel, appeared to observe the proceeding.

### *Evidentiary Rulings:*

Pursuant to the procedures contained in the FWM: " The review shall be based upon the written materials submitted, along with any oral presentation to the administrative hearing officer by the employee and the university."

On November 8, 2022, OAH received the following documents:
- Request for administrative hearing/appeal forwarded from KBOR.
- Dismissal letter from ESU to McCoy dated September 15, 2022.

- ESU's response to the appeal dated November 4, 2022.
- ESU Exhibits A through U submitted with the November 4, 2022 response.

On January 3, 2023, OAH received additional documents from McCoy submitted as two submissions to OAH, one of 97 pages and one of 15 pages. On January 10, 2023, OAH received an email from McCoy indicating that the documents he submitted to OAH were also sent to ESU.

These documents were provided to OAH and therefore pursuant to the procedures contained in the FWM are considered part of the record along with the oral presentation.[1]

## *Findings of Fact:*

1. ESU is an institution of higher education governed by KBOR.

2. McCoy was a tenured professor of Journalism at ESU.

3. On January 20, 2021, KBOR initially approved a "Temporary Pandemic-Related Amendments to the Suspensions, Terminations and Dismissals Policy" (Temporary Policy). (ESU Exhibit C.) The Temporary Policy gave KBOR governed universities the opportunity to submit proposed framework to KBOR for approval procedures by which each university may seek to terminate employment of employees, including tenured faculty.

4. ESU presented its FWM which was presented to KBOR on its discussion agenda for September 14-15, 2022. (ESU Exhibit H.)

5. On or about September 14, 2022, KBOR approved ESU's FWM, contained in ESU Exhibit H.

6. The FWM noted financial pressures experienced by ESU which had been accelerated by the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues. The FWM recognized circumstances necessitated review and restructuring which would require modification, reorganization, suspension or elimination of certain operations, programs, and curriculum.

7. The FWM, as approved by KBOR, granted ESU the authority to terminate employment of employees, including tenured faculty, for specific criteria outlined within the FWM.

8. Reasons justifying dismissal of staff set forth in the FWM, included, but were not limited to:

   a. Low enrollment;
   b. Cost of operations;

---

[1] The FWM provides, "The review shall be based upon the written materials submitted, along with any oral presentation to the administrative hearing officer by the employee and the university."

    c. Reduction in revenue for specific departments or schools;
    d. Current or future market considerations as to the needs for a program or department;
    e. Restructuring of a program, department, or school as determined to be necessary by the university;
    f. Realignment of resources;
    g. Performance evaluations;
    h. Teaching and research productivity;
    i. Low service productivity.

9. The FWM further specified :

> A decision for action must be made in consideration of the following:
> - Relevant accreditation requirements for the program, school, or college.
> - Course availability to students in order to complete degree requirements. Course availability means students can take necessary courses either at ESU or through another university or community college in Kansas.

10. The FWM set forth a procedure for any action taken by ESU.
    a. ESU had to provide at least a 30-day advance written notice of the suspension, dismissal, or termination to the affected employee. The notice was to include:
        i. a statement the action was taken pursuant to the policy,
        ii. the reasons for the action,
        iii. effective date of the action,
        iv. any considerations provided by the university (severance pay, payouts, retirement options, etc.).
    b. The affected employee had a 30-day period to appeal the suspension, dismissal, or termination through KBOR for an administrative hearing before OAH.
    c. The only grounds for reversal of the suspension, dismissal, or termination are to establish the action are if the suspension, dismissal, or termination was:
        i. Inconsistent with the FWM approved by KBOR,
        ii. The result of unlawful bias or discrimination, or
        iii. Unreasonable, arbitrary, or capricious.
    d. The employee was required to provide a written statement and any relevant supporting documents as to why the employee believed the action was incorrect at the time of filing the appeal to KBOR and a copy with the ESU President.
    e. The ESU President then had a 30-day window of time to provide a written response to KBOR and the employee along with any supporting documentation.
    f. After the President's response was received, the employee then had a 10-day window to appeal the matter for an administrative hearing before OAH.
    g. The procedures in the FWM specify the employee has the burden of proof for the appeal hearing and that the decision of the ALJ is final, and not subject to further administrative review.

11. On September 15, 2022, ESU issued a letter to McCoy providing notice that his employment as a professor with ESU in English/Modern Languages/Journalism would end effective May 16, 2023 pursuant to the KBOR approved policy. The notice cited factors for the action including, but not limited to:

- Cost of operations.
- Reduction in revenues for specific departments or schools.
- Current or future market considerations as to the need for a program or department.
- Restructuring of a program, department, or school as determined to be necessary by the university.

The notice advised that secondary considerations may include:

- Low enrollment.
- Realignment of resources.
- Performance evaluations.
- Teaching and research productivity.
- Low service productivity.

The notice included a packet which provided McCoy details of his rights and benefits. The notice informed McCoy he would receive three (3) months of severance pay and that he may be eligible for retirement in lieu of layoff. (ESU Exhibit A.)

12. Within the required 30-day window to request an appeal of the termination, McCoy submitted an appeal of his termination to KBOR on October 6, 2022. McCoy requested an appeal of the dismissal notice alleging he was "unjustly fired" and made additional arguments and allegations including:

   a. That the process utilized by ESU and KBOR to approve the FWM did not allow time for review or a meaningful response before the FWM was submitted to KBOR for approval.

   b. Questioning whether ESU President Ken Husch had the authority to terminate McCoy's employment.

   c. Alleged "secretive" meetings of the ESU administration and leadership team violated the Kansas Open Records Act (KORA) and Kansas Open Meetings Act (KOMA).

   d. That the time limits for an appeal imposed on terminated employee did not allow sufficient time to gather material and placed the burden on the terminated employee to prove the dismissal was improper.

   e. That the termination denied him due process in violation of the U.S. Constitution.

   f. That the termination was retaliation for exercising his First Amendment free speech rights in various publications.

   g. That the termination was in retaliation for exercising his right to academic freedom under the First Amendment as advisor to the campus newspaper.

   h. That the termination was due to age discrimination in violation of Federal law.

   i. ESU failed to identify a justifiable cause for termination as required by long-standing university practices in breach of contractual obligations for a tenured professor.

    j. ESU used a pandemic-era policy to purge liberal and outspoken tenured professors and close programs administrators found disagreeable.

    k. That the termination intentionally inflicted emotional distress on McCoy.

    l. That the termination did not allow for time to gather materials for a meaningful appeal.

    m. That the grounds for appeal were unreasonably narrow.

    n. That the adoption of the FWM lacked meaningful shared governance between administration and faculty.

13. On November 8, 2022, ESU filed a response to McCoy's appeal along with supporting Exhibits A through U.

14. McCoy provided copies of his evaluations and ratings dated April 26, 2010; April 26, 2012; May 3, 2013; May 14, 2014; May 8, 2015; May 13, 2016; from the chair or interim chair of the English Modern Languages, and Journalism department at the time of each evaluation.

15. On January 3, 2023 McCoy filed additional documents with OAH.

    a. McCoy provided a copy of an email correspondence send to individuals in the English, Modern Languages, and Journalism department at ESU dated September 27, 2022 with a subject "EMLJ department suspended programs." The email correspondence specified that programs and minors that had not been suspended were:

> BSE English Secondary & Middle School Teaching
> BSE Modern Languages Spanish Secondary & Middle School Teaching
> BA Modern Languages Spanish
> Creative Writing minor
> English minor.

The email further noted that the following programs and minors had been suspended:

- BA-English (ENG)
- BSE – Journalism (JRNE)
- LIC – Graduate Licensure in Journalism Education
- MA – English (ENG)
- CRT – Graduate Certificate in English (ENC)
- Minor – Journalism (JRN)
- Minor – Modern Language (MRL) W/Concentrations in French   (FRN) & German (GER)
- Minor – Latin American Studies (LAT)
- Courses – All non-Spanish Language Courses.

16. McCoy was given the opportunity to testify at the hearing and argue his case as to why he believed his termination should be reversed.

17. McCoy alleged the termination of his employment denied him due process rights under state and federal law, infringed on his constitutional rights to free speech and academic freedom, and violated his contractual rights as a tenured faculty member. McCoy further argued his termination was due to age discrimination because he was over the age of 40. Additionally, McCoy alleged his termination was in retaliation for his views, opinion columns, authored works, and service as an advisor to the campus newspaper. McCoy further questioned whether ESU president Ken Hush had the authority to terminate his employment.

18. McCoy also suggested the actions taken by ESU were in violation of the Kansas Open Records Act and the Kansas Open Meetings Act.

19. McCoy argued that his position as a tenured professor was a property right and cited case law holding such property right was subject to due process protections of the 5th and 14th amendments of the U.S. Constitution.

20. At the hearing McCoy further argued the September 15, 2022 termination letter offered a list of multiple reasons for his termination which handicapped his ability to effectively appeal because he did not know how to respond. Additionally, McCoy argued that preparing his case was a burden without the ability to conduct discovery.

21. McCoy submitted additional documents to OAH on January 3, 2023 and January 10, 2023 which, as noted above, were admitted to the record along with the documents submitted by ESU.

## *Analysis and Conclusions of Law:*

In requesting a hearing, the burden of proof is on the person or persons challenging the validity of the agency action to prove by a preponderance of the evidence that the action is unreasonable.[2]

As noted above, this proceeding is not conducted pursuant to KAPA. There are no provisions in the KBOR policy or the FWM which specify the standard of proof that applies. The lowest standard of proof is the "preponderance of the evidence," which means evidence that shows a fact is probably more true than not true.[3] Absent a more stringent standard in either KBOR policy or the FWM, this lowest standard must be applied. Therefore, McCoy has the burden to show, by the preponderance of the evidence, and not a higher standard, that the action taken by ESU was invalid.

---

[2] *Shawnee Mission Medical Ctr. v. KDHE,* 235 Kan. 983, 988, 685 P.2d 880 (1984).
[3] *In re B.D.-Y.,* 286 Kan. 686, Syl ¶1, 187 P.3d 594 (2008), (citing *Ortega v. IBP. Inc.,* 255 Kan. 513, 527-528, 874 P.2d 1188 (1994)).

In this proceeding, McCoy raises concerns with several issues that are outside the scope of the authority of this tribunal in this proceeding.

The Office of Administrative Hearings (OAH) is an administrative agency in the Executive Branch of government of the State of Kansas. As an administrative agency, OAH does not have any common-law authority. In an administrative proceeding, OAH lacks the authority to address constitutional questions. Such power is reserved for the courts.[4] OAH lacks the authority to invalidate a statute, or a rule, regulation, or policy implemented by an administrative agency. OAH is not a court of equity. McCoy raised many issues which are outside the scope of the authority of this tribunal.

*Open records/open meetings violations* – McCoy alleged ESU's actions leading up to the September 15, 2022 termination notice constituted violations of KORA and KOMA. However, this tribunal has no authority to address whether ESU violated either KORA or KOMA.

*Tenure as a property right* – McCoy argued that he had a property right in his tenured position as a professor, and therefore, that property could not be taken away without due process. As noted, courts have held that a tenured professor possessed a property interest in his or her position and therefore the position was subject to substantive due process protections of the Constitution of the United States.[5] However, OAH does not have the authority to address constitutional issues.[6]

OAH lacks the authority to address whether the action taken by ESU complied with any constitutional protections, such as due process regarding the taking of a property right.

*Fairness/procedures/time to prepare* – The KBOR policy and the FWM which set forth the procedure and framework for ESU to terminate employment of its employees, including McCoy's position as a tenured professor are the basis for the present matter being before this tribunal. Pursuant to those governing procedures, a terminated employee had the right to appeal that termination and request a hearing before OAH. Those procedures in the KBOR policy and the FWM did not provide for a hearing to be conducted pursuant to the Kansas Administrative Procedures Act (KAPA),[7] or under any other procedural rules addressing the time the parties would have to prepare, or allowing for the parties to conduct discovery, call witnesses, or any other procedural steps to prepare and submit evidence to support a party's position.

As noted above, OAH is not a court of equity. The ALJ does not have the authority to implement procedures or procedural schedules that might allow for the parties to conduct discovery or present testimony of additional witnesses. The KBOR Policy and FWM did not set forth any additional procedural steps. Effectively, the parties had the opportunity to file exhibits prior to the hearing and then to appear to argue/testify to present their respective positions. Additionally, as noted above, the ALJ does not have the authority to invalidate a statute, rule, regulation or policy. The ALJ lacks authority to implement additional procedures for the parties

---

[4] *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 632, 176 P.3d 938 (2008).
[5] *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998).
[6] *See: Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 176 P.3d 938 (2008).
[7] K.S.A. 77-501 *et seq.*

to follow in preparing their respective cases. Therefore, the ALJ cannot alter or invalidate the procedures governing this appeal. The ALJ cannot alter or invalidate the KBOR Policy or FWM.

The limited scope of the authority granted to OAH is to conduct a hearing and issue a ruling as to whether the action by ESU was:

      i.   Inconsistent with the FWM approved by KBOR,
     ii.   The result of unlawful bias or discrimination, or
    iii.   Unreasonable, arbitrary, or capricious.

OAH only has the authority to address this matter in accordance with the provisions set forth in the KBOR policy/FWM.

### *Was McCoy's termination inconsistent with the FWM approved by KBOR?*

The FWM set forth procedures for any action taken by ESU. The procedures set forth the following procedural steps.

    a.  Notice of the action.
    b.  Appeal.
    c.  Time frame for an appeal.
    d.  Response to the appeal by the ESU President.
    e.  Submission of appeal to OAH.
    f.  Hearing before OAH.
    g.  Decision from OAH that is final and not subject to further administrative review.
    h.  Action is not stayed during the appeal. (ESU Exhibit A, p. 2-3.)

McCoy received notice of his termination which listed factors that may have been the reason for the termination. McCoy argued it was difficult to prepare an appeal without knowing specific reasons for the termination. However, it is noted that in accordance with the procedural steps outlined in the FWM, ESU provided a response to McCoy's appeal which provided specific information regarding the changes within McCoy's department, suspension of programs and minors was provided. After ESU provided its response, McCoy had the opportunity to submit additional documents for the record. As noted above, McCoy did in fact submit additional documents on January 3, 2023 and January 10, 2023.

McCoy has failed to meet his burden to establish that his termination was inconsistent with the FWM as approved by KBOR.

### *Was the termination the result of unlawful bias or discrimination?*

McCoy argued that his termination was in retaliation for his opinions expressed in his published writings which may not be in conformity with the ESU administration or due to his age being over the age of 40. However, there is sufficient information in the record to establish McCoy's termination was due to changes in the programs, majors, and minors offered by ESU within the English/Modern Languages/Journalism department. When programs are suspended and classes are no longer offered, there is no longer a need for faculty to teach such courses. The mere elimination of courses, programs, or minors does not suggest unlawful bias or discrimination.

McCoy has not presented sufficient evidence to establish, by the preponderance of the evidence, that his termination was due to unlawful bias or discrimination.

*Was the termination unreasonable, arbitrary, or capricious?*

The evidence on the record is sufficient to establish that McCoy taught courses in a program that was suspended. As journalism was suspended as a program and minor, it is reasonable to eliminate a professor of journalism rather than a professor in some other program. Although McCoy raised concerns with his termination due to his age or for his exercise of first amendment rights in his publications etc. McCoy has not presented sufficient evidence to establish, by the preponderance of the evidence, that his termination was unreasonable, arbitrary, or capricious.

As noted above, the scope of this tribunal is limited and the ALJ does not have the authority to invalidate or change any statute, rule, regulation, or policy of KBOR or ESU. This tribunal does not have the authority to address contractual disputes, constitutional issues, or other civil/tort claims of either party. This tribunal only has the authority to address whether the action taken by ESU was taken in accordance with the authority put in place to govern ESU as an administrative agency.

In light of the record as a whole, McCoy has not established that his termination as a tenured professor at ESU was a) substantially inconsistent with the KBOR Policy or ESU FWM; b) a result of unlawful bias or discrimination; or c) otherwise unreasonable, arbitrary, or capricious. Therefore, McCoy's termination by ESU must be affirmed under the KBOR Policy and FWM.

**Conclusion:**

ESU's action to terminate the employment of McCoy is affirmed.

IT IS SO ORDERED.

Matthew A. Spurgin
Administrative Law Judge
Office of Administrative Hearings

## <u>Right to Seek Relief from this Decision</u>

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management (Framework), which was approved by the Kansas Board of Regents on September 14, 2022.   Pursuant to the Framework, the above proceeding was not conducted pursuant to the Kansas Administrative Procedures Act.[8]

This order is effective on the date reflected on the certificate of service.

According to the Framework this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents.  This order therefore constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[9]  The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[10]  According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612) and (3) time for filing the petition for judicial review (K.S.A. 77-613) and other applicable provisions of law regarding bond, compliance and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[11]

Judicial review is governed by the KJRA.[12]  A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or is effective.[13]  A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[14]  If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

---

[8] K.S.A. 77-501 *et seq.*
[9] K.S.A. 77-601 *et seq.*
[10] K.S.A. 77-603.
[11] K.S.A. 77-607(a).
[12] K.S.A. 77-606(d).
[13] K.S.A. 77-609(b).
[14] K.S.A. 77-613.

**Certificate of Service**

On _November 8th_, 2023, I certify that a copy of the foregoing was served electronically through OAH's e-filing system to:

Max McCoy
924 Constitution
Emporia, KS 66801

Steven Lovett
Associate General Counsel
Emporia State University
1 Kellogg Circle
Box 4001
Emporia, KS 66801

Staff Person
Office of Administrative Hearings
1020 S. Kansas Avenue
Topeka, KS  66612
785-296-2433
785-296-4848 (fax)