ELECTRONICALLY FILED 08/30/2023 12:21:03 OFFICE OF ADMINISTRATIVE HEARINGS

**Exhibit J**

## BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS
## STATE OF KANSAS

Michael Morales,
                Appellant,

    v.
                                          OAH No.  23BR0008 BR

Emporia State University,
                Respondent.

### INITIAL ORDER

    The above-captioned matter comes before the undersigned Administrative Law Judge (ALJ) for an administrative hearing upon the appeal of Professor Michael Morales (Morales). Professor Morales appeals his notice of termination from Emporia State University (ESU).

### Statement of the Case:

    This matter was referred to the Office of Administrative Hearings (OAH) for an administrative hearing pursuant to the Kansas Board of Regents (KBOR) Policy Manual, Chapter II., Section C.6.b (Temporary Policy), and the Emporia State University (ESU) Framework for Workforce Management (Framework).

    A formal hearing in this matter was held by video conference on February 1, 2023. Those participating in the hearings were: James J. Ward, presiding officer/administrative law judge (ALJ); the appellant, Professor Michael Morales *pro se*; and the respondent, Emporia State University (ESU), who appeared by and through its attorney, Steven Lovett.

### Evidentiary Rulings:

    ESU Exhibits A - U consisting of 664 pages; Morales Exhibit 1, Request for Appeal Letter dated October 14, 2023; and Morales Exhibit 2A and 2B Kansas Board of Regent ESU Presentation and Board Minutes from KBOR meeting of March 17-18, 2021, as referenced in Morales appeal letter were all admitted into the record without objection.

    Morales made a request to call witnesses, Ron Barrett-Gonzalez and Rob Catlett.  ESU objected to these witnesses pursuant to KBOR Temporary policy[1] and ESU Framework[2].  These policies each prohibit either party from calling witnesses and provide the hearing will be based on written materials submitted by the parties and oral presentations to the ALJ.  The request by Morales to call witnesses was denied.

---

1 KBOR Policy Manual, Chapter II., Section C.6.b
2 ESU Exhibit H

**Findings of Fact:**

Professor Morales is an Associate Professor who has earned tenure at ESU and teaches Earth Sciences and Paleontology through the Department of Physical Sciences. He has been an employee of ESU for 25 years. Morales is the only paleontologist at ESU and teaches two courses required for the Bachelor of Science and Bachelor of Arts degrees in the Earth Sciences majors that include Earth History and Plate Tectonics. In addition, Morales teaches two field courses which are required for Earth Science majors, and other elective courses. Professor Morales has worked with the Bureau of Land Management (BLM) which has allowed ESU to be a federally approved repository for fossils collected by BLM through the Johnson Geology Museum.[3]

ESU requires an arduous process of evaluation that takes six years or longer before granting permanent status through tenure to a professor. This includes evaluation of teaching skills by other tenured professors; significant publication by the employee seeking tenure; and input by students and colleagues. After the permanent status is awarded, a tenured professor is expected to continue professional development, quality teaching, and publication output.[4]

The benefit of tenure is continuous employment subject to termination for good cause. The due process rights of a tenured professor being terminated are outlined in the University Policy Manual.[5]

ESU is one of six Kansas regent universities. Under the Kansas Constitution, the Kansas Board of Regents (KBOR) is the governing body for these six regent institutions and the coordinating board for several other institutions of higher education.[6] KBOR has several legal duties that include supervising regent institution operations, budgets, employment, and personnel.

On January 20, 2021, a temporary pandemic-related workforce management policy (Temporary Policy) was proposed to KBOR to provide universities with an additional tool to address financial difficulties caused by the COVID-19 pandemic, decreased program and university enrollments, and the state's declining fiscal support.[7] This policy allowed regent institutions to draft individual proposals for implementing a streamlined process for terminating employees, including tenured faculty. KBOR voted to approve this Temporary Policy on January 20, 2021.

A working group of 12-15 ESU Administrators and Deans of Colleges within ESU met during the months of May, June, July, and August 2022, concentrating on academic program analysis and how the ESU could reorganize, restructure, and reinvest in programs and areas of strength and those with future potential. This group reviewed and discussed public data and internal data related to enrollment, and retention. Market trends, job growth projects, student

---

3 Morales Exhibit 1 and Statements at Hearing
4 ESU Exhibit S, page 1-13 through 1-19
5 ESU Exhibit S, page 1-35 through 1-40
6 Kansas Constitution, Article 6, Section 2(b)
7 ESU Exhibit C KDOR Minutes

demographics, licensure requirements, personnel costs, gross and net revenue, and the interplay between the ESU's academic offerings, alumni, local community, and the greater Kansas community.[8]

None of this information was made available to Morales by ESU, except some public information included in the ESU Exhibits that showed general enrollment and budget information, articles on state budget cuts to higher education, and articles about student behavior in choosing a major[9].

ESU stated the administration had also made general comments around campus about the crisis higher education and ESU faced and the need for change.  ESU stated it was made known "everything was on the table".  President Hush held two coffees on campus in the winter of 2022, where staff and faculty were encouraged to ask questions.[10]  ESU admitted faculty, including department chairs, and staff were not on the working group, and they were not aware of the working group or its mission until September 7, 2022.[11]

ESU presented a plan for implementing the Temporary Policy to KDOR on September 14, 2022.  The ESU implementation plan was called the Framework for Workforce Management (Framework) and it was approved by the KBOR that same day.

On September 15, 2022, Morales was notified in writing his employment with ESU would end effective May 16, 2023.[12]  Morales was terminated pursuant to the ESU Framework.  The ESU Framework specifically states that ESU shall include the reasons for the action taken.

ESU stated in its Notice of Termination to Morales that its actions were due to "extreme financial pressures accelerated by the COVID-19 pandemic, decreased program and university enrollment, continuing and ongoing increases in the cost of operations across campus, and substantive changes in the educational marketplace".[13]

ESU identified low enrollment, cost of operations, current or future market considerations as to the need for a program or department, restructuring of a program, department, or school as determined by the university, reduction in revenues for specific departments or schools, realignment of resources, performance evaluations, teaching and research productivity; and low service productivity[14] as reasons for terminating Morales.[15]

ESU included the terms "such as" "but not limited to" and "may include" in the Notice suggesting ESU may have had other reasons not listed in the Notice for terminating Morales.[16]

---

8 ESU Exhibit T Affidavit of Brent Thomas
9 ESU Exhibits I, J, K, M, N, O and P
10 ESU Exhibit R Campus Communications
11 Statements made by ESU at Hearing
12 ESU Exhibit A
13 id
14 id
15 id
16 id

ESU stated in oral arguments that Morales was not terminated for cause. ESU presented affidavit exhibits that stated the working group that made the recommendation to terminate Morales did not have access to his personnel file.

The ESU Framework set out three grounds for an appeal: (a) the action is substantially inconsistent with the ESU decision-making framework approved by KDOR; (b) the action was the result of unlawful bias or discrimination; and/or (c) the action was otherwise unreasonable and capricious.[17]

Morales filed a timely appeal on October 14, 2022. Under the Framework Morales has the burden of proof to establish one or more of the grounds of appeal.[18] Neither the Temporary Policy nor the Framework established a burden of proof to be used in the appeal. The ALJ shall apply the traditional administrative law standard of a preponderance of the evidence to determine if Morales has met his burden of proof.

Morales raised four areas of concern in his request for appeal. 1. The process outlined in the ESU Framework failed to give him adequate opportunity to respond to the actions of ESU; 2. The streamlined termination process provided in the Framework allowed ESU to avoid its responsibilities to provide the benefits of tenure he had earned; 3. Morales argued his termination was the result of age discrimination; and retaliation against him for disclosing the ESU Framework at a Facility Senate meeting without approval from the administration; and his vocal opposition to the Framework policy; and 4. The actions by ESU were unreasonable and capricious.

**Analysis and Conclusions of Law:**

*Sufficiency of the Letter of Termination*

Morales argued he was denied the procedural due process he had earned as a tenured professor at ESU. ESU agreed that the traditional procedural due process rights provided to a tenured professor in similar circumstances were not available for terminations under the Temporary Policy[19] and the Framework[20], but the process provided therein was adequate. This argument raises the question of the sufficiency of the Notice of Termination.

The ESU Framework provides that "the President shall provide no less than 30 days' notice of a suspension, dismissal, or termination. The notice shall include a statement that the action is being taken pursuant to the COVID Exception policy and the reasons for the action being taken. The notice shall provide the effective date of the action and include any considerations to be provided by the ESU to affected employees.[21]

---

17 ESU Exhibit H
18 id
19 KBOR Policy Manual, Chapter II., Section C.6.b
20 ESU Exhibit H
21 id

The Notice of Termination issued to Morales by ESU on September 15, 2023, included every factor provided for in the Framework[22] as possible grounds for termination. This Notice did not identify which of those grounds applied to Morales, nor why he rather than other similarly situated employees was terminated. The Notice used vague terms "such as" "but not limited to" and "may include" suggesting ESU may have had other reasons not listed in the Notice for terminating Morales.

The Notice played a critical role in providing Morales with a meaningful opportunity to challenge the actions of ESU under the Framework. In addition to the contents of the Notice of Termination, the process outlined by the Framework prohibited discovery by the parties; prohibited witnesses from being called by either side; and denied the parties the opportunity of cross-examination.[23] The Framework was used as an alternative to the traditional procedural due processes provided to tenured professors. These conditions put more emphasis on the requirements of the Notice of Termination to provide the reason or reasons for termination since tools often used for clarification were unavailable.

Professor Morales as a tenured professor has a property right interest in continued employment at ESU.[24] KBOR defines tenure as "a privilege that must be affirmatively granted by the institution in recognition of meritorious service."[25] ESU Policy states, "Emporia State University shall award permanent status to faculty members who have been judged, on the basis of academic credentials and systematic annual evaluation as stipulated in this document, worthy of continuous appointment."[26] The ESU Policy Manual defines Academic Tenure as a "continuous, full-time, academic position." It goes on to state tenured appointments will be annually renewed and termination must follow appropriate policies and procedures.[27]

ESU argued that KBOR is the governing authority for ESU and other Regent Universities. KBOR established the framework for traditional procedural due process for tenured professors and it has the authority to provide for the alternative procedures as it did in the Temporary Policy. ESU stated that the Notice of Termination provided to Morales was adequate under the Temporary Policy as passed by KBOR.[28] The facts do not support that conclusion.

The Notice of Termination on its face failed to provide Morales with the reason or reasons for his termination with sufficient clarity that he could reasonably challenge the action by ESU. ESU included every possible ground provided in the Temporary Policy as the reasons for the termination. ESU used vague statements of "such as" "but not limited to" and "may include" in the Notice. The Notice is substantially inconsistent with the university's decision-making framework to provide faculty affected by decisions under the Temporary Policy an opportunity to challenge those decisions.

---

22 id

23 id

24 *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998)

25 KBOR Policy Manual, Chapter II, Section C.2.vii.(f)

26 ESU Exhibit S, page 1-14

27 ESU Exhibit S, page 1-1

28 KBOR Policy Manual, Chapter II., Section C.6.b

ESU argued that in addition to the Notice of Termination, the information commonly known on the ESU campus provided additional background to Morales on the reasons for his termination. The facts don't support this argument.

Morales and the ESU faculty and staff were presented with the Framework by the ESU administration on September 7, 2022, just seven days before it was presented to KBOR. The ESU faculty and staff were given just seven days to review and provide feedback on the Framework.

No one outside the office of the President of ESU, and the working group had any idea that multiple tenured professors would be terminated by ESU without their traditional procedural due process before September 7, 2022. The working group did not engage affected faculty, ESU department chairs, or any faculty or staff who were not members of the working group. There was no information provided publicly about the process of determining which faculty would be terminated, the data used to make those decisions, nor an opportunity to present additional data to the working group provided.

The information contained in affidavits presented by ESU outlines the process used by the working group that involved several sources of information. ESU failed to provide any of that information to Morales.

The two coffees held by President Hush in January and February 2022, appear from the ESU exhibits[29] to be an opportunity to meet and greet a new president, not an opportunity to discuss the upcoming Framework or working group. This conclusion may have been different had the emails announcing the coffees provided information that the new president was considering the termination of several tenured professors without traditional due process.

The ALJ finds there was a lack of transparency by the working group and a limited time for ESU faculty and staff to review and provide feedback on the Framework. The common knowledge argument used by ESU regarding the crisis in higher education and ESU is general and provides limited if any insight into the reasons Morales was selected for termination.

The ALJ finds the Notice of Termination provided in this matter failed to provide Morales with the reason or reasons for his termination with sufficient clarity that he could reasonably be able to challenge the action by ESU. Pursuant to the Temporary Policy and the Framework the Notice of Termination issued to Morales is found to be substantially inconsistent with the university's decision-making framework approved by KBOR.

*Contract Law and Tenure*

Next, the ALJ takes up Morales's argument that he had earned permanent status based on meritorious service and that by denying him continuous employment without establishing cause for his termination ESU violated the terms of his employment contract. Morales argued that as a tenured professor, he had a property right interest[30] in continuous employment at ESU, subject to

---

29 ESU Exhibit R

30 *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998)

termination for cause.  ESU did not terminate him for cause and therefore its actions were a breach of his employment agreement and unreasonable considering his 25-year tenured position at the university.

It is agreed by the parties that the Framework provided fewer procedural due process rights than those traditional rights earned by tenured professors.  ESU argued that while the procedural due rights provided in the Framework were less, they were still adequate to carry out the directions of the Temporary Policy.  Morales argued neither KBOR nor ESU can take away the traditional due process rights he has earned by obtaining tenure without his agreement.

ESU argued that questions regarding the adequacy of the procedural due process rights provided under the Framework are beyond the scope of this appeal and must be taken up before another tribunal.

The ALJ finds that the adequacy of the appeal process and the legal authority of KBOR to unilaterally change the conditions of the employment contracts of tenured professors is beyond the scope of the KBOR Temporary Policy.

*Remaining Issues*

Morales argued he was the victim of age discrimination by ESU.  Morales cited statistics that 47% of the professors terminated were 62 years of age or older while this age group only represented 17% of the general population of professors at ESU.  ESU stated that the working group did not have access to personal files and the ages of terminated professors.  It was agreed between the parties that ESU is a small campus and administrators, professors, and department chairs generally know each other.  ESU denied age discrimination.

Morales argued that his termination was the result of retaliation by ESU because he disclosed the Framework at a Facility Senate meeting without approval from the administration, and his vocal opposition to the Framework.  Morales did media interviews in opposition to the Framework after he disclosed the Framework and before the KBOR meeting where the Framework was approved.  It's the position of Morales these actions upset the President and resulted in him being terminated.  ESU argued that the decisions regarding termination had been made several weeks before the Faculty Senate meeting where Morales disclosed the Framework. ESU denied retaliating against Morales.

Age discrimination and retaliatory termination are well-established areas of law with various conditions for presenting these allegations.  The limitations set by the Framework on discovery, witnesses, and cross-examination prevent the presentation of evidence necessary for meaningful analysis and decision on these issues by the ALJ.

## Conclusion:

The ALJ finds by a preponderance of evidence presented that the Notice of Termination provided to Morales by ESU was substantially inconsistent with the ESU decision-making framework as approved by KDOR.  The ESU decision to terminate Morales is reversed.

**IT IS SO ORDERED.**

 

 

_____

James J. Ward

Presiding Officer/Administrative Law Judge

Office of Administrative Hearings

### <u>RIGHT TO SEEK RELIEF FROM THIS DECISION</u>

The above proceeding was conducted pursuant to the Emporia State University Framework for Workforce Management, which was approved by the Kansas Board of Regents on September 14, 2022.   Pursuant to that Framework, the above proceeding was not conducted under the Kansas Administrative Procedures Act.[31]

This order is effective on the date reflected on the certificate of service.

According to the Framework, this order is not subject to further administrative review by any officer or committee of Emporia State University or the Kansas Board of Regents. This order constitutes final agency action which may grant further appeal rights pursuant to the Kansas Judicial Review Act (KJRA).[32]  The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act."[33] According to the KJRA:

> A person who qualifies under this act regarding (1) standing (K.S.A. 77-611), (2) exhaustion of administrative remedies (K.S.A. 77-612), and (3) time for filing the petition for judicial review (K.S.A. 77- 613) and other applicable provisions of law regarding bond, compliance, and other preconditions is entitled to judicial review of final agency action, whether or not the person has sought judicial review of any related nonfinal agency action.[34]

Judicial review is governed by the KJRA.[35]  A party seeking judicial review may do so by filing a petition in a district court in the county in which the order or agency action was entered or is effective.[36]  A petition for judicial review must be filed with the district court within 30 days from the date this order was served.[37] If a petition for judicial review is filed, a copy must be served on the opposing party as required by law.

_____

31 K.S.A. 77-501 *et se.*

32 K.S.A. 77-601 *et seq.*

33 K.S.A. 77-603

34 K.S.A. 77-607(a)

35 K.S.A. 77-606(d)

36 K.S.A. 77-6097(b)

37 K.S.A. 77-613

## CERTIFICATE OF SERVICE

On ___August 30th___, 2023, I certify that I caused a copy of the foregoing to be served electronically through OAH's e-filing system to:

Michael Morales
ESU Dept. of Physical Sciences
Campus Box 4030
1 Kellogg Circle
Emporia, KS 66801

Kevin Johnson, General Counsel
Emporia State University
1 Kellogg Circle, Box 4001
Emporia, Kansas 66801

Staff Person
Office of Administrative Hearings
1020 S. Kansas Avenue
Topeka, KS 66612
Tel: (785) 296-2433/Fax: (785) 296-4848

ELECTRONICALLY FILED
2023 Sep 27 PM 1:37
CLERK OF THE LYON COUNTY DISTRICT COURT
CASE NUMBER:  LY-2023-CV-000110
PII COMPLIANT

## IN THE FIFTH JUDICIAL DISTRICT
### DISTRICT COURT OF LYON COUNTY, KANSAS

| | | |
|---|---|---|
| **EMPORIA STATE UNIVERSITY,**<br>    **Petitioner,** | ) | |
| | ) | |
| | ) | |
| **v** | ) | |
| | ) | **Case No.** _____ |
| **MICHAEL MORALES,**<br>**Individually;** | ) | |
| **THE KANSAS OFFICE OF** | ) | |
| **ADMINISTRATIVE HEARINGS;** | ) | |
| **JAMES WARD, In his** | ) | |
| **Capacity as Presiding Officer/** | ) | |
| **Administrative Law Judge** | ) | |
| **for the Kansas Office of** | ) | |
| **Administrative Hearings,** | ) | |
|    **Respondents.** | ) | |

**Proceeding Pursuant to K.S.A. Chapter 77.**

## PETITION FOR REVIEW

COMES NOW, Petitioner, Emporia State University, by and through its undersigned counsel, Paul Dean of Putnam & Dean, LLC, and for this Petition for Review hereby alleges and petitions as follows:

## PARTIES

1.    Petitioner, Emporia State University, is a state agency and one of the six state universities under the control and supervision of KBOR. *See* K.S.A. 76-711; K.S.A. 76-712; K.S.A. 76-601 *et seq.*

2.    Petitioner has standing to bring this petition pursuant to K.S.A. 77-611.

3.    Respondent, Michael Morales ("Respondent Morales"), is a natural person and a resident of Lyon County, Kansas, who may be served with process at 940 Oak

1

Street, Emporia, KS 66801.

     4.     Respondent, The Kansas Office of Administrative Hearings ("OAH"), is a Kansas state agency located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327.

     5.     Respondent, James Ward ("Respondent Ward"), in his official capacity as the Presiding Officer/Administrative Law Judge for the OAH, whose office is located at 1020 S. Kansas Avenue, Topeka, Kansas 66612-1327, was the presiding officer for Respondent Morales's administrative appeal process and hearing.

## JURISDICTION

     6.     Jurisdiction in this court is proper pursuant to K.S.A. 77-609(a) *et seq*.

     7.     All conditions precedent have been satisfied prior to the filing of this petition.

## VENUE

     8.     Proper venue for resolution of this dispute is Lyon County, Kansas, pursuant to K.S.A. 77-609(b).

## STATEMENT OF FACTS

     9.     The Kansas Board of Regents ("KBOR") is empowered by the Kansas Constitution and state statute to control, supervise, operate, and manage the six state universities in Kansas. *See* Kan. Const., Art. 6, § 2(b); K.S.A. 74-3202a; K.S.A. 74-3202c; K.S.A. 76-712.

     10.     KBOR policy states:

> In light of the extreme financial pressures placed on the state universities due to the COVID-19 pandemic, decreased program and university enrollment, and state fiscal issues, effective immediately through December 31, 2022 and notwithstanding any other Board or institutional policy, any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment by their respective university. Such terminations, suspensions, or dismissals shall

2

follow the procedure set forth below. KBOR Policy Chapter II.C.6.b.ii.[1]

11.    Pursuant to said KBOR policy, on September 14, 2022, Petitioner presented a proposed framework (hereinafter "Workforce Management Framework") to KBOR, which was unanimously approved by KBOR on that same day.

12.    Pursuant to said KBOR policy, Respondent OAH was assigned jurisdictional authority to hold hearings for any of Petitioner's employees who might be directly impacted by Petitioner's use of its Workforce Management Framework and who might choose to administratively appeal Petitioner's decision under the Workforce Management Framework. KBOR Policy Chapter II.C.6.b.ii.(2).

13.    Pursuant to said KBOR policy, and based on Petitioner's Workforce Management Framework, Petitioner met with, and provided a notice letter to, Respondent Morales, who is an employee of Petitioner, on September 15, 2022, notifying Respondent Morales "that your appointment as Professor, Physical Sciences, with Emporia State University (ESU) is ending effective Tuesday, May 16, 2023, [… pursuant to] Kansas Board of Regents (Board) policy Chapter II, Section C., Paragraph 6.b., and in accordance with the required framework approved by the Board." Ex. 1.

14.    Pursuant to said KBOR policy and pursuant to Petitioner's Workforce Management Framework, Respondent Morales thereafter provided his appeal of Petitioner's decision on October 14, 2022, and requested an appeal hearing. Ex. 2.

15.    On November 22, 2022, Petitioner filed its response to Respondent Morales' appeal, along with supporting exhibits. Ex. 3.

16.    On February 1, 2023, Respondent Ward held a teleconference hearing on Respondent Morales's appeal.

17.    On August 30, 2023, Respondent Ward entered a final Order disposing of Respondent Morales' administrative appeal. Ex. 4.

---

[1] The complete body of relevant KBOR policy is available at: https://kansasregents.org/about/policies-by-laws-missions/board_policy_manual_2/chapter_ii_governance_state_universities_2

## ARGUMENT

### I. Lack of Jurisdiction, or in the alternative, Misapplication of the Law

18.    As a matter of law, the administrative appeals processes underlying the instant petition are authorized and defined solely by KBOR's and Petitioner's policies. *See* K.S.A. 76-715 ("Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents.").

19.    The KBOR policy relevant to the administrative appeals requires that:

> The burden of proof in any appeal shall be on the employee. There shall be no right of discovery. The review shall be based on the written submissions, and the hearing shall allow oral presentation to the administrative hearing officer by the employee and the university, each of whom may be represented by counsel. KBOR Policy Chapter II.C.6.b.ii.(6).

20.    KBOR policy also imposes a clear limitation to the scope of review conducted by Respondent OAH's administrative law judges based on the only three allegations that are permitted to be brought by an appealing employee, *to-wit*:

> The [employee's appeal] must include a … written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the **decision** to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the **only** grounds for reversing the state university chief executive officer's decision. KBOR Policy Chapter II.C.6.b.ii.(3) (**emphasis added**).

21.    Therefore, on its face, this policy assigns narrow jurisdictional authority to reverse Petitioner's decision to terminate an employee **only** if the appealing employee proves by a preponderance of the evidence that Petitioner's **decision** did not substantially comply with KBOR policy, was unlawfully biased or discriminatory, or was otherwise arbitrary and capricious.

22.    While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, the KBOR

4

policy controlling the underlying administrative appeal's process does not grant any jurisdictional authority to Respondent OAH or Respondent Ward to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's **decision** to terminate an employee.

23.     The concept and use of "notice" is exclusively a key component of procedural due process. *See, e.g., Bd. of County Comr's of Reno County v. Akins*, 271 Kan. 192, 196, 21 P.3d 535, 539 (Kan. 2001) (notice is "[a]n elementary and fundamental requirement of due process [intended to] apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.")

24.     Notice, as a tool of awareness, is legally and logically distinguishable from the concept and meaning of a "decision," which is a conclusion or judgment—two words with different ordinary meanings and distinct functions. *See, e.g., Johnson v. U.S. Food Service*, 312 Kan. 597, 600-01, 478 P.3d 776 (2021) ("The most fundamental rule of statutory construction is [to begin with] giving common words their ordinary meaning.")

25.     While the use and meaning of the word "decision" in KBOR policy is clear and unambiguous, an application of the doctrine of *in pari materia* further establishes that the word "decision" was not intended to include, nor does it incorporate, the concept of "notice." *See, e.g., State v. Batson*, 99 Haw. 118, 122, 53 P.3d 257 (2002) (employing *in pari materia* analysis to support validity of plain meaning interpretation of statute).

26.     For instance, at least two of the points of permitted administrative review within the KBOR policy (*i.e.*, discrimination and arbitrariness) unmistakably address the issue of evaluating the merits of Petitioner's **decision**, not any part of the appeal or grievance process that took place **after** Petitioner's decision was made.

27.     However, Respondent Ward's "analysis and conclusions of law" ignore those express limitations of review and instead focus on the issue of adequate notice, *to-wit*:

> ESU stated that the Notice of Termination provided to Morales was adequate under the Temporary Policy as passed by KBOR. The facts do not support that conclusion. ... The Notice is substantially inconsistent

5

with the university's decision-making framework to provide faculty affected by decisions under the Temporary Policy an opportunity to challenge those decisions. *See*, <u>Ex. 4</u> at 4.

28.     Indeed, Respondent Ward's analysis and conclusions introduce an element of review that is not contained within, nor permitted by, the controlling KBOR policy; Respondent Ward invents a prong of analysis based on whether the notice letter was "substantially inconsistent" with the controlling policy's requirements.

29.     Respondent Ward attempts to rationalize his misapplication of law by arguing that "[t]he Notice played a critical role in providing Morales with a meaningful opportunity to challenge the actions of ESU under the Framework. ... These conditions put more emphasis on the requirements of the Notice of Termination to provide the reason or reasons for termination since tools often used for clarification were unavailable." *See*, <u>Ex. 4</u> at 5.

30.     Even if, *in arguendo*, the notice letter "played a critical role" as observed by Respondent Ward, the letter's role remains one of awareness, not one of decision-making.

31.     Respondent Ward's order appears cognizant of this because criticisms by Respondent Ward are directed at the contents of the notice letter, e.g., that the letter did not provide "sufficient clarity" and that the grounds for termination were "vague statements." *See*, <u>Ex. 4</u> at 5. Indeed, most of Respondent Ward's dissatisfaction with the notice letter is based on his subjective conclusion[2] that "there was a lack of transparency by the working group and a limited time for ESU faculty and staff to review and provide feedback on the Framework. ... [Therefore] the Notice of Termination provided in this matter failed to provide Morales with the reason or reasons for his termination with sufficient clarity that he could reasonably challenge the action by ESU." *See*, <u>Ex. 4</u> at 5 – 6.

32.     Significantly, while Respondent Ward's order repeatedly recognizes that the notice letter was part of the administrative appeal process and was only used to

---

[2] A conclusion that often mischaracterizes the facts he recites.

6

provide "reasons for [Respondent Morales'] termination," the final Order never cites any actual policy requirement the notice letter failed to meet.

33.    Aside from whether Respondent Ward's analysis and conclusions are correct or incorrect—whether the notice provided was sufficient or insufficient—such an analysis and conclusion is separate, and mutually exclusive, from an analysis or conclusion about Petitioner's actual **decision** to terminate Respondent Morales. *See*, Ex. 5.

34.    Instead of analyzing, evaluating, calling into question, disagreeing with, or affirming Petitioner's **decision** to terminate Respondent Morales, the final Order's holding relies solely on a procedural element: the question of notice—an element of the administrative process that occurred **after** Petitioner's decision was made to terminate Respondent Morales. *See*, Ex. 5.

35.    As such, Respondent Ward's final Order ignores the specific grant of jurisdictional authority provided by the controlling KBOR policy and/or misapplies the controlling law, improperly arriving at its decision based only on an analysis of the adequacy of notice. *See*, Ex. 5.

36.    Therefore, and pursuant to K.S.A. 77-621(c)(2), (3), (4), and/or (5), the final Order entered by Respondent Ward is clearly beyond the jurisdiction conferred by KBOR policy, and/or has failed to decide an issue requiring resolution, and/or has erroneously interpreted or applied controlling law, and/or has failed to follow prescribed procedure.

**II. Lack of Jurisdiction, or in the alternative, Misapplication of the Law**

37.    In addition to, and incorporating herewith the foregoing, as a matter of law, the administrative appeals processes underlying the instant petition are authorized and defined solely by KBOR's and Petitioner's policies. *See* K.S.A. 76-715 ("Employees in the unclassified service shall serve at the pleasure of the chief executive officer of the state educational institution, subject to policies approved by the board of regents.").

38.    KBOR policy imposes a clear limitation to the scope of review conducted by Respondent OAH's administrative law judges based on the only three allegations

7

that are permitted to be brought by an appealing employee, *to-wit*:

> The [employee's appeal] must include a … written statement, including any relevant supporting evidence or documentation, setting forth the reasons the employee believes the **decision** to suspend, dismiss, or terminate the employee (a) is substantially inconsistent with the university's decision-making framework approved by the Board, (b) was the result of unlawful bias or discrimination; or (c) was otherwise unreasonable, arbitrary or capricious. These shall be the **only** grounds for reversing the state university chief executive officer's decision. KBOR Policy Chapter II.C.6.b.ii.(3) (**emphasis added**).

39.     Therefore, on its face, this policy assigns narrow jurisdictional authority to reverse Petitioner's decision to terminate an employee only if the appealing employee proves by a preponderance of the evidence that Petitioner's decision did not substantially comply with KBOR policy, was unlawfully biased or discriminatory, or was otherwise arbitrary and capricious.

40.     While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, the KBOR policy controlling the underlying administrative appeal's process does not grant any jurisdictional authority to Respondent OAH or Respondent Ward to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's decision to terminate an employee.

41.     However, Respondent Ward's order once again goes well beyond the permitted scope of administrative review and concludes "that the adequacy of the appeal process and the legal authority of KBOR to unilaterally change the conditions of the employment contracts of tenured professors is beyond the scope of the KBOR Temporary Policy."[3] *See*, Ex. 4 at 7.

## II. No Evidence, or in the alternative, Lack of Substantial Evidence

42.     Without waiving the foregoing, and in the alternative, Respondent Ward's final Order was not based on any evidence as required by KBOR policy and relevant

---

[3] Respondent Ward's order also invents the existence of "employment contracts" between tenured professors and the University. No evidence, policy, law, or other document establishes the existence of a contract between Respondent Morales and Petitioner.

law, or in the alternative, lacked substantial evidence to support its decision.

43.     KBOR policy requires that Petitioner provide "written notice" which shall include "the reasons for the [termination] action." KBOR Policy Chapter II.C.6.b.ii.(1).

44.     The Petitioner's Workforce Management Framework likewise requires that Petitioner's notice include "the reasons for the action being taken[.]" *See,* Ex. 4 at 5.

45.     As recited in Respondent Ward's final Order, the written notice met all of the policy requirements, *to-wit*:

> The Notice of Termination issued to Morales by ESU on September 15, 2022, included every factor provided for in the Framework as possible grounds for termination. *See,* Ex. 4 at 3 and 3.

46.     In spite of reciting the exact reasons for termination as articulated in the controlling policy, Respondent Ward concludes that the notice letter "used vague terms" and did not have "sufficient clarity[.]" Ex. 4 at 5.

47.     The final Order cites **no evidence** in support of these conclusions, but instead relies entirely on Respondent Ward's own personal opinions.[4] *See,* Ex. 4 at 5 - 6.

48.     As noted *supra*, KBOR policy requires that "[t]he burden of proof in any appeal shall be on the employee." KBOR Policy Chapter II.C.6.b.ii.(6).

49.     The final Order acknowledges this burden of proof and acknowledges that the employee must therefore provide "evidence to determine if [Respondent Morales] has met his burden of proof." Ex. 4 at 4.

50.     However, despite this evidentiary mandate, the final Order's analysis and conclusion does not, and cannot, cite any evidence provided by Respondent Morales to establish that the notice letter failed to meet any of the controlling policy's requirements because no such evidence exists in the record.

51.     Simply relying on Respondent Ward's or on Respondent Morales' allegations or conclusory statements as true without requiring supporting evidence

---

[4] Respondent Ward does the same thing when concluding that "[n]one of this information [which provided a reasonable basis for the reduction in force action] was made available to Morales by ESU," in spite of the fact that the information on which the University relied was public information and that the University had no obligation or duty to ensure that Respondent Morales availed himself of that public information. *See,* Ex. 4 at 3.

9

would render meaningless the language in KBOR policy that requires the "burden of proof" to be on the employee, thereby violating a basic canon of statutory construction. *See, e.g., Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1062, 390 P.3d 504 (2017).

52.     Regardless of Respondent Ward's own opinion about the sufficiency of the notice letter (an element of analysis outside the purview of his review), no evidence was presented at anytime that the notice letter did not meet the stated requirements of the controlling policy.

53.     Therefore, and pursuant to K.S.A. 77-621(c)(7), the final Order entered by Respondent Ward is based on a determination of fact that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole.

## STATEMENT OF RELIEF SOUGHT

WHEREFORE, pursuant to K.S.A. 77-622(b), Petitioner requests this Court to:

1)     Reverse and/or set aside the decision of the final Order;

2)     Enjoin or stay the effectiveness of the final Order;

3)     Render a judgment in favor of Petitioner; and/or

4)     For such further and additional relief as the Court deems just and equitable.

Paul E. Dean, #18395
Putnam & Dean LLC
605 Lincoln, P.O. Box 1135
Emporia, KS  66801
(620) 342-2662
Fax (620) 343-7233
pauldean@pauldeanlawllc.com

10

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of September, 2023, I mailed through the U.S. Postal Service to the following:

Michael Morales, 940 Oak Street, Emporia, KS 66801

The Kansas Office of Administrative Hearings, 1020 S. Kansas Ave., Topeka, KS 66612-1327

James J. Ward, Presiding Officer/Administrative Law Judge, 1020 S. Kansas Ave., Topeka, KS 66612-1327

Paul E. Dean
Attorney for Emporia State University

11

IN THE FIFTH JUDICIAL DISTRICT
DISTRICT COURT OF LYON COUNTY, KANSAS

| | | |
|---|---|---|
| EMPORIA STATE UNIVERSITY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. LY-2023-000110 |
| | ) | |
| MICHAEL MORALES, | ) | |
| Individually; | ) | |
| THE KANSAS OFFICE OF | ) | |
| ADMINISTRATIVE HEARINGS; | ) | |
| JAMES WARD, In his | ) | |
| Capacity as Presiding Officer/ | ) | |
| Administrative Law Judge | ) | |
| For the Kansas Office of | ) | |
| Administrative Hearings, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| _____ | ) | |

Proceeding Pursuant to K.S.A. Chapter 77.

## RESPONDENT MICHAEL MORALES'S ANSWER TO PETITION FOR JUDICIAL REVIEW AND REQUEST FOR AGENCY RECORD

Comes Now, Respondent, Michael Morales, by and through his attorneys, J. Phillip Gragson and Amanda S. Vogelsberg, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, LLP, and for his Answer to Petitioner Emporia State University's ("ESU") Petition and Request for Agency Record states and alleges as follows:

## ANSWER

1)      Respondent Michael Morales denies all allegations contained in ESU's Petition for Review unless expressly admitted herein.

2)      Respondent Morales admits the allegations set forth in paragraphs 1, 2, 3, 4 and 5 of ESU's Petition. However, the Kansas Office of Administrative Hearings and presiding officer James Ward, are not proper parties to a KJRA appeal.

1

3)      Respondent Morales admits the allegations contained in paragraphs 6, 7, 8 and 9 of ESU's Petition.

4)      Respondent Morales admits that paragraph 10 of ESU's Petition contains part of the expired KBOR Policy that was adopted without appropriate notice to and without an opportunity to respond by affected tenured professors working for state universities under their supervision.

5)      Respondent Morales admits in paragraph 11 of ESU's Petition that KBOR approved the "Workforce Management Framework" (hereinafter "WPM") which contains the same language as the KBOR policy at Chapter II.C.6.b.ii.

6)      Respondent Morales admits in paragraph 12 of ESU's Petition that ESU entered into a contract with OAH to conduct "hearings" without discovery or the calling of witnesses through which terminated professors could "appeal" pursuant to the WPM/KBOR policy, but denies the remaining allegations as phrased therein.

7)      Respondent Morales admits in paragraph 13 of ESU's Petition that ESU wrongfully terminated Respondent Morales pursuant to the WPM/KBOR policy on Thursday, September 15, 2022, without a pre-termination hearing. Respondent Morales also admits that ESU provided the notice letter attached as Ex. 1 to its Petition, but with other documents as well.

8)      Respondent Morales admits in paragraph 14 of ESU's Petition that he properly appealed his wrongful termination under the WPM/KBOR Policy, including submitting the letter attached as Ex. 2 to ESU's Petition, but also submitted other documents as well.

9)      Respondent Morales admits in paragraph 15 of ESU's Petition that ESU filed a Response with Exhibits, however, those exhibits are not included in Ex. 3 of ESU's Petition.

10)     Respondent Morales admits in paragraph 16 of ESU's Petition that Hearing

Officer Ward conducted a "hearing" by Zoom (not telephone) wherein Respondent Morales was denied discovery, the calling of witnesses, and cross examination.

11)      Respondent Morales admits the allegations contained in paragraph 17 of ESU's petition that he was properly reinstated to his tenured position at ESU.

12)      Respondent Morales denies the nonsensical legal arguments and allegations contained in paragraphs 18, 19, 20 and 21.

13)      Respondent Morales admits in paragraph 22 of ESU's Petition that Respondent has a right to bring other claims before other courts or tribunals, including, but not limited to, a 42 U.S.C. 1983 action in Federal Court, but denies the remaining allegations contained in paragraph 22.

14)      Respondent Morales admits in paragraph 23 of ESU's Petition that notice of the specific basis for state action against a tenured professor is required by due process. The notice must provide sufficient information justifying the state action to allow the ability to provide a meaningful response. As to the legal reference and citation to *Board of County Comr's of Reno County v. Akins*, the actual quote in from *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and is as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonable to convey the required information, [citation omitted] and it must afford a reasonable time for those interested to make their appearance....

15)      Respondent Morales denies the nonsensical legal arguments and allegations contained in paragraphs 24 through 27.

16)      Respondent Morales denies the nonsensical allegations contained in paragraphs

28 through 36 and states that, despite wholly deficient substantive and procedural due process, the Hearing Officer reached the correct decision.

17)     Respondent Morales denies the allegations contained in paragraph 37.

18)     Respondent Morales denies the nonsensical legal arguments and allegations contained in paragraphs 38 and 39.

19)     Respondent Morales admits in paragraph 40 of ESU's Petition that Respondent has a right to bring other claims before other courts or tribunals, including, but not limited to, a 42 U.S.C. 1983 action in Federal Court, but denies the remaining allegations contained in paragraph 40.

20)     Respondent Morales denies the nonsensical allegations contained in paragraph 41 and states that, despite wholly deficient substantive and procedural due process, the Hearing Officer reached the correct decision.

21)     Respondent Morales denies the nonsensical legal arguments and allegations contained in paragraphs 42 through 49, other than the specific quotes of the referenced invalid KBOR policy and the Hearing Officer's decision.

22)     Respondent Morales denies the nonsensical legal arguments and allegations contained in paragraphs 50 through 53 and further states that ESU, having adopted the WPM/KBOR policy that prohibited any discovery as to the real reasons for the termination or the calling of and cross examination of witnesses, restrictions to which Respondent Morales objected, cannot now claim as a basis for appeal that Respondent Morales failed to present sufficient evidence to support the Hearing Officer's decision. The Hearing Officer properly found that ESU failed to articulate any reasons specific to Respondent Morales to serve as the basis for Respondent's termination. In substance, ESU sent the same generic vague "could be

this, could be that" "notice" to all of the wrongfully terminated tenured professors under the WPM/KBOR Policy.

## DEFENSES

1)      The decision of the Hearing Officer constitutes a final agency action, and pursuant to K.S.A. 77-621(a)(1), ESU has the burden of proving the invalidity of the Hearing Officer's Final Order, although reached utilizing unconstitutional procedures, as to reinstatement.

2)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is presumed to be valid unless it is not supported by substantial competent evidence and "is so wide of the mark" as to be arbitrary and capricious, pursuant to *Vakas v. Kansas Bd. Of Healing Arts*, 248 Kan. 589, 808 P.2d 1355 (1991).

3)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is supported by the lack of substantial competent evidence to support an order upholding termination.

4)      The Hearing Officer's Final Order as to reinstatement, although reached utilizing unconstitutional procedures, is not arbitrary and is supported by law.

5)      ESU fails to state a claim upon which relief may be granted.

WHEREFORE, Respondent Michael Morales respectfully requests that the Court deny ESU any relief and affirm the decision of the Hearing Officer as to the issue of reinstatement and for such further and additional relief as the Court deems just and equitable.

## REQUEST FOR AGENCY RECORD

As required by K.S.A. 77-620, Respondent requests Appellant, at its cost, prepare, certify, and file a full record of the administrative proceedings related to this appeal, including all filings with OAH, the transcript of hearing, and the recording of hearing.

Respectfully submitted,

 /s/ J. Phillip Gragson, #16103
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
Henson, Hutton, Mudrick,
 Gragson & Vogelsberg, L.L.P.
3649 SW Burlingame Road, Ste. 200
Topeka, KS 66611
785 232-2200 (ph); 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
*Attorneys for Michael Morales*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing instrument was fax-filed with the District Court and a copy was emailed on the 19th day of October, 2023, to:

Paul E. Dean
Pauldean@pauldeanlawllc.com
Attorney for ESU

And deposited in the U.S. Mail on the same date addressed to:

Kansas Office of Administrative Hearings
1020 S Kansas Ave
Topeka KS 66612-1327

James Ward, Presiding Judge
Administrative Law Judge
1020 S Kansas Ave
Topeka KS 66612-1327

/s/J. Phillip Gragson
J. Phillip Gragson

6