## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AMANDA MIRACLE,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-4056-JAR-GEB** |
| | ) | |
| **KEN HUSH,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants submit this Reply in further support of their Motion to Dismiss (Doc. 45). Defendants assert that Plaintiffs do not overcome Defendants' legal arguments. Accordingly, Defendants' Motion should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Motion. (Doc. 45.) Defendants' Motion should be granted for the reasons previously stated.

### I.    Facts

Defendants' statement of facts accurately reflected the facts as contained in the Second Amended Complaint ("Complaint"). Plaintiffs "controvert" in part paragraphs 3, 6, 19, 21-28, 30, and 33-34 because Plaintiffs insist the reasons given to them were not the "actual reason" various actions were taken. But this is merely speculative and conclusory. Plaintiffs do not contest the financial difficulties ESU had been facing. (*See* Doc. 45 at ¶¶ 15-17 (citing Doc. 41-11 at 3).)  Although Plaintiffs mention that ESU was "fully funded" for a particular school year, Plaintiffs also admit that budgets had been reduced. (*See* Doc. 45 at ¶ 16 (citing Doc. 41-11 at 3).) Plaintiffs "controvert" in part paragraphs 12-14 and 20 because Defendants did not communicate Plaintiffs' current *legal arguments* to Plaintiffs. Plaintiffs do not suggest that Defendants left out any relevant *factual information* in their communications with Plaintiffs.

Plaintiffs "controvert" in part paragraphs 20-28, 30, and 38-39, not because they were not provided with the procedures Defendants stated, but because Plaintiffs believe those procedures were inadequate, which is a legal conclusion and not a factual allegation. With regard to paragraph 32, Plaintiffs admit they received written notice of their termination 243 days before the "effective date" of their terminations, but insist that the date of this written notice be effectively treated as the real date of their terminations, which is a legal conclusion and not a factual allegation. And with regard to paragraphs 33-34, Plaintiffs state that the university could not have been in financial exigency because the university stated in passing that it was not (for purposes of certain procedures), but Plaintiffs have not argued or demonstrated that any type of estoppel prevents Defendants from pointing out financial difficulties here. And Plaintiffs also admitted the financial difficulties as pointed out above.

Plaintiffs suggest that the Court cannot consider the OAH orders underlying this case on a motion to dismiss. (Doc. 49 at 1 n.1.) Plaintiffs suggest that where *Gee v. Pacheco* says otherwise that it is only dicta that relies on *Martinez v. Aaron*. But *Gee* does <u>not</u> cite *Martinez* for that point but rather *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), which in turn cites *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (collecting cases from other circuits). In both *Jacobsen* and *GFF Corp.*, the Tenth Circuit allowed consideration of documents referred to in the complaint that are central to the claims, just as Defendants request here. And Plaintiffs do not dispute the authenticity of the OAH orders.

## II.   <u>Standing</u>

Regarding standing, which is jurisdictional, Plaintiffs argue that they alleged specific actions taken by each defendant. But what Plaintiffs have failed to do is allege actions taken by each defendant (except for Hush) *that are fairly traceable to Plaintiffs' terminations*. Plaintiffs have alleged only quasi-legislative acts, that attorneys provided counsel and representation, and

that Thomas testified in front of a quasi-legislative body and attended unidentified meetings.

Plaintiffs say that KBOR is liable as a joint employer. But KBOR is no longer a defendant. And no actions by KBOR defendants are fairly traceable to Plaintiffs' terminations.

Plaintiffs cite *Copelin-Brown*, saying that the plaintiff in that case "was able to satisfy both causation and redressability." But that was a different plaintiff in a different case. Plaintiffs do not explain how the facts of *Copelin-Brown* are analogous in any way to the facts in this case.

Plaintiffs quote a rule that "general factual allegations in injury resulting from the defendant's conduct may suffice." But to apply this rule, Plaintiffs first have to point to some *conduct*, general or specific, by defendants other than Hush that is fairly traceable to any injuries.

Plaintiffs state that "Defendants argue that the KBOR Individual Defendants cannot redress Plaintiffs' harm," but Defendants did not argue this in their Motion to Dismiss. (The confusion may be because Defendants forgot to remove "and redressability" from the section heading after removing a redressability argument used in a previous Motion to Dismiss.)

Plaintiffs state that "Defendant Kevin Johnson clearly had knowledge of Plaintiffs' constitutionally protected property right in tenure." But former subjective beliefs are not concrete actions that can show the causation needed for standing.

## III.   Qualified immunity

Regarding qualified immunity, Plaintiffs argue that they pointed out specific actions by each defendant. But what Plaintiffs have failed to do is to point out any specific actions which were clearly established to be unlawful.

It is *Plaintiffs' burden* to overcome qualified immunity by demonstrating that the law was clearly established. Plaintiffs now more clearly allege that "they had already been granted tenure under ESU and KBOR policies in effect before the WMP was enacted temporarily." (Doc. 41 at 13.) This means Plaintiffs have disclaimed any federal or state common law as the underlying

3

basis for tenure here. Plaintiffs have asserted their tenure came from ESU and KBOR policies.

Plaintiffs argue they were not afforded a pre-termination hearing, citing *Miller* and *Loudermill*. But these cases only require a hearing "before termination becomes effective," *Miller*, 705 F.2d at 372, and "before the termination takes effect," *Loudermill*, 470 U.S. at 543, not before notice is sent of the effective date of termination.

Plaintiffs argue that *Wertz*, about a "**non-tenured**" (emphasis in Plaintiffs' argument) K-12 teacher, applies to their assertion of tenure as university professors. *Wertz* was plainly about reputational harm, not tenure. And unlike this case it involved a mid-year termination.

Plaintiffs appear to say that the WMP policy could not amend the ESU and KBOR policies because federal law prevented any modification. Plaintiffs' argument effectively alleges that once bestowed under state law, tenure ceases to be a state-law matter and instead becomes essentially amended into the constitution, unmodifiable by legislative acts short of a constitutional amendment. Rather, while and to the extent bestowed, tenure is subject to certain protections under the constitution. And tenure can be modified or removed by generally-applicable actions of a legislative nature. *Scribner*, 308 Kan. at 267-70. Plaintiffs argue that *Scribner* is inapplicable because in *Scribner* the legislative process provided public notice of the proposed legislation change. But *Scribner* simply noted that in passing after holding that notice and a hearing were *not* required. *Scribner* cited U.S. Supreme Court cases for that point.

Plaintiffs offer no case law that says that a state property right in employment, once conferred, becomes an unmodifiable federal right in perpetuity. Tenure is not a fee simple property right. Under Kansas law, any fee simple property right (or any other estate in property) must be transferrable. Restatement (First) of Property § 405 (1944) (approvingly cited by *In re Foster's Estate*, 190 Kan. 498, 501 (1962)) ("Disabling restraints, other than those imposed on

equitable interests under a trust, are invalid."). Tenure is not transferrable and clearly is not intended to be transferrable. The most analogous property right to tenure is a license. And the terms and conditions of licenses granted under state law can be modified by appropriate acts of a legislative nature. *See Hartford Fire Ins. Co. v. State*, 9 Kan. 210, 223 (1872).

Plaintiffs insist that the WMP *policy* was an invalid amendment to ESU and KBOR *policies* because it did not go through the procedures necessary for a *rule and regulation* under the Kansas Rules and Regulations Filing Act (KRRFA). First, Plaintiffs somehow overlook that if this rendered the WMP *policy* unable to affect Kansans' rights, it would also have rendered any other ESU and KBOR *policies* about tenure unable to affect Kansans' rights. In other words, if the WMP were invalid on these grounds, then any policies which Plaintiffs assert tenure came from would also be invalid. None are rules and regulations and none went through that process. Second, KRRFA has a clear and plain exception stating that "[a]ny statement of agency policy may be treated as binding within the agency if such statement of policy is directed to . . . [t]he internal management of . . . the agency." K.S.A. 77-415(b)(2)(B). So the WMP policy, about internal management of employees, was exempt from KRRFA.

Plaintiffs say that the *Taylor* case (for which Plaintiffs omitted the citation: 49 Kan. App. 2d 233) involved "an internal 'no-overtime' policy adopted by KDHE." But the policy in that case was not internal. The policy was not about overtime by agency employees, but about whether overtime wages for patient caregivers would be covered by a welfare program.

Even if the WMP was invalid, leaving only the general tenure policy, Defendants' actions would be entitled to qualified immunity. Any right established under the general tenure policy was a right not to be terminated unless it was for cause, due to program or unit discontinuance, or due to financial difficulties. (*See* Doc. 45 at ¶ 1.) The exact procedures contemplated in state law

for these scenarios are not themselves part of any constitutional right. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)) (holding that "a failure to adhere to administrative regulations does not equate to a constitutional violation"). And although ESU stated in passing that it was not experiencing financial exigency (for purposes of the defined non-WMP procedures under state policy), that does not mean that it was not sufficiently experiencing financial difficulties such that it could not terminate tenured positions due to financial difficulties. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 569-70 (2012) (holding that the constitutionality of an action taken by Congress does not depend on whether Congress recites the correct label for its action).

Plaintiffs argue that academic freedom is a special concern of the First Amendment but have not plausibly alleged termination due to any protected conduct under the First Amendment.

Plaintiffs suggest the WMP conflicts with the general tenure policies. But it is a standard canon of construction that the more specific provision controls. *League of Women Voters of Kan. v. Schwab*, Nos. 124,378, 125,084, 2024 WL 2789304, at *13 (Kan. May 31, 2024).

**IV.    Specificity of Constitutional Claims**

Plaintiffs argue they alleged specific actions for each defendant. But what Plaintiffs have failed to do is allege that any defendant personally participated in any specific, *improper* act.

**V.    Liberty-interest Claims**

Regarding the first element, the *McDonald* and *Michaels* cases cited by Plaintiffs both involve terminations for immoral conduct or lack of the fundamental capacity to do the job. Plaintiffs state in a conclusory manner without legal citation that criticizing Plaintiffs' job performance is "sufficiently derogatory." Plaintiffs ignore contrary cases cited by Defendants.

Regarding the third element, Plaintiffs admit that seven plaintiffs are on administrative leave, so they are still employed. Plaintiffs also admit that they have only alleged four plaintiffs

have had difficulty finding new employment. And those four plaintiffs have still not plausibly alleged that any statements by Defendants foreclosed employment opportunities for them.

Regarding the fourth element, Plaintiffs state that "the public became aware of the names" of persons terminated. Plaintiffs ignore the *Schrader* case and do not allege that any particular Defendants published any statements about any particular Plaintiffs. Plaintiffs refer to media coverage but have not alleged that Defendants made any statements to the media. And Plaintiffs refer to the state court cases, ignoring the *Bishop* case.

## VI.    Conspiracy Claims

Plaintiffs fail to address any of Defendants' arguments regarding conspiracy claims under § 1983. Plaintiffs simply state in a conclusory manner that they have "clearly" alleged "specific facts showing an agreement and concerted action among the defendants." But Plaintiffs fail to explain how they have done so.

Plaintiffs say that claimants under § 1985(3) "must be a member of statutorily protected class." But the class must be protected by § 1985 specifically, not just any statute. Union sympathizers and organizers are not a protected class for purposes of § 1985. *United Bhd. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 837-39 (1983). Neither are teachers, *King v. Knoll*, 399 F. Supp. 2d 1169, 1180 (D. Kan. 2005) (citing *Pitts v. Bd. of Educ.*, 869 F.2d 555, 557 (10th Cir. 1989)), or political groups, *id.* (citing *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985)). Plaintiffs argue that "under *Tonkovich*, tenure is recognized as a protected class." But the *Tonkovich* case expressly stated, "Professor Tonkovich did not plead a § 1985 claim." *Tonkovich*, 159 F.3d at 533. So *Tonkovich* does not support tenure as a protected class *under § 1985*. Plaintiffs say "the Tenth Circuit . . . *has not addressed* a class of tenured professors who are both union sympathizers and faculty senate members, and a conspiracy against academic freedom." Even if this argument stated a class protected by § 1985, Plaintiffs have admitted that

it is not clearly established as such by saying the Tenth Circuit "has not addressed" it.

Plaintiffs attempt to persuade this Court that *Twombly*'s plausibility standard does not apply to conspiracy claims. For example, Plaintiffs suggest that a conspiracy claim "could properly be analyzed by the court" only "after discovery." But the *Twombly* case itself was about dismissal of a conspiracy claim under Rule 12. *Twombly*, 550 U.S. at 556-57 The *Brever* case Plaintiffs cite specifically held that the plaintiff had alleged events from which a meeting of the minds concerning the object of the conspiracy could plausibly be inferred. *Brever*, 40 F.3d at 1127-28. Plaintiffs have not alleged any such events here. Plaintiffs say a case Defendants cited (Plaintiffs do not identify the case) was "at the summary judgment stage," but Defendants cited numerous cases supporting dismissal under Rule 12 of implausible conspiracy claims.

Plaintiffs claim "[t]here is no class-based animus requirement" under "[t]he second part of Section 1985(2)." This is plainly incorrect. *King*, 399 F. Supp. 2d at 1179 n. 57 (citing *Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976)).

Although Plaintiffs summarily dismiss Defendants arguments regarding the intra-corporate conspiracy doctrine, the arguments in Defendants' Motion support its application here.

## VII.    <u>Preclusion and Abstention</u>

### A.  Preclusion

Plaintiffs suggest the choice-of-law analysis for preclusion should be based not on the prior claims giving rise to preclusion but on the current claims. As supposed support for this assertion, Plaintiffs cite *Herington*, which held *Kansas* preclusion law governs the preclusive effect of prior federal diversity actions based on Kansas law. *Herington*, 314 Kan. at Syl. ¶¶ 3-4.

Plaintiffs assert that if Kansas issue-preclusion law applies, then preclusion is inappropriate. But Plaintiffs do not address the elements of *issue* preclusion at all. Plaintiffs only address some of the elements of *claim* preclusion, which Defendants did not raise. *Compare In*

*re Tax Appeal of Fleet*, 293 Kan. at 777-78 (outlining separately the elements of claim and issue preclusion) *with* (Doc. 41 at 25-26). Further, Plaintiffs ignore Defendants' arguments about the Defendants being in privity and the cases Defendants cited regarding what procedures are sufficient for preclusion purposes.

Plaintiffs say that "[t]he elements of a First Amendment retaliation claim do not require proof of bias." But this is a semantic argument that ignores the meaning of the word "bias." The cases Plaintiffs cite for this proposition require that a defendant's actions were motivated in response to – that is, due to bias against – protected conduct. That issue has been ruled on.

### B.  Pullman abstention

Plaintiffs suggest that no uncertain issues of state law underlie this case. But underlying this case is a not-yet-resolved question regarding the metes and bounds of tenure for university professors under state law.

Plaintiffs attempt to argue that the "state district court will be focusing on whether the agency's action was arbitrary and capricious." For this statement, Plaintiffs cite *Denning*, which not only was not a KJRA case but which expressly held that the KJRA was not applicable. 46 Kan. App. 2d at 702. Plaintiffs ignore that the KJRA expressly allows the reviewing court to consider whether "[t]he agency action . . . is unconstitutional." K.S.A. 77-621(c)(1). And Plaintiffs ignore that they raised the constitutional issue in the state court proceedings.

### C.  Colorado River abstention

Plaintiffs assert the state proceedings are not parallel to this suit because "the parties are not completely the same." But *Colorado River* abstention only requires that the parties be substantially the same. And here, all of the Defendants were in privity. Plaintiffs assert "[t]here are no money damages sought in the state cases." But that is why the Defendants' abstention arguments, supported by case law, requested a *stay*, not *dismissal*. Plaintiffs assert they did not

raise their § 1983 claims in the state proceedings. But Plaintiffs did raise the issue of

unconstitutionality, which is substantially the same issue. Just because Plaintiffs could perhaps

have raised this issue more effectively as a counterclaim does not mean the issue was not raised.

Plaintiffs improperly break down the factors applicable to a *Colorado River* argument.

The *Fox* case does *not* say that some factors are discretionary and some required, but rather says

that the "nonexclusive" list of factors includes four from the *Colorado River* case and four added

by the *Moses H. Cone* case. Regarding the second factor, Plaintiffs now assert an inconvenient

forum in a conclusory manner based on supposed residence locations that have not been

provided to the Court. But Defendants have not actually demonstrated an inconvenient forum.

Regarding the fourth factor, although some state cases were filed after this federal case, the state

court still obtained jurisdiction first. And regarding the eighth factor, Plaintiffs have notably not

denied that they are forum shopping for their preferred discovery rules.

**VIII.    Conclusion**

For the foregoing reasons, Defendants request that the Court grant their Motion in full.

Respectfully Submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

/s/ Shon. D. Qualseth
Shon D. Qualseth, KS S Ct. #18369
First Asst. Attorney General/Sr. Trial Counsel
Matthew L. Shoger, KS S Ct. #28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Telephone:  785-368-8424
Telephone:  785-296-6244
FAX:  785-291-3767
Email: *shon.qualseth@ag.ks.gov*
Email: *matt.shoger@ag.ks.gov*
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of June, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

J. Phillip Gragson
Amanda S. Vogelsberg
John H. Hutton
Kara L. Eisenhut
Henson, Hutton, Mudrick, Gragson
& Vogelsberg, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS  66611-2155
*Attorneys for Plaintiffs*

/s/ Shon D. Qualseth
Shon D. Qualseth