IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMANDA MIRACLE, et. al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 23-4056-JAR-GEB |
| | ) |
| KEN HUSH, et. al. | ) |
| | ) |
| Defendants. | ) |

**<u>Plaintiffs' Response in Opposition to Motion to Reconsider</u>**

Plaintiffs oppose Defendants' motion to reconsider [Doc. 55] the Memorandum and Order [Doc. 54]. Pursuant to D. Kan. Rule 7.3, there are three grounds in which to consider such a motion: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." The court has discretion on whether to consider this motion. *Resolution Trust Corp. v. Williams,* 165 F.R.D. 639, 642 (10th Cir. 1996). None of these grounds are present and the motion should be denied.

The only Rule 7.3 ground that Defendants appear to rely on is the "need to correct clear error or prevent manifest injustice" by citing to cases that it cited to in their Motion to Dismiss and Memorandum in Support (Doc. 45) and Reply in Support of Motion to Dismiss (Doc. 52) (collectively, "motion"), and by adding two U.S. Supreme Court cases from the early 2000s in which they failed to cite in their previous filings. "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482 (D. Kan. 1994).

Defendants also request that this Court reconsider the issue of whether the modification of the KBOR temporary policy and ESU Framework somehow *removed* the property interest that

1

Plaintiffs enjoyed without the semblance of due process. They argue the court committed error by relying on *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) and ignoring cases like *Town of Castle Rock v. Gonzales*, *Scribner*, *Bi-Metallic,* and *Hartford Fire Ins. Co. v. State.* Even if the argument had merit, such an argument is inappropriate for a motion to reconsider. *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 193 F.R.D. 696, 697 (D. Kan. 2000). The parties asserted these arguments before the Court on the motion to dismiss; and obviously this Court must have considered them in making the decision. See Doc. 49 at 14; Doc. 52 at 4) and 5 (citing *Hartford Fire Ins. Co.*). Defendants wrote in their reply brief: "*Scribner* cited to U.S. Supreme Court cases for that point." *Id.* The Supreme Court case relied on in Scriber is *Bi-Metallic Investment Co.* and even if this court "focused" more on what these cases stand for, the result would not be any different because those cases derive from further development of the facts about the notice process and how many people the modified policy impacted and the extent of the impact. *Scribner v. Board of Educ. Of U.S.D. No. 492,* 308 Kan. 254, 267 (2018) (comparing U.S. Supreme Court cases that distinguish between legislation that violates the due process of a relatively small number of persons and how they were affected versus "more than a few people."). This Court clearly ruled that based on Plaintiffs' Second Amended Complaint ("SAC") the property right was derived from "ESU's policy *before* the WMP and ESU Framework changed the policy." Doc. 54 at 29. Defendants simply fail to distinguish between the impact of the WMP and Framework on professors who had not obtained tenure yet (and therefore no property right in tenure) and those like all of the Plaintiffs, who had already gone through the rigors of obtaining tenure under ESU's policy.

Further, Defendants liken their conduct to that of the Kansas Legislature when engaged in the legislative process. And again, Defendants fail to distinguish the due process inherent in the

legislative process, versus the conduct of the Defendants in this case. KBOR nor ESU, nor Defendants Hush, nor Johnson or Lovett engaged in the legislative process before adopting the WMP and Framework and deciding who to terminate.

In contrast, when the Kansas Legislature properly engages in the legislative process it gives the public notice through the Kansas Register, often an opportunity to be heard in person but otherwise through their elected representatives, therefore satisfying due process under the Fourteenth Amendment. But even the Kansas Legislature's action is subject to judicial scrutiny when it does not properly engage in the legislative process. *Darling v. Kansas Water Office*, 245 Kan. 45 (1989) (holding Senate bill and statute unconstitutional "as violative of plaintiffs' procedural and substantive due process rights").

Citing *Darling* as an example of an unconstitutional legislative act, the Ninth Circuit in *Rea v. Matteucci*, 121 F.3d 483 (9th Cir. 1997), describes the sufficiency of due process in the legislative process:

> When a state alters a state-conferred property right through the legislative process, "the legislative determination provides all the process that is due..." *Logan*, 455 U.S. at 433, 102 S.Ct. at 1156; accord *Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir.1986) (holding that legislative alteration or elimination of previously conferred property interest does not violate due process). Thus, the legislative process is sufficient to comport with minimal federal due process requirements.

The premise for which *Teigen* was relied upon is not a new legal theory. It is age-old. *See Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Goldsmith v. United States Board of Tax Appeals*, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (The petitioner was a lawyer who had been refused admission to practice before the Board of Tax Appeals. The Board had 'published rules for admission of persons entitled to practice before it, by which attorneys at law admitted to courts of the United States and the states, and the District of Columbia, as well as certified public accountants duly qualified under the law of any state or the

3

District are made eligible. . . . The rules further provide that the Board may in its discretion deny admission to any applicant, or suspend or disbar any person after admission.' *Id.* at 119. The Board denied admission to the petitioner under its discretionary power, without a prior hearing and a statement of the reasons for the denial. Although the case was disposed of on other grounds, the court stated that the existence of the Board's eligibility rules gave the petitioner an interest and claim to practice before the Board to which procedural due process requirements applied. It said that the Board's discretionary power 'must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process.' *Id.* at 123).

Defendants' reliance on *Minn. State Bd. for Comm. Colleges v. Knight*, 465 U.S. 271 (1984), is out of context. That case discerned between Minnesota's public-employment labor relations statute recognizing a special interest in public policies involving mandatory subjects of employment relating to public employees and the employee's rights to "meet and confer" on nonmadatory subjects of bargaining via their elected representative (i.e. the union) or otherwise. *Knight* does not support Defendants argument that ESU can change its termination policy and deny due process to tenured employees legally.

The Court did not err in relying on the premise that the property right attached to Plaintiffs even if a Legislature is empowered to change the law which bestowed such a right. That is not what happened in this case anyway. Tenure was and continued to be a recognized property right despite the temporary WMP and ESU Framework. Professors still had tenure; they just temporarily changed the process for which they could terminate them; the WMP and ESU Framework although part of the process to take Plaintiffs' tenure away, it did so by amending the disciplinary policy, not the policy granting tenure. The irony of Defendants' position is that they

4

are still treating tenure as a property right under current KBOR and ESU policies while arguing that tenure is not a property right in this case.

Finally, Defendants want the Court to reconsider the leave "without pay and benefits" comment, but this matter is immaterial because the SAC and this Court noted that Plaintiffs on leave have been unable to continue their work in their chosen jobs or maintain their tenure status as a result. So the facts are clear, Defendants, through ESU, have taken away the "reinstated" Plaintiffs' ability to meet ESU's tenure policies in order to keep tenure. And what happens when a former tenured professor loses tenure by not meeting policy criteria? They get fired because they no longer have a property right in tenure. Defendants' argument is disingenuous to say the least. All the Plaintiffs were required to remove their belongings from their offices and restricted from facilities or electronic tools used to maintain their tenure. They were also restricted from using ESU's research privileges. Doc. 41 at ¶¶ 96-7. ESU cites no new or even old law that holds that such denials do not amount to loss of employment opportunity. This argument was made, considered in this Court's ruling and should not be reconsidered.

## Conclusion

The Court should not reconsider the two arguments made by Defendants. Neither argument falls under the D. Kan. Rule 7.3.

Respectfully submitted,

/s/ J. Phillip Gragson
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
John H. Hutton, #16573
Kara Eisenhut #27055
HENSON, HUTTON, MUDRICK,
GRAGSON & VOGELSBERG, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
(785) 232-2200; (785) 232-3344 (fax)
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
jhutton@hhmglaw.com
keisenhut@hhmglaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on this 26th day of December 2024, with the clerk using the EM-ECF system which will send notice to all parties of record.

/s/ J. Phillip Gragson
*Attorneys For Plaintiffs*