IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AMANDA MIRACLE,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Case No. 23-4056-JAR-GEB |
| | ) |
| **KEN HUSH,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO RECONSIDER**

Defendants submit this Reply in further support of their Motion to Reconsider (Doc. 55). Defendants assert that Plaintiff's Response (Doc. 56) fails to overcome their legal arguments. Accordingly, Defendants' Motion should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Motion. (Doc. 55.) Defendants' Motion should be granted for the reasons previously stated.

Plaintiffs' Response asserts throughout that Defendants claim that the property interest in employment was removed, but Defendants actually claimed it was modified OR removed such that it did not apply under the circumstances at the time of the termination process. Just as it is possible for a State to modify the terms of a given type of license, it is possible for a State to modify the terms of tenure for a whole group of individuals. Here, the relevant protection was temporarily removed, which KBOR and ESU had authority to do. Tenure under one set of terms is not the same as tenure under another set of terms. The metes and bounds of tenure were moved such that tenure's protections were temporarily removed from applying to the circumstances in question. If looking at tenure's application to the particular circumstances at the time, it was removed. If looking at tenure overall, it was modified, temporarily removing protections. However, regardless of the term used, the central point is that KBOR and ESU had legal

1

authority to modify or remove tenure in this way.

Plaintiffs state that the parties asserted these arguments before the Court on the motion to dismiss. But Defendants' Motion already pointed out that "[t]he Court . . . relied on a misinterpretation of a phrase from a case not cited or addressed by the parties." (Doc. 55 at 3.) And the Court made its own factual error that the parties did not make, asserting incorrectly that seven Plaintiffs are on administrative leave "without pay and benefits." (Doc. 55 at 4 (quoting Doc. 54 at 22).) Defendants had no prior opportunity to address the resulting clear errors.

Plaintiffs suggest that Defendants merely *vaguely alluded* in their earlier reply to *one* U.S. Supreme Court case that the *Scribner* case relied on. But Defendants <u>cited</u> *Scribner* <u>and</u> the *two* U.S. Supreme Court cases it relied on in their Motion to Dismiss. (Doc. 45 at 12, 14.) Although the Court is not ordinarily required to address each case cited by parties to a lawsuit, in this case the Court effectively usurped the State of Kansas's sovereignty over the area of property law without any explanation of how the Court had authority to take such unprecedented action despite the on-point precedent cited by Defendants. This was clear error.

Plaintiffs claim that the changes by the WMP and ESU Framework only affected professors who had not obtained tenure yet. But the policies plainly were intended to apply to professors who *had* obtained tenure. (*See* Doc. 41-12 at 1 ("any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment").) And the *Scribner* case applied U.S. Supreme Court precedent to allow the removal of property rights in tenure that were already vested in tenured teachers (consistent with how other courts have applied those cases, as the *Scribner* case discusses and establishes).

Plaintiffs claim that the process here was lacking simply because it did not involve the legislative process. But the U.S. Supreme Court has applied the principle to executive

policymaking, not just purely legislative action. (Doc. 55 at 2 (quoting *Knight*, 465 U.S. at 283-85) ("Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony").) That alone should decide the matter. And the same Kansas Open Meetings Act that applies to meetings of the Kansas Legislature, requiring them to be open to the public, also applied to the meetings of KBOR through which KBOR adopted the WMP and ESU Framework. *See* K.S.A. 75-4318(a) ("all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state . . . including boards . . . shall be open to the public and no binding action by such public bodies or agencies shall be by secret ballot"). The Kansas Open Meetings Act requires not only that meetings be open to attendance by members of the public but also requires that persons who request notice be provided with advance notice of meetings and of the proposed agenda for those meetings. K.S.A. 75-4318(b)-(d). So the Plaintiffs had the opportunity to receive such information and to attend the relevant KBOR meetings and simply did not take advantage of that opportunity. That is not deficient process being provided by Defendants; that is deficient participation in the process by Plaintiffs. Further, neither the legislature nor KBOR are constitutionally required to provide an opportunity to comment. (Doc. 55 at 2 (quoting *Knight*, 465 U.S. at 283-85) ("Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted.").) General policymaking can constitutionally modify or remove tenure without an opportunity to comment.

Plaintiffs also assert that a different form of notice is provided by the legislature in the Kansas Register, but the Kansas Register merely publishes the bill titles before they are heard by the legislature and later the full text of laws after they are enacted. *See* K.S.A. 75-430(a)(1), (7);

3

*see also* 43 Kan. Reg. 144-53 (Feb. 15, 2024); Kan. Sec'y of State, Frequently Asked Questions, https://sos.ks.gov/publications/publications-faq.html (last visited January 2, 2025). Here, similarly, Plaintiffs had the ability to receive agendas for upcoming KBOR meetings, *see* K.S.A. 75-4318(b)-(d), received notice of a potential policy change along with its general subject of tenure (*see, e.g.,* Doc. 41 at ¶¶ 66, 70-71), and received notice of the full text of the change in policy after the change in policy occurred (Doc. 41 at ¶ 75; Doc. 41-9; Doc. 41-12). The Kansas Register would not provide any materially significant difference in the type of notice provided.

      Plaintiff claim that this case is similar to the *Darling* case. But the *Scribner* case already addressed and distinguished the *Darling* case. *Scribner*, 308 Kan. at 267-68. Under *Darling*'s "unique set of facts," the policy change that removed property rights in employment was not broadly applied to a whole group but applied only to specific individuals targeted in the text of the legislation. *Id.* Here, however, just as in the *Scribner* case, the property rights of an entire group were affected by the policy change: *all* tenured professors at ESU.

      Plaintiffs cite *Roth* and *Goldsmith*, but – like *Darling* – neither of those cases involved a broad policy change that affected a whole group. The Tenth Circuit has actually interpreted *Roth* as holding that "state law can expand or contract constitutionally protected liberty and property interests." *Lerwill v. Joslin*, 712 F.2d 435, 436 n.1 (10th Cir. 1983). This Tenth Circuit interpretation of *Roth* is exactly what Defendants have been arguing happened here.

      Plaintiffs flatly state *Knight* does not apply but ignore where *Scribner* discusses how it <u>*has*</u> been consistently applied by courts in the context of modifying or removing property rights in employment. (*See* Doc. 55 at 2-3 (citing *Scribner*, 308 Kan. at 264, 267-70).) The consistent way courts apply it to cases like this is more persuasive than Plaintiffs' objection to it applying.

      Plaintiffs incorrectly assert that the WMP and ESU Framework only changed the process

by which tenured professors could be terminated. But by their plain terms, they changed the circumstances under which a tenured professor could be terminated, not just the process through which that termination could occur. (*See* Doc. 41-12 at 1 (saying "any state university employee, including a tenured faculty member, may be suspended, dismissed, or terminated from employment" and listing applicable circumstances).)

Plaintiffs seek for this Court to expand the available grounds for liberty-interest claims by holding that a person who continues to be on the payroll for an employer can still bring a liberty-interest claim for reputational harm. But precedent establishes that the alleged defamation must occur in conjunction with termination to be actionable, *Guttman v. Khalsa*, 669 F.3d 1101, 1125-26 (10th Cir. 2012) (citing *Paul v. Davis*, 424 U.S. 693, 710 (1976) and *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)), and the seven plaintiffs on administrative leave continue to be employees. They have not been terminated. Plaintiffs insist that the fact that the seven plaintiffs on administrative leave cannot continue teaching under ESU's name and using state-government facilities and resources to conduct their own research makes this situation different. But this would effectively require recognizing a right to not be put on administrative leave whenever an employee claims reputational harm. Plaintiffs do not have a constitutional right to act as an active agent of the state government or to use state-government facilities and resources for their own purposes whenever they claim reputational harm associated with being placed on administrative leave. The precedent is clear: employment has not ended, so no claim for reputational harm could have accrued. This Court should not expand constitutional protection to cover Plaintiffs' novel assertion of a liberty interest.

For these reasons and the reasons expressed in Defendants' Motion to Reconsider (Doc. 55), Defendants request that the Court grant their Motion in full.

Respectfully Submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

<u>/s/ Matthew L. Shoger</u>
Matthew L. Shoger, KS S Ct. #28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of January, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

J. Phillip Gragson
Amanda S. Vogelsberg
John H. Hutton
Kara L. Eisenhut
Henson, Hutton, Mudrick, Gragson
& Vogelsberg, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS  66611-2155
*Attorneys for Plaintiffs*

/s/ Matthew L. Shoger
Matthew L. Shoger