IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA MIRACLE, et al.,

    Plaintiffs,

    v.

KEN HUSH, et al.,

    Defendants.

Case No. 23-4056-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, and Lynnette Sievert were all tenured professors at Emporia State University ("ESU") when they were notified on September 15, 2022, that their employment would terminate the following May. They brought this civil rights action under 42 U.S.C. §§ 1983 and 1985 for violations of their procedural and substantive due process rights under the Fifth and Fourteenth Amendments, their equal protection rights under the Fourteenth Amendment, and their First Amendment rights. They named as Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten and Wint Winter, who were either ESU officials or on the Kansas Board of Regents ("KBOR") at the time Plaintiffs were terminated.

On December 5, 2024, the Court granted in part and denied in part Defendants' Motion to Dismiss the Second Amended Complaint ("SAC").[1] The Court dismissed Counts V, VII, and

---

[1] Doc. 54.

IX—the conspiracy claims under 42 U.S.C. § 1985.  The Court also granted Defendants' motion to dismiss the liberty-interest claim against Defendants Thomas, Miller, Harrison-Lee, Kiblinger, Ice, Lane, Winter, Feuerborn, Bangerter, Hutton, Rolph, Schmidt, Brandau, Van Etten, Benson, Mendoza, and Dicus.  The Court otherwise denied Defendants' motion to dismiss.

Now before the Court is Defendants' Motion to Reconsider (Doc. 55).  The motion is fully briefed and the Court is prepared to rule.  For the reasons set forth below, the Court grants Defendants' motion to reconsider to the limited extent it seeks clarification about the property-interest ruling, and to the limited extent it seeks to correct a statement about Plaintiffs' administrative leave, but the Court declines to alter or amend its previous rulings on these issues.

## I.     Standard

Defendants move to reconsider under D. Kan. Rule 7.3:

> Except for motions under Fed. R. Civ. P. 59(e) or 60, parties seeking reconsideration of a court order must file a motion within 14 days after the order is served unless the court extends the time. A motion to reconsider must be based on:
> (1) an intervening change in controlling law;
> (2) the availability of new evidence; or
> (3) the need to correct clear error or prevent manifest injustice.

A motion to reconsider should not be used as "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."[2]  And "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[3]

---

[2] *Ward v. Wesley Med. Ctr., LLC*, No. 23-1091-HLT-BGS, 2024 WL 989880, at *2 (D. Kan. Mar. 7, 2024) (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994), *aff'd*, 43 F.3d 1484 (10th Cir. 1994)).

[3] *Id.* (quoting *Paliwoda v. Showman*, No. 12-2740-KGS, 2014 WL 11517806, at *1 (D. Kan. Sept. 30, 2014)).

The Court also notes that under Fed. R. Civ. P. 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." When considering an "interlocutory" motion under Rule 54(b), "'the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b),' which govern a district court's reconsideration of its final judgments."[4] Such a motion is left to the court's discretion.[5]

## II. Discussion

Defendants move to reconsider based on the following points of error: (1) that the Court misapplied Tenth Circuit precedent in considering Plaintiffs' property-interest claims;[6] and (2) that the Court misapprehended the SAC by stating in its analysis of the liberty-interest claims that seven of the reinstated Plaintiffs were on administrative leave without pay and benefits, when in fact the SAC alleges they were placed on administrative leave with pay and benefits. The Court addresses each in turn.

### A. Property-Interest Analysis

Defendants invoked qualified immunity on Counts I, II, and III, which are all based on Plaintiffs' assertion of a property right to continued employment under the Fourteenth Amendment, and argued that Plaintiffs failed to allege a protected property interest in continuing

---

[4] *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018), *as revised* (Apr. 13, 2018) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008)).

[5] *Id.*

[6] In its opening brief, Defendants include a bare request for the Court to "reconsider its *Pullman* abstention analysis in light of" what they call a "controlling issue" of state property law on the property-interest claim. Doc. 55 at 3. For the foregoing reasons, the Court denies Defendants' motion to reconsider its property-interest ruling, and it therefore declines Defendants' open-ended invitation to revisit its *Pullman* abstention analysis based on this single sentence in the motion. The Court stands by its analysis in its December 5 Order.

3

employment as a matter of law.  As the Court noted in its December 5 Order, "[a]n individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'"[7]  In the employment context, an employee "must have 'a legitimate expectation in continued employment.'"[8]

The key United States Supreme Court case on this issue is *Board of Regents of State Colleges v. Roth*, where the Court explained:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.
>
> . . . [I]n the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, and college professors and staff members dismissed during the terms of their contracts, have interests in continued employment that are safeguarded by due process.
>
> . . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[9]

In its December 5 Order, the Court reiterated this guidance from *Roth*, which has been applied countless times by the Tenth Circuit, including in *Teigen v. Renfrow*.[10]  The Court then

---

[7] *Teigen v. Renfrow*, 511 F.3d 1072, 1078–79 (10th Cir. 2007) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

[8] *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 574 (10th Cir. 2014) (quoting *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008)).

[9] 408 U.S. at 576–77 (first citing *Slochower v. Bd. of Educ.*, 350 U.S. 551 (1956); and then citing *Wieman v. Updegraff*, 344 U.S. 183 (1952)).

[10] 511 F.3d 1072 (10th Cir. 2007).

considered the state-law rules in Kansas that Plaintiffs allege support their claims of entitlement to continued employment—that they are tenured professors with a legitimate expectation of continued employment—and determined that Plaintiff stated a claim for relief on this basis.

Defendants first argue in their motion to reconsider that this Court misapplied the law by defining Plaintiffs' property interest on the basis of federal instead of state law. Defendants misread the Court's Order. It clearly addressed the state-law basis for Plaintiffs' property-right claims and Defendants' assertion that the temporary KBOR and ESU rule changes removed any expectation these Plaintiffs could have had in continued employment. The Court determined that "Plaintiffs sufficiently allege[d] that they were entitled to continued employment *as defined by Kansas law*. The entire premise of Plaintiffs' case is that under longstanding KBOR policy, as tenured faculty, they were terminable only for cause."[11] Plaintiffs alleged in the SAC a protected property interest in continued employment based on the prior version of the temporary KBOR rule amendment and ESU Framework (i.e., state law), which this Court then found was clearly established for purposes of qualified immunity under cases such as *Tonkovich v. Kan. Bd. of Regents* (a question of federal law).[12]

Defendants next argue that the Court did not sufficiently address their argument and authority in the original briefing that the State can and did eliminate Plaintiff's property interest

---

[11] Doc. 54 at 29 (emphasis added).

[12] 159 F.3d 504 (1998). Defendants baldly assert in their initial briefing that the Tenth Circuit in *Tonkavich* also failed to identify state law when it stated that the plaintiff had a protectible property interest in continued employment because he was a tenured professor. Doc. 45 at 13–14. To the extent Defendants require written clarification about whether the Court agrees with this position, it does not. As stated in *Roth* and several other Tenth Circuit cases decided since *Tonkavich*, tenure generally confers upon a public employee a reasonable expectation of continued employment. *See, e.g.*, *McDonald v. Wise*, 769 F.3d 1202, 1210–11 (10th Cir. 2014); *Hulen v. Yates*, 322 F.3d 1229, 1240–41 (10th Cir. 2003); *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007); *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 575 (10th Cir. 2014); *Shively v. Utah Valley Univ.*, No. 20-4088, 2022 WL 1021614, at *2 (10th Cir. Apr. 6, 2022). Notably, the Tenth Circuit has not abrogated or criticized this holding in *Tonkavich*, and Defendants do not point to any authority that supports their suggestion that *Tonkavich* failed to apply the correct law. The Court did not commit clear error in applying this binding Tenth Circuit law, and, as stated above, the Court has considered Plaintiffs' property interest as defined by state and not federal law.

in continued employment under the facts alleged in the SAC. Defendants urge that the Court ignored two Supreme Court decisions it cited for the general rule that legislative due process provides all the process that is due when it results in the deprivation of a property interest.[13] Indeed, the Tenth Circuit has explained that in *Bi-Metallic*, the Supreme Court

> distinguished the Court's earlier decision in *Londoner v. City and Cty. of Denver*, which held that constitutional due process required a hearing, because in the earlier case the "board had to determine whether, in what amount, and upon whom a tax for paving a street should be levied . . . [and a] relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds." In such circumstances the need for additional procedural protections is greater because political remedies are often unattainable by individuals or small groups, and the grant of procedural safeguards to a few does not impose as great a burden on government.[14]

Defendants also criticize the Court for failing to acknowledge the Kansas Supreme Court's decision in *Scribner v. Board of Education*, which held that there was no due process violation when the Kansas Legislature amended the Kansas Teacher Due Process Act ("KTDPA") to eliminate its longstanding tenure provisions for teachers who met its years of service requirement.[15] The *Scribner* court determined that under United States Supreme Court authority dating back to *Bi-Metallic*, the legislature could remove public school teachers' right to tenure through the legislative process, which "generally provides all the process that is due when legislation results in the complete or partial deprivation of protected property interests of more than a few individuals."[16] The court rejected the plaintiffs' challenge to the statutory

---

[13] *See Bi-Metallic Inv. Co. v. State Bd. of Educ.*, 455 U.S. 422, 433 (1915); *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283–85 (1984).

[14] *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1046 (10th Cir. 2016) (alteration in original) (quoting *Bi-Metallic*, 239 U.S. at 446) (citations omitted).

[15] 419 P.3d 1149, 1153 (Kan. 2018).

[16] *Id.* at 1155 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982)).

amendment, finding that under *Bi-Metallic*, it was a legislative act that applied to all tenured teachers in all Kansas school districts.[17]

None of this authority changes this Court's ruling.  Plaintiffs offer persuasive arguments about why the allegations in the SAC sufficiently demonstrate that the KBOR's amended rule and ESU's Framework did not eliminate their protected property interest in continued employment.  First, they argue that the temporary amendments to the KBOR tenure rules as applied by ESU's Framework were not passed through a legislative process that provided all the process that was due, as distinguished from *Scribner*.  The Tenth Circuit has discussed when an action is legislative versus administrative for purposes of *Bi-Metallic*:

> In distinguishing between legislative and administrative action, some courts have considered "the nature of the decisionmaking body" as elected or appointed; the type of decision (the adoption of a "comprehensive plan" or just the grant of a variance); and whether the action involves "general policy formulations, which are considered legislative, [or] specific applications of previously formulated policy, which are considered administrative."  Others have focused on (1) the "particularity of the impact of the state action," and (2) the factual basis for the action—legislation is typically based on "generalizations concerning a policy or state of affairs" that "do not usually concern the immediate parties but . . . help the tribunal decide questions of law, policy, and discretion," whereas administrative action is typically based on adjudicative facts that "relate with greater specificity to individuals or particular situations."[18]

There was no question in *Scribner* that the KTDPA amendments were legislative.  In contrast, there is a question of fact here about whether the rule passed through the legislative process, and neither party engages in any meaningful analysis about whether the KBOR's policy amendment and/or ESU's Framework is legislative for purposes of the due process analysis based on the

---

[17] *Id.* at 1156–58.

[18] *Onyx Props.*, 838 F.3d 1039, 1046–47 (quoting Developments in the Law—Zoning, 91 Harv. L. Rev. 1427, 1509 (1978)) (citations omitted).

considerations set forth above by the Tenth Circuit. This issue was wholly absent from the initial briefing, and is undeveloped in the briefing on Defendants' motion to reconsider.[19] Assuming as true the facts alleged in the SAC, it is plausible that the KBOR's actions were administrative and not legislative, and therefore falls outside of *Bi-Metallic*.

Second, to the extent the KBOR's rule change is considered "legislative," Plaintiffs allege that the process under which the amendments were passed was defective because it did not provide Plaintiffs with sufficient notice.[20] The Supreme Court has explained that "a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements."[21] The KBOR's Work Management Plan ("WMP") allowed KBOR universities to propose a framework that suspended tenure rights. It was passed on January 20, 2021, and the SAC alleges that no prior notice of the WMP was given. The KBOR approved ESU's Framework during its September 14–15, 2022 meeting, but the SAC alleges that neither ESU nor the KBOR submitted the WMP or ESU Framework to the Kansas

---

[19] Defendants hang their hat on *Minnesota State Board for Community Colleges v. Knight*, claiming it "applied" the principle announced in *Bi-Metallic* "to executive policymaking, not just purely legislative action." Doc. 57 at 3. This is an overstatement. *Knight* did not consider a procedural due process claim. It considered whether community college instructors had a First Amendment right to be heard by the public bodies that decide community college policy. 465 U.S. 271, 283–84 (1985). The Court cited *Bi-Metallic* for the proposition that the public generally does not have a right to be heard by public bodies making policy decisions under the Fourteenth Amendment's Due Process clause, and then proceeded to hold that under the First Amendment, the instructors had "no special constitutional right to a voice in the making of policy by their government employer." *Id.* at 284–86. *Knight* does not apply *Bi-Metallic*'s due process holding to the non-legislative context, nor does it even consider the contours of due process rights when the State removes a protected property right. Moreover, this case says nothing about the notice component of due process, nor what constitutes "legislative action." Thus, contrary to Defendants' conclusory assertion, this case does not "alone" decide this matter.

[20] *See Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997) (citing *Atkins v. Parker*, 472 U.S. 115, 130, (1985)) ("[A]n individual claiming a defect in the legislative process might have a claim for due process violations.").

[21] *United States v. Locke*, 471 U.S. 84, 108 (1985).

Secretary of State for adoption or publication. Plaintiffs received their termination letters without delay, on September 15, 2022, at the conclusion of the KBOR's meeting adopting ESU's Framework. Viewing the facts alleged as true, as the Court must, it is plausible that there was a defect in the legislative process when the rules were made.

For the reasons discussed above, the Court finds no clear error in its decision to deny Defendants' Rule 12(b)(6) motion on the sole basis that Plaintiffs lack any property right in continued employment as a matter of law. This issue came before the Court on Defendants' qualified immunity defense. As the Tenth Circuit has explained, "[b]ecause they turn on a fact-bound inquiry, 'qualified immunity defenses are typically resolved at the summary judgment stage' rather than on a motion to dismiss," and Defendants are subjected "to a more challenging standard of review than would apply on summary judgment."[22] The Court disagrees with Defendants' position that the property right question in this case turns on a clear-cut issue of Kansas state law. There are factual disputes that implicate how Plaintiffs' property rights in continued employment are defined, and what process is due as a result. The Court therefore did not commit clear error in denying Defendants' motion to dismiss based on qualified immunity, raising the sole issue of whether Plaintiffs had a property right in continued employment. Defendants' conduct as alleged in the SAC sufficiently alleges the existence of a property right.

### B.  Reference to Plaintiffs' Administrative Leave

On page 22 of the Court's December 5 Order, in its analysis of Plaintiffs' liberty-interest claims, the Court mistakenly stated that the seven Plaintiffs who were reinstated after their appeals to the Office of Administrative Hearings ("OAH") were placed on leave *without* pay and

---

[22] *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

benefits by ESU.  Defendants, without further analysis, contend that this mistake "means that these seven Plaintiffs cannot assert a claim for loss of employment opportunities because they are still actively employed (including pay and benefits)."[23]  The Court disagrees.  While Defendants are correct that the SAC alleges these Plaintiffs were placed on administrative leave *with* pay and benefits,[24] this corrected factual allegation does not change the Court's analysis on the liberty interest claims.  The statement was made in the course of the Court's discussion of the third element of Plaintiffs' claim—whether the allegedly stigmatizing statements (the ESU Defendants' termination letters) foreclosed other employment opportunities.[25]  As the Court explained, while on administrative leave, ESU denied the reinstated Plaintiffs the ability to complete the requirements necessary to maintain tenure, which is imperative for them to find future employment in their chosen fields.  They were also restricted from their campus offices, from ESU electronic tools, from merit pay increases, or access to information about grants.  Thus, Plaintiffs' leave with pay status does not change the Court's determination that the SAC sufficiently alleged facts to support the third element of the liberty-interest claim against the ESU Defendants.

*Paul v. Davis*[26] does not change the result.  There, the Supreme Court explained that under the Fourteenth Amendment, defamation by a state official must have occurred "in the course of the termination of employment" and that a hearing is not required "each time the State in its capacity as employer might be considered responsible for a statement defaming an

---

[23] Doc. 55 at 4.

[24] Doc. 41 ¶ 95.

[25] *See McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (quoting *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)) (listing elements).

[26] 424 U.S. 693 (1976).

employee who continues to be an employee."[27] But here, termination is exactly the context of the alleged stigmatizing statements—they were made in *termination letters*. These Plaintiffs were reinstated only after appealing the termination decisions to the OAH. And ESU in turn appealed the reinstatement decisions to the Lyon County, Kansas District Court under K.S.A. § 77-610, which remain pending. The fact that the appeals of those decisions are still pending and some of the Plaintiffs are on leave with pay in the interim does not foreclose Plaintiffs' liberty-interest claim.

In conclusion, the Court grants Defendants' motion to reconsider to the limited extent it seeks clarification of the Court's property-interest analysis, and seeks correction of the Court's reference to "leave without pay" on page 22 of its Order. The Court hereby corrects that reference; it should state "leave with pay." The motion is otherwise denied and the Court's December 5, 2024 rulings stand.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Reconsider (Doc. 55) is **granted in part** to the limited extent Defendants seek clarification of the Court's property-right ruling, and a correction to the Court's reference to "leave without pay" on page 22 of its December 5 Order. The motion is otherwise **denied**.

**IT IS SO ORDERED.**

Dated: February 11, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[27] *Id.* at 710.

11