**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **AMANDA MIRACLE, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 23-4056-JAR-GEB** |
| ) | |
| **KEN HUSH, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY DISCOVERY**

Plaintiffs Amanda Miracle, Christopher Lovett, Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Max McCoy, Michael Morales, and Lynnette Sievert, by and through their counsel, J. Phillip Gragson, Amanda S. Vogelsberg, John H. Hutton and Kara L. Eisenhut of Henson, Hutton, Mudrick, Gragson, and Vogelsberg, LLP, respond in opposition to Defendants' Motion to Stay Discovery (Doc. 64). For the reasons set forth below, Defendants' motion should be denied, and discovery should proceed in this matter.

**Nature of the Matter Before the Court**

Defendants seek to stay all discovery pending resolution of their interlocutory appeal *of some* but not all of Plaintiffs claims based upon this Court's denial of their claimed right to dismissal based upon qualified immunity. Yet again, Plaintiffs address here as they did in their first Response to Defendant's Motion to Stay Discovery (Doc. 11 at 1), that this can only be described as an *even further* attempt to prevent Plaintiffs from ever being able to ask even basic questions of or engage in any level of discovery with Defendants. Astonishingly as it is, the eleven Plaintiffs were unceremoniously terminated as tenured faculty members nearly two and a half years ago and

1

they still have not been allowed to even ask for the actual reasons why their property right in tenure was stripped from them by Defendants despite the clearly established law mandating Defendants provide those reasons and a meaningful opportunity to respond.

This Court has already established the law of this case in its Memorandum Decision (Docs. 54 and 58), that Plaintiffs have a property right in tenure, a right to due process and a constitutionally protected liberty interest. Significantly, Defendants claimed qualified immunity does not hinge on some "abstract" issue of law often present in other types of § 1983 cases, such as excessive force cases. Rather, they turn on the clear and unequivocal decisions of the Tenth Circuit as well as the United States Supreme Court such that Defendants "interlocutory appeal" is without merit.   Legal and equitable principles, as well as the public interest weigh heavily against Defendants' request to stay discovery  Accordingly, Defendants motion (Doc. 64) should be denied in toto, the Court should rule find that Defendants interlocutory appeal is frivolous. Alternatively, Plaintiffs should nevertheless be allowed to engage in discovery pertaining to claims and parties not subject to the defense of qualified immunity.

## Arguments and Authorities

A stay of discovery is not automatic, even when a qualified immunity defense is raised. Instead, courts must weigh the need for discovery against the burden on defendants, considering whether discovery is necessary to resolve factual disputes relevant to the claims at issue. *Maxey v. Fulton*, 890 F.2d 279, 282-83 (10th Cir. 1989). The power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (citing *Kansas City S. Ry. Co. v. United States*, 282 U.S. 760, 763, 51 S.Ct. 304, 75 L.Ed. 684 (1931)).

2

**A. Defendants have failed to address the governing standard for staying discovery.**

As established in Plaintiff's first Response to Stay Discovery, Defendants have yet to address or discuss the standard courts use to determine whether to stay discovery (Doc. 11 at 2). As the Kansas District Court and its sister courts have recognized:

> When considering a stay of discovery, Courts in this district generally consider the following factors: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendants in going forward; (3) the convenience to the Court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (citing *FDIC v. Renda*, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987)).

Additionally, the *Renda* court held:

> It is well settled, however, that a trial court, in the exercise of its discretion, has the power to stay an action. As Justice Cardozo stated, in an oft-repeated phrase, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment **which must weigh competing interests and maintain an even balance**. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

(Emphasis added) *Id.* In weighing both parties' competing interests, the court should deny defendants' request to stay discovery.

**1. The Plaintiffs' interest in proceeding expeditiously weighs in favor of allowing discovery.**

Plaintiffs have a significant interest in proceeding with discovery without delay. The inability to move forward exacerbates financial, professional, and emotional harm, compounding the injustices already suffered. Courts consistently recognize that plaintiffs have a fundamental right to pursue their claims without undue delay, especially in employment and constitutional rights cases. *See Clinton v. Jones*, 520 U.S. 681, 707-08, 117 S.Ct. 1636 (1997) (holding that delaying proceedings can create significant harm to plaintiffs, particularly in civil rights cases).

Additionally, *McGinn v. El Paso County, Colorado*, 640 F. Supp. 3d 1070 (D. Colo. 2022), recognizes that plaintiffs have a vested interest in proceeding expeditiously when job loss and reputational harm are at stake. The Plaintiffs in this case, all tenured professors, have suffered extreme professional and financial distress due to their terminations. Even the seven plaintiffs who were reinstated by hearing officers have been barred by Defendants from returning to work. Many have been unable to secure comparable employment due to the uncertainty of their legal status and the cloud over their reputations from Defendants' actions. Further, the psychological toll—including heightened stress and anxiety—has resulted in negative health consequences. Professors are being denied access to their scholarship, office spaces, student interactions, and grant-funded research. Their careers are being effectively stalled due to Defendants' unjustified request for delay. Given the substantial prejudice that a stay would impose on Plaintiffs—compounded by their ongoing financial, professional, and emotional suffering—this factor strongly weighs against granting Defendants' motion.

### 2. Defendants have not demonstrated that discovery is overly burdensome.

Defendants' claims of burden are unsubstantiated, as they have failed to demonstrate why limited, targeted or even full discovery would be overly burdensome. Courts require defendants seeking a stay to show that discovery would be unduly burdensome. F.R.C.P. 26(c); *KetoNatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 2024 WL 4274891, *2 (D. Kan. Sept. 24, 2024). In *Kutilek v.* Gannon, 132 F.R.D. 296, 289 (D. Kan. 1990), the court denied a request to stay and allowed discovery to proceed on whether defendants acted without malice and in good faith as to avail themselves of immunity and whether they acted within the scope of their authority. The rationale of the court hinged on statutory language that provided immunity if actions were without malice and made in good faith and in a person's scope of capacity. The court examined the

pleadings which contained a conspiracy count, and tortious conduct allegations, similar to this case. *Id.* While all discovery should be allowed, courts have routinely permitted discovery in similar cases where qualified immunity was raised, provided that discovery was appropriately narrowed. *See, e. g., R.F.J. v. Fla. Dep't of Children and Families*, No. 3:15-CV-1184-J-32JBT, 2017 WL 11004970, at *1–2 (M.D. Fla. Feb. 24, 2017) (staying discovery against two individual defendants on select causes of action while an interlocutory appeal is pending, but authorizing discovery to proceed against those same individual defendants and a governmental entity on claims not subject to the interlocutory appeal); *Stumpf v. City of Dallas*, No. 3:15-CV-1944-N, 2016 WL 10749149, at *1–2 (N.D. Tex. May 25, 2016) (staying discovery pending appeal against an individual defendant asserting qualified immunity claims, but allowing discovery against a municipality to proceed as to other remaining claims); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733–34 (N.D. Tex. 2014) (same); *KM. v. Ala. Dep't of Youth Servs.*, 209 F.R.D. 493, 495–96 (M.D. Ala. 2002) (staying discovery as to supervisors who appealed denial of qualified immunity, but allowing plaintiffs to collect limited information from those supervisors who did not appeal the denial of qualified immunity).

Here, discovery can and should proceed for all the reasons argued. Alternatively, it also can proceed in a controlled manner which would not impose any excessive burdens on Defendants. Defendants' vague assertions of burden do not justify a stay or outweigh the other factors.

### 3. Granting Defendant's stay will increase the Court's burden and reduce judicial efficiency.

Staying discovery will ultimately burden the Court, increasing judicial inefficiency and delaying resolution of key factual disputes. Judicial efficiency favors resolving factual disputes early rather than delaying proceedings unnecessarily. *See Landis v. North American Co.*, 299 U.S.

248, 254-55 (1936) (finding that courts must weigh the interests of efficiency when considering stays). Further, *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at \*2 (D. Colo. Mar. 30, 2006), held that delays in discovery can significantly hinder a court's ability to manage its docket efficiently. If discovery is stayed now, the Court will likely have to revisit many of the same issues later, requiring additional time and effort. Allowing discovery to proceed now ensures that factual disputes are resolved in a timely manner, streamlining the litigation process.

In *Bernard v. Matagorda County*, No. 3:18-CV-00188, 2019 WL 1024532, \*4 (S.D. Tex., April 30, 2019) (not reported) the court denied a motion to stay as to Matagorda County since it cannot rely on the qualified immunity defense and the case would proceed against that party no matter how the Fifth Circuit ruled on the issue of qualified immunity. Since the following counts against all defendants including count VI (violation of equal protection rights in violation of Fourteenth Amendment), count VIII (violation of Freedom of Association Rights in violation of First Amendment) and count X (civil conspiracy to violate plaintiff's constitutional rights under U.S. Constitution) are not impacted by defendants' qualified immunity defense, and count IV (violation of liberty interest in violation of the Fourteenth Amendment) against three defendants is also not impacted, discovery involving the defendants and these counts should at least proceed as any ruling on qualified immunity should not affect the case as to these counts. If the premise for granting a stay is to prevent burden and work for government employees who may be qualifiedly immunity from having to undergo discovery, that premise does not apply here. Those same defendants will be subject to discovery either way under counts IV, VI, VIII and X, and further delay is not judicially efficient. A stay would ultimately inconvenience the Court rather than conserve resources. This is yet another factor that supports denying the stay.

**4. The interests of non-parties weigh heavily in favor of Plaintiffs.**

The many who do in fact possess relevant information should not have to wait indefinitely to provide testimony, as it would negatively impact all third parties. These are not limited to just faculty members, students, and families who relied on tenure protections. A prime example of those who are not parties but have great interest in the outcome of this decision are the children of terminated faculty members who were expecting tuition benefits tied to their parents' tenure. A ruling in this case has implications for all tenured professors in Kansas, setting precedent for future employment protections. Further, defendant Steven Lovett proposed House Bill 2348, which is currently being considered by the Kansas House Committee on Judiciary[1] which attempts to retroactively define tenure as postsecondary educational institutions as not creating "any entitlement, right or property interest in a faculty member's current, ongoing or future employment by an institution." Defendant Hush has cited the instant matter in justifying his actions before the Kansas Legislature in his testimony in support of Higher Education reform.[2] This testimony can be judicially recognized as public record and found at the websites referenced in the footnotes. The fact that two defendants have cited instant litigation in justifying various ongoing Kansas legislation and arguments to legislatures to impact public laws is further evidence that the interests of non-parties weight heavily against a stay. A stay would deny clarity and justice for these impacted parties. The broad impact of this case necessitates timely discovery. This is one more factor weighing against a stay.

---

[1] See https://www.kslegislature.gov/li/b2025_26/measures/hb2348/

[2] Ken Hush's testimony from January 31, 2025, to the Higher Education Committee at https://www.youtube.com/live/Y964qjShAkQ?t=5301, fist appearing at 52:53; *cf.* 1:29:53 where Hush talks about lawsuit and misrepresents this Court's findings unless he is referring to his incorrect interpretation of plaintiffs' argument. Ken Hush's testimony from March 12, 2025, to the Senate Committee on Government Efficiency at https://sg001-harmony.sliq.net/00287/Harmony/en/PowerBrowser/PowerBrowserV2/20250312/-1/20465?viewMode=1#handoutFile_ at 10:06:50 regarding federal court; discussing major media talking about higher education cuts at 10:08; **discussing being "stuck regarding faculty" efficiencies (termination to reduce cost) "until someone decides on litigation"** at 10:09:47; impact of being under litigation at 10:12:38.

5.  **Public interest requires prompt resolution of Constitutional violations.**

This case involves constitutional violations and due process rights of public employees, and timely resolution serves the broader public interest, which has a vested interest in resolving such violations without unnecessary delay. The Supreme Court has repeatedly held that due process is a fundamental right. See *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998). Government accountability demands swift resolution of constitutional claim. The greatest harm is the denial of due process itself. Further delays only compound the injustice of arbitrary government action. The public interest strongly supports denying the stay and proceeding with discovery.

6.  **The Court must weigh competing interests to maintain balance.**

This Court must carefully balance the competing interests of the parties to determine whether a stay is appropriate. As stated in *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936), the power to stay proceedings is inherent in every court, but it must be exercised with careful consideration of fairness, efficiency, and equity. As the *Renda* court emphasized, a trial court has the discretion to grant or deny a stay based on the necessity of maintaining balance and fairness in litigation. *See F.D.I.C. v. Renda*, No. CIV. A. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987). This discretion must be exercised judiciously, weighing the competing burdens on both parties. Here, Defendants request a stay even though Plaintiffs *continue* to suffer ongoing harm from their wrongful terminations. Staying discovery would not serve the principles of judicial efficiency but would instead reward Defendants' attempt to delay proceedings and further obstruct Plaintiffs' right to fact-finding. Courts have consistently ruled that when a stay disproportionately harms one party while providing little benefit to the other, it should not be granted. See *Clinton v. Jones*, 520 U.S. 681, 707-08, 117 S.Ct. 1636 (1997) (holding that a delay

in discovery can unjustly prejudice plaintiffs while offering minimal judicial economy benefits).

The Court should reject Defendants' attempt to delay discovery under the guise of judicial

efficiency. The inherent discretion to stay proceedings must be exercised in a manner that ensures

fairness and does not allow one party to gain an unfair procedural advantage. Given the significant

harm that a stay would cause Plaintiffs, the interests of fairness and balance require denying

Defendants' motion.

**B. A stay is not required and is discretionary. Defendants' appeal of qualified immunity is frivolous.**

    *i.* *Defendants' appeal is frivolous because qualified immunity is not applicable where Tonkovich was established law and the facts plead show that Defendants were aware of it.*

Defendants incorrectly assert that a stay of discovery is necessarily required because they

have filed a notice of appeal (Doc. 60) of the Court's order denying qualified immunity (Docs. 54

and 58). However, the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), recognized

that qualified immunity, even assuming it applies, only shields defendants from unnecessary or

overly broad discovery, not from all discovery outright. "Indeed, the court may consider certain

relevant factors in determining whether to grant a stay of discovery based on qualified immunity."

*Est. of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, No. 20-CV-00991-

CMA-MDB, 2022 WL 3975003, at *2 (D. Colo. Sept. 1, 2022). Defendants rely on *Stewart v.

Donges*, 915 F.2d 572 (10th Cir. 1990), to argue that the interlocutory appeal divests this Court of

jurisdiction and mandates a stay.

    *Donges* involved a denial of a motion for summary judgment based on qualified immunity

*after discovery* and shortly before trial. *Id.* at 573-74. Before filing an interlocutory appeal, the

defendant orally moved to vacate the trial setting pending his anticipated interlocutory appeal,

which the Court denied. *Id.* Immediately before trial, defendant then filed his notice of

interlocutory appeal without a further request for stay to either the District Court or the Tenth Circuit and the case was tried before a jury while the appeal was pending. *Id.*

The *Donges* Court discussed the general "divestiture rule" upon filing an interlocutory appeal as divesting the Court of jurisdiction only over those claims subject to qualified immunity. *Id.* However, the Court noted the exception to the divestiture rule when the District Court finds the interlocutory appeal as frivolous or without merit. One purpose of such analysis was to prevent potential misuse of interlocutory review, and to clarify that if the district court were to make a finding of frivolousness, it enabled the district court to retain jurisdiction and to proceed to trial absent intervention by the court of appeals. *Id.*

As explained in *Harris v. City of Balch Springs,* 33 F.Supp. 3d 730, *732 (N.D. Tex. 2014), the *Ashcraft v. Iqbal*, 556 U.S. 662, 685-86, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) case does not require a global stay of all pretrial proceedings, including discovery, pending the outcome of an interlocutory appeal.  *Iqbal* was based on a poorly plead complaint in which the court held plaintiffs failed to plead sufficient facts. In *Harris*, the court, as it did here, found that the complaint, if true, was sufficient to state a claim upon which relief can be granted as to several counts and that the allegations were sufficient to defeat a defendant's entitlement to qualified immunity. Accordingly, the *Harris* court allowed discovery on issues not related to qualified immunity. *Id.*

In the instant case, unlike *Donges* and the vast majority of cases addressing interlocutory appeals involving qualified immunity, Plaintiffs have pled such detailed uncontroverted facts in their Second Amended Complaint to essentially establish a "*prima facie case*" that Defendants are not entitled to qualified immunity as a matter of law. Their appeal is frivolous and this court should include in its order denying Defendants' Motion to Stay (Doc. 64) that their appeal is frivolous.

There is no question about what *Tonkovich* holds. i.e., tenured professors in Kansas have a property right in Kansas and are entitled to due process if the state pursues termination of a tenured professor. *Tonkovich* is undisputedly the clearly established law at the time Defendants engaged in their unconstitutional conduct. Just because Defendants "disagree" with *Tonkovich* and think the result should have been different is irrelevant for purposes of qualified immunity analysis. And they cannot in good faith claim they did not know the clearly established law because as referenced in the Second Amended Complaint (Doc. 41 at ¶ 45), the Kansas Board of Regents, the then individual members and the University of Kansas were parties in *Tonkovich*. Further, Defendant Kevin Johnson, Emporia State's general counsel and adviser to Defendant Hush, wrote a paper detailing that tenure is a property right with due process protection. See Doc. 41 at ¶ 46. Yet, they now want to claim "oh, that's not the law at all."

Plaintiffs submit that there may be no reported case that more clearly justifies the denial of qualified immunity than Plaintiffs have presented here. So much so that Defendants' claim of qualified immunity is frivolous and founded in Defendants' willingness to do what they want irrespective of clearly establish law. Plaintiffs' respectfully request the Court to include a determination in its order that Defendants claims of qualified immunity in their interlocutory appeal renders their appeal frivolous.

Lastly, unlike the denial of a motion to dismiss based upon qualified immunity, a "denial of a motion for summary judgment finally and conclusively determines the defendant's claim of right not to stand trial." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817 (1985). This case does not even have a scheduling order entered yet, let alone is it close to trial. Thus, the concerns relied upon in *Donges* are inapplicable.

> ii.    **The Tenth Circuit arguably does not have appellate jurisdiction to review this Court's decision pertaining to qualified immunity since the issue is not abstract.**

Unlike typical Qualified Immunity cases, this case does not present an "**abstract**" issue of law. Plaintiffs have identified clearly established law in the form of a number of cited cases including the decision of the Tenth Circuit in *Tonkovich v. Kansas Board of Regents*. The Supreme Court in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), made clear that not all District Court denials of qualified immunity are appealable. The Court in *Johnson* defined the scope of appealability of a district court's denial of qualified immunity and explained why not all decisions are appealable on a interlocutory basis in stating:

> The upshot is that, compared with *Mitchell*, considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of "qualified immunity" matters to cases presenting more abstract issues of law. Considering these "competing considerations," we are persuaded that **"[i]mmunity appeals ... interfere less with the final judgment rule if they [are] limited to cases presenting neat abstract issues of law."** 5A Wright & Miller § 3914.10, at 664; cf. Puerto Rico Aqueduct, 506 U.S., at 147, 113 S.Ct., at 689.

Emphasis added.

Although the District Court here is not determining whether Defendants' appeal is appropriate as the U.S. Supreme Court was in *Johnson*, that Defendants are pursuing an interlocutory appeal not involving an "**abstract**" issue of law is absolutely a factor to consider in determining whether the Court should allow discovery.

It would in fact be inconsistent for the District Court to enter a stay regarding discovery when the District Court relied upon clearly established Tenth Circuit law in denying Defendants' motion to dismiss based upon qualified immunity. Plaintiffs' Second Amended Complaint clearly stated undisputed facts sufficient to establish these Defendants are not entitled to qualified immunity. Notably, Plaintiffs were able to do so despite having been denied the opportunity

through the filing of this response, to even ask Defendants why they got terminated. Defendants have avoided answering basic questions afforded by due process for long enough. Defendants are free to request a stay with the Tenth Circuit, even assuming the Tenth Circuit has appellate jurisdiction to hear the appeal.

Defendants appear to fail to recognize that the official capacity claims against Defendant Hush, are not even subject to dismissal based upon qualified immunity. Qualified immunity only applies to claims against government officials in their personal capacity for monetary relief. The Plaintiffs' official capacity claim against Defendant Hush ***is not appealable*** under the collateral order doctrine because qualified immunity does not apply to official capacity claims. As recognized by the 10th Circuit:

> Further, under well-settled precedent, ordinarily an official-capacity defendant—who is not entitled to rely upon qualified immunity, see Beedle v. Wilson, 422 F.3d 1059, 1069 (10th Cir. 2005)—cannot pursue an interlocutory appeal as a matter of right, because he "cannot invoke the collateral order doctrine to justify appeal of an otherwise nonappealable decision," Moore v. City of Wynnewood, 57 F.3d 924, 929 (10th Cir.1995).

***Defendants have not sought any pendant appellate jurisdiction from the Tenth Circuit to even address the official capacity claim***. Defendants' notice of appeal (Doc. 60), only seeks an appeal under the "collateral order doctrine," which pertains only to personal capacity claims. Therefore, Defendants are not even seeking interlocutory appeal of all of the claims in this case, nor does the 10th Circuit have appellate jurisdiction to consider official capacity claims at this juncture. *Cox v. Glanz,* 800 F.3d at 1246. Accordingly, it is within the sound discretion of the District Court to allow full discovery on all issues pertaining to the official capacity claims irrespective of whether personal capacity claims are pending on appeal. As held by the 10th Circuit in *Cox*, "we are constrained to dismiss the aspect of the Sheriff's appeal concerning liability in his official capacity claim." *Id*.

13

Given these factual issues, the argument above, and that most of the claims are ripe for discovery given that all claims against defendant Hush in his official capacity are not at issue on appeal **and** counts IV as to Defendants Lovett, Hush and Johnson (violation of liberty interest in violation of the Fourteenth Amendment), and the following counts against all defendants: VI (violation of equal protection rights in violation of Fourteenth Amendment), VI (violation of equal protection of rights in violation of Fourteenth Amendment), VIII (violation of Freedom of Association Rights in violation of First Amendment) and X (civil conspiracy to violate plaintiff's constitutional rights under U.S. Constitution), are not encompassed in Defendants' appeal, weighs significantly in favor of allowing full discovery if not limited discovery.

### C. Public interest and prejudice to Plaintiffs weigh against a stay.

This case has been pending since July 2023, and the facts at issue occurred in 2021 and 2022. A further delay in discovery risks evidence spoliation and prejudice to Plaintiffs. Moreover, courts have held that the public interest in resolving constitutional violations weighs against staying discovery, particularly where fundamental rights such as due process and equal protection are at stake. *See Bustos v. United States*, 257 F.R.D. 617, 623 (D. Colo. 2009) ("This District generally disfavors stays of discovery."). Given the importance of the issues at stake and the need for factual development, a stay would be inappropriate.

### D. Discovery will not affect Defendant Johnson's ability to work as he is retired.

If one of the justifications for granting a stay in qualified immunity cases is that vexatious discovery would interfere with a government employee's work pending the ruling on qualified immunity, that factor does not exist for Defendant Johnson as he is retired from employment at ESU. Discovery should therefore be allowed concerning Defendant Johnson.

## Conclusion

For all the reasons set forth herein, Plaintiffs respectfully request that this Court deny Defendants' Motion to Stay Discovery, find that defendant's appeal is frivolous, and allow discovery to proceed. A stay is not appropriate because the Tenth Circuit's jurisdiction is dubious since the issue of qualified immunity is not abstract and defendants' basis of appeal is frivolous. Importantly, the majority of Plaintiffs' claims are not at issue on appeal (official capacity claims and Counts IV, VI, VIII, and X), and all the factors weigh against granting a stay. Alternatively, if discovery is not allowed to proceed in full, limited discovery should be allowed as against all other defendants on the surviving counts.

Respectfully Submitted,

/s/ J. Phillip Gragson
J. Phillip Gragson, #16103
Amanda S. Vogelsberg, #23360
John H. Hutton, #16573
Kara Eisenhut #27055
HENSON, HUTTON, MUDRICK,
GRAGSON & VOGELSBERG, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
(785) 232-2200; f: (785) 232-3344
jpgragson@hhmglaw.com
avogelsberg@hhmglaw.com
jhutton@hhmglaw.com
keisenhut@hhmglaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on March 25, 2025 with the clerk using the EM-ECF system which will send notice to all parties of record.

/s/ J. Phillip Gragson
*Attorneys for Plaintiffs*